IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT<br>OF ETERNITY SHIPPING, LTD and<br>EUROCARRIERS, S.A., | *<br><br>* | |
| *in a cause for exoneration from*<br>*or limitation of liability* | * | Civil Action No. L-01-CV-250 |
| * * * * * * * * * * * * * * * * * * * * * * | | |

**CLAIMANT-JOSEFINA GONZALES' MEMORANDUM IN REPLY
TO MEMORANDUM OF LIMITATION PLAINTIFFS IN OPPOSITION TO
CLAIMANTS' MOTION TO STRIKE PETITIONERS' PRAECIPE and, in the
alternative, <u>CLAIMANT'S MOTION FOR DETERMINATION OF FOREIGN LAW</u>**

### Introduction

Claimant-Josefina Gonzales (hereinafter, "Claimant"), appearing by and through her attorneys-of-record, R. Blake Brunkenhoefer of Brunkenhoefer & Associates, P.C. and W. Charles Bailey, Jr. of Simms Showers, L.L.P., makes and files this her "Memorandum in Reply" (hereinafter, "Claimant's Reply") replying to the "Memorandum of Limitation Plaintiffs in Opposition to Claimant-Gonzales' Motion to Strike Petitioners Praecipe and, in the alternative, Claimant's Motion for Determination of Foreign Law" (hereinafter, "Petitioners' Response").

Claimant avers that her deceased son is entitled to the rights and protections afforded seamen under American law, particularly the "Jones Act" and the general maritime law, and such rights are readily discernible upon the available evidence. Petitioners have filed a Praecipe that vaguely alludes to the fact that, at some point in time, Petitioners will seek to apply foreign law to Claimant and her claims, such that her "Jones Act" and general maritime claims may be affected thereby. In order to expedite the resolution of any foreign law issues, Claimant filed her "Motion to Strike

Petitioners' Praecipe and, in the alternative, Claimant's Motion for Determination of Foreign Law" (hereinafter, "Claimant's Motion") along with a related "Memorandum in Support of Claimant-Josefina-Gonzales' Motion to Strike Petitioners' Praecipe and, in the alternative, Claimant's Motion for Determination of Foreign Law" (hereinafter, "Claimant's Memorandum").

Claimant continues to contend that the Petitioners have not yet properly identified which foreign law they seek to apply, the parties and/or claims to which such laws apply, or how the application of such laws is relevant to this cause. Insofar as Petitioners have yet to address these issues, and as Claimant can only guess what foreign law is intended or how such law is arguably relevant to Claimant and her claims, Claimant cannot presently "respond" to certain of Petitioners' suggestions. More specifically, though Petitioners have properly cited *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) and *Hellenic Lines Limited v. Rhoditis*, 398 U.S. 306, 308, 90 S.Ct. 1731, 1733, 26 L.Ed.2d 252 (1970) as instructive with respect to determining choice of law issues, Petitioners have not yet advised the Court how or why the *Lauritzen/Rhoditis* "test" mandates the application of foreign law in this case. As Claimant cannot rebut an argument that does not (but should) exist, Claimant simply proposes to show the Court that any relevant foreign law issues are ripe for consideration, due consideration of efficiency and the equities militates in favor of a present resolution of all foreign law issues, and, as a consequence, the Petitioners should now be compelled by the Court to advance their foreign law arguments so that Claimant may make a proper response thereto.

## Factual Background

In the interest of brevity, efficiency and economy, Claimant respectfully incorporates by reference the recitation of facts provided in her original motion and related memorandum. See,

*Claimant's Memorandum* at p. 2.

## Argument

### I.
### General

Claimant yet contends that Petitioners' Praecipe is both inadequate as a matter of law and patently unreasonable, for the reasons stated in ¶¶I-II of the "Argument" found in Claimant's Memorandum.  See, *Claimant's Memorandum* at p. 2-6.

However, as Petitioners have dodged the merits of Claimant's Motion by simply claiming that it is not yet time for the Court's determination of any foreign law issues, see, *Petitioners' Response* at p. 1 & 3, Claimant's Reply focuses upon the "ripeness" of the foreign law issues and respectfully commends the Court's attention to her prior "Argument" on all other matters.  See, *Claimants's Memorandum* at p. 2-6.

In a nutshell, and contrary to the Petitioners' assertions, all relevant factors are available for consideration and the facts to be evaluated by the criteria in question are not subject to change. Therefore, the foreign law issues can and should be evaluated now.

