Stuart FitzGibbon

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                  FOR THE DISTRICT OF MARYLAND
 3                        (NORTHERN DIVISION)
 4    IN THE MATTER OF            :
 5    THE COMPLAINT OF             :
 6    ETERNITY SHIPPING, LTD.,    : Civil Action
 7    and EUROCARRIERS, S.A.      : No. L-01-CV-0250
 8    FOR EXONERATION FROM OR     :
 9    LIMITATION OF LIABILITY     : Pages 1-226
10                              ----------
11
12
13            Deposition of STUART JAMES FITZGIBBON
14                      Baltimore, Maryland
15                   Thursday, January 23, 2003
16
17
18
19   Reported by: Kathleen P. Thompson, Notary Public
20
21
```

Stuart FitzGibbon

1  point after that, arrangements were made and
2  commencement and discharge began at
3  Chesapeake Bulk Stevedores?
4      A.   Yes.
5      Q.   Okay.  Do you know now, generally,
6  what the terms of the arrangement were with
7  Chesapeake Bulk Stevedores in terms of
8  manning and cost, and so forth?
9      A.   Yes.
10     Q.   What were they?
11     A.   The, and I'll qualify this by saying
12 you have to get the details from Jeff
13 Robinson, but, in general, the cost of the
14 discharge ended up costing us around $11.80 a
15 ton delivered.  And the details of it, you'd
16 be better to ask Jeff Robinson exactly how
17 they arrived at that number.
18     Q.   $11.80 a ton delivered to the
19 sugar--
20     A.   Raw sugar shed.
21     Q.   Shed here?

Stuart FitzGibbon

Page 120

1   A.   Right.

2   Q.   And physically how was that arranged
3   at Chesapeake Bulk Stevedores, do you know?

4   A.   Chesapeake Bulk Stevedores' system
5   is that they have two piers and they used
6   cranes to discharge directly into dump
7   trucks, they had an army of dump trucks
8   running the sugar from there over to here,
9   where we would weigh the cargo in on the
10  truck and that's how we would determine the
11  weight delivered.  And the trucks would do a
12  circuit back and forth until the ship was
13  finished discharging.

14  Q.   All right.  Those arrangements were
15  put in place by Mr. Robinson?

16  A.   Yes.

17  Q.   But you were the one who decided
18  which vessels would be discharged there and
19  which vessels could be discharged here; is
20  that correct?

21  A.   Yes.

Stuart FitzGibbon

Page 224

1  CERTIFICATE OF NOTARY PUBLIC
2  I, Kathleen P. Thompson, the officer before whom the foregoing deposition was
3  taken, do hereby certify that the witness whose testimony appears in the foregoing
4  deposition was duly sworn by me; that the testimony of said witness was taken by me in
5  stenotype and thereafter reduced to typewriting under my direction; that said
6  deposition is a true record of the testimony given by said witness; that I am neither
7  counsel for, related to, nor employed by any of the parties to the action in which this
8  deposition was taken; and, further, that I am not a relative or employee of any attorney or
9  counsel employed by the parties hereto, nor financially or otherwise interested in the
10 outcome of the action.
11
12       *Kathleen P. Thompson* (signature)
13       Kathleen P. Thompson
14       Notary Public in and for the
15       State of Maryland.
16
17
18 My commission expires:
19 May 1, 2006.
20
21

Stuart FitzGibbon (Vol.3)

Page 385

1  IN THE UNITED STATES DISTRICT COURT
2  FOR THE DISTRICT OF MARYLAND
3  (NORTHERN DIVISION)
4  IN THE MATTER OF THE              :
5  COMPLAINT OF ETERNITY             :
6  SHIPPING, LTD., AND               : CIVIL ACTION
7  EUROCARRIERS, S.A. FOR            : NO. L-01-CV-0250
8  EXONERATION FROM OR               :
9  LIMITATION OF LIABILITY           : Pages 385 - 590
10                            -----------
11
12
13
14         Deposition of Stuart FitzGibbon
15                   Volume III
16              Baltimore, Maryland
17         Tuesday, February 10, 2004
18
19                     COPY
20
21  Reported by: Kathleen R. Turk, RPR-RMR

Esquire Deposition Services

D.C - 1-800-441-3376
MD - 1-800-539-6398

1   Q   Is he still located in Baltimore?

2   A   Yes.

3   Q   Is he still the Technical Director?

4   A   Yes.

5   Q   Do you know what his duties and
6   responsibilities are as Technical Director?

7   A   He deals with the development of new
8   specifications for our finished products.  He deals
9   with approval of new procedures for the quality
10  system.  He investigates opportunities for the
11  improvement of the sugar refining process.  He has a
12  group reporting to him which deals with technical
13  improvement of the refineries and also negotiating new
14  specifications with customers.

15  Q   Okay.  Other than negotiating the contract
16  with Chesapeake that you described to us last time --

17  A   Yes.

18  Q   -- did Mr. Robinson play any other role with
19  respect to this incident whatsoever?

20  A   No, he -- he was involved with the setting
21  up of the contract with Chesapeake, but on a

## Stuart FitzGibbon (Vol.3)

Page 395

```
1   day-to-day basis, he wasn't involved with that.
2        Q    Okay.  Was there a written contract with
3   Chesapeake?
4        A    I don't know.
5        Q    Well, you were involved in gathering certain
6   of the extra expenses associated with the discharge of
7   Chesapeake, correct?
8        A    Yes.
9        Q    Were there any documents that you were
10  guided by in reviewing those expenses and approving
11  them or whatnot?
12       A    There -- there was a summary of expenses
13  that was accumulated by Jeff Robinson, and I used
14  that.
15       Q    Okay.
16       A    In terms of -- you're talking about
17  Chesapeake fees, right?
18       Q    Yes.
19       A    Yes.
20       Q    Were those documents produced in connection
21  with this litigation?
```

Stuart FitzGibbon (Vol.3)

Page 588

```
 1              CERTIFICATE OF NOTARY PUBLIC
 2        I, Kathleen R. Turk, the officer before
 3  whom the foregoing deposition was taken, do hereby
 4  certify that the witness whose testimony appears in
 5  the foregoing deposition was duly sworn by me; that
 6  the testimony of said witness was taken by me in
 7  stenotype and thereafter reduced to typewriting under
 8  my direction; that said deposition is a true record of
 9  the testimony given by said witness; that I am neither
10  counsel for, related to, nor employed by any of the
11  parties to the action in which this deposition was
12  taken; and, further, that I am not a relative or
13  employee of any attorney or counsel employed by the
14  parties hereto, nor financially or otherwise
15  interested in the outcome of the action.
16
17                         _____
                                   Kathleen R. Turk
18                         Notary Public in and for the
                           State of Maryland.
19  My Commission Expires:
20  March 1, 2007.
21
```