IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
_____ (Northern Division) _____

| | | |
|---|---|---|
| IN THE MATTER OF | * | |
| THE COMPLAINT OF | | |
| ETERNITY SHIPPING, LTD. AND | * | Civil Action No.: L-01-CV-0250 |
| EUROCARRIERS, S.A | | |
| FOR EXONERATION FROM OR | * | |
| LIMITATION OF LIABILITY | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**LIMITATION PLAINTIFFS' MEMORANDUM
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON
FIRST AMENDED CLAIM FOR DAMAGES OF JOSEFINA GONZALES**

Limitation Plaintiffs Eternity Shipping, Ltd. and Eurocarriers, S.A., by their undersigned attorneys, respectfully submit this Memorandum in Support of their Motion for Summary Judgment on the First Amended Claim for Damages of Josefina Gonzales to dismiss all claims because Limitation Plaintiffs are entitled to a judgment as a matter of law. Mrs. Gonzales has already pursued legal action on her claims against Limitation Plaintiffs in the Philippines and has collected a judgment in satisfaction of those claims. That judgment is all that Mrs. Gonzales is entitled to recover from Limitation Plaintiffs, and the foreign judgment should be recognized by this Court in accordance with principles of comity. If the Court declines to recognize the Philippine decree, Limitation Plaintiffs move, alternatively, to dismiss all claims for non-pecuniary damages, as such damages are not recoverable as a matter of law upon any claim brought under the Jones Act or general maritime law.

751142

## I.    UNDISPUTED FACTS

The facts upon which this Motion for Summary Judgment are based are not in dispute. On January 14, 2000, Juan M. Gonzales entered into a Contract of Employment with Bright Maritime Corporation ("Bright Maritime"), a Philippine crewing company acting as agent for and on behalf of Maltese shipping company Eternity Shipping, Ltd. ("Eternity").   (A copy of Juan Gonzales' Contract of Employment, entered into pursuant to terms established by the Philippine Overseas Employment Administration, is attached hereto as Exhibit A).   Pursuant to the terms and conditions of the employment contract, Mr. Gonzales was assigned as AB on the seagoing motor vessel M/V LEON 1.  See Exhibit A.  Eternity was at all times hereinafter mentioned and currently is the registered owner of the M/V LEON I.   Limitation Complaint at ¶ 1.

Eternity entrusted Eurocarriers, S.A., ("Eurocarriers") a Greek management company, with the sole and exclusive management and operation of the M/V LEON I,  in accordance with the Management Agreement between Eternity and Eurocarriers dated June 18, 1999. (A copy of the Management Agreement is attached hereto as Exhibit B). Eurocarriers, as manager and owner pro hac vice, was responsible to operate the M/V LEON I and to procure the manning, victualling and navigation of the vessel.  See Exhibit B at  ¶ 2.   Eternity, in turn, is obligated to indemnify Eurocarriers against any lien, penalty or claim of whatsoever nature on or in respect to the vessel or against Eurocarriers, whether founded or unfounded, provided that such lien, penalty or claim shall have arisen from the use and operation of the vessel.  See id. at  ¶ 9.

On or about July 21, 2000, the M/V LEON I  arrived in Baltimore and berthed at the Domino Sugar Pier to discharge a cargo of raw sugar.   Limitation Complaint at ¶ 5. On July 29, 2000, at about 0930 hours, the No. 4 crane aboard the vessel collapsed while assisting with the discharge of the vessel's cargo.  Id. at ¶ 6.  The boom of the vessel's crane struck the boom of a shore crane at the Domino Sugar Pier, causing the pier crane grab and boom and supporting structure to fall into the hold of the vessel.  Id.   As a result of the casualty, Juan M. Gonzales, Jr. and another member of the crew of the vessel, Joselito Burgos, lost their lives.  Id.

