## MANAGEMENT AGREEMENT

This agreement is made this 18th day of June, 1999.

BY AND BETWEEN

ETERNITY SHIPPING LTD., a company incorporated under the laws of the Republic of Malta with its registered office at 146/1 St. Lucia Street, Valletta, Malta (hereinafter called the "Owner") of the one part.

and EUROCARRIERS S.A., a corporation incorporated under the laws of the Republic of Liberia with its registered office at 80, Broad Street, Monrovia, Liberia (hereinafter called the "Manager") of the other part.

Whereas the Owner is the owner of the good vessel "LEON I" registered in the ownership of the owner in the Registry of Valletta, Malta and documented under the laws of the Republic of Malta (hereinafter called the "Vessel").

It has been agreed between the Owner and the Manager that for the period and subject to the terms and conditions hereinafter expressed and contained, the Manager with its agency arrangements shall be and is hereby appointed to act as Manager and operate the Vessel in consideration of a management fee as specified in Clause 10 hereof.

NOW, THEREFORE, IT IS HEREBY MUTUALLY AGREED BY AND BETWEEN
THE PARTIES HERETO AS FOLLOWS:

1. The Owner appoints the Manager and the Manager hereby agrees to act as Manager of the Vessel and in that capacity and subject as hereinafter provided, the Manager shall have and has been entrusted with the sole and exclusive management of the Vessel.

2. The Manager undertakes to use his best endeavour to act and do at Owners expense all and/or any of the following acts or things in the name and/or on behalf of the Owner in all parts of the world directly or through his agents as managing agent and operator of the Vessel all in accordance with sound and reasonable ship management practice and such management shall include inter alia:

    (a) The appointment of agents for the Vessel in all parts of the world, utilising Charterers agents when economically / logistically viable.

    (b) The manning of the Vessel and engaging master officers and crew best qualified available hereof in accordance with the requirements of the Vessel and according to the conditions currently applying to seagoing personnel, including supervision, payment and insurance at Owner's expense of all employed on board;

EC000358

(c) The bunkering and providing the Vessel with provisions, stores, victuals, spare parts, e.t.c. The Owner shall have the full advantage of any existing or future contracts and discounts that the Manager can obtain for purchases, insurance, supplies, services e.t.c.

(d) The effecting of charters either on voyage, bareboat, time-charter basis and/or entering into agreement on behalf of the Owner for the employment or the sale and purchase subject to Owners approval of the Vessel, on the basis all such agreements are the most favourable commercial options open to the Vessel at the time.

All chartering and S+P brokerage commissions will be born by the Owner.

(e) Carrying out extensive repairs of damages caused to the Vessel by accidents, wear and tear or by advent of risks and repairs relating to the periodical surveys of the Vessel for the maintenance of her classification and also arranging and supervising Vessel's drydockings. The Manager is also authorised to carry out repairs when same are needed, in order to maintain the Vessel in a seaworthy, safe and operational condition, provided all the above are within the annual budget, unforeseen accidental circumstances exempted.

(f) Maintaining at the expense of the Owner all equipment necessary for the full and efficient operation of the vessel, providing the above are within the annual budget unforeseen accidental circumstances exempted.

(g) Collecting (always in the name of the Owner) freight, hire earnings, insurance indemnities and monies to which the Owner is entitled in respect of the Vessel and defending, compromising, submitting to arbitration and suing before all courts in all countries of the world in respect of matters relating to the Vessel; All Legal and Adjusters expenses will be born by the Owner.

All such monies shall be paid by direct remittance from the payee in accounts with Banks in the name of the Owners;

(h) Acting in all respects (save to the extent excepted by virtue hereof) as manager and operator of the Vessel and in all other Owner's matters in all parts of the world and signing agreements and contracts relating thereto;

(i) Protecting the Owner's interests with respect to all liens, penalties and claims involving third parties including master, officers and crew of the Vessel;

(j) The insuring and effecting insurance covers on the Vessel, and the entering of the Vessel in a Protection and Indemnity Association as well as Defence Association. Also to effect Hull and Machinery, War Risks

2

insurance for the Vessel and all necessary coverage for the Vessel. All to be passed on at cost to the Owner;

(k) Keeping constant control and maintaining the validity of all Vessel's certificates. Supervising and controlling the Vessel's technical standards and appointing surveyors whenever necessary in the interest and expense of the Owner.

