**Republic of the Philippines**
**Department of Labor and Employment**
**NATIONAL LABOR RELATIONS COMMISSION**
Sub-Regional Arbitration Branch VI
Iloilo City

JOSEFINA M. GONZALES,
      Complainant,

      - versus -                          SRAB NLRC CASE NO.
                                          OFW (M) 01-03-0014

BRIGHT MARITIME CORPORATION
and ETERNITY SHIPPING LTD.,
      Respondents.
X - - - - - - - - - - - - - - - - - - - - - X

# DECISION

This is a case filed by Josefina M. Gonzales, mother of the deceased OFW Juan M. Gonzales, Jr., on March 16, 2001 against Bright Maritime Corporation and Eternity Shipping Ltd. for money claims, interests and attorney's fees.

On April 25, 2001, Bright Maritime Corporation, filed a MANIFESTATION AND MOTION TO SUBSTITUTE PARTY RESPONDENT dated April 16, 2001, on ground that on September 28, 2000, the vessel MV LEON 1 was transferred to the new manning agent, Crew Care Incorporated, and that it has executed an Affidavit of Assumption of Responsibility, dated September 25, 2000, pursuant to POEA rules and regulations regarding transfer of accreditation of vessel, assuming full responsibility for all the contractual obligations to the seafarers originally recruited and



EXHIBIT
7

DEC 29 2003 10:55 AM 00250-PBE Laser Document 74-6    Filed 10/06/2004    Page 2 of 20    P.26
26/05 '03 MON 22:00 FAX                    DIVANI APULLON PALACE

24-SEP-2001 16:32   FROM:BRIGHT MARITIME CORP 4293063          TO:9659760          P:2

processed by Bright Maritime Corporation for the vessel MV LEON 1 (Annex "A").

No settlement having been reached after two (2) mandatory conferences, the parties were directed to submit their respective position paper within thirty (30) days from April 26, 2001.

Complainant in her Position Paper alleged that on 14 January 2000, respondent Bright Maritime Corporation, acting as agent for and in behalf of Eternity Shipping Limited, represented by its President, Desiree P. Tenorio, entered into a Contract of Employment (Annex "A") with Juan N. Gonzales, Jr. which provided among others, that Juan M. Gonzales, Jr. will be assigned as AB of vessel MV Leon 1 for a period of nine (9) months plus three (3) months, if both parties consent.

On July 29, 2000, while Juan M. Gonzales, Jr. was working on board the vessel MV Leon 1 and in the course of the performance of his functions as AB, he met an accident which caused him severe injuries that resulted to his immediate death (Annex "B").

It is provided in the Standard Employment Contract (SEC) for Seafarers, that the compensation benefits to be given in case of death of a seafarer which are payable to his beneficiaries are based on the following schedule:

|  |  |  |
|---|---|---|
| In case of Death | : | US $50,000.00 |
| Additional amount to each child under 21 years old but limited to only four (4) children | : | 7,000.00 |
| Where death is caused by warlike activity while sailing within the declared war zone or war risk areas. | : | Double Compensation |
| For burial expenses at the exchange rate prevailing, during the time of payment | : | 1,000.00 |

Since Juan M. Gonzales, Jr., was not married and had no legitimate, legitimated or illegitimate children, the complainant as the sole beneficiary, is entitled to compensation benefits in the total amount of FIFTY ONE THOUSAND U.S. DOLLARS ($51,000.00), broken down as follows:

|  |  |  |
|---|---|---|
| Death | : | US$50,000.00 |
| Burial | : | 1,000.00 |
| TOTAL | : | US$51,000.00 |

Respondents, through their respective representatives have offered to the complainant the amount of SIXTY THOUSAND U.S. DOLLARS (US$60,000.00) as compensation benefits the latter is entitled to with regards to the death of Mr. Gonzales. The offer the respondent appears to be higher than that being provided by law, however, the respondents were requiring the complainant to execute a general waiver and quitclaim in their favor.    UN

