UNITED STATES DISTRICT COURT        FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT §<br>OF ETERNITY SHIPPING, LTD. AND §<br>EUROCARRIERS, S.A., *in a cause for* §<br>*exoneration from or limitation of liability* § | CIVIL ACTION NO. L-01-250<br>Admiralty / Fed. R. Civ. P. 9(h) |

**CLAIMANT-JOSEFINA GONZALES' ANSWERS, RESPONSES & OBJECTIONS
TO PETITIONERS-ETERNITY SHIPPING, LTD., & -EUROCARRIERS, S.A.'S
INTERROGATORIES & REQUEST FOR PRODUCTION OF DOCUMENTS**

TO:   Petitioners, ETERNITY SHIPPING, LTD. & EUROCARRIERS, S.A., by and through their attorneys of record, M. Hamilton Whitman, Jr., John W. Sippel, Jr. and Eric M. Veit, OBER, KALER, GRIMES & SHRIVER, 120 E. Baltimore Street, Baltimore, Maryland 21202.

COMES NOW, Claimant-Josefina Gonzales and, pursuant to Federal Rules of Civil Procedure 33 & 34, and files these her Answers, Responses & Objections to Petitioners-Eternity Shipping, Ltd. & Eurocarriers, S.A.'s Interrogatories & Request for Production of Documents.

Respectfully submitted,

BRUNKENHOEFER & HALL, P.C.
711 N. Carancahua, Ste. 1000
American Bank Plaza
Corpus Christi, Texas 78475
Tel. (361) 888-6655
Fax (361) 888-5855

R. Blake Brunkenhoefer
State Bar No. 00783739
Fed. Bar No. 15559
Christopher H. Hall
State Bar No. 00793881
Fed. Bar No. 19536
*ATTORNEYS FOR CLAIMANT-Josefina Gonzales*

1

## **CERTIFICATE OF SERVICE**

I, R. Blake Brunkenhoefer, do hereby certify that a true and correct copy of the foregoing document was duly served, in the form and manner indicated, upon:

| | |
|---|---|
| M. Hamilton Whitman, Jr.<br>John W. Sippel, Jr.<br>Eric M. Veit<br>OBER, KALER, GRIMES<br>& SHRIVER, P.C.<br>120 E. Baltimore Street<br>Baltimore, Maryland 21202 | **CM/RRR # 7001 1940 0005 0599 5034** |
| James D. Skeen<br>WRIGHT, CONSTABLE<br>& SKEEN, L.L.P.<br>1 Charles Center, 16th Floor<br>100 N. Charles Street<br>Baltimore, Maryland 21201 | **CM/RRR # 7001 1940 0005 0599 5041** |
| Jeffrey J. Asperger<br>ASPERGER CARAHER, L.L.C.<br>Three Illinois Center<br>303 East Wacker Drive, Suite 1000<br>Chicago, Illinois 60601 | **CM/RRR # 7001 1940 0005 0599 5058** |
| Bernard J. Sevel<br>SEVEL & SEVEL, P.A.<br>201 N. Charles Street, Suite 1200<br>Baltimore, Maryland 21201 | **CM/RRR # 7001 1940 0005 0599 5065** |
| Francis J. Gorman<br>GORMAN & WILLIAMS<br>Two N. Charles Street, Suite 750<br>Baltimore, Maryland 21201 | **CM/RRR # 7001 1940 0005 0599 5072** |
| W. Charles Bailey, Jr.<br>GREBER & SIMMS<br>20 S. Charles St., Suite 702<br>Baltimore, MD 21201-3291 | **FIRST CLASS MAIL** |

in accordance with all applicable provisions of the Federal Rules of Civil Procedure, on this the 19th day of November, 2001.

_____
R. Blake Brunkenhoefer

# INTERROGATORIES

**INTERROGATORY NO. 1:**

Describe in detail the basis for you, rather than any other heir or next of kin of the Decedent, to act as his Personal Representative in this action.

