1

1     IN THE UNITED STATES DISTRICT COURT

2         FOR THE DISTRICT OF MARYLAND

3            (Northern Division)

4     ------------------------------X

5     IN THE MATTER OF THE COMPLAINT :     ORIGINAL

6     OF ETERNITY SHIPPING, LTD. AND :

7     EUROCARRIERS, S.A. FOR         :  Civil Action

8     EXONERATION FROM OR LIMITATION :  No. L01CV0250

9     OF LIABILITY                   :

10    ------------------------------X

11           Deposition of DONALD SAYENGA

12              Baltimore, Maryland

13           Tuesday, August 31, 2004

14                 9:21 a.m.

15    Job No.:  1-41102

16    Pages 1 - 401

17    Reported by:  Beatriz D. Fefel, RPR

18

19

20

21

22


L.A.D.
REPORTING &
DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

DEPOSITION OF DONALD SAYENGA
CONDUCTED ON TUESDAY, AUGUST 31, 2004

208

1    question if you'd specify whether you're talking about

2    the entire wire rope including the area where it

3    failed, or the other part.  You see, what I'm trying

4    to get at is whenever you ask a question like that I'm

5    forced to include a catastrophic failure.  So when I

6    say I saw no abrasion, I didn't see any abrasion at

7    the point of catastrophic failure.

8        Q    Thank you.

9             Okay.  Did you measure the entire length of

10   the wire rope?

11       A    I made no measurements at all.

12       Q    Okay.  Did someone else do that?

13       A    Yes.

14       Q    Who all was present at this -- this was

15   the -- you're referring to the October 8th, 2003

16   inspection?

17       A    Yeah.  I examined the wire rope in the

18   presence of a Mr. Jim Dolan and a Mr. Willem

19   Schoonmade.  Other people present included a number of

20   attorneys, and that would be Mr. Clyne and Mr. Saville

21   and Mr. Veit, and a gentleman that I met there named

22   Heiner Popp, and several employees of Chesapeake

DEPOSITION OF DONALD SAYENGA
CONDUCTED ON TUESDAY, AUGUST 31, 2004

294

1    said yes because corrosion can begin immediately after

2    the lubricant is removed.

3            MR. CLYNE:  Can I have the question and the

4    answer read back?

5            (Record was read back by the reporter as

6    follows:  Q:  Would any removal of lubricant

7    constitute an alteration of the wire rope?  A:  You

8    previously asked that question, and I said yes because

9    corrosion can begin immediately after the lubricant is

10   removed.)

11       A    I'm happy with that answer.

12       Q    Thank you.  I'm satisfied with it as well.

13            You said that you examined the Coast Guard

14   report in this case, correct?

15       A    I read it.

16       Q    Did you read the Coast Guard's findings that

17   there was preexisting damage to the wire rope at the

18   area of the break?

19       A    I immediately noted that.

20       Q    And what did you do about it?

21       A    I immediately in my own mind rejected the

22   idea.

295

1      Q     Did you read the Coast Guard's report

2  before, or after you examined the wire rope on October

3  8th, 2000 --

4      A     Long before.

5      Q     And why did you reject that idea?

6      A     No one can make a statement like that that

7  has any validity.

8      Q     Why?

9      A     This wire rope has been through a horrible

10  accident.  The forces imposed on it during the

11  accident altered forever the structure of the wire

12  rope to a degree.  They can never be put back to where

13  they were immediately prior to the accident.  So the

14  best thing anyone could do would be to examine it and

15  make a statement that would not involve the phrase

16  "preexisting."  It would involve a phrase like "at the

17  time of" or "during the accident," because the

18  implication of the damage I saw was that it happened

19  in very rapid succession, immediately at the moments

20  prior to the accident.  That was the conclusion I

21  reached.

22      Q     Do you recollect whether the Coast Guard

DEPOSITION OF DONALD SAYENGA
CONDUCTED ON TUESDAY, AUGUST 31, 2004

296

1    found evidence of --

2          A    They had --

3          Q    -- corrosion?

4          A    I'm sorry.  Say it again.

5          Q    Do you recollect as to whether the Coast

6    Guard found evidence of corrosion?

7          A    I don't recollect the Coast Guard finding

8    evidence of corrosion.

