IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF ETERNITY SHIPPING, LTD. AND EUROCARRIERS, S.A., FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION NO. L01CV0250 |
| * * * * * * * | |
| TATE & LYLE NORTH AMERICAN SUGARS, INC., | AFFIRMATION OF DONALD SAYENGA |
| Claimant and Third-Party Plaintiff | |
| v. | |
| AMERICAN BUREAU OF SHIPPING | |
| Third-Party Defendant | |

I, DONALD SAYENGA, hereby affirm as follows:

1. I am the President of the Cardon Management Group and have been retained as an expert/consultant by defendant American Bureau of Shipping ("ABS") in this matter.

2. My expert reports including my curriculum vitae establishing my credentials as a wire rope expert are attached as Exhibit A hereto.

3. As explained in my expert report dated July 1, 2004, I attended the Chesapeake Engineering facility in Annapolis, Maryland on October 8, 2003 to examine the boom hoist wire rope (also referred as to "luffing wire") from the M/V LEON I that had parted on July 29, 2000 and was being stored at Chesapeake.

4. Upon arrival I met with ABS' counsel and then met certain other persons that were in attendance including Mr. Dean of Chesapeake, Mr. Eric Veit of the Ober Kaler law firm

and Mr. Heiner Popp.

5. At no time during that visit or at any other time did I or, to my knowledge, did any other ABS expert witness, discuss any particulars of the case with Mr. Popp or anyone else representing Eurocarriers or Chesapeake for that matter.

6. None of the findings set forth in my expert reports are based on any discussions with Mr. Popp nor upon any reports prepared by Mr. Popp. In fact I have never seen any reports prepared by Mr. Popp.

7. As detailed in my expert report dated July 1, 2004, I removed a small amount of external lubricant from several areas of the boom hoist wire rope away from the break area in order to obtain a better visual observation of the underlying wire rope.

8. The photographs attached hereto as Exhibit B reveal what was observed during the October 8, 2003 inspection and Tate & Lyle's counsel questioned me at my deposition regarding these photographs.

9. As photograph Nos. 26 and 27 indicate, I snipped a single small piece of one wire from a strand within the break area for potential subsequent testing. However, no such testing ever took place and, as testified to in my deposition, the snipped piece of wire remained in my possession and was brought to my deposition and marked as an exhibit by counsel for Tate & Lyle.

10. I also attended at Chesapeake on August 24, 2004 when Mr. Michael Parnell, a wire rope consultant well known to me, attended on behalf of Tate & Lyle to inspect the same wire rope. Mr. Parnell removed significantly more lubricant than was removed by me during my prior visit.

11. I have participated in hundreds, perhaps thousands, of wire rope inspections during my

2

career. None of the actions with respect to handling, removal of lubricant, snipping of a piece of a single wire or anything else that took place on October 8, 2003 at Chesapeake altered the wire rope in any meaningful way or affected the ability of any consultant or expert to perform further testing or evaluation of the wire rope.

I hereby affirm under the penalty of perjury that the foregoing is true and correct.

Executed on November 5, 2004.

DONALD SAYENGA

28005\Pleadings\Affirm.of D.Sayenga



Carolyn A. Crow

3