IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF ETERNITY SHIPPING, LTD. AND EUROCARRIERS, S.A. FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION NO. L-01-CV-0250 |

\*   \*   \*   \*   \*   \*   \*

## AFFIDAVIT OF CLIFFORD M. DEAN

I, Clifford M. Dean, being over eighteen years of age and competent to testify regarding the matters set forth herein, do hereby swear and affirm based on personal knowledge as follows:

1. I currently reside at 2756 Riverview Drive, Riva, Maryland 21140.

2. I am a Senior Research Associate at Chesapeake Engineering & Design, Accident Analysis Inc. ("CED") in Annapolis, Maryland, and have been employed there since 1995. CED is a firm specializing in forensic engineering and accident analysis for, among others, the maritime industry.

3. Our firm was retained by the law firm of Ober, Kaler, Grimes & Shriver, P.C., to assist in connection with the casualty aboard the M/V LEON I on July 29, 2000.

4. On August 4, 2000, I took custody of the luffing wire rope from deck crane No. 4 of the M/V LEON I, which had been removed from the ship by her crew.

5. I transported the wire rope to CED's offices in Annapolis and completed a standard CED "Evidence Log Record" form on that same day, August 4, 2000.

6. At our facility we placed the wire rope on three wooden pallets and covered it with plastic shrink wrap, to protect it against contamination and moisture and to try to minimize any mess in our storage room, as the wire rope was, and remains, heavily greased. The pallets

were placed in a secure indoor storage room along with items of evidence from other cases on which CED works.

7. CED was contacted by Ober/Kaler attorney Eric M. Veit in October of 2000 in connection with a request by the Coast Guard to cut out a section of the wire rope for strength testing as part of the Coast Guard investigation.

8. On October 13, 2000, a Coast Guard representative came to our facility to obtain a section of the wire rope for strength testing. We secured the cut ends of the wire rope to prevent unraveling prior to cutting, I physically cut out the sample with and acetylene torch and turned it over to the Coast Guard.

9. In October of 2003, Mr. Veit contacted me to set up a date to make the wire rope available for viewing by experts from the American Bureau of Shipping ("ABS").

10. The inspection by ABS experts was conducted on October 8, 2003. I assisted in removing two of the three pallets containing the wire rope from the storage room, and uncoiling and laying out the sections of wire rope on those pallets on our gravel drive-way and into the adjoining paved street.

11. The ABS experts visually inspected these portions of wire rope, along with the portion that remained coiled on the third pallet. Very small areas of grease may have been removed with hand tools by the experts in order to better view the wire strands underneath, but no chemical or spray degreaser was used.

12. At the end of the inspection, one of the ABS experts snipped an approximately 6" piece of a single wire strand, and Captain Heiner Popp, who attended the inspection to monitor it on behalf of the Owners of the LEON I, also snipped a corresponding 6" strand.

13. Once the inspection was complete, we coiled the wire rope on the pallets again, covered it with new shrink wrap, and returned it to a secure in-door storage room. The only changes to its condition were the two 6" strands being snipped off, very small areas of grease being scraped away, and some pieces of gravel and leaves from the drive way and street getting stuck to the grease on the rope.

14. In June of 2004, Mr. Veit contacted me again, asking that I make arrangements to make the cable available for viewing by one of the Owners' experts, Mr. Carl Cederstav. Mr. Cederstav came and viewed the wire rope in our storage room on July 2, 2004. We did not remove the wire rope from the pallets. Mr. Cederstav's inspection was visual only, and at most I removed some shrink wrap to give him a better view. Neither he nor I did anything to alter the condition of the rope at this time, and I noted that it was still heavily greased.

15. In August of 2004, Mr. Veit contacted me once more to inform me that experts from Tate & Lyle desired to inspect the wire rope, and we made arrangements to do this on August 24, 2004. Experts from Tate & Lyle, ABS, and Mr. Cederstav for Owners, were all in attendance.

16. As we did in October of 2003, we uncoiled the rope and laid it out on our driveway and in the adjoining paved street, making it available for the Tate & Lyle experts to inspect it as they desired. This inspection was carried out in the same fashion as that done by ABS in October of 2003. Tate & Lyle's expert, however, brought several cans of degreaser that he used to remove grease from various portions of the wire rope. When it was apparent he was going to run out, I offered to have one of our junior CED engineers go to a nearby automotive store to purchase several more cans of degreaser, and Tate & Lyle's expert did use these cans to remove more grease and complete his inspection. We did not limit the amount of time the Tate & Lyle expert had to inspect the wire rope, and he appeared to be satisfied that he was able to accomplish everything he needed to do when he was complete.

17. At the conclusion of the inspection the other CED engineer and I coiled the wire rope again on the pallets, covered it with new shrink wrap, and returned it to a secure indoor storage room. No one spoke to me or asked me to do anything in regards to marking the locations where the Tate & Lyle expert had removed grease, or in regards to adding new grease to these locations to prevent them from corroding.

18. Since the wire rope has been stored at our facility, we at CED have done nothing to alter its condition. We have not greased or lubricated the wire rope in any manner, and we have taken no steps to prevent corrosion other than covering the pallets of rope with plastic shrink-wrap and keeping them indoors.

I HEREBY AFFIRM under penalties of perjury that the contents of this Affidavit are true and correct.

November 5, 2004

_____
Clifford M. Dean

753984.1

4