IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| IN THE MATTER OF | * | |
| THE COMPLAINT OF | | |
| ETERNITY SHIPPING, LTD. AND | * | Civil Action No.: L01CV0250 |
| EUROCARRIERS, S.A. | | |
| FOR EXONERATION FROM OR | * | |
| LIMITATION OF LIABILITY | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## CLAIMANT-JOSEFINA GONZALES' OPPOSITION TO
## CLAIMANT-TATE & LYLE'S MOTION(S) FOR SUMMARY JUDGMENT

NOW COMES Josefina Gonzales, Individually and as Personal Representative of the Estate and Beneficiaries of Juan Gonzales, Jr., Deceased ("Claimant"), appearing by and through her attorneys-of-record, R. Blake Brunkenhoefer of Brunkenhoefer & Associates, P.C. and W. Charles Bailey, Jr. of Simms Showers, L.L.P., and makes and files this her Opposition to the Motion(s) for Summary Judgment and attendant Amended Memoranda filed by Tate & Lyle North American Sugars, Inc. ("Tate & Lyle").

## I.
## FACTUAL & PROCEDURAL BACKGROUND

A.    **Claimant's Summary**

On July 29, 2000, the M.V. LEON I (hereinafter, the "vessel") was berthed at the Domino's Sugar pier in Baltimore, Maryland discharging bulk raw sugar. A crew member of the vessel was operating one of the vessel's cranes to maneuver two other crew members – one of whom was Juan Gonzales, Jr. ("decedent" or "Claimant's deceased son") – who were in a personnel basket and engaged in the task of scraping sugar off the vessel's hatch coaming. During this operation, a cable on the vessel's crane parted, causing the boom to fall on the Domino's Sugar gantry crane which was

extended over the open hatch.  As a consequence, the two crew members in the personnel basket sustained fatal injuries when they were whipped against the open hatch cover and other structures (i.e., opposite the end of the open hatch they had previously been working), some shoreside personnel were injured, and the Domino's Sugar facility sustained massive damage to its shore crane and other equipment.

At the time of the incident in question, the aforementioned "Domino's Sugar facility" was in all respects owned and operated by Tate & Lyle.

_____On or about January 29, 2001, the instant "limitation action" was filed by Eternity Shipping, Ltd. and Eurocarriers, S.A., whereby Limitation Plaintiffs advised of their intention to seek limitation of or exoneration from liability relative to the damages resulting from the failure of their crane. Appropriately, and notwithstanding the fact that Claimant had already filed a separate suit for damages with the Honorable District Court, Claimant submitted her claim for damages in the instant limitation action.

Claimant avers that her deceased son is entitled to the rights and protections afforded seamen under American law, particularly the "Jones Act" and the general maritime law, and such rights are readily discernible upon the available evidence.

Tate & Lyle has since filed its Motion for Summary Judgment with respect to the claims of Claimant, along with an amendment thereto (collectively described as "Motion(s) for Summary Judgment" or "Motion(s)"), and Claimant now responds to same.

**B.    Claimant's Response to Tate & Lyle's Recitation of "Facts and Background"**

Claimant does not significantly dispute Tate & Lyle's recitation of the "Facts and Background" of this case.  See, *Tate & Lyle's Amended Memorandum*.  To the extent Tate & Lyle's

assertion of facts herein seeks to support or establish grounds for the summary judgment sought by

Tate & Lyle against the interests of Claimant, Claimant respectfully denies the factual allegations.

**C.     Key Facts Precluding Summary Judgment**

The disputed facts which prelude summary judgment as to Claimant's claims against Tate

& Lyle are:

1.     Whether Tate & Lyle's operation of its gantry crane, at the time and on the occasion in question, contributed to the death of Juan Gonzales, Jr. and/or the resulting damages to Claimant; and,

2.     The percentage of fault attributable to Tate & Lyle.

**II.**
**FED. R. EVID. 201**

In the interest of economy and efficiency, Claimant respectfully requests the Court take

notice of the existence and contents of its file, such that it will not be necessary to reproduce

previously-filed materials as attachments hereto.[1]  *Fed. R. Evid. 201.*

**III.**
**SUMMARY JUDGMENT STANDARDS**

A motion for summary judgment requires the court to assess whether a genuine issue of

material fact exists by reviewing the evidence in the light most favorable to the party opposing the

motion.  *Inst. for Shipboard Educ. v. Cigna Worldwide Ins. Co.*, 22 F.3d 414, 418 (2nd Cir. 1994),

citing to *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2510 (1986).  Federal

Rule of Civil Procedure 56(c) provides for summary judgment of a claim when "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show

---

[1] Though perhaps unnecessary, Claimant has attached copies of all referenced exhibits as a courtesy to those reading this document.

