IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| IN THE MATTER OF | * |
| THE COMPLAINT OF | |
| ETERNITY SHIPPING, LTD. AND | *    Civil Action No.: L-01-CV-0250 |
| EUROCARRIERS, S.A | |
| FOR EXONERATION FROM OR | * |
| LIMITATION OF LIABILITY | |
| | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**LIMITATION PLAINTIFFS' REPLY MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON
FIRST AMENDED CLAIM FOR DAMAGES OF JOSEFINA GONZALES**

Limitation Plaintiffs Eternity Shipping, Ltd. and Eurocarriers, S.A., by their undersigned attorneys, respectfully submit this Reply Memorandum in support of their Motion for Summary Judgment on the First Amended Claim for Damages of Josefina Gonzales.  Mrs. Gonzales acknowledges that this Court must recognize her recovery against Limitation Plaintiffs in the Philippines.  The basic thrust of Mrs. Gonzales' opposition is that, although she has recovered in the Philippines in the forum agreed to in her son's employment contract, she is entitled to recover again in this Court because that contract is now unenforceable.

This point is crucial: Mrs. Gonzales has already availed herself of the proceedings in the Philippines under the contracted Philippine law, and Mrs. Gonzales has already received $51,000 in her action in the Philippines. Mrs. Gonzales, however,  goes to great lengths to argue that Juan Gonzales' contract is irrelevant and invalid because it does not provide a remedy for tort claims, and because the contractual forum selection and arbitration provisions are void in violation of U.S. public policy. Mrs. Gonzales' opposition is largely based upon a hypothetical, one in which she has not already availed herself of the contracted forum in the Philippines and has not pursued her claims there to judgment and recovery.  It is also based upon imaginary

circumstances whereby Juan Gonzales was unfairly forced to accept a harsh and oppressive employment contract. In reality, the Philippine government carefully regulates the hiring process of seamen and has established detailed standards, which are incorporated in their employment contracts, to protect them and ensure that they are treated fairly.

In her struggle to fashion an argument that would permit her maintain this action, Mrs. Gonzales has submitted an opposition that is little more than a discourse on public policy. Her position is unpersuasive, and nothing in the opposition sheds light on her ability to proceed with her claims again in this Court. Instead, Mrs. Gonzales' irrelevant and theoretical arguments only confirm that her claims must be dismissed as a matter of law.

**I.    PROCEEDINGS BEFORE THE PHILIPPINE NATIONAL LABOR RELATIONS COMMISSION RESULTED IN A FULL AND FAIR ADJUDICATION OF MRS. GONZALES' TORT CLAIMS.**

Mrs. Gonzales does not dispute that this Court should recognize her recovery in the Philippines.[1] Opp. at p. 9. That recovery, however, she argues, does not preclude her from

---

[1]    Mrs. Gonzales cites no case law to counter Limitation Plaintiffs' argument for dismissal of her claims based upon principles of comity. As set forth in Limitation Plaintiffs' motion, American courts have recognized the importance of respecting valid foreign decrees and their conclusive effects for well over a century. See Hilton v. Guyot, 159 U.S. 113, 164 (1895). Faced with this clear pronouncement of comity, Mrs. Gonzales merely attempts to distinguish a few of the cases cited by Limitation Plaintiffs. Claimant's attempt to differentiate the factual circumstances of these cases, however, does nothing to alter the law and the clear obligation of comity in the present case.

Mrs. Gonzales' assertion that Limitation Plaintiffs are barred from relying upon foreign law is similarly unavailing. Contrary to her statement that the "so-called Praecipe did not identify which laws Limitation Plaintiffs sought to apply" (Opp. at p. 2), Limitation Plaintiffs' Praecipe clearly stated their intention to raise issues concerning the law of the Republic of the Philippines applicable to the employment of Juan Gonzales and to his employment contract. See Docket at 41. Mrs. Gonzales' opposition is quick to state that the Court granted her Motion to Strike the Praecipe, however, she fails to acknowledge that Limitation Plaintiffs filed a Motion to Reconsider which is still pending before the Court. She also fails to address the fact that she relied upon Philippine law herself in her Motion to Strike. In the meantime, both Limitation Plaintiffs and Mrs. Gonzales have referred to and relied upon Philippine law in their arguments on this motion for summary judgment. As stated in Limitation Plaintiffs' Motion to Reconsider, Mrs. Gonzales should not be entitled to deny the fact of her recovery in the Philippines, and to argue the meaning of Philippine law to the Court (as she has done), while Limitation Plaintiffs are foreclosed from raising or arguing any issue of that same law. To the extent that

pursuing her claims again in this forum, because it does not reflect damages for tort causes of action. In support of her argument, Mrs. Gonzales claims that Juan Gonzales' contract only provides for "contractual" remedies, when in fact it provides for the resolution of all claims in the Philippines. Nevertheless, she declares the contract "meaningless." On this point, Mrs. Gonzales is simply wrong.

In a further attempt to support her position, Mrs. Gonzales also mischaracterizes the appellate decision of the Philippine National Labor Relation Commission ("NLRC") and decisions of the Supreme Court of the Philippines. Contrary or her arguments, neither body has held that Philippine labor arbitrators do not have jurisdiction over tort claims such as those alleged by Mrs. Gonzales in this case. Instead, as the Standard Terms and Conditions of Juan Gonzales' employment contract recognize, the NLRC has original and exclusive jurisdiction to hear and decide <u>all</u> claims by virtue of <u>any</u> law or contract involving Filipino workers for overseas deployment. Thus, courts in the United States have consistently confirmed that the reach of the NLRC includes tort claims in addition to contract causes of action.

