*dential zone* of Dasmariñas, based on the Land Use Plan of that municipality duly approved by the HLURB in its Resolution No. R-42-A-3 *dated February 11, 1981.* We observe, however, that this factual issue was never determined below. Thus, we cannot conclude that respondent's parcels of land are residential.

WHEREFORE, the challenged Decision dated April 26, 2001 of the Court of Appeals in CA-G.R. SP No. 55052 is AFFIRMED with MODIFICATION in the sense that we allow the DAR to conduct appropriate proceedings to determine whether the subject parcels of land are indeed residential and are thus outside the coverage of R.A. No. 6657.

SO ORDERED.

*Puno (Chairman), Panganiban, Corona* and *Carpio-Morales, JJ.*, concur.

*Judgment affirmed with modification.*

**Note.**—Exhaustion of the remedies in the administrative forum, being a condition precedent prior to one's recourse to the courts and not importantly, being an element of private respondent's right of action, is too significant to be waylaid by the lower court. (*Paat vs. Court of Appeals*, 266 SCRA 167 [1997])

——o0o——



G.R. No. 149578. April 10, 2003.*

EVELYN TOLOSA, petitioner, *vs.* NATIONAL LABOR RELATIONS COMMISSION, QWANA KAIUN (through its resident-agent, FUMIO NAKAGAWA), ASIA BULK TRANSPORT PHILS., INC., PEDRO GARATE and MARIO ASIS, respondents.

*Labor Law; National Labor Relations Commission; Jurisdiction; The allegations in the complaint determine the nature of the action and, consequently, the jurisdiction of the courts.*—Time and time again, we have held that the allegations in the complaint determine the nature of the action and, consequently, the jurisdiction of the courts. After carefully examining the complaint/position paper of petitioner, we are convinced that the allegations therein are in the nature of an action based on a quasi delict or tort. It is evident that she sued Pedro Garate and Mario Asis for gross negligence.

*Same; Same; Same; Damages; The jurisdiction of labor tribunals is limited to disputes arising from employer-employee relations.*—The jurisdiction of labor tribunals is limited to disputes arising from employer-employee relations, as we ruled in *Georg Grotjahn GMBH & Co. v. Isnani*: "Not every dispute between an employer and employee involves matters that only labor arbiters and the NLRC can resolve in the exercise of their adjudicatory or quasi-judicial powers. The jurisdiction of labor arbiters and the NLRC under Article 217 of the Labor Code is limited to disputes arising from an employer-employee relationship which can only be resolved by reference to the Labor Code, other labor statutes, or their collective bargaining agreement."

*Same; Same; Same; Same; Reliefs to be awarded by labor arbiters and the NLRC must still be based on an action that has a reasonable causal connection with labor laws.*—While it is true that labor arbiters and the NLRC have jurisdiction to award not only reliefs provided by labor laws, but also damages governed by the Civil Code, these reliefs must still be based on an action that has a reasonable causal connection with the Labor Code, other labor statutes, or collective bargaining agreements.

*Same; Same; Same; Same; Where such principal relief is to be granted under labor legislation or a collective bargaining agreement, the case should fall within the jurisdiction of the Labor Arbiter and the NLRC.*—"It is the character of the *principal relief* sought that appears essential in this connection. Where such *principal relief* is to be granted under labor legislation or a collective bargaining agreement, the case

* THIRD DIVISION.

EXHIBIT 1A

should fall within the jurisdiction of the Labor Arbiter and the NLRC, even though a claim for damages might be asserted as an incident to such claim."

*Same; Same; Same; Same; It is not the NLRC but the regular courts that have jurisdiction over actions for damages.*—It is not the NLRC but the regular courts that have jurisdiction over actions for damages, in which the employer-employee relation is merely incidental, and in which the cause of action proceeds from a different source of obligation such as a tort. Since petitioner's claim for damages is predicated on a quasi delict or tort that has no reasonable causal connection with any of the claims provided for in Article 217, other labor statutes, or collective bargaining agreements, jurisdiction over the action lies with the regular courts—not with the NLRC or the labor arbiters.

