628  SUPREME COURT REPORTS ANNOTATED

Hualam Construction and Dev't. Corp. vs. Court of Appeals

petitioners' ouster from the premises was imminent. If the petitioners' theory—that a supersedeas bond was not necessary—were correct, then certainly the MTC, in granting the motion, would have acted without or in excess of jurisdiction or with grave abuse of discretion amounting to lack of jurisdiction. The appeal earlier interposed cannot then be said to constitute an adequate remedy to prevent their ouster from the premises. They cannot be confined or restricted to the sole remedy of an appeal and, as suggested by the respondent Court, simply wait for the judgment thereon by the RTC. Under Section 5 of Rule 39, the said court may issue such orders of restitution as equity and justice may warrant in the event of a partial or total reversal of the appealed decision. Under such circumstances, the appellate process would be too slow and the wait too long; it is also evident that such mode of review would be inadequate and insufficient. It is settled that although the extraordinary writ of *certiorari* is not proper when an ordinary appeal is available, it may be granted where it is shown that the appeal would be inadequate, slow, insufficient and will not promptly relieve a party from the injurious effects of the order complained of,[21] or where appeal is inadequate and ineffectual.[22]

Prescinding, therefore, from the foregoing discussions, it is clear that the dispositive portion of the challenged decision of the respondent Court is correct, except insofar as that portion reinstating the decision of the MTC is concerned.

**WHEREFORE**, the Petition is DISMISSED for lack of merit and the Decision of the respondent Court of Appeals of 5 August 1988 is AFFIRMED subject to the modification above indicated. Costs against petitioners.

SO ORDERED.

*Gutierrez, Jr. (Chairman), Bidin, Romero* and *Melo, JJ.,* concur.

*Petition dismissed; decision affirmed with modification.*

———————

[21] St. Peter Memorial Park vs. Campos, 63 SCRA 180 [1975].

---

ment suit is the fair rental value or reasonable compensation for the use and occupation of the real property (*Shoemart Inc. vs. Court of Appeals*, 190 SCRA 189).

——o0o——

G.R. No. 85517.  October 16, 1992.*

DOROTEO OCHEDA, petitioner, *vs.* THE HONORABLE COURT OF APPEALS and THE HEIRS OF EDUARDO SANTOS, respondents.

*Civil Law; Labor Law; Evidence; No attempt by petitioner to show that the case falls under any of the accepted exceptions to the well-settled and oft-repeated rule that findings of facts of the Court of Appeals are binding upon the Court.*—Regarding the issue of the factual findings upon which the second, third and fourth assigned errors are based, We find no cogent reason to disturb such findings of both the trial and respondent courts. Petitioner does not even attempt to show that this case falls under any of the accepted exceptions to the well-settled and oft-repeated rule that findings of facts of the Court of Appeals are binding upon this Court.

*Same; Same; Quasi-delict; Jurisdiction; Petitioner did not raise in his answer the defense of lack of jurisdiction with respect to the claim for damages arising from a quasi-delict.*—Petitioner's unusual patience and tenacity on the first assigned error merits him no reward. In the first place, he did not raise in his answer that defense with respect to the claim for damages arising from a quasi-delict. His affirmative defense of lack of jurisdiction specifically refers to the allegation in paragraph 8 of the complaint concerning the SSS, Medicare, Workmen's Compensation and insurance benefits the award of which, according to him, falls within the competence and jurisdiction of other administrative or quasi-judicial bodies. In fact, he even considers such allegation to be non-essential to the complaint's cause of action—the negligent operation of the elevator.

———————

* THIRD DIVISION.

EXHIBIT 1B

*Same; Same; Same; Estoppel; While it is true that jurisdiction over the subject matter of a case may be raised at any stage of the proceedings as the same is conferred by law, it is nevertheless settled that a party may be barred from raising it on the ground of estoppel.*—Petitioner was, therefore, effectively estopped from raising the issue of jurisdiction with respect to the damages arising from a quasi-delict. While it is true that jurisdiction over the subject matter of a case may be raised at any stage of the proceedings as the same is conferred by law, it is nevertheless settled that a party may be barred from raising it on the ground of estoppel. The reason for this is that after voluntarily submitting a cause and encountering an adverse decision on the merits, it would be improper and too late, to say the least, for the loser to question the jurisdiction or power of the court. It is not correct for a party who has invoked the jurisdiction of a court in a particular matter to secure affirmative relief, to afterwards deny that very jurisdiction to escape penalty.