In the Petitioners' Response, Petitioners protest the Court's ruling upon this matter for the following reason:

> "[Claimant-Gonzales'] deposition will be necessary before the parties
>
> can conclude discovery relating to her decedent's employment, his
>
> financial contributions to her support, and her prior pursuit of claims
>
> in a forum in the Philippines . . . ." *Petitioners' Response* at p. 3.

Petitioners contend that the resolution of these three matters would be relevant to this Court's

determination of the choice-of-law issues. *Id.*. This is simply not true.

## II.
## "Decedent's Employment"

With respect to the "decedent's employment," the relevant contract, i.e., upon which Petitioners would seek to apply Filipino law, has been produced in discovery. See, Exhibit 1 (*"Contract of Employment,"* marked and produced by Petitioners as EC002638). As the contract and the law applicable to same cannot be better understood or explained by the testimony of the decedent's elderly, non-seafaring, non-signatory mother, Claimant's testimony on this subject is irrelevant to the Court's analysis of the contract and applicable law.

## III.
## "Decedent's Contributions to Claimant's Support"

As for the decedent's "contributions to her support," although such testimony may be relevant to the proper calculation of Claimant's damages, this testimony is irrelevant to determining whether Filipino, Greek, Maltese or American law appl(ies) to her claims, with respect to damages or otherwise.

## IV.
## "Claimant's Prior Pursuit of Claims in the Philippines"

Finally, though the issue of Claimant's "prior pursuit of claims in a forum in the Philippines" certainly *appears* to make Claimant's testimony now relevant to the choice-of-law issues, the Petitioners' actions in the Philippines and the resulting Filipino Court rulings have, again, rendered Claimant's testimony unnecessary to this Court's just and speedy resolution of this matter.

[NOTE: Claimant apologizes in advance for the poor quality of many of the following exhibits. However, as indicated by the fax transmittal messages at the top of each page, these

exhibits were sent to Claimant's attorney by Petitioners via facsimile (i.e., from the hotel in Greece where depositions in this case were then being conducted), after Petitioners had themselves received the materials via fax transmission, and after the documents had been transmitted to their original recipients via facsimile.  See, Exhibit 2 (*05/26/03 "telefax message" cover sheet from the Divani Apollon Palace & Spa, from Tony Whitman to Blake Brunkenhoefer*).]

On November 17, 2000, attorneys representing the Claimant before the Filipino authorities--and not in connection with the claims now before this Court–forwarded a demand letter to the Manila-based agency which had, at the request of one or more of the Petitioners, secured the decedent's presence and service aboard the vessel in question.  See, Exhibit 3 (*11/17/00 letter from Von Lovel D. Bedona to Bright Maritime Corporation*).  Claimant's attorney in the Philippines, Von Lovel D. Bedona, simply demanded payment of the death benefits provided under the "Standard Employment Contract" for Filipino seafarers, which amount totaled but US $51,000.00.  *Id..*  This letter was then forwarded on to the relevant P & I Club representative, see, Exhibit 4 (*12/21/00) letter from Bright Maritime Corporation to the Law Offices of Del Rosario & Del Rosario*) & Exhibit 5 (*12/22/00 letter from Bright Maritime Corporation to Von Lovel D. Bedona*), as well as the insurance and claims department of Petitioner-Eurocarriers, S.A..  See, Exhibit 6 (*12/21/00 "telefax message" from CrewCare, Inc. [proposed successor-in-interest to Bright Maritime Corporation] to Eurocarriers, S.A.*).

Claimant's demand was refused, and an action was then initiated with the National Labor Relations Commission of the Philippines (hereinafter, "NLRC").  See, Exhibit 7 (*"Decision"*). [NOTE: The marks made on Exhibit 7, including the "underlining," existed prior to Petitioners' delivery of this document to Claimant's attorney in the instant federal action.  Claimant and her

attorneys do not know how, when, why or by whom these marks were made.]

The case proceeded before Executive Labor Arbiter Oscar S. Uy who found, in amongst other respects, that:

(a) Josefina Gonzales ("Complainant" in the Filipino action) contended that she was entitled to US $51,000.00 under the compensation schedule set out in the Standard Employment Contract for Filipino seafarers. *Id.* at p. 2-3.

(b) The ship's owners and agents ("Respondents" in the Filipino action) had offered US $60,000.00, but, in exchange for the additional compensation, they wanted Complainant to execute a general waiver and quitclaim in their favor. *Id*. at p. 3.