On November 17, 2000, attorneys in the Philippines representing Mrs. Josefina Gonzales, mother of the deceased Juan Gonzales, forwarded a demand letter to Bright Maritime demanding payment of death benefits provided under the Standard Contract of Employment.  See Claimant's Reply Memorandum In Support of Motion to Strike Praecipe, p. 5., Docket at 52.  The Standard Employment Contract for Seafarers provides the compensation to be paid in case of death of a seafarer which are payable to his beneficiaries.  See Standard Terms and Conditions,  Exhibit F, at Exhibit 3.  Pursuant to the Contract, Mrs. Gonzales was entitled to the total amount of fifty one thousand U.S. dollars ($51,000); $50,000 for death and $1,000 for burial expenses.  See id. Bright Maritime and Eternity (in consultation with Eurocarriers) offered Mrs. Gonzales $60,000 U.S. dollars in satisfaction of her claim and on the condition that she execute a general waiver and quitclaim in their favor.  See Claimant's Reply Memorandum In Support of Motion to Strike Praecipe, p. 6, Docket at 52.   Mrs. Gonzales refused the offer.  See id.

Instead, Mrs. Gonzales, as Personal Representative of the Estate and Beneficiaries of Juan Gonzales Jr., filed a Complaint against Eternity, Bright Maritime and Eurocarriers in this Court on February 4, 2001 for damages arising out of the accident in Baltimore. Mrs. Gonzales also filed a Complaint against Eternity and Bright Maritime with the Republic of the Philippines Department of Labor and Employment National Labor Relations Commission on March 16, 2001, for damages arising out of the accident in Baltimore.[1]  See Complaint, Exhibit F, at Exhibit 4.

Upon learning that her claim in this Court could only be maintained in the limitation action (initiated by Limitation Plaintiffs on January 29, 2001), on April 26, 2001 Mrs. Gonzales, individually and as Personal Representative of the Estate and Beneficiaries of Juan Gonzales Jr., filed a Claim for Damages against Limitation Plaintiffs, and against Tate & Lyle Sugar Co. Inc. and Tate & Lyle North American Sugars, Inc. (collectively Tate & Lyle) in this action pursuant to her alleged

> "right to proceed under the substantive and procedural provisions of 46 U.S.C. 688, *et seq.* (a.k.a., the "Jones Act"), the general maritime law, and any and all other state, federal or international codified or common law as governs the Decedent's and/or Claimants rights to recover for the death, injuries and damages sustained as a result of the incident . . .."

Claim for Damages, at ¶ 8, Docket at 9.[2]  Mrs. Gonzales bases her Claim against Limitation Plaintiffs on the fact that the decedent was employed by Limitation Plaintiffs, "having previously been engaged by contract of employment to serve as a member of the

---

[1] There is no demand outstanding in connection with the death of Burgos. The heirs of Mr. Burgos amicably settled their claims for the total amount of $61,000. (Copies of the Burgos Orders are attached hereto as Exhibit C).

[2] Mrs. Gonzales' February 4, 2001 Complaint was stayed pursuant to this Court's Restraining Order dated January 29, 2001, Docket at 4.

crew of the vessel." Claim for Damages, at ¶1. Mrs. Gonzales subsequently filed an Amended Claim for Damages with this Court on May 9, 2002, naming Third-Party Defendant American Bureau of Shipping ("ABS"). <u>See</u> First Amended Claim for Damages, Docket at 31. On July 17, 2002, ABS filed a Cross-Claim against Limitation Plaintiffs for full contribution and indemnity for any damages Mrs. Gonzales is entitled to recover from ABS for her losses. <u>See</u> Cross-Claim, Docket at 37.

In the meantime, Mrs. Gonzales obtained a judgment in the Philippines on August 30, 2001, pursuant to the Standard Employment Contract for Seafarers. (A copy of the Decision is attached hereto as Exhibit D).[3] The Executive Labor Arbiter ordered that Bright Maritime and Eternity pay Mrs. Gonzales compensation benefits in the amount of $50,000.00 plus ten percent of the total amount as attorneys' fees.[4] <u>See</u> <u>id</u>. Eternity and Bright Maritime appealed the decision of the Executive Labor Arbiter on March 14, 2002. On appeal, the National Labor Relations Commission, Fourth Division, affirmed the decision requiring Eternity and Bright Maritime to pay Mrs. Gonzales the death compensation and also addressed the question whether, given Mrs. Gonzales' receipt of this award, the Commission could bar Mrs. Gonzales from instituting another action based on tort in another country. <u>See</u> Appellate Decision, Exhibit F, at Exhibit 5. The Fourth Division held:

---

[3] For consistency and convenience, Limitation Plaintiffs attach the same copy of the Decision that has already been submitted to this Court as an Exhibit to Claimant's Reply Memorandum in Support of Motion to Strike Praecipe. Markings on the Exhibit are obviously not for the Court's consideration.