3. All monies necessarily expended by the Manager in the fulfilment of any of its obligations under this agreement in respect of the maintenance and operation of the Vessel save such expenses as are referred to in Clause 11 hereof shall be reimbursed by the Owner to the Manager.

4. To contest and to adjust, compromise or settle any claims made by or against the Owner and to refer disputes to arbitration on such terms and in such manner as the Manager shall think fit and advisable.

5. To institute proceedings in the name and on behalf of the Owner and to apply for, accept and appeal against judgements or arbitration awards of any court or arbitrator or competent tribunal of any degree and jurisdiction in any country of the world and to exercise all remedies as may be available to the Owner.

6. The Manager will not do any act or voluntarily permit or suffer any act to be done whereby any insurance placed on or in respect of the Vessel shall or may be suspended, impaired or defeated.

7. The Manager shall maintain financial records, technical reports and accounts including all vouchers relating to the operation of the Vessel. The above records shall be open to inspection at any time by the Owner or his auditors.

Furthermore, the Manager shall prepare and submit to the Owner annual financial statements within One Hundred and Twenty (120) days from the close of the fiscal year of the Vessel, showing in detail the results of the operation of the Vessel. The Manager shall, at Owner's request and expense, appoint auditors to check the accounts at the end of each year and produce consolidated financial statements.

8. The Manager shall take any such additional action and shall fulfil any obligation of the Owner in respect of the Vessel under the terms and conditions and exceptions of any governing Charter Party or otherwise to facilitate the operation and maintenance of the Vessel.

9. The Owner shall immediately and upon demand indemnify and hold harmless the Manager against any lien, penalty or claim of whatsoever nature on or in respect of the Vessel or against the Manager, whether founded or unfounded, provided that such lien, penalty or claim shall have arisen from the use and operation of the Vessel.

10. The Manager shall receive as remuneration for its services under this agreement a fee amounting to US$ 370 per day.

EC000360

11. The Manager shall at its own expense provide all necessary offices, pay for all stationary, printing, postages, telephone, telex, fax and all other usual office expenses incurred by it as Manager in or about the business of the Management of the Vessel.

    Telegrams, cables and wireless messages as well as travel expenses for the Manager's personnel and superintendents directly incurred in connection with the operation, maintenance and repair of the Vessel shall be for the Owner's account and billed to the cost of operation.

12. If the Manager shall, by any act or omission be in serious breach of this agreement, the Owner may terminate this Agreement by giving three months written notice thereof to the Manager. The Owner may also terminate this agreement by giving three months notice to the Manager if the Vessel:

    1. Becomes a total or constructive total loss.
    2. Is sold.

    In these cases the Owner shall reimburse the Manager for all reasonable losses and expenses incurred and arising directly out of such termination.

13. Subject as aforesaid, this Agreement shall remain in force from the date of the appointment of the Manager as specified in Clause No. 12 hereof until 31 December 2000 being renewable yearly thereafter. Any proposed changes should be notified within 6 months from expiry date for both parties to agree.

14. This Agreement shall be deemed to be a contract according to English law and shall in all respects be construed and interpreted and be enforceable according to English law.

15. In case any dispute or difference shall arise between the Owner and the Manager in connection with the interpretation and fulfilment of this contract, such dispute or difference shall be referred to one arbitrator in London to be jointly appointed by the Owner and the Manager.

IN WITNESS WHEREOF the parties hereto have executed this Agreement the day and year first above written.

THE OWNER                                   THE MANAGER

**EC000361**