4

Because the complainant did not want to waive her rights to initiate any possible legal action against persons or corporations who might be held liable for the death of her son based on laws of foreign countries, the payment of compensation benefits offered by the respondents was withheld and/or withdrawn,

Complainant has made it very clear that all she wanted to get from the respondents is the amount equivalent to FIFTY ONE THOUSAND U.S. DOLLARS ($51,000.00) since this amount represents the entitlement of the complainant to the compensation benefits provided under the Standard Employment Contract (SEC) for Seafarers.

For the refusal of the respondents to pay the amount of FIFTY ONE THOUSAND U.S. DOLLARS ($51,000.00) unless the complainant sign a general waiver, the latter through her counsel and attorney-in-fact demanded from the respondents payment of the stated amount but despite several letters made and received by the respondents, the latter refused to pay the amount demanded.

Complainant argues that her entitlement to the compensation and benefits as the sole heir and beneficiary of Juan M. Gonzales, Jr., based on the Standard Employment Contract (SEC) is very clear under the law and is not subjected to any other terms and conditions because the law does not subject the

5

entitlement of the complainant to certain conditions; that the demand of respondents that she should first sign a general waiver and quitclaim before the amount claimed could be released has no basis in fact and in law as she is clearly entitled to the FIFTY-ONE THOUSAND U.S. DOLLARS ($51,000.00) without waiving her right to file a separate action for damages based on tort in the foreign country and with the foreign law and procedure as the bases for such action.

Complainant further argues that the transfer of the vessel MV Leon 1 to the new manning agent, Crew Care, Inc. is not proper and not a valid ground for the substitution of party respondent, as the Employment Contract of the victim, Juan Gonzales, Jr., shows that his employers were Bright Maritime Corporation and Eternity Shipping Ltd., and that when he died on July 29, 2000 his contract of employment with the latter two corporations was still valid and existing; that the Affidavit of Assumption of Responsibility would be binding only between Crew Care, Inc. and Bright Maritime Corporation but not to complainant, who was not even privy to the agreement between the two (2) manning agencies; that the corporations liable to her due to the death of her son are Bright Maritime Corporation, and Eternity Shipping Ltd. and not Crew Care, Inc.

Respondent Crew Care, Inc., in its position paper, describes the claim for contractual benefit of complainant as unusual. Unusual in the sense that, complainant herself admitted in her Complaint that respondents' predecessors-in-interest (hereafter likewise referred to as respondents) have promptly and previously tendered payment of U.S. $50,000.00 to complainant under the POEA Contract plus an *ex gratia* payment of U.S. $10,000.00 as consideration for her not to file any other claim.

However, complainant rejected this payment due to her intention to file a separate case for damages in the United States against the same respondents. And this, in spite of respondents' willingness to negotiate further regarding the amount that would be acceptable to both parties.

Complainant thereafter filed a suit for damages in the United States against respondents as well as third parties simultaneously with the filing of the instant case for contractual benefits against respondents, such that respondents are faced with two suits -- here and abroad for the same cause -- the death of complainant's son, thus forcing the respondents to inconveniently litigate complainant's claim in two jurisdictions in spite of their evident good faith in trying to negotiate for an amicable settlement in the Philippines where complainant resides, and where her son was

contracted to work by the respondent manning agency who likewise holds office in the Philippines.

It was on 14 January 2000, that Juan M. Gonzales, Jr. applied for, and was accepted to work as A.B. on board the vessel "MV Leon 1" for a nine-month period by respondent Bright Maritime Corporation, for and in behalf of its principal, Eternity Shipping Ltd. The terms and conditions of his employment is embodied in a POEA-approved contract signed by the parties on June 12, 2000 (Annex "1").