**ANSWER:**

Claimant is the mother of the Decedent, who died single and left no children. The Decedent's father predeceased him. Hence, Claimant is the nearest surviving relative of the Decedent.

**INTERROGATORY NO. 2:**

Identify all persons, whether or not they be heirs or next of kin of the Decedent, who were financially dependant, to whatever degree, on the Decedent, and for each person so identified, provide their age and relationship to the Decedent, home or business address, telephone numbers, and amount of financial support previously received from the Decedent, and time periods during which this support was provided by Decedent.

**ANSWER:**

Josefina Gonzales, 69 years old, Mother of Decedent, Burgos Street, Iloilo, Philippines
Gilbert Patrick G. Nava, 19 years old, Nephew of Decedent, Burgos Street, Iloilo, Philippines
Rodney G. Rafols, 20 years old, Nephew of Decedent, Rizal Street, Iloilo, Philippines
Teresa G. Rafols, 16years old, Niece, Rizal Street, Iloilo City, Philippines
Pia. Angela G. Espulgar, 14 years old, Niece, Burgos Street, Iloilo City, Philippines
Pamela Joy G. Espulgar, 10 years old, Niece, Burgos Street, Iloilo City, Philippines

Decedent provided approximately 17,000 (Php) during a period from 1980 to 2000.

**INTERROGATORY NO. 3:**

Describe in detail the Decedent's educational background, including any vocational or technical education received related to Decedent's occupation or livelihood, and the time and location of the particular class or course of study taken.

**ANSWER:**

3

| | |
|---|---|
| Iloilo Maritime Academy, Ioilo City, Philippines | November 26, 1978 - Assoc. in Marine Transportation |
| Iloilo Maritime Academy, Iloilo City, Philippines | May 1, 1984 - Bachelor of Science in Marine Transportation |
| Professional Maritime Training Center, Rizal-Ortiz Sts., Iloilo City, Philippines | June 27, 1984 - Seaman Validating Examination |
| Associated Marine Officers' and Seamen's Union of the Philippines - PTGWO-ITF | July 4, 1987 - Certification in General Purpose Course |
| The Maritime Training Center of the Philip., Inc. | October 6, 1989 - Integrated Basic Upgrading Courses |
| The Maritime Training Center of the Philip. Inc. | October 12, 1989 - Integrated Basic Upgrading Courses |
| MTC College, Tigauan, Iloilo, Philippines | August 27, 1998 - Basic Safety Course & Personal Safety course |
| MTC College, Tigauan, Iloilo, Philippines | January 31, 1999 - Navigational watch course |
| Philippine Seafarers Training Center, Manila, Philippines | December 16, 1999 - Survival Craft & Rescue Boat course |
| Maritime Industry Authority, Manila, Philippines | June 22, 1999 - Deck Watchkeeper |
| Bright Maritime Corporation, Manila, Philippines | January 18, 2000 - Basic training seminar |
| P & O Ship Management | Unknown date - Onboard Safety Training Course |

**INTERROGATORY NO. 4:**

Describe in detail the Decedent's working career, including his previous employers, type of work performed, location of each job and address of each previous employer, annual or hourly income from each job, and time period during which he worked at each of these previous jobs or for these previous employers, and reasons for leaving such employment.

4

**ANSWER:**

12/78 to 3/79
Vessel : M/T WOLVERINE
Supervisor : Capt. Edgar A. Pascual
Port of Registry : Manila, Philippines
Reason for leaving : Transfer
Position : Messman
Rate of pay : Unknown

12/80 to 2/82
Vessel : M/S UCO VI
Supervisor : Capt. T.R. Tobias
Port of Registry : Bahrain
Reason for leaving : End of contract
Position : Able seaman
Rate of pay : Unknown

5/82 to 5/84
Vessel : M/S UCO XII
Supervisor : Capt. Romeo V. Ongusco
Port of Registry : Bahrain
Reason for leaving : End of contract
Position : Able seaman
Rate of pay : Unknown