9          Q    You do not?

10         A    I do not.

11         Q    A section of the wire rope was removed at

12   the request of the Coast Guard and the assent of the

13   vessel owners and managers, correct?

14         A    I got that information from what I read,

15   yes.

16         Q    Okay.  And what is it that you read that led

17   you to that conclusion?

18         A    That statement in the Coast Guard report

19   that a section was removed.

20              (Mr. Saville left the room.)

21         Q    Okay.  Have you been provided with any

22   document as to what was done with that section?

DEPOSITION OF DONALD SAYENGA
CONDUCTED ON TUESDAY, AUGUST 31, 2004

310

1    things.

2            MR. ASPERGER:  Okay.  Let's take a break.

3    Thank you.

4            (A short recess was taken.)

5            (Mr. Saville and Mr. Veit were not present

6    after the recess.)

7    BY MR. ASPERGER:

8        Q    Do you have with you today the wire, sample

9    of the wire that you removed from the wire rope during

10   your inspection of October 8th, 2003?

11       A    Yes.

12       Q    And is it in that envelope?

13       A    Yes, it is.

14            MR. CLYNE:  Take it out.

15       Q    Take it out.  What is in that envelope?

16   What does the envelope contain?

17       A    It contains this plastic bag which has the

18   tag and the wire.

19       Q    Is there anything else in the envelope?

20       A    Some lubricant unavoidably, which was all

21   over my hands when I put it in the bag.

22       Q    And have you been the custodian of this

DEPOSITION OF DONALD SAYENGA
CONDUCTED ON TUESDAY, AUGUST 31, 2004

311

1    piece of wire?

2        A    Since October.

3        Q    October 8th of 2003?

4        A    Yes, I have.

5        Q    So you took this with you from the

6    inspection scene?

7        A    I did.

8        Q    And it's remained in your possession since

9    then?

10       A    Completely.

11       Q    And where has it been kept?

12       A    In my office.

13       Q    In connection with this file?

14       A    Yes.

15       Q    And have you removed the wire on any

16   occasions from the plastic bag?

17       A    I have not.

18       Q    Has anyone else to your knowledge?

19       A    No one has.

20       Q    Not even counsel or any of the other --

21       A    No one.

22       Q    -- witnesses?

DEPOSITION OF DONALD SAYENGA
CONDUCTED ON TUESDAY, AUGUST 31, 2004

312

1      A      Absolutely no one.

2      Q      And the tag -- would you just read what the

3  tag says into the record, please?

4      A      The tag in my handwriting says "cut at end

5  of broken strand at the catastrophic failure."

6      Q      Okay.  And is that in your handwriting?

7      A      That's my handwriting.

8      Q      Is there any documentation in which any

9  witnesses to this signed off?

10          MR. CLYNE:  Objection.

11     Q      As having been witnesses.  Do you understand

12 what I'm asking?

13     A      Yeah, the verb signed off.

14          Mr. Dolan at my request photographed me

15 cutting that wire.  He certainly witnessed it and took

16 a photograph to record the event.

17          (Mr. Clyne handing.)

18          MR. ASPERGER:  Thank you.

19     Q      Mr. Clyne has conveniently provided us with

20 Dolan Exhibit No. 1 which is Mr. Dolan's report and

21 contains a series of photographs.  Are those -- would

22 you just identify for the record which photos you're

DEPOSITION OF DONALD SAYENGA
CONDUCTED ON TUESDAY, AUGUST 31, 2004

399

1    CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

2            I, Beatriz D. Fefel, Registered Professional

3    Reporter, the officer before whom the foregoing

4    proceedings were taken, do hereby certify that the

5    foregoing transcript is a true and correct record of

6    the proceedings; that said proceedings were taken by

7    me stenographically and thereafter reduced to

8    typewriting under my supervision; and that I am

9    neither counsel for, related to, nor employed by any

10   of the parties to this case and have no interest,

11   financial or otherwise, in its outcome.

12           IN WITNESS WHEREOF, I have hereunto set my

13   hand and affixed my notarial seal this 10th day of

14   September 2004.

15   My commission expires:

16   August 1, 2008

17

18   _____

19   NOTARY PUBLIC IN AND FOR THE

20   STATE OF MARYLAND

21                    -----------

22