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

Summary judgment is appropriate only when the non-moving party has failed to set forth any facts that go to an essential element of the claim. *King v. Crossland Savings Bank*, 111 F.3d 251, 259 (2nd Cir. 1997). If there is sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party, summary judgment is improper. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248 & 251, 106 S. Ct. 2505 (1986). In evaluating the sufficiency of the Claimant's evidence, this Court must proceed cautiously. *Brady v. Colchester*, 863 F.2d 205 (2nd Cir. 1988). If reasonable minds could differ as to the import of the evidence, and "if . . . there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *In re Japanese Elec. Prods. Antitrust Litigation*, 723 F.2d 238 (3d Cir. 1983), *rev'd on other grounds sub nom.* Finally, summary judgment is inappropriate if an issue depends upon the credibility of witnesses, because such credibility can best be determined after the trier of fact observes the witnesses' demeanor. *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979).

## IV.
## DOES CLAIMANT HAVE A COLORABLE CLAIM AGAINST TATE & LYLE?

A.    **Response in Brief**

It is beyond dispute that the failure of the ship's crane started the events in motion which proximately caused the death of Juan Gonzalez, Jr.. However, the evidence yet fairly suggests that the death of Juan Gonzalez, Jr. was caused, in part, by Tate & Lyle's operation of its shore crane in

the vessel's hold while the ship's crane was in operation in the same hold, and while Juan Gonzalez, Jr. and his co-worker, Joselito Burgos, were in harm's way. Based upon the following excerpts, and such other and good evidence as may be adduced upon the trial of this cause, the fact finder should be able to determine at trial the extent to which the presence of the boom of Tate & Lyle's crane over the ship's hold caused or added to the forces on Juan Gonzalez, Jr.'s body such that he died as a result. For example, if the ship's crane boom had collapsed and <u>not</u> fallen upon Tate & Lyle's gantry crane, would Juan Gonzalez, Jr. have suffered a long, but survivable fall into the sugar below, or would he yet have been slammed into the ship's hatch cover and died as a result thereof?

**B.    Evidence Warranting Denial of Summary Judgment**

Deposition of Domino's Sugar crane operator, George Baker, taken September 18, 2002 **(Exhibit 1)**

Page 61, line 19    Q (Brunkenhoefer):  Do you believe in your experience as a, as a crane operator, that you should be using shore cranes in close proximity to vessel cranes in operation?

    62,    1    A: Well, I mean, that's, that's up to the company.  That's not for me to say.

        Q: In retrospect, what do you think about it?

        A: Well, you know, I don't think they should be doing it, but, you know, who am I?  I'm just a – I'm just a flunky.

        Q: Yeah, but if you're the flunky who's operating one of the cranes, would you want to be operating your crane that way, or would you rather not?

        A: Not with a – not with a, a shore crane that close by, no.

Deposition of Domino's Sugar relief crane operator, William Langville, taken September 17, 2002 **(Exhibit 2)**

Page 17, line    13    Q (Veit): Can you recall anything unusual about that vessel or the conduct of discharging the sugar off that vessel during that week leading up to the day of the accident?

A: Yes.

The day of the 28th, I was working operating the crane.  And I looked out my window, and I seen them in their crane working overtop my crane.

Q: Seen who in –

18,    1    A: One of their operators.  I'm not sure if – you know –

Q: You're referring –

A:  – who he was.

Q:  – to the –

A: Yes –

Q:  – ship?

A:      – the crew.  One of the crew members was working in his – on the crane.

So what I did was I stopped my crane, got out of my crane, put it in the off position, walked to the end of the crane, and hollered to them that they're not supposed to do that while I'm working, and I would not go back in the crane until they stopped.

Q: And did they stop?

A: After about thirty minutes.

Q: All right.  And this occurred, you said the 28th?

A: The 28th, yes.

Q: Okay.

A: The day before.

19,    1    Q: That would have been the day before the incident?

A: Yes.

6

. . .

79,   14   Q (Brunkenhoefer): Okay.  Now you had some other guys that were in the hold, right?

A: Yes.

Q: I mean, in the same hold where you were digging.

A: Correct.

Q: You had some – well, actually, you had some guys in the 6-A hold; is that right?

80,   1    A: Let's put it this way.  They – you're in and out, all right?  They're in and out.  When I went in the time right before the accident, there were up underneath the hatch coaming.

Q: Okay

A: Because I'm going into the ship, the hold of the ship, and they're not supposed to be there when I go down.

Q: All right.  So they're – you're digging in 6, what we're –

A: Or 5.

Q:  – what we're calling 6.

A: Right.

Q: Where you're booming it up?

A: Right.

. . .

89,   1    Q: And you specific cargo handling knowledge and expertise is in crane operation?

A: Correct.

Q: What do you think about the use of shore cranes in, in proximity to ship's

7

cranes?