A. **The Basis of This of Lawsuit Is Juan Gonzales' Employment Contract.**

In an attempt to avoid the fact that her claims have been fully and fairly resolved in the Philippines, Mrs. Gonzales argues that the present suit is completely independent from her son's employment contract and the mere "contractual" remedies she received in the Philippines. She states: "[t]he words on the 'contract' are meaningless - to Claimant and this Court." Opp. at p. 12-13. Mrs. Gonzales is the Wizard of Oz, who urged Dorothy to "pay no attention to the man

---

any discussion of Philippine law is necessary, the Court should want to be educated on that law, both by Mrs. Gonzales and by the Limitation Plaintiffs.

behind the curtain." Mrs. Gonzales' effort to convince the Court to ignore what is in plain sight cannot succeed.

Juan Gonzales' employment contract was prepared by and administered through the Philippines Overseas Employment Administration (POEA), a governmental agency established to promote and develop overseas employment opportunities to afford protection to Philippine workers and their families. See Cruz v. Chesapeake Shipping, Inc., 932 F.2d 218, 221 (3d Cir. 1991)); see also Del Rosario Affidavit, Exhibit F to Motion for Summary Judgment at ¶2, 4, 5.

> The POEA has promulgated extensive rules and regulations controlling overseas employment to accomplish these objectives. It registers seamen seeking jobs, prescribes standard employment contracts for them, approves their wages, and requires that 80% of their earnings be sent home. The POEA regulates advertisement and placement, contract processing and travel documentation, the filing of grievances, and provides worker assistance and Welfare services.

Cruz, 932 F. 2d at 221. Under Philippine law no foreign employer may hire Philippine workers for overseas employment except through the POEA. See id.

Without the POEA contract of employment, Mr. Gonzales would not, and could not, have served as a member of the crew on Limitation Plaintiffs' vessel. In other words, Juan Gonzales was on the LEON I because he was working on the vessel pursuant to the employment agreement. He was required by Philippine law to sign the POEA contract, and Limitation Plaintiffs were similarly required to hire him through the POEA. See Cruz, 932 F. 2d at 221. The employment contract, thus, is the fundamental basis for Mrs. Gonzales' claim that Juan Gonzales was a Jones Act seaman, as well as the basis for the legal proceedings which she has already pursued to a judgment in the Philippines.

Of course, Mrs. Gonzales would now like the words of the contract - those that provide her full remedy is under Philippine law, and those which called for her to pursue her recovery in the Philippines – to have no meaning to her or this Court. Mrs. Gonzales, however, cannot

conveniently ignore the reality that her son entered into the contract of employment, that the contract provided for the resolution of all claims (including those in tort) in the Philippines, and that she has already recovered pursuant to those provisions.

**B.      The Appellate Decision of The NLRC Does Not State That Mrs. Gonzales Can Maintain This Action In The U.S.**

To further her argument that she has not received a tort remedy, and as Limitation Plaintiffs predicted that she would do, Mrs. Gonzales significantly overstates the appellate decision of the NLRC. According to Mrs. Gonzales' opposition, the NLRC held that:

> . . . the Complainant-beneficiary of the deceased Filipino seaman could yet maintain a tort action the United States District Court though she was also attempting to collect contractual death benefits under the NLRC . . ..

Opp. at p. 18 (emphasis omitted). Mrs. Gonzales goes on to further characterize, mistakenly, the Commission's opinion:

> In other words the Republic of the Philippines has determined that Filipino workers' compensation law would limit the seaman's recovery to the state contractual death benefits.   However, the Filipino appellate court further determined that the law of the Philippines does not bar this Court from providing Claimant with a tort remedy.

Opp. at p. 19 (emphasis omitted).

The plain language of the Commission's decision reveals the inaccuracy of Mrs. Gonzales' representations.  See Exhibit F7 to Motion for Summary Judgment. Most certainly, the decision does not state that Mrs. Gonzales can "maintain" a tort action here in the United States, nor does it state that Mrs. Gonzales' recovery in the Philippines was limited to contractual death benefits.  Instead, the Commission merely held (appropriately) that it did not have the authority to bar Mrs. Gonzales from instituting an action in a foreign court.  See id.  The Commission added "[t]o institute is one thing, for the action to prosper is another."  See id. (emphasis added).  Thus, contrary to Claimant's assertion, the Philippines has not "ruled against

[Limitation Plaintiffs]" nor has it "declared that the United States can apply its law to provide this deceased seaman with a tort remedy." Opp. at p. 20.[2]

### C.    The NLRC Has Jurisdiction Over Tort Claims.

Not only does Mrs. Gonzales disavow Juan Gonzales' contract and minimize the breadth of the NLRC's proceedings, but she also flatly asserts that Philippine law does not grant the NLRC jurisdiction over tort claims. Mrs. Gonzales' argument, however, has no basis in law. The NLRC has jurisdiction to hear and decide <u>all</u> <u>claims</u>, including tort claims, arising out of any law or contract involving overseas employment. Mrs. Gonzales vindicated her contract, tort, and all other claims in the Philippines and received her sole remedy against Limitation Plaintiffs in accordance with that proceeding.

As set forth in Limitation Plaintiffs' Motion, and confirmed by Mr. Ruben Del Rosario, a Philippine attorney specializing in Maritime law with over 21 years of practice, under current Philippine law:

> All money claims filed by Filipino overseas workers against their foreign employers, including those arising out of an employer- employee relationship or by virtue of any law or contract involving their overseas deployment (regardless of whether the same arose from contract or tort) shall be under the original and exclusive jurisdiction of the NLRC.