*Same; Same; Appeals; Well-settled is the rule that issues not raised below cannot be raised for the first time on appeal.*—This argument cannot be passed upon in this appeal, because it was not raised in the tribunals a quo. Well-settled is the rule that issues not raised below cannot be raised for the first time on appeal. Thus, points of law, theories, and arguments not brought to the attention of the Court of Appeals need not—and ordinarily will not—be considered by this Court. Petitioner's allegation cannot be accepted by this Court on its face; to do so would be tantamount to a denial of respondents' right to due process.

PETITION for review on certiorari of the decision and resolution of the Court of Appeals.

The facts are stated in the opinion of the Court.

*Sycip, Salazar, Hernandez & Gatmaitan* for petitioner.

*Dante H. Cortez* for private respondents.

PANGANIBAN, *J.*:

As a rule, labor arbiters and the National Labor Relations Commission have no power or authority to grant reliefs from claims that do not arise from employer-employee relations. They have no jurisdiction over torts that have no reasonable causal connection to any of the claims provided for in the Labor Code, other labor statutes, or collective bargaining agreements.



*The Case*

The Petition for Review before us assails the April 18, 2001 Decision[1] of the Court of Appeals (CA) in CA-G.R. SP No. 57660, as well as the April 17, 2001 CA Resolution[2] denying petitioner's Motion for Reconsideration. The dispositive portion of the challenged Decision reads as follows:

"WHEREFORE, premises considered, the instant petition for certiorari is hereby DENIED and accordingly DISMISSED, without prejudice to the right of herein petitioner to file a suit before the proper court, if she so desires. No pronouncement as to costs.[3]

*The Facts*

The appellate court narrated the facts of the case in this manner:

"Evelyn Tolosa (hereafter EVELYN), was the widow of Captain Virgilio Tolosa (hereafter CAPT. TOLOSA) who was hired by Qwana-Kaiun, through its manning agent, Asia Bulk Transport Phils., Inc., (ASIA BULK for brevity), to be the master of the Vessel named M/V Lady Dona. CAPT. TOLOSA had a monthly compensation of US$1700, plus US$400.00 monthly overtime allowance. His contract officially began on November 1, 1992 as supported by his contract of employment when he assumed command of the vessel in Yokohama, Japan. The vessel departed for Long Beach California, passing by Hawaii in the middle of the voyage. At the time of embarkation, CAPT. TOLOSA was allegedly shown to be in good health.

"During 'channeling activities' upon the vessel's departure from Yokohama sometime on November 6, 1992, CAPT. TOLOSA was drenched with rainwater. The following day, November 7, 1992, he had a slight fever and in the succeeding twelve (12) days, his health rapidly deteriorated resulting in his death on November 18, 1992.

"According to Pedro Garate, Chief Mate of the Vessel, in his statement submitted to the U.S. Coast Guard on November 23, 1992 upon arrival in Long Beach, California CAPT. TOLOSA experienced high fever between November 11-15, 1992 and suffered from loose bowel movement

---

[1] Penned by Justice Mercedes Gozo-Dadole, with the concurrence of [illegible] Fermin A. Martin, Jr. (Division chairman) and Portia Aliño-[illegible] (member); Rollo, pp. 8-20.

[2] *Id.*, p. 22.

[3] *Id.*, p. 19.

(LBM) beginning November 9, 1992. By November 11, 1992, his temperature was 39.5 although his LBM had 'slightly' stopped. The next day, his temperature rose to 39.8 and had lost his appetite. In the evening of that day, November 13, 1992, he slipped in the toilet and suffered scratches at the back of his waist. First aid was applied and CAPT. TOLOSA was henceforth confined to his quarters with an able seaman to watch him 24 hours a day until November 15, 1992, when his conditioned worsened.

"On the same day, November 15, 1992, the Chief Engineer initiated the move and contacted ASIA BULK which left CAPT. TOLOSA's fate in the hands of Pedro Garate and Mario Asis, Second Mate of the same vessel who was in-charge of the primary medical care of its officers and crew. Contact with the U.S. Coast Guard in Honolulu, Hawaii (USCGHH) was likewise initiated to seek medical advice.