*Same; Same; Same; Damages may not be awarded in accordance with Section 217 of the Labor Code as amended for there is no reasonable causal connection with the employer-employee relationship.*—And even granting, for the sake of argument, that the issue of jurisdiction can still be raised in connection with its specific reference to the damages arising out of a quasi-delict, petitioner's thesis would still fail. Such damages may not be awarded in accordance with Section 217 of the Labor Code, as amended, for there is no reasonable causal connection with the employer-employee relationship. At the time the cause of action accrued, Article 217 of the Labor Code required that in order that the Labor Arbiter may adjudicate claims not included in the other paragraphs, the same must arise out of employer-employee relations.

*Same; Same; Same; The source of the obligation upon which the private respondents cause of action is based is a quasi-delict or tort which has no reasonable connection with any of the claims provided for in the aforesaid Article 217 of the Labor Code.*—In the instant case, the source of the obligation upon which the private respondents' cause of action is based is a quasi-delict or tort which has no reasonable connection with any of the claims provided for in the aforesaid Article 217 of the Labor Code. It would have been entirely different if the claim for damages arose out of, for instance, the illegal dismissal of Eduardo, in which case the Labor Arbiter would have exclusive jurisdiction thereon.

PETITION for review from the decision of the Court of Appeals.

The facts are stated in the opinion of the Court.

  *Angara, Abello, Concepcion, Regala & Cruz Law Offices* for Fujitec, Inc.

  *Eufemio Law Offices* for C.E. Construction Corp. Inc.

DAVIDE, JR., *J.*:

The trial court's jurisdiction over an action for damages arising from a quasi-delict which resulted in the death of an employee while in the performance of his duty is challenged in this case.

The late Eduardo Santos was, at the time of his death, employed as a painter by the petitioner who was a sub-contractor for the painting job on M.J. Building then being constructed along Salcedo Street, Makati, Metro Manila. The C.E. Construction Corporation, Inc. (CECCI) was the principal contractor thereof by virtue of a contract it entered into with M.J. Development Corporation, the owner of the building. Another corporation, Fujitec Philippines Industrial Company, Inc. (FUJITEC), was contracted by M.J. Development Corporation to install two (2) standard scenic elevator units in the building.

When the painting job was almost complete, *i.e.*, all that remained to be painted was the wall of the shaft for the second elevator, the petitioner trimmed his work force to two (2) employees, Hernani Gozun and Eduardo Santos; these employees were tasked to finish the painting. On 5 February 1981, they started work in the inner wall of the elevator shaft; to paint the same, they had to stand on top of the elevator which was then on the second floor of the building. After they finished, they called on the boy operating the elevator to ask him to bring the same down to the first floor. Instead of lowering the elevator, however, the boy brought it up to the sixth floor. The sudden upward movement caused the elevator to jerk and the two (2) painters to lose their balance. Hernani was able to cling to the cable but Eduardo fell off the top, found himself pinned between the shaft and the elevator as the latter was moving upward and then fell to the ground when the elevator finally stopped on the sixth floor. Hernani rushed to Eduardo's aid upon hearing the

latter's cry for help. The former lifted Eduardo in his arms and, with the help of another man, brought him to the Makati Medical Center where he later died. While the elevator boy was never identified, it is alleged that he worked for CECCI.

On 11 September 1981, the spouses Catalino and Ester Santos, together with Wilma Palabasan-Santos, parents and widow, respectively, of Eduardo, filed a Complaint[1] for damages against Doroteo Ocheda and CECCI before the then Court of First Instance (now Regional Trial Court) of Pampanga. The case was docketed as Civil Case No. 6263 and was assigned to Branch 42 thereof. The complaint alleges the foregoing facts and, in addition, specifically states that while Eduardo was employed by the petitioner in 1979 and received a daily wage of P35.00, the petitioner did not place him within "any SSS, Medicare and Workmen's Compensation coverage." It is further averred that the elevator boy was inexperienced for the work assigned to him. They then asked for judgment ordering the defendants, jointly and severally, to pay P10,000.00 as burial expenses, P30,000.00 as moral damages, attorney's fees and compensatory damages as may be proved at the trial and costs.