(c) When Complainant refused to "waive her rights to initiate any possible legal action against persons or corporations who might be held liable for the death of her son based on laws of foreign countries, the payment of compensation benefits offered by respondents was withheld and/or withdrawn." *Id.* at p. 4.

(d) Complainant argued that her entitlement to the compensation benefits set forth in the Standard Employment Contract was unambiguous and not subject to any other terms or conditions, such as requiring her to execute a general waiver and quitclaim before receiving the scheduled benefits. *Id.* at p. 4-5.

(e) When refused to accept the US $60,000.00 offer, Respondents were willing "to negotiate further regarding the amount that would be acceptable to both parties." *Id.* at p. 6. More specifically, Respondents came to Complainant on September 25, 2000 and offered US $60,000.00 and, when she refused to accept the money on the terms required, Respondents requested a counter-offer. *Id.* at p. 7.

(f)      Respondents contended that, after US $50,000.00 was paid to Complainant (i.e., the $1,000.00 burial expense having already been timely paid to the decedent's designated allottee, his sister), Complainant was "no longer entitled to further compensation for the death of her son, in accordance with the policy against double recovery, multiplicity of suits and forum shopping and that complainant's simultaneous filing of a suit abroad and in the Philippines violates the prohibition against double recovery/compensation; that all of complainant's claims against respondents, including her claim for damages, should be brought before the NLRC, in accordance with the express provision of the Migrant Workers and Overseas Filipino Act of 1995 . . . ." *Id.* at p. 9.

(g)      Respondents argued that, contrary to the Complainant's assertions, the NLRC had exclusive jurisdiction, vested specifically by the Migrant Workers Act, over all claims that Mrs. Gonzales has against the respondents, whether they be "contractual" or for damages. *Id.* at p. 14. Respondents further argued that "complainant is entitled only to the death benefits provided in the POEA contract, which is a form of liquidated damages designed to serve as payment, in totality, including those for damages, and to nothing more. Its very nature thus prevents the parties to the contract from making any additional claims over and above those provided in said contract." *Id.*. Finally, Respondents urged that they had "repeatedly offered the payment of the death benefits of US $50,000.00 in exchange for a complete and full release in favor of the respondents, which was refused by complainant in the mistaken belief that she can make additional claims for damages and tort, as the death benefits of US $50,000.00 is the total amount that the complainant is . . . legally entitled to, inclusive of damages." *Id.* at p. 14-15.

      In other words, Petitioners/Respondents, appearing by and through their designated attorneys, argued to the NLRC and its duly-appointed arbitrator that Claimant/Complainant was precluded from pursuing her claims in the United States because Filipino law provided the exclusive remedy and that remedy was limited to the contractual death benefits set forth in the Standard Employment Contract for Filipino seafarers. See, *Id.* at p. 6-15.

(h)    The Executive Labor Arbiter found that the Respondents' offer of US $60,000.00 was US $10,000.00 over and above that due to Complainant (i.e., the $1,000.00 burial expense having already been timely paid to the decedent's designated allottee, his sister). *Id.* at p. 16.

(i)    The ruling of the Executive Labor Arbiter continued as follows:

> "The offer of the extra US $10,000.00 was not fostered by pure benevolence on the part of the respondent, although at first glance it would seem so, for it was offered with strings attached. The additional amount was an enticement to complainant to execute a general waiver and quitclaim in favor of respondents. And when she refused to do so, payment of compensation benefits was totally withheld or withdrawn from her.
>
> Payment of compensation benefits for the death of a seaman is not subject to any terms or conditions. [citations omitted]
>
> This ruling can be applied corollarily to the instant case. More so, where the death of an able-bodied seaman occurred while in the performance of his duties or functions, caused by an accident which could have been avoided or averted if there was proper

maintenance and supervision of respondents' vessel.

Complainant's entitlement to the compensation benefits vested and accrued upon the death of her son. The amount of US $50,000.00 should have been immediately and unconditionally released to her. But such was not the case. In spite of the repeated demands, respondents remained adamant in their refusal. Complainant had no other recourse but to file the instant case for the collection of said compensation benefits.

Respondents are now crying foul, charging complainant of having violated the provisions against forum shopping, double recovery/compensation, and multiplicity of suits.