[4] The burial allowance was previously paid in August 2000. <u>See</u> <u>id</u>.

Assuming that complainant would receive the amount of US $50,000.00 necessarily she is barred from instituting a separate legal action here in our country based on the same incident because of our law against double recourse from a single wrong (Art. 2177, Civil Code).  If, however, the separate legal action is instituted in the foreign country as it is now, we are not in a position to hold that complainant is barred thereby.  To institute is one thing, for the action to prosper is another.  The foreign forum has the jurisdiction to determine whether the second suit before it will prosper or not given the fact that a suit is pending here before us.  It is not for us to preempt the ruling of that foreign court.

We agree that under RA 8042, the NLRC has original and exclusive jurisdiction over claims arising out of employer-employee relationship or contract involving overseas Filipino workers.  However, as in any other Philippine laws, the conferment of jurisdiction to a particular court, body or tribunal is in relation to the other courts, bodies or tribunals in the Philippines.  To say that the same is intended to bind foreign courts is, in our mind, an act of interference or usurpation.  Hence, we are also not in a position to say that the foreign court is barred from taking cognizance of the second suit.

See id.

On or about August 21, 2001, Mrs. Gonzales was paid a total of $55,000 U.S. dollars in satisfaction of the Decision of the National Labor Relations Commission, Fourth Division, thus terminating the case in the Philippines.  See Order terminating case, Exhibit F, at  Exhibit 7.

Despite having recovered in the Philippines for the death of her son, Mrs. Gonzales continues to pursue this present action.  Moreover, in discovery responses filed in this case on November 19, 2001 (and never amended or supplemented), Mrs. Gonzales stated that "she has not sought or obtained compensation for the death of her son by any means other than the litigation now pending in this Court." (A copy of Claimant-Josefina Gonzales' Answers, Reponses & Objections to Petitioners-Eternity Shipping, Ltd. &

6

Eurocarries, S.A.'s Interrogatories and Request for Production of Documents, is attached hereto as Exhibit E ; see Interrogatory Answer No. 11).   Mrs. Gonzales further failed to identify the compensation paid to her in the Philippines as a result of the legal proceedings.   See id. at Interrogatory Answer No. 12.

In light of this factual background, Limitation Plaintiffs filed a Praecipe with this Court on May, 8, 2003 providing notice under the Federal Rules of Civil Procedure, Rule 44.1, of their intention to raise issues concerning the law of the Republic of the Philippines applicable to the employment of Juan Gonzales and to his employment contract.   See Praecipe, Docket at 41.   The Court entered an Order on September 10, 2004 striking Limitation Plaintiffs' Praecipe.   See Order, Docket at 71.   Limitation Plaintiffs' Motion to Reconsider, filed September 24, 2004, is currently pending before the Court.   See Motion to Reconsider, Docket at 72.   As explained therein, and further evidenced through this Memorandum, it is necessary for this Court to consider issues of Philippine law in connection with matters arising out of Juan Gonzales' employment contract, including the effect of Mrs. Gonzales' recovery in the Philippines on her action brought pursuant to that contract.

## I.   LEGAL ARGUMENT

### A.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact in the case, and it appears from the pleadings and any supporting affidavits or depositions that the moving party is entitled to judgment as a matter of law.   See FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   To defeat a

motion for summary judgment, the nonmoving party must ultimately show the existence

of genuine factual disputes that are material to the issues to be decided.  See Anderson v.

Liberty Lobby, Inc., 477 U.S. 242 (1986).  Summary judgment is not "a disfavored

procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which

are designed 'to secure the just, speedy and inexpensive determination of every action.'"