On 29 July 2000, at about 9 A. M., Juan M. Gonzales, Jr., together with another crewmember, was standing on a platform to clean the hatch coaming of the vessel. The platform was held up by one of the ship's crane. Suddenly, the crane collapsed and both men fell down, causing their death (Annex "2").

After Mr. Gonzales's remains were repatriated to the Philippines, respondents initiated talks with complainant regarding compensation due to the death of her son.

On 25 September 2000, respondents, through counsel, came to Iloilo and tendered the amount of U. S. $60,000.00 or its peso equivalent to complainant who refused the same. Negotiations then continued with respondents asking whether complainant has any counter-offer.

1

Respondents were surprised to find out that complainant has filed a suit for damages in Maryland, USA, and a suit for payment of contractual benefits before the NLRC, in Iloilo City.

During the mandatory conferences before the Labor Arbiter, respondents manifested their prompt offer to settle the claim which complainant rejected. Meanwhile, complainant confirmed the existence of the two suits before different jurisdictions against respondents for the same death of complainant's son.

Complainant, after receiving her copy of respondent Crew Care's position paper, filed her Reply (With Motion to Expunge the Respondents' Position Paper From the Records) dated June 25, 2001, questioning the personality of Crew Care, as she alleged that the Position Paper filed by Crew Care was not for and in behalf of the respondents named herein, but for itself and verified by Gloria Aimodiel, General Manager of Crew Care, Inc., so that whatever allegations and admissions made through her company's position paper cannot bind the parties in this case, hence, it should be expunged from the records. It is complainant's position that since respondents have not filed their position paper within the prescribed period, judgment may be rendered based on the evidence submitted by her.

Crew Care, Inc. and Eurocarriers SA, in substitution for respondents Bright Maritime Corporation and Eternity Shipping

ft/

0

Ltd. by virtue of the Affidavit of Assumption of Responsibility filed before this Office on April 21, 2001, likewise filed a Reply to complainant's Position Paper, dated 22 June 2001.

They argue that complainant should be directed to acknowledge that after receiving the amount of U.S. $50,000.00, she is no longer entitled to further compensation for the death of her son, in accordance with the policy against double recovery, multiplicity of suits and forum shopping and that complainant's simultaneous filing of a suit abroad and in the Philippines violates the prohibition against double recovery/compensation; that all of complainant's claims against respondents, including her claim for damages, should be brought before the NLRC, in accordance with the express provision of the Migrant Workers and Overseas Filipino Act of 1995; that complainant has already been paid part of the death benefits she is claiming, as evidenced by a check voucher and a credit memo issued by a bank; and lastly, that complainant is not entitled to attorney's fees as she has not shown any factual, legal and equitable basis to warrant the grant thereof, and that contrary to this, complainant even admitted the good faith of respondents in trying to bring her claim to an amicable conclusion.

On 03 July 2001 this Office received a Notice of Entry of Appearance and an Urgent Motion for Extension of Time To File

ic

Reply both dated 23 June 2001, filed by Nolasco & Uyengco Law Office as counsel for respondents Bright Maritime Corporation and Eternity Shipping Ltd.

On 12 July 2001, the Reply [To Complainant's Position Paper] dated 2 July 2001 filed by Bright Maritime Corporation and Eternity Shipping Ltd. was received by this Office. They adopted by reference the arguments and discussions raised by respondents Crew Care, Inc. and Eurocarriers S.A. in their Position Paper dated 28 May 2001, and in the subsequent pleadings that in may file. In addition thereto, they advanced additional arguments in reply to complainant's Position Paper: that complainant's Position Paper was not verified by complainant herself but by one Josie O. Nava who claims to be the attorney-in-fact of complainant but has not presented any proof which will substantiate her claim that she indeed is the attorney-in-fact of the complainant, hence, the same is nothing more than a mere scrap of paper; that the burial allowance of US$ 1,000.00 has already been paid to the heirs of Juan Gonzales way back in August 2000, by depositing the same to the account of Julie Supremo (the seaman's allottee) with Far East Bank (Acct. No. 0186-30861-2), (Annexes "A" to "A-3"); that respondents Bright Maritime Corporation and Eternity Shipping should already be dropped from the instant case, and properly substituted by respondents Crew Care, Inc., and Eurocarriers SA,