11/84 to 5/85
Vessel : M/S UCO XVII
Supervisor : Unknown
Port of Registry : New Orleans
Reason for leaving : Vacation
Position : Able seaman
Rate of pay : Unknown

7/87 to 5/88
Vessel : M/V KATJA
Supervisor : Unknown
Port of Registry : Hamburg
Reason for leaving : End of contract
Position : O.S. - MB
Rate of pay : Unknown

10/88 to 8/89

Vessel : M/S ELSE TH
Supervisor : Unknown
Port of Registry : Faaborg
Reason for leaving : End of contract
Position : Able seaman
Rate of pay : Unknown

11/89 to 2/90
Vessel : M/V AURORA
Supervisor : Unknown
Port of Registry : Hong Kong
Reason for leaving : Vessel sold
Position : GPI (D)
Rate of pay : Unknown

4/90 to 4/91
Vessel : M/V ORMOND
Supervisor : Unknown
Port of Registry : Rotterdam
Reason for leaving : End of contract
Position : GPI (D)
Rate of pay : Unknown

5/91 to 9/91
Vessel : M/V ZETLAND
Supervisor : Unknown
Port of Registry : Hong Kong
Reason for leaving : Unknown
Position : GPI (D)
Rate of pay : Unknown

10/91 to 4/93
Vessel : M/V SEA PRINCE
Supervisor : Unknown
Port of Registry : Manila, Philippines
Reason for leaving : Vacation
Position : Able seaman
Rate of pay : Unknown

9/93 to 11/95
Vessel : M/T POPEYE
Supervisor : Unknown
Port of Registry : Manila, Philippines

Reason for leaving : Transfer
Position : Able seaman
Rate of pay : Unknown

2/96 to 12/98
Vessel : M/V SEA PRINCE
Supervisor : Capt. A. Gallo
Port of Registry : Manila, Philippines
Reason for leaving : Vacation
Position : Able seaman
Rate of pay : Unknown

contract commencement - date of death
Vessel : M/V LEON I
Supervisor : Unknown
Port of Registry : Malta
Reason for leaving: died in the service of the vessel
Position : Able seaman
Rate of pay : $380.00 + $38.00 allowance (weekly), overtime

**INTERROGATORY NO. 5:**

Describe in detail any professional licenses or unique work-related skills that Decedent possessed.

**ANSWER:**

Objection. This interrogatory is seeks the duplication of information sought and provided elsewhere in Defendant's written discovery. As a result, this interrogatory is cumulative, duplicative and unreasonably burdensome. Subject to and without waiving said objection, refer to Claimant's response to Interrogatory No. 3, above.

**INTERROGATORY NO. 6:**

Describe in detail the Decedent's health at the time of the incident and for the period commencing five years before the incident, and running through the date of the incident, including any illnesses or injuries that forced him to be hospitalized, or to miss more than one day of work in succession, and identify all documents referring or relating to Decedent's health for this five year period.

**ANSWER:**

Objection. This interrogatory seeks information which is irrelevant to this trauma-induced

7

death case. Subject to and without waiving this objection, in the five years preceding the date of his death, Decedent was in all respects physically and emotionally healthy.

**INTERROGATORY NO. 7:**

Identify all the Decedent's sources and amounts of income for the period commencing five years before the incident, and running through the date of the incident and identify all documents referring or relating to each such item.

**ANSWER:**

9/93 to 11/95
Vessel : M/T POPEYE
Rate of pay : Unknown

2/96 to 12/98
Vessel : M/V SEA PRINCE
Rate of pay : Unknown

contract commencement - date of death
Vessel : M/V LEON I
Rate of pay : $380.00 + $38.00 allowance (weekly), overtime

**INTERROGATORY NO. 8:**

Identify all funeral and burial expenses you incurred in interring the Decedent, and identify all documents referring or relating to each such expense.