A: Well, I don't know about a ship – I mean, a ship crane, because I never operated it.

I know about my crane. I feel comfortable with my crane.

Q: Well, when someone's using a ship crane in close proximity to yours, what do you do?

A: I'm very uncomfortable, and if they're working around me or up on me – if they're not a hatch away from me, I stop.

## V.
## TATE & LYLE'S PERCENTAGE OF FAULT

Respectfully, until the liability of the Limitation Plaintiffs is determined by the finder of fact, the relative fault of Tate & Lyle cannot be determined.

## PRAYER

WHEREFORE, Claimant respectfully requests that the Court deny the relief requested by Tate & Lyle herein, and in all respects deny summary judgment.

Respectfully submitted,

_____/s/_____

R. Blake Brunkenhoefer (S.D.Tex. #15559)*
BRUNKENHOEFER & ASSOCIATES, P.C.
1770 Tower II
555 N. Carancahua
Corpus Christi, Texas 78478
(361) 888-6655
Fax (361) 888-5855
bbrunk@gulfattorneys.com
(* Admitted Pro Hac Vice)


_____/s/_____

W. Charles Bailey, Jr. (#23580)
SIMMS SHOWERS, LLP
Suite 702

20 South Charles Street
Baltimore, Maryland 21201
(410) 783-5795
Fax (410) 783-1368
wcbailey@simmsshowers.com

## CERTIFICATE OF SERVICE

I, R. Blake Brunkenhoefer, do hereby certify that a true and correct copy of the above and

foregoing document was served via e-mail notification from the District Court upon:

| | |
|---|---|
| M. Hamilton Whitman, Jr. | James D. Skeen |
| OBER, KALER, GRIMES | WRIGHT, CONSTABLE |
| & SHRIVER, P.C. | & SKEEN, L.L.P. |
| 120 E. Baltimore Street | 1 Charles Center, 16th Floor |
| Baltimore, MD 21202 | 100 N. Charles Street |
| **(VIA CM/RRR)** | Baltimore, MD 21201 |
| | **(VIA CM/RRR)** |
| Jeffrey J. Asperger | Bernard J. Sevel |
| Erin Walz | ARNOLD, SEVEL & GAY, P.A. |
| ASPERGER CARAHER, L.L.C. | Two N. Charles Street, Suite 560 |
| Three Illinois Center | Baltimore, MD 21201 |
| 303 East Wacker Drive, Suite 1000 | **(VIA CM/RRR)** |
| Chicago, Illinois 60601 | |
| **(VIA CM/RRR)** | |
| | |
| Robert G. Clyne | James W. Bartlett, III |
| HILL, RIVKINS & HAYDEN, L.L.P. | SEMMES, BOWEN & SEMMES |

9

| | |
|---|---|
| 45 Broadway, Suite 1500<br>New York, NY 10006-3739<br>**(VIA CM/RRR)** | 250 W. Pratt Street, 16th Floor<br>Baltimore, MD 21201-2423<br>**(VIA CM/RRR)** |
| Francis J. Gorman<br>GORMAN & WILLIAMS | W. Charles Bailey, Jr.<br>S I M M S   S H O W E R S ,<br>L.L.P. |
| Two N. Charles Street, Suite 750<br>Baltimore, MD 21201<br>**(VIA CM/RRR)** | 20 S. Charles St., Suite 702<br>Baltimore, MD 21201-3291<br>**(VIA CM/RRR)** |

in accordance with all applicable provisions of the Federal Rules of Civil Procedure, on this the 20th day of January, 2005.  I further certify that a complete copy of the exhibits referenced in said document was served upon these individuals via certified mail within 24 hours of the electronic filing of the principal document.


_____/s/_____
R. Blake Brunkenhoefer


## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| IN THE MATTER OF<br>THE COMPLAINT OF<br>ETERNITY SHIPPING, LTD. AND<br>EUROCARRIERS, S.A.<br>FOR EXONERATION FROM OR<br>LIMITATION OF LIABILITY | *<br><br>*<br><br>*<br><br>* | Civil Action No.: L01CV0250 |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **ORDER**

_____Upon consideration of the Motion(s) for Summary Judgment of Tate & Lyle North American

10

Sugars, Inc. ("Tate & Lyle"), and Josefina Gonzales', Individually and as Personal Representative

of the Estate and Beneficiaries of Juan Gonzales, Jr., Deceased ("Claimant") opposition thereto, it

is hereby:

ORDERED that Tate & Lyle's Motion with respect to the claims of Claimant is in all

respects DENIED.


Date:_____
_____

_____Hon. Benson E. Legg, *District Judge*
UNITED STATES DISTRICT COURT,
DISTRICT OF MARYLAND,
NORTHERN DIVISION