<u>See</u> Exhibit F to Motion for Summary Judgment at ¶ 8-10. Mrs. Gonzales does not offer an Affidavit to counter Mr. Del Rosario's representations because she cannot; his conclusions are drawn from the plain and simple terms of the contract, which confirm the NLRC's authority over tort as well as contract causes of action. <u>Id</u>.

---

[2]    Mrs. Gonzales argues that Limitation Plaintiffs' attempt to seek a general release from her in the Philippines in exchange for $60,000.00 somehow implies that they knew they were exposed to tort liability in the United States and legally could be made to pay more. Opp. at p. 19-20, fn. 7. In reality, and as events have shown, Limitation Plaintiffs merely took such action because they knew the potential expense of obtaining dismissal of a case in the United States, even one brought inappropriately.

Courts in the United States have also recognized that the NLRC has jurisdiction to hear and resolve Filipino seamen tort claims. The seminal case addressing the NLRC's reach over tort causes of action is <u>Marinechance Shipping Ltd. v. Sebastian</u>, 1998 AMC 2819, 143 F.3d 216 (5th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1055 (1998).[3] In <u>Marinechance</u>, the Fifth Circuit denied two seamen's claims that a POEA forum selection clause was unenforceable, and the court required their claims for injuries to be heard in the Philippines. <u>Marinechance</u>, 143 F. 3d at 222-23. The court rejected the plaintiffs' contention that the forum selection clause contained in the contract did not apply to their tort actions. <u>Id</u>. The terms of the employment contract, which made the Philippines the exclusive jurisdiction for "any and all disputes or controversies arising out of or by virtue of this Contract," expanded the reach of the POEA to include tort as well as contract causes of action. <u>Id</u>. at 223-24.

The <u>Marinechance</u> court explained that the United States Supreme Court and state court precedent supported its conclusion that nothing in the plaintiffs' forum selection clause warranted limiting its application to contract cases. <u>Id</u>. at 222-23. <u>See</u> <u>e.g.</u> <u>Carnival Cruise Lines v. Shute,</u> 499 U.S 585, 587-88 (1991) (Supreme Court held that "all disputes and matters whatsoever arising under, in connection with or incident to this Contract" included the passengers' claims of negligence). In a footnote, the court of appeals further noted that although the Court in <u>Carnival Cruise Lines</u> did not discuss a tort/contract distinction, by enforcing the forum selection clause in a pure negligence claim, it necessarily rejected an across-the-board distinction between tort and contract causes of action. <u>Marinechance</u>,143 F. 3d at 222 n. 27. Moreover, "the policies justifying application of forum selection clauses in contract cases are

---

[3]      Although Mrs. Gonzales claims <u>Marinechance</u> is "much-criticized," she has failed to cite one case that has not followed its holding. To the contrary, and as detailed herein, courts that have been faced with questions involving the enforceability and scope of Filipino seamen employment contracts repeatedly follow the command of <u>Marinechance</u>.

equally applicable to tort causes of action arising out of that contractual relationship. Id. Any contrary conclusion would allow a forum selection clause to be defeated by 'artful pleading.'" Id. (internal citations omitted) (citing Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F. 2d 190, 203 (3d Cir. 1980)).

The Fifth Circuit recently affirmed that Marinechance was controlling in a comparable case involving a Filipino seafarer's employment contract. In Francisco v. Stolt Achievement MT, 293 F. 3d 279 (5th Cir. 2002), the court held that a Filipino seaman injured on a Liberian-operated chemical tanker located in the Mississippi River was required to arbitrate his personal injury claims in the Philippines. The court noted that the contract provided remedies for work-related personal injuries, precisely the kind of claims raised by the plaintiff. Francisco, 293 F.3d at 278. The arbitration provision was not limited to contract claims, but purported to cover all claims "arising from this employment." Id.

Even more recently, in Bautista v. Star Cruises, 286 F. Supp. 2d 1352 (S.D. Fla. 2003), aff'd, No. 03-15884, 2005 WL 90949 (11th Cir. Jan. 18, 2005), the Southern District of Florida similarly held that plaintiff seamen who filed complaints alleging negligence and unseaworthiness under the Jones Act, and failure to provide maintenance and unearned wages under the general maritime law of the United States, must arbitrate all claims in the Philippines. The court found plaintiffs' assertion that their tort claims were not "claims and disputes arising from this employment," and thus not subject to arbitration, was "without merit." Bautista, 286 F. Supp. 2d at 1364.    Because the shipowner was obligated to provide a seaworthy vessel, plaintiffs' alleged damages for failure to use reasonable care to provide and maintain a safe workplace "arose directly from their employment" and from the shipowner's obligations to plaintiffs under the Standard Terms of the employment contract. Id. (citing  Gavino v.

Eurochem Italia, No. Civ.A.01-1314, 2001 WL 1491177, at * 1 (E.D. La. Nov. 23, 2001) (holding that requirement of arbitration of "any and all disputes or controversies arising out of or by virtue of" the Filipino seaman's POEA standard employment contract included tort causes of action).

Relying on Juan Gonzales' contract, the above stated case law, and the Affidavit of Mr. Del Rosario, it is clear that Ms. Gonzales' claim was properly adjudicated in the Philippines. The Philippine NLRC provided an adequate and competent forum, with original and exclusive jurisdiction over all of Mrs. Gonzales' claims, including those claims sounding in tort.