"On November 17, 1992, CAPT. TOLOSA was 'losing resistance' and his 'condition was getting serious.' At 2215 GMT, a telex was sent to ASIA BULK requesting for the immediate evacuation of CAPT. TOLOSA and thereafter an airlift was set on November 19, 1992. However, on November 18, 1992, at 0753 GMT, CAPT. TOLOSA was officially recorded as having breathed his last.

"Because of the death of CAPT. TOLOSA, his wife, EVELYN, as petitioner, filed a Complaint/Position Paper before the POEA (POEA Case No. 93-06-1080) against Qwana-Kaiun, thru its resident-agent, Mr. Fumio Nakagawa, ASIA BULK, Pedro Garate and Mario Asis, as respondents.

"After initial hearings and submissions of pleadings, the case was however transferred to the Department of Labor and Employment, National Labor Relations Commission (NLRC), when the amendatory legislation expanding its jurisdiction, and removing overseas employment related claims from the ambit of POEA jurisdiction. The case was then raffled to Labor Arbiter, Vladimir Sampang.

x x x x x x x x x

"After considering the pleadings and evidences, on July 8, 1997, the Labor Arbiter Vladimir P. L. Sampang, in conformity with petitioner's plea to hold respondents solidarily liable, granted all the damages, (plus legal interest), as prayed for by the petitioner. The dispositive portion of his Decision reads:

'WHEREFORE, premises considered, the respondents are hereby ordered to jointly and solidarily pay complainants the following:

1. US$176,400.00 (US$2,100.00 x 12 months x 7 years) or P4,586,400.00 (at P26.00 per US$1.00) by way of lost income;

2. interest at the legal rate of six percent (6%) per annum or P1,238,328.00 (from November 1992 to May 1997 or 4 1/2 years);

3. moral damages of P200,000.00;



4. exemplary damages of P100,000.00; and

5. 10% of the total award, or P612,472.80, as attorney's fees.'

x x x x x x x x x

"On appeal, private respondents raised before the National Labor Relations Commission (NLRC) the following grounds:

(a) the action before the Arbiter, as he himself concedes, is a complaint based on torts due to negligence. It is the regular courts of law which have jurisdiction over the action;

(b) Labor Arbiters have jurisdiction over claims for damages arising from employer-employee relationship [Art. 217, Section (a) (3)];

(c) In this case, gross negligence is imputed to respondents Garate and Asis, who have no employer-employee relationship with the late Capt. Virgilio Tolosa;

(d) The labor arbiter has no jurisdiction over the controversy;

x x x x x x x x x

"Despite other peripheral issues raised by the parties in their respective pleadings, the NLRC on September 10, 1998, vacated the appealed decision dated July 8, 1997 of the Labor Arbiter and dismissed petitioner's case for lack of jurisdiction over the subject matter of the action pursuant to the provisions of the Labor Code, as amended."[4] (Citations omitted)

### *Ruling of the Court of Appeals*

Sustaining the NLRC, the CA ruled that the labor commission had no jurisdiction over the subject matter of the action filed by petitioner. Her cause did not arise from an employer-employee relation, but from a quasi delict or tort. Further, there is no reasonable causal connection between her suit for damages and her claim under Article 217 (a) (4) of the Labor Code, which allows an award of damages incident to an employer-employee relation.

Hence, this Petition.[5]

---

[4] CA Decision, pp. 1-3; *id.*, pp. 8-13.

[5] This case was deemed submitted for resolution on September 12, 2002, upon receipt by this Court of the Memorandum for private respondents, signed by Atty. Dante H. Cortez. Filed earlier on August 9, 2002 was the Memorandum for petitioner, signed by Attys. Rodelle B. Bolante and Gener C. Sansaet of Sycip Salazar Hernandez & Gatmaitan.

*Issues*

Petitioner raises the following issues for our consideration:

"I

"Whether or not the NLRC has jurisdiction over the case.