Petitioner filed an Answer with a Counterclaim against the plaintiff, and a Cross-Claim against CECCI.[2] He alleges therein that Eduardo was employed by him only a week before the accident and purely on a *casual basis* for the particular painting job. As affirmative defense, he avers that Eduardo's death was due to the negligence and carelessness of the elevator boy, an employee of CECCI. Thus, the latter is solely liable for the said death and no cause of action exists against him. Moreover, it is postulated that the trial court has no jurisdiction over claims involving SSS, Medicare, Workmen's Compensation and insurance benefits. Such jurisdiction is vested in other administrative or quasi-judicial bodies; furthermore; he avers that the allegation concerning such claims (paragraph 8 of the complaint) is not essential to the plaintiffs' cause of action which is the negligent operation of the elevator. In his counterclaim, petitioner asks for an award of attorney's fees in the amount of

---

[1] Rollo, 38-41.

P10,000.00, and the expenses of litigation.

In due course, CECCI likewise filed its Answer with a Third-Party Complaint[3] against FUJITEC which it alleged to be liable, being the employer of the elevator boy. FUJITEC filed its Answer to the said Third-Party Complaint[4] denying the allegations made therein and asserting that the operation of the elevator was turned over to the building owner long before the fatal accident.

Pre-trial was conducted on 23 September 1983. The pre-trial order issued by the trial court embodies the respective positions of the parties. As to herein petitioners, the Pre-trial order summarized his stand as follows:

"2. *Defendant Ocheda's Case:*

Defendant Doroteo Ocheda denies liability. He claims that the complaint states no cause of action against him; that the death of the deceased Eduardo Santos resulted from the operation of the elevator at the construction site; that he had nothing to do with the operation, or control, or management of the elevator in question, hence, the death of Eduardo Santos is not attributable to him; that his participation in the construction of the building was limited solely to painting specific portions thereof; that he filed a cross-claim against defendant C.E. Construction Corp. because the said corporation was the general contractor of the building, operator/maintainer of the elevator, and employer of the elevator boy."[5]

During the trial of the case on the merits, petitioner presented two (2) witnesses—Josefino Rivera and himself.[6]

On 24 February 1986, the trial court rendered its decision[7] finding both the petitioner and CECCI liable for the death of Eduardo. The dispositive portion of the decision reads as follows:

---

[3] Rollo, 46-52.
[4] *Id.*, 53-59.
[5] Rollo, 61.
[6] *Id.*, 63.
[7] *Id.*, 61-84.

634    SUPREME COURT REPORTS ANNOTATED

*Ocheda vs. Court of Appeals*

"WHEREFORE, in view of the foregoing considerations, judgment is hereby rendered as follows:

1. The defendant (sic) Doroteo Ocheda and C.E. Construction Corporation, Inc. are ordered to pay jointly and severally the plaintiffs the following amounts:

    a) Seven Thousand Three Hundred Fifty Pesos (P7,350.00) as burial expenses;
    b) Thirty Thousand Pesos (P30,000.00) as moral damages;
    c) Five Thousand Pesos (P5,000.00) as attorney's fees; and
    d) Costs of suit.

2. The third-party complaint is hereby dismissed and the third-party plaintiff C.E. Construction Corporation, Inc. is ordered to pay the third-party defendant Fujitec the sum of Fifteen Thousand Pesos (P15,000.00) as attorney's fees, plus the cost of suit.

3. The cross-claim, and counterclaim of defendant Ocheda and the counterclaim of defendant C.E. Construction are hereby dismissed. SO ORDERED."[8]

This determination of liability is based on the trial court's findings that:

"It has been sufficiently established that it was defendant Ocheda who caused the accident to happen. It was defendant Ocheda who ordered the late Eduardo Santos and Hernani Gozun to use the top of the elevator as stepping board while painting the wall of the elevator shaft. And defendant Ocheda failed to exercise the diligence of a good father of a family in the supervision of his employees.