Prior to the enactment of The Migrant Workers and Overseas Filipino Act of 1995, all money claims arising out of employer-employee relationship by virtue of any law or contract involving Filipino workers for overseas deployment were lodged before the Philippine Overseas Employment Administration (POEA). Upon its effectivity on 15 July 1995, all unresolved money claims pending before the POEA were referred to the NLRC for disposition. Thus the proviso, 'notwithstanding any provision of law to the contrary, the Labor Arbiters of the National Labor Relations Commission (NLRC) shall have the original and exclusive jurisdiction to hear and decide all claims arising out of employer-employee relationship or by virtue

    of any law or contract involving Filipino workers for overseas deployment including claims for actual, moral, exemplary and other forms of damages, subject to the rules and procedures of the NLRC.' This provision is found in Section X, Chapter II of the Migrant Workers and Overseas Filipinos Act of 1995 which is on ILLEGAL RECRUITMENT. Thus, the complaint filed by the deceased seaman's mother, for torts and damages in foreign jurisdiction is not proscribed by the provision relied upon by respondents. . . . All that the complainant is asking for is the payment of compensation benefits as the compulsory heir of the deceased seaman that is withheld from her by respondents." *Id.* at p. 16-20.

(j) In its ruling of August 30, 2001, the NLRC Arbitrator then ordered the Respondents to pay Complainant US $50,000.00, plus attorney's fees. *Id*. at p. 20.

Rather than pay the death benefits due and owing to Claimant/Complainant, the Petitioners/Respondents appealed the arbitrator's ruling. See, Exhibit 8 (*"Decision"*).

In *Gonzales v. Bright Maritime Corporation, et al.*, the Fourth Division of the National Labor Relations Committee of the Republic of the Philippines issued its appellate decision in this case. In holding that the Complainant-beneficiary of the deceased Filipino seaman could yet maintain a tort action in this United States District Court though she was also attempting to collect contractual death benefits under the NLRC, the *Gonzales* panel declared:

    "Assuming that complainant would receive the amount of US $50,000.00 necessarily she is barred from instituting a separate legal

action here in our country based on the same incident because of our law against double recourse from a single wrong (Art. 2177, Civil Code). If however, the separate legal action is instituted in the foreign country as it is now, we are not in a position to hold that complainant is barred thereby.

. . .

We agree that under RA 8042 [a/k/a., the "Migrant Workers' and Overseas Filipinos' Act of 1995"], the NLRC has original and exclusive jurisdiction over claims arising out of employer-employee relationship or contract involving overseas Filipino workers. However, as in any other Philippine laws, the conferment of jurisdiction to a particular court, body or tribunal is in relation to the other courts, bodies or tribunals in the Philippines. To say that the same is intended to bind foreign courts is, to our mind, an act of interference or usurpation. Hence, we are also not in a position to say that the foreign court is barred from taking cognizance of the second suit."

*Gonzales v. Bright Maritime Corporation, et al.*, NLRC Case No. V-000036-2001/SRAB Case No. OFW(M)01-03-0014, p.2-3 (Fourth Division of the National Labor Relations Committee of the Republic of the Philippines). See, Exhibit 8 at p. 2-3.

In other words, Filipino workers' compensation law would limit the seaman's recovery to the stated contractual death benefits. [NOTE: Of course, American maritime law has no such

prohibition: Since the decedent was a seaman, the payment of workers' compensation benefits is not a bar to a tort recovery as the shipowner merely receives a credit against its "maintenance and cure" obligations; the shipowners' payment of maintenance does not offset its obligations with respect to payment of damages for lost wages; etc..] However, the Filipino appellate court further determined that the law of the Philippines does not bar this Court from providing Claimant with a tort remedy.

The Petitioners filed the instant limitation action with this Honorable District Court. Then they "tried to pull a fast one" by having the NLRC of the Philippines rule on the seaman's death claims. However, much to the Petitioners' chagrin, the Philippines have ruled against them and, indeed, declared that the United States can apply its law to provide this deceased seaman with a tort remedy.

The findings of the Filipino tribunal should end the discussion, whether in deference to the Filipino law of this case or by acknowledging that the equities most certainly do not warrant further consideration of the Petitioners' argument. However, Petitioners want this Court to give them a "second bite" of an apple from which they did not deserve an initial taste (i.e., when the Parties get to the discussion of the *Lauritzen / Rhoditis* "test," the Court will see that it was patently wrong for the Petitioners to try, in the first instance, to get *any* ruling from the Philippines when it is clear that the United States has the most substantial connection to the events in question and it is in the United States' best interest to adjudicate the liability of those who ply our waters, damage our property, and injure or kill those lawfully within our borders). As the issue has been resolved by the forum from which Petitioners originally sought relief, the doctrine or *res judicata* should be applied to preclude Petitioners from relitigating the issue in this American Court which is directed under American law (e.g., *Lauritzen/Rhoditis*) and urged by the Philippines to provide precisely the relief requested by

Claimant in this action.