Celotex, 477 U.S. at 327, quoting Fed. R. Civ. P. 1.  The summary judgment procedure

"advances the salutary objective of avoiding useless, expensive and time-consuming

trials where there is actually no genuine, factual issue remaining to be tried."  Anderson

v. Viking Pump Div., Houdaille Indus. Inc., 545 F.2d 1127, 1129 (8th Cir. 1976).

>    **B.     PRINCIPLES OF COMITY REQUIRE DISMISSAL OF MRS.
>            GONZALES' CLAIM IN ITS ENTIRETY**

It is the firm and established policy of American courts to respect a valid foreign

decree and its conclusive effect.  See Hilton v. Guyot, 159 U.S. 113, 164 (1895);  Cunard

Steamship Co., Ltd. v. Salen Reefer Serv. AB, 773 F. 2d 452, 456-57 (2d Cir. 1985);

Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 440 (3d Cir. 1971);

see also 18 B CHARLES ALAN WRIGHT & ARTHUR R. MILLER,  FEDERAL PRACTICE &

PROCEDURE § 4473 (2 ed. 2002) (Foreign Judgments); RESTATEMENT OF THE LAW

(SECOND) CONFLICTS OF LAW 2d  § 98 (1971) (Recognition of Foreign Judgments).

Under federal law, the recognition of foreign judgments and proceedings is governed by

principles of comity, which has a long and respected tradition within our legal  system.

See Hilton, 159 U.S. at 164.  Commenting in 1895 on the importance of affording foreign

judgments high regard, the Supreme Court explained that comity

is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

Id. at 163-64.

Comity, accordingly, will be granted to the decision or judgment of a foreign court if it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated. See e.g. id. at 202-03; Cunard Steamship Co., 773 F. 2d at 457. The importance of extending comity whenever these prerequisites have been met has only increased as our economy has become increasingly global and dependent upon international commerce. See Rapture Shipping Ltd., v. Allaround Fuel Trading B.V., et. al., 2004 AMC 796 (S.D.N.Y. 2004). Affording foreign courts a measure of deference brings a degree of predictability to international commerce that is critical to a smooth functioning of business. See id. at 800 (citing Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1362-63 (2 Cir. 1993)). Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect. See Somportex, 453 F.2d at 440.

The facts and holding of the court in Zorgias v. S.S.Hellenic Star et al., 487 F. 2d 519 (5th Cir. 1974), a case brought by two Greek citizens claiming damages under the Jones Act and for unseaworthiness, are instructive here. In Zorgias, the Fifth Circuit affirmed the district court's ruling that a settlement agreement approved by the Greek court was a binding judgment to which res judicata consequences should be afforded. In

reliance on Federal Rule of Civil Procedure 44.1 and an Affidavit of a competent

professor,[5] the court affirmed that 1) the judicial record of the compromise agreement

was made before a court which had jurisdiction over the dispute and was competent to

approve the agreement; 2) the compromise agreement had the force of a valid contract,

and with the Court's approval, the force of a judicial decision; and 3) it ought to be given

effect in the United States either as a contract or as a judicial decision. See Zorgias, 487

F. 2d at 592.

> Thus, as between the suits in Greece and the present action, there is identity
> of the tort complained of, and of the parties to the litigation. This Court
> owes comity to a validly entered judgment of a foreign court where the
> proceedings were fair and regular, and where that foreign court was an
> appropriate forum to adjudicate the dispute presented to it.

Id. at 593. The court, accordingly, affirmed the dismissal of the action. Id.