as they have already executed a valid Affidavit of Assumption of Responsibility wherein they stated under oath its willingness "to assume full and complete responsibility for all the contractual obligations; to its seafarers originally recruited and processed by Bright Maritime Corp. for the vessels: M/V Theano K; M/V Mike; M/V Alexia; and M/V Leon I", and that they have VOLUNTARILY submitted to the jurisdiction of the NLRC as respondents.

On 18 July 2001, this Office received complainant's Motion to Expunge Respondents' Reply (dated July 2, 2001 of Bright Maritime Corporation & Eternity Shipping Ltd.) of even date, on the ground that respondents failed to file their position paper within thirty (30) days counted from April 6, 2001 as agreed by the parties, hence, they have nothing to supplement and the filing of their reply was not proper. It is, therefore, the contention of complainant that respondents can be declared to have waived their rights to file position paper or maybe stopped from introducing arguments and evidence when they failed to do so within the reasonable period given and the failure of the respondents to file position paper and adduce evidence cannot be cured by filing a reply to the complainant's position paper.

On the one hand, Respondent Crew Care, Inc. and Eurocarriers SA, in substitution for respondents Bright Maritime Corp. and Eternity Shipping Ltd. filed a Rejoinder dated 16 July

12

2001 to complainant's Reply, which was received by the Office on 26 July 2001. They reiterated their manifestation that respondent Crew Care is a real party in interest in the case at bar, by virtue of the affidavit of Assumption of Responsibility. Thus, the pleadings it filed should properly remain in the records of the case.

It argued further that contrary to complainant's assertion, the matter of jurisdiction is still at issue, as complainant merely agrees that the labor Arbiter has jurisdiction to rule on complainant's entitlement under the POEA Contract while asserting that the Labor Arbiter has no jurisdiction over complainant's other claims against her son's employer/manning agency; that while the tort case against the same respondents has already been lodged before a US court, this sole fact cannot deprive the Labor Arbiter of its "exclusive jurisdiction" to rule upon complainant's claim for damages "notwithstanding any provision of law to the contrary" (Sec. 10, Migrant Workers' Act), as jurisdiction is granted by law and is not subject to the agreement of the parties, much less, to the whims of just one party.

Respondents posit further that complainant should exclude from her claims the US$1,000.00 burial benefit as the same has already been paid; and lastly, that complainant's claim for attorney's fees is not only unwarranted as she has not shown any factual, legal, and equitable basis for its grant, and by claiming

13

such, she also implicitly recognizes that the Labor Arbiter is without any jurisdiction to rule on the claim for other damages which is an inconsistent position, and smacks of forum shopping and splitting a cause of action.

On the other hand, respondents Bright Maritime Corporation and Eternity Shipping Ltd., filed their OPPOSITION (To Complainant's Motion to Expunge Respondents' Reply And To Complainant's Motion to Expunge Respondents' Position Paper) WITH REJOINDER dated 8 August 2001 and received by this Office on 17 August 2001, adopting as their own the arguments raised by respondents Crew Care, Inc. and Eurocarriers SA in their Rejoinder dated 16 July 2001.

In addition thereto, Bright Maritime Corporation and Eternity Shipping, Ltd., stress that they should already be discharged as respondents in the instant case by the virtue of the valid assumption and Responsibility executed by respondent Crew Care, Inc. in favor of respondent Bright Maritime Corp., as Crew Care, Inc. and Eurocarriers have more than shown their willingness to assume herein respondents' liability for the complainant by their voluntary appearance and participation in the proceedings of the instant case, and have time and again, maintained that they are substituting respondent Bright Maritime Corporation and Eternity

Shipping for the instant case. Hence, they should be dropped as respondents in this case.