**ANSWER:**

| | |
|---|---|
| Forest Lake Memorial Park | $212,000.00 (Php) |
| custom duties paid | $265.00 (Php) |
| casket construction | $120,000.00 (Php) |
| funeral services | $20,000.00 (Php) |
| meals & snacks(during wake) | $150,000.00 (Php) |
| funeral mass service | $2,000.00 (Php) |
| photography & video services | $15,000.00 (Php) |
| floral arrangements & decorations | $9,500.00 (Php) |
| transportation fees | $15,000.00 (Php) |

8

**INTERROGATORY NO. 9:**

Describe in detail the value and current disposition of Decedent's estate, and how its disposition was performed, whether by will, intestacy statute, or other means.

> **ANSWER:**
>
> To the best of Claimant's knowledge, Decedent dies intestate. With respect to the value of Decedent's estate, Claimant will supplement upon receipt of her economic expert's evaluation.

**INTERROGATORY NO. 10:**

Describe in detail the amount and periods of time that Decedent spent physically present in your company in the period commencing five years before the incident, and running through the date of the incident.

> **ANSWER:**
>
> From 1993 to 1998, Decedent spent substantial time with Claimant when the Decedent was on vacation or when any vessel he was working aboard came into the Port of Iloilo. Additionally, between 1998 and the date of Decedent's death, Decedent lived with his mother, Claimant herein.

**INTERROGATORY NO. 11:**

Describe in detail the status and outcome of any other actions or claims, legal or otherwise, taken by you or any other heir or next of kin of the Decedent to secure financial compensation for the Decedent's death, specifically including whether the procedures described for resolving "[a]ll claims, complaints or controversies," in the "Contract of Employment" (included as an attachment to your Complaint of February 5, 2001, in the related U.S. District Court for the District of Maryland case S-01CV327) were followed, and identify all documents referring or relating to each such action or claim.

> **ANSWER:**
>
> To the best of Claimant's knowledge, no other relative could prosecute or has prosecuted any claims in relation to the Decedent's death. As for Claimant, she has not sought or obtained compensation for the death of her son by any means other than the litigation now pending in the Honorable District Court.

**INTERROGATORY NO. 12:**

Describe in detail any financial compensation already paid to you or any other heir or next of kin of Decedent as a result of Decedent's death, whether it be as a result of life insurance proceeds, union benefits, worker's compensation, legal judgment, or otherwise, and for each such component of compensation paid, identify the date, amount, type, recipient, source of payment, reason for the compensation being paid, and identify all documents referring or relating to each such item or calculation.

**ANSWER:**

| | |
|---|---|
| Social Security System of Iloilo | SSS Funeral & Death - $ 52,000.00 (Php) |
| Social Security System of Iloilo | EC Funeral & Death - $10,000.00 + $2,200.00 monthly pension benefits for five years (Php) |
| Overseas Workers Welfare Administration | Insurance - $70,000.00 (Php) |

**INTERROGATORY NO. 13:**

State whether you claim entitlement to future loss of earnings or earning capacity as a result of Decedent's death and, if so, state the amount claimed, the method by which you computed that amount, the figures used in that computation, the facts and assumptions upon which your claim is based, and identify all documents referring or relating to each such item or calculation.

**ANSWER:**

Claimant seeks all damages to which she is entitled, including compensation for the loss of financial support occasioned by the untimely death of her son, however described. With respect to the value of the economic damages to which she is entitled, Claimant will supplement upon receipt of her economic expert's evaluation.

For further answer, if such be necessary at this time, Claimant respectfully refers Petitioners to her answers to Interrogatories Nos. 2, 4 & 7, above.

**INTERROGATORY NO. 14:**

To the extent not addressed by your answers to the preceding interrogatories, itemize all other expenses and other economic damages, past and future, that you claim are a result of the incident and as to each item claimed identify the item, the amount claimed for that item, the method, if any, by

which you computed the amount, the figures used in that computation, the date this expense or damage was incurred or was expected to be incurred, the facts and assumptions upon which your claim is based, and identify all documents referring or relating to each such item or calculation.