In support of her position that Philippine labor arbiters do not have jurisdiction over seamen's tort claims, Mrs. Gonzales does not offer an affidavit (or even address the Affidavit of Mr. Del Rosario provided by Limitation Plaintiffs), nor does she address the above cited case authorities. Instead, Mrs. Gonzales erroneously asserts that the Philippine Supreme Court has held that the NLRC does not have the authority to hear tort claims, citing Tolosa v. National Labor Relations Commission, et al., G.R. No.149578, Apr. 10, 2003, and Ocheda v. Court of Appeals, G.R. No. 85517, October 16, 1992. Opp. at pgs. 24-26. This identical argument, relying on Tolosa, however, was advanced by the plaintiff seamen in Bautista, and was rejected by both the trial court and the Eleventh Circuit. See Bautista, 2005 WL 90949 at *11. Just as the plaintiffs in Bautista, Mrs. Gonzales complains that Limitation Plaintiffs failed in one of their central duties as an employer and shipowner, i.e., to provide a seaworthy vessel. See id. There is no basis from which to conclude that such a claim does not properly fall under the jurisdiction of the NLRC. See id.; see also Supplemental Affidavit of Ruben T. Del Rosario, attached hereto as Exhibit 1.    The Tolosa and Ocheda opinions do nothing to change this result. See Supplemental Affidavit, Exhibit 1.

Mrs. Gonzales has failed to provide any support for her contention that seafarer tort claims for injuries and deaths arising from claims of negligence and unseaworthiness are not subject to arbitration by the NLRC or by Philippine labor arbiters. This is because that is not the law. The NLRC has jurisdiction over such claims, and Mrs. Gonzales has been awarded her full recovery by the Commission in the Philippines.

## II.    RECOGNITION OF THE PHILIPPINE JUDGMENT DOES NOT VIOLATE U.S. PUBLIC POLICY.

Given that the NLRC exercised proper jurisdiction over every one of Mrs. Gonzales' claims, Mrs. Gonzales alternatively argues that she must be permitted to maintain this action against Limitation Plaintiffs because recognition of the foreign proceeding is contrary to the laws and public policy of this forum. Mrs. Gonzales would have this Court strike down the forum selection and arbitration clauses in Juan Gonzales' employment contract, despite the fact that she has already initiated and resolved her claims in the Philippines pursuant to those very provisions. Her theoretical arguments concerning the appropriateness of having her claims aired in the Philippines simply have no place in this action. This Court is not faced with the task of determining whether Mrs. Gonzales' claims should be heard in the Philippines or the United States. Instead, Mrs. Gonzales has already chosen to vindicate her claims in the Philippines, as compelled by the contract, and she has recovered accordingly.

Mrs. Gonzales' public policy argument fails, even given the abstract and hypothetical bases of her position. First, Mrs. Gonzales contends that the United States has a substantial interest in addressing her claim because Limitation Plaintiffs were operating the Vessel's crane in violation of U.S. law. Not only is this argument irrelevant to the issue before the Court,[4] but it

---

[4]    The appropriate inquiry before the Court is whether or not recognition of Mrs. Gonzales' Philippine judgment would be contrary or prejudicial to U.S. interests, not whether the U.S. has a substantial interest in the matter. See Hilton v. Guyot, 159 U.S. 113, 202-03 (1895). As more fully set forth in Limitation Plaintiffs' Motion

is wholly unsupported by the evidence, which in fact reveals that the crane was properly certified, had been inspected numerous times and was not in violation of U.S. law.  Mrs. Gonzales' second policy argument, that seamen require special protection from oppressive employment contracts, also falls short because the POEA exists specifically to promote and develop overseas employment opportunities and to afford protection to Philippine seamen and their families, just like the Gonzales.  Finally, Mrs. Gonzales' argues that forum selection and arbitration agreements in the employment contracts of seamen are unenforceable on their face, which also has no basis at law, and good legal authority exists to the contrary.  Faced with arguments challenging the enforceability of forum selection and arbitration provisions for Philippine seamen identical to those forwarded by Mrs. Gonzales, courts in the United States routinely uphold such agreements.

> ### A. Mrs. Gonzales' Policy Arguments Are Based On A Hypothetical; She Has Waived All Objections To The Forum Selection And Arbitration Clauses In Juan Gonzales' Employment Contract.

By bringing suit in a particular forum or venue, a plaintiff relinquishes her right to object to that forum.  See Olberding v. Illinois Cent. R. Co., 346 U.S. 338, 340 (1953).  A

---

for Summary Judgment, recognition of the Philippine decision is not contrary or prejudicial to U.S. interests. Instead, such recognition furthers this forum's interest in promoting international trade and commerce. It is additionally in the best interests of the U.S. to recognize and respect the grievance procedure established by the Philippines for the protection of its seamen.

Limitation Plaintiffs do not contend that this forum does not have an interest in resolving questions of liability and negligence in this case. Instead, they only request that Mrs. Gonzales' claims against them be dismissed because she has already recovered her due relief in the Philippines. Mrs. Gonzales' claims against Tate & Lyle and ABS do not share the same idiosyncrasy. Thus, Limitation Plaintiffs in no way imply that Mrs. Gonzales has not rightfully asserted her claims against Tate & Lyle and ABS in this action. Mrs. Gonzales can proceed with those claims as the Court permits. In fact, Mrs. Gonzales should be able to maintain her claim against Tate & Lyle, given that there is ample evidence of its negligence. The evidence fairly suggests that the death of Juan Gonzales was caused in part by Tate & Lyle's imprudent operation of its shore crane in the vessel's hold while the ship's crane was in operation in the same hold. There is expert testimony confirming that Tate & Lyle acted imprudently in operating the shore crane in the number 6 hold while the ship's number 4 crane was also operating in that hold. See e.g. David Smith dep. testimony, at p. 88, l. 14 - p. 89, l. 14, attached as Exhibit 2; Willem Schoonmade, dep. testimony, p. 379, l .5 - p. 383, l .1, attached as Exhibit 3.

plaintiff cannot be permitted to protest the forum that she herself has chosen.  See e.g. Sagent Technology, Inc. v. Micros Sys., Inc., 276 F. Supp 2d 464 (D. Md. 2003); see generally 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE, 3829 (2d ed. 1990).  In fact, submission to a particular forum or dispute resolution process is the clearest evidence of an individual's consent to proceed in the chosen arena.  See Lejano v. K.S. Bandak, 2001 AMC 1724, 1728-29, 2000 WL 33416866 at *3-4 (E.D. La. 11/3/00) (where Filipino seamen filed complaint before the NLRC, the court explained ". . . they submitted to the jurisdiction of the arbitration panel.  There can be no greater proof of an agreement to arbitrate than the filing of a complaint with an arbitration tribunal.").