"II

"Whether or not Evelyn is entitled to the monetary awards granted by the labor arbiter."[6]

After reviewing petitioner's Memorandum, we find that we are specifically being asked to determine 1) whether the labor arbiter and the NLRC had jurisdiction over petitioner's action, and 2) whether the monetary award granted by the labor arbiter has already reached finality.

*The Court's Ruling*

The Petition has no merit.

*First Issue:*
*Jurisdiction over the Action*

Petitioner argues that her cause of action is not predicated on a quasi delict or tort, but on the failure of private respondents—as employers of her husband (Captain Tolosa)—to provide him with timely, adequate and competent medical services under Article 161 of the Labor Code:

> "ART. 161. *Assistance of employer.*—It shall be the duty of any employer to provide all the necessary assistance to ensure the adequate and immediate medical and dental attendance and treatment to an injured or sick employee in case of emergency."

Likewise, she contends that Article 217 (a) (4)[7] of the Labor Code vests labor arbiters and the NLRC with jurisdiction to award all kinds of damages in cases arising from employer-employee relations.

---

[6] Petitioner's Memorandum dated August 9, 2002, p. 5; Rollo, p. 197; original in upper case.

[7] Article 217 of the Labor Code as amended reads:

"ART. 217. JURISDICTION OF LABOR ARBITERS AND THE COMMISSION.



Petitioner also alleges that the "reasonable causal connection" rule should be applied in her favor. Citing *San Miguel Corporation v. Etcuban,*[8] she insists that a reasonable causal connection between the claim asserted and the employer-employee relation confers jurisdiction upon labor tribunals. She adds that she has satisfied the required conditions: 1) the dispute arose from an employer-employee relation, considering that the claim was for damages based on the failure of private respondents to comply with their obligation under Article 161 of the Labor Code; and 2) the dispute can be resolved by reference to the Labor Code, because the material issue is whether private respondents complied with their legal

---

(a) Except as otherwise provided under this Code the Labor Arbiters shall have original and exclusive jurisdiction to hear and decide, within thirty (30) calendar days after the submission of the case by the parties for decision without extension, even in the absence of stenographic notes, the following cases involving all workers, whether agricultural or non-agricultural:

1. Unfair labor practice cases;
2. Termination disputes;
3. If accompanied with a claim for reinstatement, those cases that workers may file involving wages, rates of pay, hours of work and other terms and conditions of employment;
4. Claims for actual, moral, exemplary and other forms of damages arising from employer-employee relations;
5. Cases arising from any violation of Article 264 of this Code, including questions involving the legality of strikes and lockouts; and
6. Except claims for Employees Compensation, Social Security, Medicare and maternity benefits, all other claims, arising from employer-employee relations, including those of persons in domestic or household service, involving an amount exceeding five thousand pesos (P5,000.00) regardless of whether accompanied with a claim for reinstatement.

(b) The Commission shall have exclusive appellate jurisdiction over all cases decided by Labor Arbiters.

(c) Cases arising from the interpretation of collective bargaining agreements and those arising from the interpretation or enforcement of company personnel policies shall be disposed of by the Labor Arbiter by referring the same to the grievance machinery and voluntary arbitration as may be provided in said agreements."

[8] 319 SCRA 704, December 3, 1999.

obligation to provide timely, adequate and competent medical services to guarantee Captain Tolosa's occupational safety.[9]

We disagree. We affirm the CA's ruling that the NLRC and the labor arbiter had no jurisdiction over petitioner's claim for damages, because that ruling was based on a quasi delict or tort per Article 2176 of the Civil Code.[10]

Time and time again, we have held that the allegations in the complaint determine the nature of the action and, consequently, the jurisdiction of the courts.[11] After carefully examining the complaint/position paper of petitioner, we are convinced that the allegations therein are in the nature of an action based on a quasi delict or tort. It is evident that she sued Pedro Garate and Mario Asis for gross negligence.