It has likewise been shown that C.E. Construction was, at the time of the incident in question, in full control of the building since the same was not yet accepted by the owner thereof. C.E. Construction was the general contractor of the building, hence, it was in full management and control of the elevator because the same was already turned over to and accepted by the building owner from Fujitec. As such, C.E. Construction should have guarded against the unauthorized use of the elevator by people working in the building. At the time of the incident, the late Eduardo Santos was an employee of defendant Ocheda, a sub-contractor of C.E. Construction. In view of all

---
[8] Rollo, 84.

---

VOL. 214, OCTOBER 16, 1992    635

*Ocheda vs. Court of Appeals*

these, C.E. Construction is equally liable with defendant Ocheda pursuant to Article 2180, in conjunction with Article 2176 of the Civil Code. The elevator which caused the injury and subsequent death of Eduardo Santos was under the management and control of C.E. Construction. Consequently, had C.E. Construction used proper care in the management and operation of the elevator, and had it exercised the diligence of a good father of a family in the supervision of its employees, then the fatal incident would not have happened."[9]

Petitioner and CECCI appealed this adverse decision to the respondent Court of Appeals which docketed the case as C.A.-G.R. CV No. 09574. In the Brief he submitted, petitioner made the following assignment of errors:

"I.

THE LOWER COURT ERRED IN HOLDING THAT THE REGIONAL TRIAL COURT HAD JURISDICTION OVER THE COMPLAINT FILED;

II

THE LOWER COURT ERRED IN APPLYING ARTICLE 2180 OF THE NEW CIVIL CODE TO OCHEDA;

III

THE LOWER COURT ERRED IN HOLDING THAT OCHEDA WAS GUILTY OF NEGLIGENCE FOR THE DEATH OF SANTOS;

IV

THE LOWER COURT ERRED IN HOLDING OCHEDA JOINTLY AND SEVERALLY LIABLE WITH C.E. CONSTRUCTION CORP. TO THE PLAINTIFFS FOR DAMAGES."[10]

On the other hand, CECCI, in its Brief, contended that the trial court gravely erred in finding it solidarily liable with the

---
[9] *Id.*, 82-83.
[10] Rollo, 25.

herein petitioner for the death of Eduardo, in awarding moral damages, in dismissing the third-party complaint and in not holding the plaintiffs therein liable for damages, attorney's fees and costs of the suit.[11]

On 1 September 1988, the respondent Court promulgated its decision[12] upholding the findings of the trial court but reducing the amount of damages; it likewise eliminated the grant of attorney's fees in favor of FUJITEC. Thus:

"WHEREFORE, the decision appealed from is hereby AFFIRMED in all respects, except as modified herein by reducing the award for actual or compensatory damages to only P5,880.00; reducing the damage caused by death to only P24,000.00; and eliminating the award of P15,000.00 attorney's fees to third party defendant Fujitec. No costs.

SO ORDERED."[13]

The reduction in the award of damages was based on the respondent Court's finding of contributory negligence on the part of Eduardo Santos when he failed to heed the order to tie a rope around his waist while working.

As to the issue of lack of jurisdiction on the part of the trial court, the respondent Court held:

"The case at bar is being prosecuted in behalf of a deceased, not dismissed, employee for damages arising from the death of the employee based on quasi-delict founded on an undoubted principle of justice recognized by all legislations that every injury, loss or damage which a person receives in his right (sic), be it by act or by omission, creates a juridical relation from which is derived the right which the aggrieved party has to be indemnified and the consequent obligation by the other party.

In the recent case of Floresca vs. Philex Mining Corporation, 136 SCRA 141, the Supreme Court ruled that recovery under the new Civil Code for damages arising from negligence is not barred by Article 173

---

[11] *Id.*, 25-26.
[12] *Id.*, 23-31; per Associate Justice Luis L. Victor, concurred in by Associate Justices Ricardo P. Tensuan and Venancio D. Aldecoa, Jr.
[13] Rollo, 30.

---

of the New Labor Code. In this case, it was further held that an ordinary court has jurisdiction over complaints for damages filed by heirs of mining employees against the mining corporation for the death of the former allegedly caused by the negligence of their employer."[14]

His motion to reconsider the decision having been denied in the resolution of the respondent Court dated 18 October 1988,[15] petitioner took this recourse under Rule 45 of the Rules of Court. He reiterates in the instant petition for review the assignment of errors submitted before the respondent Court.