For these reasons, Claimant respectfully requests the Court's present consideration and, in due order, rejection of any present or potential claim or defense that would deny Claimant the ability to proceed under American law in the Courts of these United States.

## **CONCLUSION**

Petitioners' Praecipe is deficient and unreasonable in its failure to properly apprise this Court and the Claimant of the bases for the application of foreign law, and, as a consequence, said Praecipe should be stricken in its entirety. Nevertheless, should the Court ever determine that the Petitioners have raised or will properly raise the specter of foreign law in this case, it is abundantly clear that a determination of foreign law issues is ripe for consideration and due consideration of efficiency and the equities militates in favor of a present resolution of all foreign law issues. Therefore, the Petitioners should be compelled by the Court to now advance their foreign law arguments–in all their particulars–so that the Claimant may make a proper response to same.

WHEREFORE, Claimant respectfully requests that the Court, by dismissing the Petitioners' "Praecipe" or otherwise, find that the personal injury and death claims resulting form the death of Juan Gonzales, Jr. are properly brought within the Courts and adjudicated under the laws of these United States of America, rather than the laws of Greece, the Philippines, Malta or any other nation.

Respectfully submitted,

_____/s/_____
R. Blake Brunkenhoefer (S.D.Tex. #15559)*
BRUNKENHOEFER & ASSOCIATES, P.C.
1770 Tower II
555 N. Carancahua
Corpus Christi, Texas 78478
(361) 888-6655
Fax (361) 888-5855
bbrunk@gulfattorneys.com
(* Admitted Pro Hac Vice)


_____/s/_____
W. Charles Bailey, Jr. (#23580)
SIMMS SHOWERS, LLP
Suite 702
20 South Charles Street
Baltimore, Maryland 21201
(410) 783-5795
Fax (410) 783-1368
wcbailey@simmsshowers.com

## CERTIFICATE OF SERVICE

I, R. Blake Brunkenhoefer, do hereby certify that a true and correct copy of the above and foregoing document was served via e-mail notification from the District Court and in the manner indicated, upon:

| | |
|---|---|
| M. Hamilton Whitman, Jr. <br> OBER, KALER, GRIMES <br> & SHRIVER, P.C. <br> 120 E. Baltimore Street <br> Baltimore, MD 21202 <br> **(VIA FAX (410) 547-0699)** | James D. Skeen <br> WRIGHT, CONSTABLE <br> & SKEEN, L.L.P. <br> 1 Charles Center, 16th Floor <br> 100 N. Charles Street <br> Baltimore, MD 21201 <br> **(VIA FAX (410) 659-1350)** |
| Jeffrey J. Asperger <br> Taylor R. Steahly <br> ASPERGER CARAHER, L.L.C. <br> Three Illinois Center <br> 303 East Wacker Drive, Suite 1000 <br> Chicago, Illinois 60601 <br> **(VIA FAX (312) 856-9905)** | Bernard J. Sevel <br> ARNOLD, SEVEL & GAY, P.A. <br> Two N. Charles Street, Suite 560 <br> Baltimore, MD 21201 <br> **(VIA FAX (410) 837-7820)** |
| Robert G. Clyne <br> HILL, RIVKINS & HAYDEN, L.L.P. <br> 45 Broadway, Suite 1500 <br> New York, NY 10006-3739 <br> **(VIA FAX (212) 669-0698)** | James W. Bartlett, III <br> SEMMES, BOWEN & SEMMES <br> 250 W. Pratt Street, 16th Floor <br> Baltimore, MD 21201-2423 <br> **(VIA FAX (410) 539-5223)** |
| Francis J. Gorman <br> GORMAN & WILLIAMS <br> Two N. Charles Street, Suite 750 <br> Baltimore, MD 21201 <br> **(VIA FAX (410) 528-0602)** | W. Charles Bailey, Jr. <br> SIMMS SHOWERS, L.L.P. <br> 20 S. Charles St., Suite 702 <br> Baltimore, MD 21201-3291 <br> **(VIA FAX (410) 783-1368)** |

in accordance with all applicable provisions of the Federal Rules of Civil Procedure, on this the 29th day of December, 2003.

                                                    /s/ <br>
                                           R. Blake Brunkenhoefer