A similar conclusion was reached in Rapture Shipping Ltd., v. Allround Fuel

Trading B.V., et. al., 2004 AMC 796 (S.D.N.Y. 2004). In that case, the court recognized

the dismissal entered by a Rotterdam court (based on an arbitration clause) of a ship's

suit in contract and tort against a fuel supplier for defective fuel and found that the

principles of comity barred the ship's suit for product liability, negligence and fraud

brought in the United States. Rapture Shipping, 2004 AMC at 796. The court

acknowledged that "[t]he concept of comity has a long and respected tradition within our

legal system." Id. at 799. Because the ship's claims were based on the "same incident"

pursued in the Rotterdam action and the dispute was "quintessentially one involving

---

[5] The affiant held a diploma in law from the University of Thessalonika, Greece, and had been admitted to that Bar, and maintained an office in that city. Id.

international commerce," the court sided with the strong presumption in favor of honoring the Rotterdam Court's determination that the matter was to be decided in arbitration. Id. at 799-800. "Not only would upsetting the Rotterdam Court's decision risk inconsistency into the judicial process, it would risk injecting the type of inconsistency into international commerce that comity is designed to avoid." Id. at 802.

In the present action, this Court too owes comity to the prior proceeding in the Philippines, and Mrs. Gonzales' acceptance of $51,000 in satisfaction of her claim, as a bar to her ability to recover (again) in the U.S. The law of the Philippines applied to the employment of Juan Gonzales and to his employment contract. That employment contract, of course, is the basis for the claim by Mrs. Gonzales that Juan Gonzales was a Jones Act seaman, as well as the basis for the legal proceedings which Mr. Gonzales has already pursued to a judgment in the Philippines. The instant action arises out of the same incident which founded the suit in the Philippines, the death of Mr. Gonzales, and involves the same parties.[6] A final judgment on this issue has been rendered in the Philippines. Simply stated, Mrs. Gonzales exhausted her sole legal remedy by seeking, and receiving, compensation under the Philippine National Labor Relations Commission.

---

[6] Eurocarriers, although not a named defendant in the Philippines, is in privity with Eternity as to share in its res judicata defense. As managing agent and operator of the M/V LEON I, owner pro hac vice, and indemnitee, Eurocarriers represents the same legal being as Eternity; there is only a single claim against both parties. Where the relations between two parties are analogous to principal and agent, or that of indemnitor and indemnitee, a judgment in favor or against either, in an action brought by a third party, rendered upon a ground equally applicable to both, is to be accepted as conclusive against the plaintiff's right of action against the other. See 18 A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 4463 (Res Judicata: Mutuality); § 4448-462 (Res Judicata: Parties Bound) (2d 2002); RESTATEMENT OF THE LAW (SECOND) JUDGMENTS, § 51 (Persons Having a Relationship in Which One is Vicariously Liable for Conduct of the Other) (1982); Kinsley v. Markovic, 333 F. 2d 684, 685 (4th Cir. 1964) (action against taxi cab driver dismissed on the principle of res judicata where plaintiff previously attempted to recover a judgment against taxicab company); see generally United States v. Manning Coal Corp., 977 F. 2d 117, 121 (4th Cir. 1992) (privity requirement of res judicata simply denotes a relationship between the party of record and the non-party close enough to render the latter bound by the prior litigation).

An examination of the record in the present case clearly establishes that there has already been a fair, full adjudication of Mrs. Gonzales' claim. As set forth in the attached Affidavit of Philippine lawyer Mr. Ruban T. Del Rosario, the nature and scope of the decision in the Philippines is clear. (A copy of the Affidavit of Ruben T. Del Rosario, and Curriculum Vitae, is attached hereto as Exhibit F). The Commission in the Philippines had proper jurisdiction over the parties and subject matter pursuant to the Contract of Employment and the Standard Terms and Conditions. See Exhibit F, at ¶ 2–5. Mr. Rosario confirms that such terms and conditions are fair and evenhanded. See id. He also verifies that the Philippine Nation Labor Relations Commission provides an adequate, competent, and independent forum, with original and exclusive jurisdiction over seamen's claims, including tort claims. See id. at ¶ 7- 10.    Indeed

> All money claims filed by Filipino overseas workers against their foreign employers, including those arising out of an employer- employee relationship or by virtue of any law or contract involving their overseas deployment (regardless of whether the same arose from contract or tort) shall be under the original and exclusive jurisdiction of the NLRC.

See id. at ¶ 10.