With respect to the issue of jurisdiction, they maintain that the NLRC has EXCLUSIVE jurisdiction, vested specifically by the Migrant Workers' Act, over all the claims that the complainant has against the respondents, whether they be "contractual" or for damages. If complainant is claiming for more than what is provided under the POEA Contract by way of damages, then her entitlement to the same should likewise be tried by the NLRC.

However, complainant is entitled only to the death benefits provided for in the POEA Contract, which is a form of liquidated damages designed to serve as payment in totality, including those for damages, and to nothing more. Its very nature thus prevents the parties to the contract from making any additional claims over and above those provided in said contract. Hence, complainant should not be allowed to make any claims over and above the death benefits of US$50,000.00 as mandated by the POEA Contract, since such additional claims will go against the very nature of the death benefits as a form of liquidated damages.

Respondents stress that they have repeatedly offered the payment of the death benefits of US$50,000.00 in exchange for a complete and full release in favor of the respondents, which was refused by complainant in the mistaken belief that she can make

/A.

additional claims for damages and tort, as the death benefits of US$50,000.00 is the total amount that the complainant is entitled legally entitled to, inclusive of damages.

We find to the complainant.

We are in one accord with the complainant that the liability for the death of Juan M. Gonzales, Jr. should remain with Bright Maritime Corporation and Eternity Shipping Ltd.

In spite of the execution of an affidavit of Assumption of responsibility by Crew Care, Inc. in favor of Bright Maritime Corporation, the fact remains that Juan M. Gonzales, Jr. met his untimely death on 29 July 2000 while in the performance of his function on board MV LEON I, his Contract of Employment then, was with Bright Maritime Corporation. Crew Care, Inc. was not a party of the contract. It came into the picture at a much later date, about two (2) months after the accident, hence, when Crew Care, Inc. executed an Affidavit of Assumption of Responsibility on 25 September 2000 there was no more contract of employment to speak of.

As clearly borne out by the records, the Affidavit of Assumption of Responsibility appears to have been hastily drawn for a purpose. It appears to be a ploy hatched between the two manning agencies to free the former from further liabilities. The Affidavit of Assumption of Responsibility was executed on 25

18

September 2000, which is also the same date when representatives of respondents came over to Iloilo to offer to the deceased seaman's mother, the herein complainant, Josefina M. Gonzales, the amount of US$60,000.00 as compensation benefits (Position Paper, Respondents, p. 4, par. 1; Manifestation and Motion to Substitute Party Respondent, Annex A "A").

The Amount of US$60,000.00 offered, was US$10,000.00 over and above that of the US$50,000.00 due the complainant as death benefits since at the time the offer was made, US$1,000.00 for burial expenses was already paid on 16 August 2000 to the bank account of the deceased seaman's sister, Julie Supremo, the registered allottee. (Annexes "1-3", Reply of Crew Care, Inc., June 27, 2001).

The offer of the extra US$10,000.00 was not by fostered by pure benevolence on the part of the respondent, although at first glance it would seem so, for it was offered with strings attached. The additional amount was an enticement to complainant to execute a general waiver and quitclaim in favor of respondents. And when she refused to do so, payment of compensation benefits was totally withheld or withdrawn from her.