### ANSWER:

Objection. This interrogatory is vague and, to the extent its scope can be determined, it is overbroad and requires expertise beyond that possessed by Claimant. Subject to and without waiving said objections, Plaintiff does not yet possess the information by which a complete answer to this Interrogatory may be provided. Claimant will supplement upon receipt of her economic expert's evaluation.

### INTERROGATORY NO. 15:

Identify all persons having or claiming a subrogation interest in the outcome of this litigation and, for each such person, state the alleged dollar value of that subrogation interest.

### ANSWER:

Claimant knows of no actual or potential subrogation interests.

### INTERROGATORY NO. 16:

Set forth all facts and identify all documents which support your contention that the Limitation Plaintiffs were negligent, specifying precisely what acts or omissions of the Limitation Plaintiffs were negligent, how these acts or omissions were within the privity and knowledge of the Limitation Plaintiffs, and identify all persons who have knowledge of such facts.

### ANSWER:

Objection. This interrogatory is vague, ambiguous, overbroad, unduly burdensome, harassing, constitutes an impermissible fishing expedition, seeks the disclosure of the mental impressions and trial strategies of Claimant's attorneys (i.e., encompassed by the attorney work product exemption), and seeks expertise beyond that possessed by Claimant.

Subject to but without waiving these objections, Claimant makes the following response: As outlined in the attached report by the United States Coast Guard, Claimant avers the cranes, cables, and other lifting appurtenances on board the vessel were in a state of disrepair or otherwise unfit for their use. Said cranes were not were also not configured with proper safety switch settings and did not provide the operators with adequate visibility. Claimant further avers that the operators of the cranes were not properly trained in performing their

11

tasks and, among other things, failed to properly inspect and test the cranes before use. Claimant's investigation of this matter is continuing and Claimant reserves the right to supplement these answers through formal or informal means, and will further supplement its answers through its expert witness reports that will be provided subject to the terms of the Court's scheduling order.

**INTERROGATORY NO. 17:**

Describe all dangerous, unsafe and unseaworthy conditions which you contend existed at the time of the incident on the M/V LEON I and on the vessel's crane alleged involved, and for each such condition, identify all other persons whom you contend were or should have been aware of such condition, and how such conditions and all acts or omissions contributing to them were within the privity and knowledge of the Limitation Plaintiffs.

**ANSWER:**

Objection. This interrogatory is vague, ambiguous, overbroad, unduly burdensome, harassing, constitutes an impermissible fishing expedition, seeks the disclosure of the mental impressions and trial strategies of Claimant's attorneys (i.e., encompassed by the attorney work product exemption), and seeks expertise beyond that possessed by Claimant.

Subject to but without waiving these objections, Claimant makes the following response: As outlined in the attached report by the United States Coast Guard, Claimant avers the cranes, cables, and other lifting appurtenances on board the vessel were in a state of disrepair or otherwise unfit for their use. Said cranes were not were also not configured with proper safety switch settings and did not provide the operators with adequate visibility. Claimant further avers that the operators of the cranes were not properly trained in performing their tasks and, among other things, failed to properly inspect and test the cranes before use. Claimant's investigation of this matter is continuing and Claimant reserves the right to supplement these answers through formal or informal means, and will further supplement its answers through its expert witness reports that will be provided subject to the terms of the Court's scheduling order.

**INTERROGATORY NO. 18:**

State whether you contend these Limitation Plaintiffs violated a statute, rule, regulation or custom in this incident; if so, specify the statute, rule, regulation or custom involved, the manner in which the Limitation Plaintiffs violated it, and how this caused or contributed to Decedents injuries and death.

12

**ANSWER:**

Objection. This interrogatory is vague, ambiguous, overbroad, unduly burdensome, harassing, constitutes an impermissible fishing expedition, seeks the disclosure of the mental impressions and trial strategies of Claimant's attorneys (i.e., encompassed by the attorney work product exemption), and seeks expertise beyond that possessed by Claimant.