Mrs. Gonzales filed her claim with the NLRC and pursued that action until she received her full recovery from Limitation Plaintiffs.  She cannot now challenge the 'grievance procedures' set forth in Juan Gonzales' contract, having herself implemented such proceedings, and having accepted the award at the conclusion of such proceedings.  This Court, accordingly, has no choice but to wholly disregard Mrs. Gonzales' objections to that forum and proceedings.

**B.    The U.S. Does Not Have A Substantial Interest In Compensating Mrs. Gonzales Again For Her Claim.**

The nature of maritime commerce is such that a vessel will inevitably have some contacts with many different nations.  This is the case in the present matter, and Mrs. Gonzales cannot argue that the occurrence of Juan Gonzales' accident here in the U.S. was anything more than a mere fortuity.  The accident did not involve anything that was American, or any American actors.  Just because the event fortuitously occurred here in the U.S. does not mean that the Philippine grievance system established to handle claims arising out of such an occurrence should be disregarded, nor does it mean that Mrs. Gonzales is entitled to receive double recovery against the Limitation Plaintiffs.

In an effort to persuade this Court that it has an interest in affording her with additional relief against Limitation Plaintiffs, Mrs. Gonzales proclaims that this Court must "ensure that foreign ships do not injure of [sic] kill American citizens or those individuals lawfully within our borders," and moves on to attack the condition of the M/V LEON I.  Opp. at p. 28.  She flagrantly asserts, with no citation, that the vessel's crane was being operated in violation of U.S. law.  See id.  Notwithstanding the fact that Mrs. Gonzales' argument is not relevant to this Court's determination (see supra p.10-11, fn. 4), and that it is only an attempt to portray Limitation Plaintiffs as bad actors and the M/V LEON I as a 'rust bucket', it is wholly contradicted by the evidence.

The accident involving Juan Gonzales occurred less than a year after the M/V LEON I's cranes were retrofitted.  The retrofitting, including the inspection of the wire rope, was done prudently and properly, under the cognizance of the American Bureau of Shipping.  Limitation Plaintiffs chose ABS and requested that ABS provide a British or American surveyor, despite the fact that it would increase the cost, to ensure that the involvement of ABS was handled correctly and that the surveyor would not be too close to the shipyard during the work.  See Terziev dep. testimony at p. 22, attached hereto as Exhibit 4.  The crane design was "the best" and the most expensive.  See id. at p. 28-29.  Furthermore, the wire rope was inspected carefully by the ABS surveyor and by Eurocarriers' port engineer.  See id. p. 40-41; p. 57-58.  The wire ropes were "very good," and no sort of pre-existing damage on those wire ropes was detected.  See id. at p. 40-41.

Only a few months before the accident, a superintendent engineer for the Limitation Plaintiffs visited the LEON I while she was in port in Crockett, California.  The report of that inspection includes the following comment by the superintendent engineer: "Cargo wires are still

in good working condition."  In addition, the superintendent engineer's report included as an attachment the United States Coast Guard report of its annual Port State Control boarding and inspection of the LEON I, which was accomplished on March 14, 2000 at Crockett, California. No deficiencies with regard to the cranes or the wire rope were noted in that Coast Guard report. See Superintendent Engineer's Report,  Exhibit 2 to the deposition of Sotiris Alexopoulos, which was taken in Greece in May of 2003, pages EC004584, EC004589, EC004600 and EC004621, attached hereto as Exhibit 5.  The LEON I also carried a current Safety Management Certificate, signifying that management of the vessel by Limitation Plaintiffs had been found to satisfy the standards of the International Ship Management Code. See Safety Management Certificate attached hereto as Exhibit 6.   The undisputed evidence, therefore, reveals that a pre-existing defect in the wire rope did not contribute to cause of the accident and that, contrary to Mrs. Gonzales assertions and insinuations, the vessel was in very good condition.

## C.    The Philippine Government Has Established Standards and Regulations To Protect Its Seamen.

Mrs. Gonzales half-heartedly argues that the Court should invalidate Juan Gonzales' contract because it has a duty to protect seamen who are given little bargaining power in their contracts of employment.   Opp. at pp. 28-31.  Mrs. Gonzales does not specifically state why and/or how Juan Gonzales' contract was unfair or oppressive, but instead generally declares that seamen are "wards of admiralty," for whom courthouse doors should always remain open.  This abstract argument has no merit in the present case.  As the Bautista court explained:

> Further, because the standard employment contract that each Plaintiff signed was approved by the POEA, an agency of the Philippine government, Plaintiffs lack a factual basis for the assertion that the NLRC took advantage of them in negotiating the language and terms of the contract. Plaintiffs' employment contracts, with the incorporated Standard Terms, were in the form and language that their own government required to protect its own citizens . . . Where the Philippine government has acted, through the POEA, to protect its citizens and

14

advance their employment opportunities with foreign employers, it is not the role of this Court to second-guess such actions. Therefore, in assessing Plaintiffs' challenges to the hiring process and the manner in which Plaintiffs entered into their employment contracts, this Court must deem the acts of the Philippine government, taken within its own jurisdiction, as valid.