Petitioner's complaint/position paper refers to and extensively discusses the negligent acts of shipmates Garate and Asis, who had no employer-employee relation with Captain Tolosa. Specifically, the paper alleges the following tortious acts:

"x x x [Respondent Asis was the medical officer of the Vessel, who failed to regularly monitor Capt. Tolosa's condition, and who needed the USCG to prod him to take the latter's vital signs. In fact, he failed to keep a medical record, like a patient's card or folder, of Capt. Tolosa's illness."[12]

"Respondents, however, failed Capt. Tolosa because Garate *never* initiated actions to save him. x x x In fact, Garate rarely checked personally on Capt. Tolosa's condition, to wit:"[13]

---

[9] *See* Petitioner's Memorandum, pp. 8-9; Rollo, pp. 200-201.

[10] Article 2176 of the Civil Code reads:

"Art. 2176. Whoever by act or omission causes damage to another, there being fault or negligence, is obliged to pay for the damage done. Such fault or negligence, if there is no pre-existing contractual relation between the parties, is called quasi-delict and is governed by the provisions of this Chapter."

[11] *Manila Hotel Corp. v. National Labor Relations Commission*, 343 SCRA 1, October 13, 2000; *Citibank, N.A. v. Court of Appeals*, 359 Phil. 719; 299 SCRA 390, November 27, 1998; *San Miguel Corp. v. National Labor Relations Commission*, G.R. No. 108001, 325 Phil. 401; 255 SCRA 133, March 15, 1996.

[12] Complaint/Position Paper dated August 23, 1993, p. 7; CA Rollo, p. 47.

[13] *Id.*, pp. 7 & 47.



"x x x Noticeably, the History (Annex "D") fails to mention any instance when Garate consulted the other officers, much less Capt. Tolosa, regarding the possibility of deviation. To save Capt. Tolosa's life was surely a just cause for the change in course, which the other officers would have concurred in had they been consulted by respondent Garate—which he grossly neglected to do.

"Garate's poor judgement, since he was the officer effectively in command of the vessel, prevented him from undertaking these emergency measures, the neglect of which resulted in Capt. Tolosa's untimely demise."[14]

The labor arbiter himself classified petitioner's case as "a complaint for damages, blacklisting and watchlisting (pending inquiry) for gross negligence resulting in the death of complainant's husband, Capt. Virgilio Tolosa."[15]

We stress that the case does not involve the adjudication of a labor dispute, but the recovery of damages based on a quasi delict. The jurisdiction of labor tribunals is limited to disputes arising from employer-employee relations, as we ruled in *Georg Grotjahn GMBH & Co. v. Isnani:*[16]

"Not every dispute between an employer and employee involves matters that only labor arbiters and the NLRC can resolve in the exercise of their adjudicatory or quasi-judicial powers. The jurisdiction of labor arbiters and the NLRC under Article 217 of the Labor Code is limited to disputes arising from an employer-employee relationship which can only be resolved by reference to the Labor Code, other labor statutes, or their collective bargaining agreement."[17]

The pivotal question is whether the Labor Code has any relevance to the relief sought by petitioner. From her paper, it is evident that the primary reliefs she seeks are as follows: (a) loss of earning capacity denominated therein as "actual damages" or "lost income" and (b) blacklisting. The loss she claims does not refer to the actual earnings of the deceased, but to his earning capacity based on a life expectancy of 65 years. This amount is recoverable if the action is based on a quasi delict as provided for in Article 2206 of the Civil Code,[18] but not in the Labor Code.

---

[14] *Id.*, pp. 9 & 50.

[15] Decision dated July 8, 1997, p. 1; CA Rollo, p. 13.

[16] 235 SCRA 216, August 10, 1994.