This Court gave due course to the petition and required the parties to submit their respective Memoranda[16] after the submission of the Comment to the petition by the private respondents, the Reply thereto by the petitioner and the Rejoinder to the latter by the private respondents.

We find no merit in the petition.

Regarding the issue of the factual findings upon which the second, third and fourth assigned errors are based, We find no cogent reason to disturb such findings of both the trial and respondent courts. Petitioner does not even attempt to show that this case falls under any of the accepted exceptions to the well-settled and oft-repeated rule that findings of facts of the Court of Appeals are binding upon this Court.[17]

Anent the alleged lack of jurisdiction on the part of the trial court, petitioner admits that the private respondent's cause of action, as expressed in the complaint, is based on a quasi-delict. The former submits, however, that since the monetary award is sought in connection with the employer-employee relationship which existed between him and the late Eduardo Santos, only Labor Arbiters, pursuant to Article 217 of the Labor Code of the Philippines as it was then worded,[18] "have original and exclusive

---

[14] *Id.*, 26.
[15] Rollo, 34-36.
[16] *Id.*, 183.
[17] Remalante vs. Tibe, 158 SCRA 138 [1988]; Medina vs. Asistio, 191 SCRA 218 [1990].
[18] Amended by P.D. No. 1691; B.P. Blg. 227 subsequently amended the former by, *inter alia*, deleting paragraph 6 of Article 217

jurisdiction over them. Under the said provision, "all money claims of workers" and "all other claims arising from employer-employee relations" are exclusively cognizable by Labor Arbiters. We ruled in *Getz Corp. vs. Court of Appeals*[19] that pursuant to P.D. No. 1691, such claims include moral and exemplary damages. Petitioner further contends that *Floresca vs. Philex Mining Corp.*,[20] which the respondent Court relied upon, is not applicable because the cause of action involved therein accrued on 28 June 1967, or before the enactment of the Labor Code and P.D. No. 1691; he asserts that the decision therein constituted "judicial legislation".

Petitioner's unusual patience and tenacity on the first assigned error merits him no reward. In the first place, he did not raise in his answer that defense with respect to the claim for damages arising from a quasi-delict. His affirmative defense of lack of jurisdiction specifically refers to the allegation in paragraph 8 of the complaint concerning the SSS, Medicare, Workmen's Compensation and insurance benefits the award of which, according to him, falls within the competence and jurisdiction of other administrative or quasi-judicial bodies. In fact, he even considers such allegation to be non-essential to the complaint's cause of action—the negligent operation of the elevator. This is how he worded that particular affirmative defense:

"SECOND AFFIRMATIVE DEFENSE

12. He need not deny nor (sic) admit the allegations in paragraph 8 regarding the alleged SSS, Medicare, Workmen's Compensation, and insurance coverage since this Honorable Court has no jurisdiction over disputes involving cases of these sorts, jurisdiction thereof being vested in other administrative or quasi-judicial bodies. Furthermore, the allegations in said paragraph 8 of the complaint is (sic) not essential to plaintiff's cause of action which is the negligent operation of the elevator resulting in the death of Eduado (sic) Santos."[21]

which contained the phrase "all other claims arising from employer-employee relations."

---

[19] 116 SCRA 86 [1982].
[20] 136 SCRA 141 [1985].
[21] Rollo, 44-45.

Obviously, he did not even have Labor Arbiters in mind for such cases. He knew, or at least ought to have known, that expressly excepted from the broad jurisdiction of Labor Arbiters in Section 217 of the Labor Code are "claims for employees compensation, social security, medicare and maternity benefits."

In the second place, during the pre-trial conference, petitioner failed to raise the issue of jurisdiction. He instead harped on the lack of a cause of action—his first affirmative defense—which was based on the theory that the proximate cause of Eduardo's death was the negligence of the elevator boy who was an employee of CECCI; in fact, it was against the latter that he filed a cross-claim.

In the third place, petitioner openly and unqualifiedly invoked and submitted to the jurisdiction of the trial court by setting up a counterclaim, asking for relief in the concept of attorney's fees and expenses of litigation against CECCI, whom he alleged to be the employer of the elevator boy.

Finally, he presented evidence to prove that the proximate cause of the accident and resulting death of Eduardo was the negligence of the elevator boy. He concludes that as employer of the said boy, CECCI is solely liable to the private respondents for the damages claimed by the latter.