There is no reason to question the authority and competence of the Philippine decree. The proceeding was fair and regular, and there is nothing in the record to suggest otherwise. The final judgment, unless tainted by fraud or barred by the rules of comity, is entitled to full credit and effect. Hilton v. Guyot, 159 U.S. 113 (1895). Mrs. Gonzales cannot provide evidence to challenge the Philippine judgment, thus, the final decision of that court, under the rules of comity, should be enforced in the courts of the United States.

12

Furthermore, recognition of the Philippine decision would not be contrary or prejudicial to U.S. interests.[7]   In fact,  acknowledgment of Mrs. Gonzales' prior recovery in the Philippines is in harmony with U.S. policy that encourages our economy to become increasingly global and dependent upon international commerce.  See Rapture Shipping Ltd., 2004 AMC at 800.  More generally, American courts recognize that "Public policy dictates that there be an end of litigation; that those whose have contested an issue shall be bound by the result of the contest, and that matter once tried shall be considered forever settled."  Somportex, 453 F.2d at 441, fn. 9 (quoting Baldwin v. Iowa State Traveling Men's Ass'n, 238 U.S. 522 (1931)).  Mrs. Gonzales had her "day in court;" she cannot be permitted exploit the American judicial system when she has properly been compensated for her claims.

Limitation Plaintiffs anticipate that (in an effort to salvage her duplicative claim in this Court) Mrs. Gonzales will rely on the Philippine National Labor Relations Commission's appellate opinion to argue that it has already "ruled on this issue," holding that the court here can apply U.S. law to provide Mrs. Gonzales with an additional remedy.  See Claimant's Reply Memorandum in Support of her Motion to Strike, Docket at 52.  This, however, is not the holding of the Commission.  The Commission, instead, merely held that it did not have the authority to bar Mrs. Gonzales from instituting the suit here in the U.S.   See Exhibit F, at Exhibit 7.   Specifically, it stated:

---

[7] No argument exits that recognition of the Philippine judgment "tends clearly to injure the public health, the public morals, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel, is against public policy." Somportex, 453 F. 2d at 443.

> To institute is one thing, for the action to prosper is another . . . The foreign forum has the jurisdiction to determine whether the second suit before it will prosper or not given the fact that a suit is pending here before us. It is not for us to preempt the ruling of that foreign court.

See id. Thus, the Commission's opinion is not adverse to Limitation Plaintiffs' position, and it in no way effects this Court's ability, and duty, to recognize the Philippine judgment and dismiss Mrs. Gonzales' claim. Instead, the decision merely concludes that it is for the Court here to decide whether Mrs. Gonzales' claim "will prosper" in light of the suit in the Philippines.[8] As set forth above, U.S. courts consistently recognize such foreign proceedings and bar double recovery.

In sum, the recovery which Mrs. Gonzales has obtained in her action in the Philippines pursuant to the Philippine contract of employment and Philippine law is all that she is entitled to recover from Limitation Plaintiffs for the death of Juan Gonzales. As a matter of comity, this Court should recognize this foreign judgment and dismiss Mrs. Gonzales' Claim for Damages in its entirety.

### C. MRS. GONZALES' NON-PECUNIARY DAMAGE CLAIMS MUST BE DISMISSED BECAUSE THESE DAMAGES ARE NOT RECOVERABLE BY JONES ACT SEAMEN AGAINST THEIR EMPLOYER OR THIRD PARTIES

Even if the Court declines to recognize the judgment Mrs. Gonzales has recovered in the Philippines, and dismiss her claim in its entirety, Mrs. Gonzales' claims for non-pecuniary damages against Limitation Plaintiffs and Third Parties must be dismissed

---

[8] The Commission also declined to hold that its "original and exclusive jurisdiction" over claims arising out of the employment of overseas workers is intended to bind foreign courts; to do so would be "an act of interference or usurpation." See Exhibit F, at Exhibit 7. This conclusion, however, similarly does not affect this Court's ability to recognize the foreign decree.

because there is no recovery for these damages in a Jones Act wrongful death action or an action under general maritime law.  Mrs. Gonzales' Claim for Damages seeks general recovery for "all damages available to her."  See First Amended Claim for Damages, Docket at 31.  To the extent that her claim seeks recovery for loss of society, grief, and other emotional conditions or losses allegedly suffered by persons other than Mr. Gonzales himself,[9] it must be dismissed.