Payment of compensation benefits for the death of a seaman is not subject to any terms or conditions. In "Seagull Ship Management and Transport, Inc., and Dominion Insurance

DEC 29 2003 4:01PM   HP LASERJET 3200
26/08 '03 MON 22:06 FAX        DIVANI APOLLON PALACE

24-SEP-2001 16:24  FROM:BRIGHT MARITIME CORP 4293093        TO:9659780        P:13

17

Corporation versus NLRC and Benjamin T. Tuazon," G.R. No. 123619, promulgated on 8 June 2000, the Supreme Court ruled:

"It will be noted that the claim for sickness and permanent disability benefits of the private respondent arose from the stipulation on the standard format of employment between him and petitioner Seagull per Circular No. 2, Series of 1984 of POEA. This circular was intended for all parties involved in the employment of Filipino seamen on board any ocean-going vessel. Significantly, under the contract, **compensability of the illness or death of seamen need not depend on whether the illness was work connected or not. It is sufficient that the illness occurred during the term of the employment contract".**

"Even assuming that the ailment of the worker was contracted prior to his employment, still would not deprive him of compensation, that the employee must have been in perfect health at the time he contracted the disease. For what matters is that his work had contributed, even in a small degree, to the development of the disease and in bringing about his eventual death. Neither is it necessary, in order to recover compensation, that the employee must have been in perfect health at the time he contracted the disease. A worker brings with him possible infirmities in the course of his employment, and while the

DEC 29 2003 4:02PM   HP LASERJET 3200                                        P.42
28/05 '03 MON 22:05 FAX        DIVANI APOLLON PALACE                        ☒019
24-SEP-2001 16:24  FROM:BRIGHT MARITIME CORP 4293063        TO:9659780      P:14

employer is not the insurer of the health of the employees, he takes them as he finds them and assumes the risk of liability. If the disease is the proximate cause of the employee's death for which compensation is sought, the previous physical condition of the employee is unimportant, and recovery may be had for said death, independently of pre-existing disease."

This ruling can be applied corollarily to the instant case. More so, where the death of an able-bodied seaman occurred while in the performance of his duties or functions, caused by an accident, which could have been avoided or averted if there was proper maintenance and supervision of respondents' vessel.

Complainant's entitlement to the compensation benefits vested and accrued upon the death of her son. The amount of US$50,000.00 should have been immediately and unconditionally released to her. But such was not the case. In spite of the repeated demands, respondents remained adamant in their refusal. Complainant had no other recourse but to file the instant case for the collection of said compensation benefits.

Respondents are now crying foul, charging complainant of having violated the provisions against forum shopping, double recovery/compensation, and multiplicity of suits.

Prior to the enactment of The Migrant Workers and Overseas Filipino Act of 1995, all money claims arising out of employer-

employee relationship by virtue of any law or contract involving Filipino workers for overseas deployment were lodged before the Philippine Overseas Employment Administration (POEA). Upon its effectivity on 15 July 1995, all unresolved money claims pending before the POEA were referred to the NLRC for disposition. Thus the proviso, "notwithstanding any provision of law to the contrary, the Labor Arbiters of the National Labor Relations Commission (NLRC) shall have the original and exclusive jurisdiction to hear and decide all claims arising out of employer-employee relationship or by virtue of any law or contract involving Filipino workers for overseas deployment including claims for actual, moral, exemplary and other forms of damages, subject to the rules and procedures of the NLRC."

This provision is found in Section X, Chapter II of The Migrant Workers and Overseas Filipinos Act of 1995 which is on ILLEGAL RECRUITMENT. Thus, the complaint filed by the diseased seaman's mother, for torts and damages in foreign jurisdiction is not proscribe by the provision relied upon by respondents. Definitely, there is no employer-employee relationship between herein complainant and herein respondents, hence, there is no illegal recruitment *per se*. All that the complainant is asking for is the payment of compensation benefits

DEC 29 2003 4:03PM    HP LASERJET 3200

10

as the compulsory heir of the deceased seaman that is withheld from her by respondents.

Wherefore, respondents are hereby ordered to pay complainant the compensation benefits due her in the amount of US$50,000.00 plus ten (10) percent of the total amount as attorneys fee, within ten (10) days from receipt hereof.

All other claims are hereby dismissed for lack of merit.

**SO ORDERED**

Iloilo City, Philippines, August 30, 2001

OSCAR S. UY
Executive Labor Arbiter

Oui/mb