Subject to but without waiving these objections, Claimant makes the following response: As outlined in the attached report by the United States Coast Guard, Claimant avers the cranes, cables, and other lifting appurtenances on board the vessel were in a state of disrepair or otherwise unfit for their use. Said cranes were not were also not configured with proper safety switch settings and did not provide the operators with adequate visibility. Claimant further avers that the operators of the cranes were not properly trained in performing their tasks and, among other things, failed to properly inspect and test the cranes before use. These failures and deficiencies fall below the industry standard for practices relating to maintenance, training, safety and operations. Claimant's investigation of this matter is continuing and Claimant reserves the right to supplement these answers through formal or informal means, and will further supplement its answers through its expert witness reports that will be provided subject to the terms of the Court's scheduling order.

**INTERROGATORY NO. 19:**

Describe, in words or in substance, any admission against interest or spontaneous utterance allegedly made by any party to this action and fully identify any person who heard, or claimed to have heard, any such statements.

**ANSWER:**

Claimant is not presently aware of any such admission or utterance.

**INTERROGATORY NO. 20:**

If you contend or admit that there exist any writings or documents of any type which purport to contain any admission against the interest of any party to this action, state the substance of the admission, the date of same, the person or entity to whom directed and the name of the person signing the writing.

**ANSWER:**

To the extent Claimant possesses such information, please see the attached Exhibit H,

"Miscellaneous Documents."

**INTERROGATORY NO. 21:**

Identify each person whom you expect to call as an expert witness at trial, state the subject matter on which the expert is expected to testify, state the substance of the findings and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

**ANSWER:**

Please see Claimant's Designation of Experts (with supporting materials as required), as and when filed in this cause.

## DOCUMENTS REQUESTED

1. Any and all documents created pursuant to physical, mental or other examinations or other treatment of the Decedent by any type of health care provider or facility, concerning the Decedent's medical or emotional condition and the treatments received, for five years preceding the incident.

   **ANSWER:**

   To the extent Claimant possesses such information, please see the attached Exhibit H, "Miscellaneous Documents."

2. Any and all documents pertaining to any and all other accidents resulting in injury sustained by the Decedent in the fifteen years preceding the incident.

   **ANSWER:**

   Objection. This request seeks the production of information which is irrelevant to this trauma-induced death case. Subject to and without waiving this objection, none.

3. The Decedent's income tax returns, as filed with the Republic of the Philippines and/or local or subordinate government agency thereof, and any other documents documenting Decedent's income, for five years preceding the incident.

14

**ANSWER:**

Claimant does not have in her custody, control, or possession the documents requested above. However, Claimant will make a diligent effort to secure the requested information or, at least, identify where such documents may be obtained.

4. The Decedent's last will and testament, and all documents pertaining to any and all probate proceedings by which his estate has been or is being settled.

   **ANSWER:**

   None.

5. All documents identified in your Answer to Interrogatories.

   **ANSWER:**

   Objection. This request is vague, ambiguous and fails to identify the materials sought with the requisite degree of particularity. Subject to and without waiving these objections, please see the attached Exhibit H, "Miscellaneous Documents."

6. Any and all documents which you contend support your claim of negligence on the part of Limitation Plaintiffs Eternity Shipping, Ltd. and Eurocarriers, S.A., or any other individuals or entities in connection with this incident.

   **ANSWER:**

   Objection. This request is vague, ambiguous, fails to identify the materials sought with the requisite degree of particularity, overbroad, unduly burdensome, harassing, constitutes an impermissible fishing expedition, seeks the disclosure of the mental impressions and trial strategies of Claimant's attorneys (i.e., encompassed by the attorney work product exemption), and seeks expertise beyond that possessed by Claimant.