Bautista, 286 F. Supp. 2d at 1362-63 (internal citations omitted). See also Prado, 611 So. 2d at 703; Exhibit F to Motion for Summary Judgment, Del Rosario Affidavit at ¶ 2-8 (fair and ample representation in negotiating contract; seamen not considered the "weaker party;" procedures set in place to ensure seafarers are not disadvantaged when entering into contract of employment).

### D.    The Forum Selection Clause Is Enforceable.

Despite the fact that Mrs. Gonzales has waived any argument concerning the enforceability of the forum selection clause in Juan Gonzales' contract of employment, (see supra p.10-12) her position would fail even if properly before this Court. Forum selection clauses in admiralty cases are presumptively valid and enforceable. M/S BREMEN v. Zapata Off-Shore, 407 U.S. 1, 11 (1972). Forum selection clauses are important in international cases because there is much uncertainty regarding resolution of disputes. Marinchance, 143 F. 3d at 220. Ocean-going vessels travel through many jurisdictions and could become subject to the laws of a particular jurisdiction based solely on the fortuitous event of an accident. Id. "The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce and contracting." BREMEN, 407 U.S. at 13-14. To overcome the presumption that the forum selection clause is enforceable, the party challenging the clause must make a "strong showing" that the clause is unreasonable. Id. at 15.[5]

---

[5]    Mrs. Gonzales erroneously states that BREMEN held forum selection clauses for Jones Act seamen are void. Opp. at p. 35. BREMEN, however, did not involve claims of a seamen under the Jones Act, but instead involved a tug owner's claim for negligent towage and breach of contract. Moreover, the Court enforced the forum selection clause governing disputes arising under the international towage contract between the parties.

Several U.S. courts have enforced forum selection clauses requiring resolution of seamen's disputes in the Philippines. Mrs. Gonzales herself recognizes that the decisions in Marinechance, 143 F.3d 216 (5th Cir. 1998), and Sabocuhan, 78 F. Supp. 2d 603 (S.D. Tex. 1999), upholding forum selection clauses comparable to the one in Juan Gonzales' contract of employment, are instructive in the present case. Opp. at p. 32. Again, even though Mrs. Gonzales claims that these cases are much criticized, she fails to cite one case that has not followed their holdings.

There is simply no factual or legal basis to suggest that the forum selection clause is unreasonable or void against public policy.[6] Mrs. Gonzales certainly had no objections to the clause when she filed her claims against Limitation Plaintiffs in the Philippines. It is only now, after has she received the maximum recovery in that forum, that she insists the forum was inadequate.

In Marinechance, 143 F.3d 216 (5th Cir. 1998), the Fifth Circuit not only addressed whether the seamen's POEA forum selection clauses applied to their tort causes of action, as discussed above, but also whether the clauses were enforceable overall. Applying the principles set forth in the BREMEN and Carnival Cruise Lines cases, the court concluded that the forum selection clause was reasonable and enforceable under the circumstances. Marinechance, 143 F.

---

[6]     Mrs. Gonzales claims that Boyd v. Grand Trunk W.R. Co., 338 U.S. 263 (1949) held forum selection provisions with respect to claims of seamen under the Jones Act "remain void as against public policy." Opp. at p. 35. Since the Court's decision in 1949, however, Boyd has not been relied upon to invalidate a forum selection clause in a foreign seamen's employment contract that was designed by the seamen's own government specifically for his protection. As explained in Nunez v. American Seafoods, 52 P. 3d 720, 721 (Alaska 2002), cases with an international dimension, such as the present case, are inapposite from Boyd ". . . for they involve foreign sailors who were employed by foreign shippers, served in foreign flagged vessels, and were employed under contracts that called for resolution of their legal disputes in other nations; thus, these cases address problems of uniformity and comity that are unique to their international settings and do not purport to apply - or even to meaningfully consider - the Jones Act or the continued vitality of Boyd." Nunez, at 52 P. 3d at 723-24.

3d at 220-22.   The court noted that the contracts of employment for seamen aboard international vessels are routine, and that advance selection of a forum reduces the vessel owner's exposure to suits in forums all over the world and informs the seamen where their causes of action may be maintained.   Id. at 221. Although the seamen's forum selection clause was imposed by the POEA, and not by either party, the court determined that this did not alter its conclusion that the clause was fundamentally fair. Id.; see also Sabocuhan v. Geco-Prakla, 78 F. Supp. 2d 603 (S.D. Tex. 1999) (court upheld the enforceability of a forum selection clause contained in a POEA employment contract, noting that it was bound to follow the decisions of the United States Supreme Court and the Marinechance opinion which was "squarely on point." Id. at 101.)

More recently, in De Joseph v. Odfjell Tankers (USA), Inc., 196 F. Supp. 2d 476 (S.D. Tex. 2002 ), the United States District Court for the Southern District of Texas upheld a forum selection clause in Philippine seaman's employment contract containing language identical to that in the present case.  Dismissing the case for improper venue, the court "unequivocally" held that a plain reading of the contract revealed the POEA forum clause, "much like its predecessor clauses in Marinechance and Sabocuhan, is mandatory and exclusive, such that [the plaintiff] is required by its plain terms to adjudicate his grievance solely in a Filipino venue." Id. at 481.   In reaching its decision, the court noted that the POEA forum selection clauses were intended to protect the rights of Filipino seafarers in overseas employment.   Id. at 481-82. "That vessel owners, who are also obliged to accept the POEA terms, rather than Filipino seamen, have thus far been the parties seeking to enforce these clauses, does not in any way diminish the beneficent and liberal purposes behind the enactment." Id. at 482.