[17] *Id.*, p. 221, per Puno, *J.*

[18] Article 2202 of the Civil Code reads:

While it is true that labor arbiters and the NLRC have jurisdiction to award not only reliefs provided by labor laws, but also damages governed by the Civil Code,[19] these reliefs must still be based on an action that has a reasonable causal connection with the Labor Code, other labor statutes, or collective bargaining agreements.[20]

The central issue is determined essentially from the relief sought in the complaint. In *San Miguel Corporation v. NLRC,*[21] this Court held:

> "It is the character of the *principal relief* sought that appears essential in this connection. Where such *principal relief* is to be granted under labor legislation or a collective bargaining agreement, the case should fall within the jurisdiction of the Labor Arbiter and the NLRC, even though a claim for damages might be asserted as an incident to such claim."[22]

The labor arbiter found private respondents to be grossly negligent. He ruled that Captain Tolosa, who died at age 58, could expect to live up to 65 years and to have an earning capacity of US$176,400.

It must be noted that a worker's loss of earning capacity and blacklisting are not to be equated with wages, overtime compensation or separation pay, and other labor benefits that are generally cognized in labor disputes. The loss of earning capacity is a relief or claim resulting from a quasi delict or a similar cause within the realm of civil law.

"Claims for damages under paragraph 4 of Article 217 must have a reasonable causal connection with any of the claims provided for in the article in order to be cognizable by the labor arbiter. Only if there is such a connection with the other claims can the claim for damages be considered as arising from employer-employee relations."[23] In the present case, petitioner's claim for damages is not related to any other claim under Article 217, other labor statutes, or collective bargaining agreements.

Petitioner cannot anchor her claim for damages to Article 161 of the Labor Code, which does not grant or specify a claim or relief. This provision is only a safety and health standard under Book IV of the same Code. The enforcement of this labor standard rests with the labor secretary.[24] Thus, claims for an employer's violation thereof are beyond the jurisdiction of the labor arbiter. In other words, petitioner cannot enforce the labor standard provided for in Article 161 by suing for damages before the labor arbiter.

It is not the NLRC but the regular courts that have jurisdiction over actions for damages, in which the employer-employee relation is merely incidental, and in which the cause of action proceeds from a different source of obligation such as a tort.[25] Since petitioner's claim for damages is predicated on a quasi delict or tort that has no reasonable causal connection with any of the claims provided for in Article 217, other labor statutes, or collective bargaining agreements, jurisdiction over the action lies with the regular courts[26]—not with the NLRC or the labor arbiters.

*Second Issue:*
*Finality of the Monetary Award*

Petitioner contends that the labor arbiter's monetary award has already reached finality, since private respondents were not able to file a timely appeal before the NLRC.

---

"Art. 2202. In crimes and quasi-delicts, the defendant shall be liable for all damages which are the natural and probable consequences of the act or omission complained of. It is not necessary that such damages have been foreseen or could have reasonably been foreseen by the defendant.

[19] *Bañez v. Valdevilla,* 331 SCRA 584, May 9, 2000.

[20] *Georg Grotjahn GMBH & Co. v. Isnani, supra; San Miguel Corporation v. Etcuban, supra.*

[21] 161 SCRA 719, May 31, 1988.

[22] *Dai-Chi Electronics Manufacturing Corp. v. Villarama, Jr.,* 238 SCRA 267, November 21, 1994, per Quiason, *J.*

[23] Article 162 of the Labor Code as amended provides:

"ART. 162. SAFETY AND HEALTH STANDARDS

"The Secretary of Labor shall, by appropriate orders, set and enforce mandatory occupational safety and health standards to eliminate or reduce occupational safety and health hazards in all workplaces and institute new, and update existing, programs to ensure safe and healthful working conditions in all places of employment."

[24] *Bañez v. Valdevilla, supra.*

[25] *Georg Grotjahn GMBH & Co. v. Isnani, supra; San Miguel Corporation v. Etcuban, supra.*



Case 1:01-cv-00250-BEL Document 116-3 Filed 02/04/2005 Page 6 of 7

This argument cannot be passed upon in this appeal, because it was not raised in the tribunals *a quo.* Well-settled is the rule that issues not raised below cannot be raised for the first time on appeal. Thus, points of law, theories, and arguments not brought to the attention of the Court of Appeals need not—and ordinarily will not—be considered by this Court.[27] Petitioner's allegation cannot be accepted by this Court on its face; to do so would be tantamount to a denial of respondents' right to due process.[28]

Furthermore, whether respondents were able to appeal on time is a question of fact that cannot be entertained in a petition for review under Rule 45 of the Rules of Court. In general, the jurisdiction of this Court in cases brought before it from the Court of Appeals is limited to a review of errors of law allegedly committed by the court *a quo.*[29]

WHEREFORE, the Petition is hereby DENIED, and the assailed Decision and Resolution AFFIRMED. Costs against petitioner.