Petitioner was, therefore, effectively estopped from raising the issue of jurisdiction with respect to the damages arising from a quasi-delict. While it is true that jurisdiction over the subject matter of a case may be raised at any stage of the proceedings as the same is conferred by law,[22] it is nevertheless settled that a party may be barred from raising it on the ground of estoppel.[23] The reason for this is that after voluntarily sub-

---

[22] Lagman vs. Court of Appeals, 44 SCRA 228 [1972]; see also People vs. Eduarte, 182 SCRA 750 [1990].

[23] Tijam vs. Sibonghanoy, 23 SCRA 29 [1968]; Quimpo vs. De la Victoria, 46 SCRA 139 [1972]; Zalueta vs. Pan American World Airways, Inc., 49 SCRA 1 [1973]; People vs. Munar, 53 SCRA 278 [1973]; Capilitan vs. De la Cruz, 55 SCRA 706 [1974]; Balais vs. Balais, 159 SCRA 37 [1988]; Tejones vs. Gironella, 159 SCRA 100 [1988]; Mar-

lockouts; and

   6. Except claims for Employees Compensation, Social Security, Medicare and maternity benefits, all other claims, arising from employer-employee relations, including those of persons in domestic or household service, involving an amount exceeding five thousand pesos (P5,000.00) regardless of whether accompanied with a claim for reinstatement.

   (b) The Commission shall have exclusive appellate jurisdiction over all cases decided by Labor Arbiters.

   (c) Cases arising from the interpretation or implementation of collective bargaining agreement and those arising from the interpretation or enforcement of company personnel policies shall be disposed of by the Labor Arbiter by referring the same to the grievance machinery and voluntary arbitration as may be provided in said agreements."

   In the instant case, the source of the obligation upon which the private respondents' cause of action is based is a quasi-delict or tort which has no reasonable connection with any of the claims provided for in the aforesaid Article 217 of the Labor Code. It would have been entirely different if the claim for damages arose out of, for instance, the illegal dismissal of Eduardo, in which case the Labor Arbiter would have exclusive jurisdiction thereon.[26]

   It would have also been different if the petitioner had grounded his claim of lack of jurisdiction on the basis of the Workmen's Compensation Law. Unfortunately, he adroitly avoided this issue from the very beginning not only because of his claim that the allegation on this matter is irrelevant to the private respondents' theory but, and more importantly, he did not, as revealed by the latter, register Eduardo with the Social Security System pursuant to the Amended Rules on Employees Compensation in relation to Chapter II, Title II, Book IV of the Labor Code of the Philippines (P.D. No. 442), as amended. To avoid possible liability thereunder, and more particularly the criminal and civil sanctions under Section 4, Rule II of said Rules which reads:

_____

[26] Vargas vs. Akai Philippines, Inc., 156 SCRA 531 [1987]; Victorias Milling Co., Inc. vs. Intermediate Appellate Court, 200 SCRA 1 [1991].

ized as follows:

"SEC. 4. *Penalty.*—Any violation of this Rule shall be penalized as follows:

   (1) In case of failure or refusal to register employees, the employer or responsible official who committed the violation shall be punished with a fine of not less than P1,000 nor more than P10,000 and/or imprisonment for the duration of the violation or noncompliance or until such time that rectification of the violation has been made, at the discretion of the court.

   (2) In case a compensable contingency occurs after 30 days from employment and before the System receives any report for coverage about the employee or EC contribution on his behalf, his employer shall be liable to the System for the lump sum equivalent to the benefits to which he or his dependents may be entitled."

petitioner unabashedly asserted in his Answer that the late Eduardo Santos was his employee for barely a week and that he was hired on a *casual basis* only for the particular painting job on the M.J. Building. Having done so, he cannot now be heard to make a strained and tenuous analysis of *Floresca vs. Philex Mining Corporation.*[27]

   WHEREFORE, for lack of merit, the instant petition is DENIED with costs against the petitioner.

   This decision is immediately executory.

   SO ORDERED.

   *Gutierrez, Jr., (Chairman), Bidin, Romero* and *Melo, JJ.,* concur.

   *Petition denied.*

———o0o———

_____

[27] *Supra.*