> 1. Non-Pecuniary Damages Are Not Recoverable as a Matter of Law by Jones Act Seamen Upon Any Claim Brought Under the Jones Act or General Maritime Law

The United States Supreme Court, in Miles v. Apex Marine Corporation, reviewed the application of non-pecuniary damages in Jones Act cases and in general maritime claims brought by Jones Act seamen or their estates.  See Miles v. Apex Marine Corporation, 498 U.S. 19, 32-33 (1990).  In denying the availability of non-pecuniary damages to a Jones Act seaman's general maritime claim for unseaworthiness, the Court stated:

> The Jones Act applies where a seaman has been killed as a result of negligence, and it limits recovery to pecuniary loss . . .  It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially-created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence.

Id. at 33.  Accordingly, damages arising out of wrongful death claims against a Jones

---

[9] In discovery,  Mrs. Gonzales appears only to claim economic and financial damages (see e.g. Exhibit E, at Interrogatory Answers Nos. 13, 14).

Act employer are limited to pecuniary damages and may not include loss of society[10] and consortium or punitive damages.  See Miles, 498 U.S. 19.   Courts of this Circuit have followed the Miles decision in cases involving Jones Act seamen.  See e.g.  Edward v. Jones, 1999 AMC 1078, 1078 (D. Md. 1999)(limit recovery to pecuniary damages);  In re Complaint of Goose Creek Trawlers, 972 F. Supp. 946, 1997 AMC 1546 (E.D.N.C. 1997) (seaman prevented from recovering non-pecuniary damages or damages for lost future wages).

The Miles restrictions on the damages a seaman may recover under the general maritime law are equally applicable when the defendant is other than a shipowner/employer.   In Miles the deceased seaman's mother brought an action against the vessel owner, charterer, and operator, only one of which could have been his employer (for Jones Act purposes) and only one of which could have been the shipowner (for general maritime law unseaworthiness purposes).   Nonetheless, the Supreme Court's holdings that under the general maritime law the mother could not recover for loss of society and that the decedent's estate could not recover for the decedent's lost future earnings applied to all three defendants.  See Miles, 498 U.S. at 37.  Subsequent courts have recognized that no distinction should be drawn between the damages a seafarer can recover from his employer or from a non-employer.   See e.g. In Carnival Cruise Lines v. Red Fox Indus., Inc., 813 F. Supp. 1185, 1187 (E.D. La. 1993) ("The uniformity sought by the Court in Miles is best served by a rule that denies loss of society damages as

---

[10] Loss of society includes love, affection, care, attention, companionship, comfort and protection of the decedent's family members.  See Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 587 (1974). Grief, bereavement, mental pain and suffering of the beneficiaries are also non-pecuniary anxiety, distress or damages. See id.

against a third-party manufacturer when they would be similarly denied against an employer."); In re Goose Creek Trawlers, Inc., 972 F. Supp. 946, 951 (E.D.N.C. 1997) ("nothing in the Supreme Court's reasoning in Miles suggests that the case turned upon the identity of the defendant"); Davis v. Bender Shipbuilding & Repair Co., 27 F.3d 426, 430 (9th Cir. 1994)(" Miles instructs the lower federal courts that a claim for lost future earnings is not available in connection with a maritime death for which Congress has already provided a remedy and has excluded such damages. The identity of the defendant is irrelevant to these considerations.").[11]

The decision of the United States Supreme Court in Miles v. Apex Marine is exactly on point with Mrs. Gonzales' claim for "injuries and damages" made in this litigation and therefore any claims for non-pecuniary damages against Petitioners and Third Parties[12] should be denied.

    2.   Third Party Claims For Indemnity And Contribution Arising From Mrs. Gonzales' Claim Must Be Dismissed To The Extent The Claims Request Indemnification For Damages Limitation Plaintiffs, As Jones Act Employer, Cannot Be Held Liable

In the event that the Court permits Mrs. Gonzales to pursue recovery for non-pecuniary damages from Third Parties, Limitation Plaintiffs cannot be held liable for

---

[11] Limitation Plaintiffs acknowledge that the Fourth Circuit has not yet addressed this issue, however, the decisions of these courts are based upon well-reasoned and persuasive analyses.