   Subject to but without waiving these objections, please see the attached Exhibit H, "Miscellaneous Documents" (with particular attention being paid to the certified copy of the relevant Coast Guard documents), the depositions of all witnesses (as and when obtained in this case) and all attachments thereto, and any other information which is disclosed by any party or other relevant individual or entity during the course of discovery, all of which are hereby incorporated by reference.

15

7. Any and all documents which you contend support your claim that the M/V LEON I was unseaworthy at the time of the incident.

   **ANSWER:**

   Objection. This request is vague, ambiguous, fails to identify the materials sought with the requisite degree of particularity, overbroad, unduly burdensome, harassing, constitutes an impermissible fishing expedition, seeks the disclosure of the mental impressions and trial strategies of Claimant's attorneys (i.e., encompassed by the attorney work product exemption), and seeks expertise beyond that possessed by Claimant.

   Subject to but without waiving these objections, please see the attached Exhibit H, "Miscellaneous Documents" (with particular attention being paid to the certified copy of the relevant Coast Guard documents), the depositions of all witnesses (as and when obtained in this case) and all attachments thereto, and any other information which is disclosed by any party or other relevant individual or entity during the course of discovery, all of which are hereby incorporated by reference.

8. Any and all documents which establish or support the conclusion that the alleged negligent or unseaworthy conditions aboard the M/V LEON I at the time of the incident were within the privity and knowledge of Limitation Plaintiffs Eternity Shipping, Ltd. and Eurocarriers, S.A..

   **ANSWER:**

   Objection. This request is vague, ambiguous, fails to identify the materials sought with the requisite degree of particularity, overbroad, unduly burdensome, harassing, constitutes an impermissible fishing expedition, seeks the disclosure of the mental impressions and trial strategies of Claimant's attorneys (i.e., encompassed by the attorney work product exemption), and seeks expertise beyond that possessed by Claimant.

   Subject to but without waiving these objections, please see the attached Exhibit H, "Miscellaneous Documents" (with particular attention being paid to the certified copy of the relevant Coast Guard documents), the depositions of all witnesses (as and when obtained in this case) and all attachments thereto, and any other information which is disclosed by any party or other relevant individual or entity during the course of discovery, all of which are hereby incorporated by reference.

9. Any documents or survey reports of any kind indicating theat the vessel's crane involved in

the incident was properly or improperly installed, inspected, certified, maintained, calibrated, or operated by Limitation Plaintiffs Eternity Shipping Ltd., and Eurocarriers, S.A. or any other person or entity.

**ANSWER:**

Objection. This request is vague, ambiguous, fails to identify the materials sought with the requisite degree of particularity, overbroad, unduly burdensome, harassing, constitutes an impermissible fishing expedition, seeks the disclosure of the mental impressions and trial strategies of Claimant's attorneys (i.e., encompassed by the attorney work product exemption), and seeks expertise beyond that possessed by Claimant.

Subject to but without waiving these objections, please see the attached Exhibit H, "Miscellaneous Documents" (with particular attention being paid to the certified copy of the relevant Coast Guard documents), the depositions of all witnesses (as and when obtained in this case) and all attachments thereto, and any other information which is disclosed by any party or other relevant individual or entity during the course of discovery, all of which are hereby incorporated by reference.

10. Any documents or survey reports of any kind indicating that the vessel's crane involved in the incident was defective in any respect, or that Limitation Plaintiffs Eternity Shipping, Ltd. and Eurocarriers, S.A. had knowledge or notice of any such defects.

**ANSWER:**

Objection. This request is vague, ambiguous, fails to identify the materials sought with the requisite degree of particularity, overbroad, unduly burdensome, harassing, constitutes an impermissible fishing expedition, seeks the disclosure of the mental impressions and trial strategies of Claimant's attorneys (i.e., encompassed by the attorney work product exemption), and seeks expertise beyond that possessed by Claimant.