State courts have also addressed the issue of forum selection clauses in Philippine seafarer contracts on several occasions.  In Barcelona v. Sea Victory Maritime, Inc., 619 So. 2d

741 (La. App. 4th Cir. 1993), the court upheld the forum selection provision of a seamen's contract, reasoning that Louisiana had no interest in resolving disputes between Philippine citizens and foreign corporations arising from contracts drafted, regulated, and approved by the Philippine Overseas Employment Administration, and signed in the Philippines. Barcelona, 619 So. 2d at 744-45. The Philippines, however, had a substantial public interest in providing these seamen with a fair hearing and just resolution of their claims. The court additionally held there was no merit to the plaintiffs' contention that the contract was one of adhesion, and it rejected the plaintiffs' assertion that the chosen forum was inadequate, citing the "ample remedies available under Philippine law for the claims advanced by the plaintiffs' petition in this matter." Id. at 746.[7]

A similar Philippine forum selection clause was held enforceable in Prado v. Sloman Neptune Schiffahrts – A.G., 611 So. 2d 691 (La. App. 4th Cir. 1992) (La. 1993). The Prado court focused heavily upon the fact that the seaman's employment contract was in a form and used the language required by his own government in the interests of its own citizens, including the choice-of-law and forum selection clauses. Prado, 611 So. 2d at 1411. The court found that there was no basis for the plaintiff seaman to complain that the defendant took advantage of him in negotiating the language of the contract. Id. "When the Bremen [C]ourt used the terms 'unjust and unreasonable' it was not referring to Prado's desire to choose the forum of maximum recovery." Id. The Prado court additionally found that the BREMEN standard had not been satisfied, for the plaintiff had not accused the defendant of fraud or overreaching -- neither was there anything to suggest that the agreement was an adhesive one. Id. The court recognized:

---

[7]     The court additionally noted that the record revealed the Filipino seamen positions are well paid and sought after. Id. at 746. "The plaintiffs received fair benefits from their employment as seamen and we do not believe holding them to the forum selection clause, which was required by the Philippine government, not the defendant, is an unreasonable condition of employment." Id. at 746.

We would be presumptuous to assume that the procedures for the handling of this case established by the friendly foreign government of the Philippines in pursuit of the welfare of its citizens does not provide a reasonable alternative to those available in this Court.

<u>Id</u>.

Faced with the above well-reasoned case authorities, this Court should find that the forum selection clause in Juan Gonzales' contract of employment is binding and enforceable.[8]  Mrs. Gonzales herself found the forum adequate prior to this last chance attempt to salvage her claims here in this Court.

E.     <u>The Arbitration Provision is Enforceable.</u>

Just as U.S. courts have enforced forum selection clauses requiring resolution of seamen's disputes in the Philippines, the courts likewise consistently uphold POEA international arbitration agreements.  As "foreign arbitration clauses are but a subset of foreign forum selection clauses in general," the analyses of the courts in these cases are not meaningfully different from the courts' analyses in the cases involving foreign forum selection clauses set forth above. <u>Francisco</u>, 293 F. 3d at 278.[9]  Mrs. Gonzales' argument fails on both fronts.

---

[8]     Although the Fourth Circuit has yet to address the enforceability of forum selection clauses in the context of a foreign seaman's employment contract, it is clear that courts have adopted the approach set forth in the BREMEN and Carnival Cruise Lines when addressing forum selection clauses. <u>See</u> <u>Allen v. Lloyd's of London</u>, 94 F.3d 923, 928 (4th Cir. 1996) (forum selection clauses are prima facie valid and enforceable); <u>Mercury Coal & Coke v. Mannesmann Pipe and Steel</u>, 696 F.2d 315, 318 (4th Cir.1982) (applying the BREMEN in non-admiralty claim); <u>Ryan-Walsh v. M/V OCEAN TRADER</u>, 930 F. Supp. 210 (D. Md. 1996) ("It is clear from these decisions that the agreements of private parties, whether freely negotiated or not, are ordinarily to be given full effect by federal courts. Accordingly, choice of law and choice of forum provisions in admiralty contracts have generally been held to be enforceable"); <u>Pasztor v. Croatia Line</u>, 918 F. Supp. 961, 967 (E.D. Va. 1996) (noting that a presumption of enforceability attaches to forum selection clauses in federal courts sitting in admiralty).

[9]     Mrs. Gonzales characterizes the grievance procedures set forth in Juan Gonzales' employment contract as an agreement to arbitrate. Cases interpreting similar POEA contractual provisions have also referred to them as arbitration clauses. <u>See</u> infra, pp. 20-22. In <u>Gavino</u>, 2001 WL 1491177, the Court specifically addressed the issue holding that although the term "arbitration" does not appear in the terms and conditions of the employment contract for seafarers, a plain reading of the terms requires seamen to submit to dispute resolution before the POEA and the NLRC, thus constituting an agreement to arbitrate. The court further noted that " the 'arbitration clause' is more precisely a forum selection clause which compels aggrieved seamen to submit their complaints to the named Philippine agencies." <u>Gavino</u> at *2.

As discussed above, in <u>Francisco v. Stolt Achievement MT</u>, 293 F. 3d 270 (5th Cir. June 4, 2002), the Fifth Circuit held that a Filipino seaman, asserting claims under the Jones Act and under the general maritime law, was required to arbitrate his personal injury tort claims in the Philippines. Like the employment contract at issue in the present case, the "Standard Terms and Conditions" of Francisco's employment contract required him to submit his claim to the exclusive jurisdiction of the Philippine NLRC. <u>Id</u>. at 271 n. 1. The court held that this agreement was subject to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), to which the United States and the Philippines are both signatories, <u>see</u> 9 U.S.C. § 201-208 ("the Convention Act"), and required dismissal of the action.