SO ORDERED.

*Puno (Chairman), Sandoval-Gutierrez, Corona* and *Carpio-Morales, JJ.,* concur.

*Petition denied, judgment and resolution affirmed.*

**Note.**—Regular courts have jurisdiction over actions for damages where the employer-employee relationship is merely incidental and the cause of the action proceeds from a different source of obligation, such as where the damages claimed were based on tort, malicious prosecution, or breach of contract, or when the claimant seeks to recover a debt from a former employee or seeks liquidated damages in enforcement of a prior employment contract. (*Bañez vs. Valdevilla,* 331 SCRA 584 [1999])

——o0o——

[27] *Hufana v. Genato,* G.R. No. 141209, 365 SCRA 384, September 17, 2001; *Mendoza v. Court of Appeals,* G.R. No. 116216, 274 SCRA 527, June 20, 1997.

[28] *Mendoza v. Court of Appeals, supra.*

[29] *Ibid.*



G.R. No. 143540. April 11, 2003.*

JOEL G. MIRANDA, petitioner, *vs.* ANTONIO C. CARREON, MILAGROS B. CASCO, ELSIE S. ESTARES, JULIUS N. MALLARI, ELINORA A. DANAO, JOVELYN G. RETAMAL, MARIFE S. ALMAZAN, JONALD R. DALMACIO, JENNIFER C. PLAZA, RIZALDY B. AGGABAO, VILMA T. VENTURA, BENEDICT B. PANGANIBAN, JOSE L. GOMBIO, MELCHOR E. SORIANO, ZARINA C. PANGANIBAN, EMELITA D. TAUYA, EVANGELINE A. SICAM, MATABAI AQUARIOUS Q. CULANG, MELVIN L. GARCIA, JOHNNY N. YU, JR., LOIDA J. PURUGGANAN, EDUARDO S. VALENCIA, EDITHA A. REGLOS, HENRY P. MAPALAD, RAMIL C. GALANG, JUSTINA M. MACASO, MARTHA B. ALLAM, and ARSENIA A. CATAINA, respondents.

*Civil Procedure; Pleadings and Practice; Actions; Real Party-In Interest; Even as a taxpayer, petitioner does not stand "to be benefited or injured by the judgment of the suit."*—Petitioner insists though that as a taxpayer, he is a real party-in-interest and, therefore, should continue and maintain this suit. Such contention is misplaced. Section 2, Rule 3 of the same Rules provides: "Section 2. *Parties in interest.*—A real party in interest is the party who *stands to be benefited or injured by the judgment in the suit,* or the party entitled to the avails of the suit. *Unless otherwise authorized by law or these Rules,* every action must be prosecuted or defended in the name of the real party in interest." (emphasis supplied) Even as a taxpayer, petitioner does not stand "to be benefited or injured by the judgment of the suit." Not every action filed by a taxpayer can qualify to challenge the legality of official acts done by the government. It bears stressing that "a taxpayer's suit refers to a case where the *act complained of directly* involves the *illegal disbursement of public funds from taxation.*" The issue in this case is whether respondents' services were illegally terminated. Clearly, it does not involve the illegal disbursement of public funds; hence, petitioner's action cannot be considered a taxpayer's suit.

*Constitutional Law; Tenure of Office; Civil Service Law; Incompetence and Inefficiency; The Civil Service Law provides specific grounds for dismissing a government officer or employee from the service.*—The 1987 Constitution provides that "no officer or employee of the civil service shall be removed or suspended *except for cause provided by law.*" Under the Revised Administrative Code of 1987, a government officer or employee may be removed from the service on two (2) grounds: (1) unsatisfactory

* EN BANC.