[12] Furthermore, there is no evidence of negligence on the part of ABS. The same is not true of Tate & Lyle, as to whom there will be evidence proffered at trial of negligence in the operation of their crane in the same hold as the M/V LEON I's crane, in violation of Tate & Lyle's own custom and practices and despite the warnings and protests of Tate & Lyle's own personnel.

indemnification or contribution of such damages. [13]

In <u>Simeon v. T. Smith & Son, Inc</u>., 852 F. 2d 1421 (5th Cir. 1988), the Fifth Circuit discussed the impropriety of imposing liability on a joint tortfeasor by way of indemnity in the absence of some joint responsibility among the tortfeasors to the plaintiff. The court held that a joint tortfeasor who was also the Jones Act employer of the plaintiff (an injured seaman) could not be required to indemnify its co-defendant for the plaintiff's wife's loss of consortium claims because a Jones Act employer cannot be held liable for loss of consortium damages. <u>See</u> <u>Simeon</u>, 852 F. 2d. at 1433-34. The Fifth Circuit explained:

> The traditional view is that there can be no contribution between concurrent tort-feasors unless they share a "common legal liability" toward the plaintiff. F. Harper, F. James, O. Gray, 3 *The Law of Torts* § 10.2 at 46 (2d ed. 1986); W. Prosser & P. Keeton, *supra* §50 at 339-40. The contribution action arises from the original obligation that the party cast in contribution owed to the plaintiff. "if there was never any such liability, as where the contribution defendant has the defense of family immunity, assumption of risk, or the application of an automobile guest statute, or the substitution of workers' compensation for common law liability, then there is no liability for contribution." W. Prosser & P. Keeton, *supra* §50 at 339-40.

<u>Id</u>. at 1434; <u>see</u> <u>also</u> <u>United States of America v. Barringer</u>, 712 F. 2d 60, 64 (4th Cir. 1983) ("No tortfeasor can be required to make contribution beyond his own equitable share of liability.") (<u>citing</u> RESTATEMENT (SECOND) OF TORTS, 886A(2)(1979)); <u>Mahone v. McGraw-Edison Co</u>., 281 F. Supp. 582, 584 (E.D. Va. 1968) ("The right of

---

[13] As stated above, ABS has filed a Cross-Claim against Limitation Plaintiffs for full contribution and indemnity for any damages Mrs. Gonzales is entitled to recover from ABS for her losses. <u>See</u> Cross-Claim Against Limitation Plaintiffs, Docket at 37. The owners of the Domino Sugar Pier, Tate & Lyle, apparently have not filed a cross claim for indemnity or contribution against Limitation Plaintiffs, however, any such claim would be limited in the same manner.

contribution, however, is withheld against a joint tort feasor who cannot in law be forced to answer to a plaintiff for his alleged negligence. . . The same principle has been held to apply to claims of indemnity.").

The law of torts is clear with respect to contribution and indemnity among joint tort feasors. To the extent that Mrs. Gonzales is entitled to recover damages from Third Parties for her losses, any permissible indemnity and/or contribution owed by Limitation Plaintiffs must be limited to their share of the liability. Simply stated, if Limitation Plaintiffs are not liable to Mrs. Gonzales for certain damages, they cannot be liable for contribution or indemnity either.

### III.   CONCLUSION

For all the above reasons, Limitation Plaintiffs respectfully request the Court grant their Motion for Summary Judgment in its entirety.

_____/s/_____
M. Hamilton Whitman, Jr., Trial Bar No.: 00373
Carla N. Bailey, Trial Bar No.: 26367
Ober, Kaler, Grimes & Shriver
A Professional Corporation
120 E. Baltimore Street
Baltimore, Maryland 21202
(410) 685-1120

Attorneys for Eternity Shipping, Ltd. and
Eurocarriers, S.A.