Subject to but without waiving these objections, please see the attached Exhibit H, "Miscellaneous Documents" (with particular attention being paid to the certified copy of the relevant Coast Guard documents), the depositions of all witnesses (as and when obtained in this case) and all attachments thereto, and any other information which is disclosed by any party or other relevant individual or entity during the course of discovery, all of which are hereby incorporated by reference.

11. All documents referred to in the "Contract of Employment" including as an exhibit to your Complaint brought February 5, 2001, in the related U.S. District Court for the District of Maryland case S-01DV327, including but not limited to, Department Order No. 33,

17

Memorandum Circular No. 55 series of 1996, "Standard Employment Contract for Seafarers", and "Revised Employment Contract for Seafarers", and any portions of this "Contract of Employment" existing in addition to the one page attached to your Complaint of February 5, 2001.

**ANSWER:**

None in Claimant's possession, custody or control.

12. All documents that establish that Ms. Gonzales is the Decedent's mother and Personal representative.

**ANSWER:**

Please see the attached Exhibit H, "Miscellaneous Documents."

13. All documents relating to any efforts made by your or any other heir or next of kin of the Decedent, outside of this action and the related cases in the U. S. District Court for the District of Maryland, to secure financial compensation for the Decedent's death, whether through workers' compensation, union benefits, lawsuit brought in the Philippines, or any other means.

**ANSWER:**

Please see Claimant's answers to Interrogatories Nos. 11-12, above.

14. All professional licenses or work-related certifications that Decedent possessed.

**ANSWER:**

Please see the attached Exhibit H, "Miscellaneous Documents."

15. All written reports of each person whom you expect to call as an expert witness at trial, including but not limited to, any report of a marine surveyor or similar expert in the areas of ship-board crane installation, maintenance, calibration, and operation.

**ANSWER:**

Please see Claimant's Designation of Experts (with supporting materials as required), as and

when filed in this cause.

16. All documents which support any and all of the damages which you claim in this action.

    **ANSWER:**

    Objection. This request is vague, ambiguous and fails to identify the materials sought with the requisite degree of particularity. Subject to and without waiving these objections, please see the attached Exhibit H, "Miscellaneous Documents."

17. All photographs, videotapes, or audiotapes, diagrams, surveys, or other graphic representations of information concerning the subject matter of this action.

    **ANSWER:**

    None within Claimant's possession, custody or control. However, Claimant incorporates by reference all related materials created and/or produced by any other individual or entity, including the United States Coast Guard.

18. All codes, standards, or other regulations upon which you have relied or intend to rely in connection with this case.

    **ANSWER:**

    Objection. This request is vague, ambiguous, fails to identify the materials sought with the requisite degree of particularity, overbroad, unduly burdensome, harassing, constitutes an impermissible fishing expedition, seeks the disclosure of the mental impressions and trial strategies of Claimant's attorneys (i.e., encompassed by the attorney work product exemption), and seeks expertise beyond that possessed by Claimant.

    Subject to but without waiving these objections, please see the attached Exhibit H, "Miscellaneous Documents" (with particular attention being paid to the certified copy of the relevant Coast Guard documents), the depositions of all witnesses (as and when obtained in this case) and all attachments thereto, and any other information which is disclosed by any party or other relevant individual or entity during the course of discovery, all of which are hereby incorporated by reference.

19. All calculations, diagrams, engineering drawings, computer printouts or other data which have been prepared in connection with this case.

19

**ANSWER:**

Objection. This request is vague, ambiguous and fails to identify the materials sought with the requisite degree of particularity. Subject to and without waiving these objections, please see the attached Exhibit H, "Miscellaneous Documents." In addition, see Claimant's Designation of Experts (with supporting materials as required), as and when filed in this cause.

20. All models or other physical objects which you have prepared in connection with this case.

**ANSWER:**

Objection. This request seeks the production of materials protected by the attorney work product exemption. Subject to and without waiving this objection, Claimant will timely produce any materials to be offered into evidence (i.e., materials not purely demonstrative in nature).