The <u>Francisco</u> court noted and discussed the various provisions of Philippine law that appear in a standard contract used by the POEA. The court also discussed precedents of the Supreme Court of the United States and noted "there is a strong federal policy in favor of enforcing arbitration agreements." <u>Id</u>. at 274-75 (quoting <u>Dean Witter Rentals Inc., v. Byrd</u>, 470 U.S. 213 (1985)). The court additionally acknowledged that the Supreme Court has noted the goal of the Convention and the "principal purpose" behind the United States adoption of the Convention "was to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." <u>Id</u>. at 275 (quoting <u>Scherk v. Alberto-Culver Co.</u>, 417 U.S. 506, 520 fn. 15 (1974)).

More recently, in <u>Bautista v. Star Cruises</u>, also addressed above, the court similarly held that plaintiff seamen who filed complaints alleging negligence and unseaworthiness under the

Jones Act must arbitrate all claims in the Philippines pursuant to the Standard Terms of the employment contracts. The court explained:

> The United States Supreme Court has expressed a liberal federal policy favoring the enforcement of arbitration provisions. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) *(citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 464 U.S. 1, 24 (1983)). This strong presumption in favor of arbitration "applies with special force in the field of international commerce." *Mitsubishi*, 473 U.S. at 631. As stated by the Court, "the concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce [international arbitration agreements), even assuming that a contrary result would be forthcoming in a domestic context." Id. at 629.

Bautista, 286 F. 2d. at 1361.

The Bautista court relied on Francisco, noting that it is the only circuit court decision directly addressing the issue. The Bautista court reiterated that the Fifth Circuit held that neither the Convention nor its implementing legislation recognize an exception for seamen employment contracts, and that the exclusion of seamen contracts would conflict with the Convention Act's broad coverage of all commercial legal relationships. Id. at 1359. Finally, the court noted that several district courts have compelled arbitration of seamen arbitration agreements under the Convention following the Fifth Circuit's analysis. Id. (citing Jaranilla v. Mesasea Maritime Ltd., No. Civ.A.02-2048, 2002 WL 2022516, at *2 (E.D. La. Aug. 29, 2002); see also Adolfo v. Carnival Corp., d/b/a Carnival Cruise Lines, Inc., No. 0223672 (S.D. Fla. Mar. 17, 2003) (Huck, J.) (order granting motion to compel arbitration), see also Amon v. Norwegian Cruise Lines, Ltd., No. 02-21025 (S.D. Fla. Sept. 26, 2002) (Huck, J.) (order granting motion to compel arbitration); see also Santos v. Carnival Corp., No. 03-20914 (S.D. Fla. Sept. 16, 2003) (King, J.) (order granting motion to compel arbitration)).

Not surprisingly, Mrs. Gonzales' opposition fails to address the above cited case law, or to acknowledge that she has pursued and arbitrated a recovery pursuant to the arbitration proceedings, which itself constitutes a ratification of the agreement to arbitrate. Instead, her argument is based on general citations and policy statements.[10] All told, Mrs. Gonzales' weak appeal to equity is not overcome by the strong public policy favoring arbitration in international disputes, and the cases upholding arbitration provisions similar to the one in the instant case. There is no reason for this Court to question the enforceability of the arbitration provision in Juan Gonzales' contract.

### III.    MRS. GONZALES' NON-PECUNIARY DAMAGE CLAIMS ARE NOT RECOVERABLE.

As detailed in Limitation Plaintiffs' motion, the vast majority of courts have found that Miles v. Apex Marine Corporation, 498 U.S. 19 (1990), clearly holds there is no recovery for non-pecuniary damages in a Jones Act wrongful death action or an action under general maritime law.  Indeed, the U.S. Court of Appeals for the Fifth Circuit recently confirmed this in Scarborough v. Clemco Indus., Inc., 391 F. 3d 660 (11th Cir. Nov. 24, 2004), ruling that a Jones Act seaman or his survivors cannot recover nonpecuniary damages from a non-employer third party. The court explained that it would not "retreat from the bright line directive of Miles," and instead, would follow the Miles directive to maintain uniformity in the damages recoverable by a Jones Act seaman and his survivors.  Scarborough, 391 F. 3d at 668.

---

[10] Mrs. Gonzales cites, at length, case law addressing the unenforceability of arbitration clauses that prohibit a party from vindicating substantive statutory rights such as those created by the Sherman Anti-Trust Act. See Opp. at pp. 20-24. Mrs. Gonzales, however, has not been prohibited from asserting any such special statutory rights. The Jones Act merely eliminates the defense of the fellow-servant rule which had been upheld in The OSCEOLA, 189 U.S. 158 (1903), and permits a negligence cause of action against the employer of a seaman injured in the course of employment. See GRANT GILMORE & CHARLES L. BLACK, JR., THE LAW OF ADMIRALTY § 6-20 (2d ed. 1975). As previously detailed in Section I. C, Mrs. Gonzales' proceeding in the Philippines addressed and resolved all claims against Limitation Plaintiffs arising out of Juan Gonzales overseas employment.

## IV.   <u>CONCLUSION</u>

For all the above reasons, and those advanced in Limitation Plaintiffs' Motion for Summary Judgment, Limitation Plaintiffs respectfully request the Court dismiss Claimant's claims in their entirety.

M. Hamilton Whitman, Jr., Trial Bar No.: 00373
Carla N. Bailey, Trial Bar No.: 26367
Ober, Kaler, Grimes & Shriver
A Professional Corporation
120 E. Baltimore Street
Baltimore, Maryland 21202
(410) 685-1120

Attorneys for Eternity Shipping, Ltd. and
Eurocarriers, S.A.