IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT<br>OF ETERNITY SHIPPING, LTD. AND<br>EUROCARRIERS, S.A., FOR EXONERATION<br>FROM OR LIMITATION OF LIABILITY | *<br><br>*<br><br>* | CIVIL ACTION<br>NO. L01CV0250 |
| * * * * * * * | * | |
| TATE & LYLE NORTH AMERICAN<br>SUGARS, INC., | *<br>* | |
| Claimant and Third-Party Plaintiff | * | |
| v. | * | |
| AMERICAN BUREAU OF SHIPPING | * | |
| Third-Party Defendant | * | |
| * * * * * * * | * | |

**THIRD-PARTY DEFENDANT AMERICAN BUREAU OF SHIPPING'S
REPLY MEMORANDUM IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Third-Party Defendant, American Bureau of Shipping, by its attorneys, Robert G. Clyne and James A. Saville, Jr., of Hill Rivkins & Hayden LLP, and James M. Bartlett III of Semmes Bowen & Semmes, P.C., submits this Reply Memorandum in Support of its Motion for Summary Judgment with respect to the claims of Third-Party Plaintiffs, Tate & Lyle North American Sugars, Inc. ("Tate & Lyle") and Josephina Gonzales ("Gonzales") (collectively "Third-Party Plaintiffs" or "Tate & Lyle/Gonzales") and states as follows:

## REPLY SUMMARY

Third-Party Plaintiffs' Amended Response To American Bureau of Shipping's Motion For Summary Judgment ("Tate & Lyle/Gonzales Response"), relies upon conclusory statements, evidence mischaracterization and inadmissible expert opinion in support of their argument that summary judgment should be denied. If this approach to summary judgment were sanctioned, Rule 56 of the Federal Rules of Civil Procedure would be rendered useless. For this very reason Rule 56(c) mandates that summary judgment shall be rendered forthwith if there is no *genuine* issue of material fact and the moving party is entitled to judgment as a matter of law.

Tate & Lyle/Gonzales unequivocally reject negligent misrepresentation as the theory of liability against ABS; yet, they barely even address how a common-law negligence claim is cognizable in these circumstances. Indeed, no evidence has been adduced to demonstrate a genuine issue of material fact and certainly no case precedent has been cited which holds a classification society or a similarly situated party liable for common law negligence. When the Court actually reviews the record, ABS respectfully submits that the inescapable conclusion is that no identifiable breach nor any theory of causation as a result of ABS' alleged acts or omissions have ever been put forward. Indeed, there are too many undisputed intervening events, namely, the extensive use of the cranes and luffing wires, as well as further inspections by Eurocarriers, that occurred in the six (6) month period between the ABS survey and the casualty to allow any reasonable person to conclude that ABS' alleged failure to detect an alleged wire rope defect that nobody can even identify existed at the time of the ABS survey and that this alleged failure actually caused a casualty during the improper use of the cranes six (6) months

later. Accordingly, even when the evidence is viewed in a light most favorable to Tate & Lyle/Gonzales, as it must be so construed, summary judgment is warranted.

## POINT I

### GENUINE ISSUES OF MATERIAL FACT ARE NOT DEMONSTRATED THROUGH CONCLUSORY STATEMENTS, MISCHARACTERIZATION OF THE EVIDENCE AND INADMISSIBLE EXPERT TESTIMONY

It is well established that no genuine issue of material fact is created when there are no controverted facts or, alternatively, the non-moving party resorts to conclusory statements, evidence mischaracterization and inadmissible opinion testimony. *11 James W. Moore et. al., Moore's Federal Practice* §56.13[2]-[4] (Matthew Bender, 3d ed.); *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004)(noting stark assertions are not sufficient to survive summary judgment).

In the Statement of Facts set forth in Tate & Lyle/Gonzales Response (pgs. 2-7), several misstatements, mischaracterizations and conclusory allegations are exposed. The most egregious examples are as follows:

1. In Statement of Fact No. 3 (p. 2), Tate & Lyle/Gonzales assert "ABS was contracted by ESL/EC to provide technical guidance." Yet, this is not true at all. To the contrary, the cited testimony establishes that ESL/EC retained Marutec Co., naval architects, to design the pedestals necessary for the installation of the cranes on the M/V Leon I. (T&L Exhibit B, p. 30). ABS, an independent classification society, had the role of checking the design against its rules (T&L

3

Exhibit B, p. 37).[1]  Notwithstanding a misstatement in Statement of Fact No. 5 addressed below, Tate & Lyle/Gonzales do not dispute the role of ABS; namely, that it establishes rules and standards and approves installations such as the cranes aboard the M/V LEON I only insofar as to verify compliance with the applicable ABS rules and standards (ABS SOF No. 8, citing ABS Exhibit F, ¶3).[2]

    2.      In Statement of Fact No. 5, Tate & Lyle/Gonzales asserts:

> 5. Crane #4 on the M/V LEON I, as modified and approved by ABS for the retrofit, had an insufficient minimum radius for the hook to reach all of the hatch, which necessitated the practice of hoisting crewmen aloft to reach those sections of the hatch the hook could not reach (Exhibit D, pp. 304-305; Exhibit C, Bases for Opinion 6).

First, this statement suggests that ABS modified crane #4 but ABS undisputedly performs no such tasks and, once again, the cited evidence does not support the statement. Tate & Lyle Exhibit D contains testimony of Mr. Willem Schoonmade, an ABS expert, and addresses the subject of bulldozers in M/V LEON I's holds.  It has nothing to do with the modification, insufficient radius or hoisting crew members aloft. Statement No. 5 contains several other unsupported assumptions as well. First, it suggests, without any evidentiary support, that crane reach is an ABS certification issue as opposed to a purely commercial/operational matter. A second unwarranted assumption is that the alleged crane reach *caused* the crewmen to be hoisted aloft (a practice which was against Eurocarriers policy) as if that was the only way to access all areas of the hatch. (ABS Exhibit K-3, pp. 34-35, §6.05; ABS Exhibit Q, pp. 136-143).

---

[1]  Unfortunately, Tate & Lyle/Gonzales did not utilize number exhibits to differentiate its exhibits from ABS exhibits.  In order to avoid further confusion, this reply memorandum specifies "T&L Exhibit ___" to refer to a Tate & Lyle/Gonzales exhibit and "ABS Exhibit ___" to refer to an ABS exhibit.

[2]  Refers to the Statement of Undisputed Facts (No. 8) ("SOF") contained in the Memorandum In Support of American Bureau of Shipping's Motion for Summary Judgment.
    Tate & Lyle/Gonzales stipulated to the ABS Statement of Undisputed Facts Nos. 1-17, part of which address the role of ABS. (Tate & Lyle/Gonzales Response p. 6).

The second half of the statement is equally unsupported. While Tate & Lyle Exhibit C (Tate & Lyle's expert report) is wholly inadmissible evidence in response to a summary judgment motion, opinion 6 and its bases nevertheless do not at all speak to the asserted facts of an insufficient radius and necessary practices of hoisting men aloft; rather, this inadmissible hearsay opinion simply avers that hoisting men aloft was a normal working procedure without regard to whether it was necessary, authorized or a safe practice for that matter.[3]

3. With respect to Statement of Fact No. 10, there is not a scintilla of evidence to establish that ABS was required to survey and/or "disclose that the cranes did not allow the crane operator a clear, reliable and visual indication of the jib angle at all angles of operation." Indeed, the inadmissible expert opinion cited in support of this point makes no criticism of ABS. Accordingly, there can be no genuine issue of material fact if there is no evidence to support the so-called statement of fact.

4. With respect to Statement of Fact No. 11, Tate & Lyle/Gonzales, once again, have not put forward any evidence whatsoever that ABS was required to or should have assessed or noted "that the retrofitted cranes, as approved by ABS, restricted the cranes' jibs from reaching all areas of the hatches." In fact, the cited evidence establishes just the opposite. This testimony of Mr. James Dolan (T&L Exhibit G, pp. 217-218) reads as follows:

---

[3] The inclusion of an unsworn expert report in response to a summary judgment motion is wholly inappropriate and the purported evidence is inadmissible and cannot be considered by this Court. *Tumer v. Human Genome Science, Inc*, 292 F. Supp. 2d 238 (D.Md. 2003); *Solis v. Prince George's County*, 153 F. Supp.2d 393 (D.Md. 2001). Rule 56(e) mandates that the non-movant set forth "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317 (1986). Consequently, if expert opinions are to be utilized, such opinions must be predicated on established facts. *M&M Medical Supplies & Service, Inc. v. Pleasant Valley Hospital*, 981 F.2d 160 (4th Cir. 1992). As the Hislop report is unsworn and not based on established facts, ABS respectfully submits that the Court must disregard the Hislop report (T&L Exhibit C) *in toto*.

> "Q.   Is there anything in any of the ABS surveys, reports, summaries that you've examined with respect to the cranes refitted on the LEON I which indicates that the No. 4 crane was incapable of reaching all areas of the hold?
>
> MR. CLYNE:  Object to the form.
>
> A.    I'm not sure whether, whether there was anything in an ABS report to that extent because class is not concerned with the reach of a crane.
>
> Q.    That's not my question.  My question is, did you see any notation anywhere regarding –
>
> A.    I don't recollect that there is."
> (T&L Exhibit G p. 217, line 14 – p. 218, line 3)

As Tate & Lyle/Gonzales have come forward with no evidence that ABS surveys or is required to survey vessels for crane reach, there is no genuine issue of material fact with regard to Statement of Fact No. 11.

    5. Statement of Fact No. 12 states:

> In the course of his survey and inspection, Mr. Graham did not discover or note that the luffing wire rope for crane #4 was flattened, corroded or otherwise damaged.  (Group Exhibit F, Exhibit K, pp. 133-134),

This statement is particularly egregious because it conclusorily assumes that the wire rope was in such a condition and that such condition warranted some kind of action on the part of ABS.  Yet, Tate & Lyle/Gonzales point to no factual evidence to establish that the wire rope was in the stated condition.  In fact, *all* of the evidence is to the contrary.  Mr. Graham repeatedly testified that the wire rope was thoroughly examined and found to be acceptable and this is corroborated by the testimony of Mr. Stoyan Terziev, Eurocarrier's attending superintendent (ABS SOF Nos.

21, 23, 29, 30, 31, 32, 33, 34, ABS Exhibit I, pgs. 40-41, 43, 53, 57-58; ABS Exhibit G, pgs. 113-115).  Against this unrebutted evidence, Tate & Lyle/Gonzales can only point to an incomplete and inadmissible excerpt of its own expert's deposition that does not specify any factual basis regarding the actual condition of the wire rope.  Accordingly, no genuine issue of material fact is presented.

6. As for Statement of Fact No. 13, once again Tate & Lyle/Gonzales have utterly failed to generate any evidence that ABS or its attending surveyor were required to or should have undertaken any of the activities enumerated therein.  The same goes for Statement of Fact No. 14.  Accordingly, no genuine issue of fact is established.

7. Statement of Fact No. 20 is supported solely by inadmissible expert opinion testimony that disregards Mr. Graham's undisputed testimony that he sighted/inspected the wire rope certificates at the time of his survey.  This is simply no way to respond to a summary judgment motion. If Tate & Lyle/Gonzales truly believes that Mr. Graham's credibility is an issue as posited at page 7 of the Tate & Lyle/Gonzales Response, then it has an obligation to come forward with evidence to cast doubt on the credibility of the witness.  Otherwise, summary judgment could easily be defeated based on bald, unsupported allegations of credibility.

Tate & Lyle/Gonzales further complain that Mr. Graham's deposition testimony and Joseph Fortin's sworn affirmation are self-serving and conclusory.  However, a review of the testimony submitted demonstrates that Mr. Graham addressed what he saw and did at his survey and Mr. Fortin attested to ABS' function and procedures.  There is nothing conclusory about this

evidence and, notably, no countervailing evidence has been adduced by Tate & Lyle/Gonzales much less evidence that might lead a fact finder to conclude that ABS was responsible for the subject loss.  Moreover, contradicting their own "self-serving" position, Tate & Lyle/Gonzales do not dispute the accuracy of ABS SOF 1-17, many of which are based upon Mr. Fortin's affirmation.

As stated above, the third-party plaintiffs confirm that they do not dispute ABS Statement of Undisputed Facts Nos. 1-17 which includes several important statements about the role of ABS in crane certification matters.  Notably, these agreed statements of fact confirm:

> 1. Classification Societies such as ABS verify compliance with standards published by the classification society. (ABS SOF Nos. 8, 15, 16).
>
> 2. The 1991 Guide for Certification of Cranes "('91 Guide)" and ABS internal documentation assist and guide the surveyor in performing shipboard cargo gear surveys (ABS SOF No. 14 and 15).
>
> 3. The '91 Guide provides at term 1.7 that under no circumstances are ABS representations "to be deemed to relate to any third-party" (ABS SOF No. 16).
>
> 4. The owner/operator (Eurocarriers) is responsible for supplying and maintaining the wire ropes and their certificates and that the '91 Guide provides that the owner is also responsible for, among other things, proper crane handling (ABS SOF No. 17).

With respect to the remaining ABS Statement of Facts (18-68), remarkably, Tate & Lyle/Gonzales leave it to the Court to decide whether they should stipulate to or dispute paragraphs 18-68 of the ABS SOF.  As the source of ABS' SOF are Rule 56(c) evidentiary materials, ABS submits these facts are reliable and unrebutted.

## POINT II

## NEITHER THE SUMMARY JUDGMENT RECORD NOR THE CASE LAW SUPPORTS A NEGLIGENCE CLAIM

a.  **Tate & Lyle/Gonzales Have Rejected Negligent Misrepresentation Which is The Only Available Cause of Action**

Tate & Lyle/Gonzales unequivocally reject negligent misrepresentation as the proper cause of action:

> "There is **no** claim for negligent misrepresentation. In a negligent misrepresentation claim, a necessary element is plaintiff's reliance upon inaccurate information supplied by the defendant." (emphasis in original). (Tate & Lyle/Gonzales Response p. 9).

Implicit in this argument is that neither Tate & Lyle nor Gonzales relied on the ABS Cargo Gear Certificate or other supposedly inaccurate information supplied by ABS, whatever that might be. If Tate & Lyle/Gonzales did not rely on ABS information, it is clear that they cannot sustain a claim for negligent misrepresentation, the only cause of action that has been recognized against a classification society. *See Otto Candies LLC v. NKK Corp.*, 346 F.3d 530 (5th Cir. 2003); *Cargill Incorporated, et al. v. Bureau Veritas*, 902 F. Supp. 49 (S.D.N.Y. 1995); *Somerelf v. American Bureau of Shipping*, 704 F. Supp. 59 (D.N.J. 1989). Here, there is no claim that ABS created the alleged defect nor is there any allegation that ABS had the ability or responsibility to remedy any such defect. In essence, the argument is that ABS did an improper survey and thereby failed to use due care to *detect* and *report*. The failure to use due care in detecting and reporting is properly characterized as a claim for negligent misrepresentation, not negligence. *See Otto Candies*, 346 F.3d at 537; *Restatement(Second) of Torts* §552.

b.  **Summary Judgment On The Negligence Claim Is Warranted**

Tate & Lyle/Gonzales have identified absolutely no legal precedent holding classification societies liable for common law negligence. To allow a third party a cause of action for negligence against classification societies would expose classification societies to "liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Ultramares Corp. v. Touche*, 255 N.Y. 170 (1931). Imposition of such a broad and unlimited liability on classification societies would have a further detrimental effect on maritime commerce, deterring classification societies from performing work on old or damaged vessel most in need of the services provided by class as well as potentially diminishing the owner's sense of vessel safety. *See, e.g. Otto Candies*, 346 F.3d at 535. Indeed, the result of imposing such broad liability on classification societies would be to effectively render them insurers of the vessel and guarantors of its seaworthiness, results which the courts have taken pains to avoid. *See Otto Candies*, 346 F.3d at 535; *Sundance Cruises Corp. v. American Bureau of Shipping*, 7 F.3d 1077, 1084 (2d Cir. 1993).

Aside from the sheer lack of legal precedent, Tate & Lyle/Gonzales have not come forward with any evidence to demonstrate that ABS breached any duty, whatever that duty may be, nor have they bothered to explain how the loss may have been caused by ABS. Indeed, Tate & Lyle/Gonzales make no specific claim that Mr. Graham failed to perform his surveys in accordance with the '91 Guide or other ABS procedures. Moreover, whatever undetected defect that is being claimed has never been identified, let alone identified as having a causal connection to the loss.

Aside from the failure to identify a breach or causal connection, numerous intervening and superseding events which are undisputed clearly break the causal chain, if any, between the ABS survey in 1999 and the casualty six months later. *See* ABS Main Brief at pp. 29-33. For this very reason, the courts have encountered great difficulty in finding a causal link between a purportedly negligent class survey and damages sustained. *See, e.g., Great American Insurance Company v. Bureau Veritas*, 338 F. Supp. 999 (S.D.N.Y. 1971) *aff'd* 478 F.2d 235 (2d Cir. 1973).

Third-party plaintiffs do not dispute that between December 1999 and July 2000, the ship's cargo gear frequently was used for lifting equipment. In fact, based on the statement of facts for cargo operations at Pulupandan, Philippines, the cranes, including No. 4, were engaged in near continuous operation for a period of two weeks. (ABS SOF No. 47). During this period Eurocarriers did or should have inspected and maintained the wire ropes and limit switches on numerous occasions. (ABS SOF No. 48). Finally, in March of 2000, Eurocarriers superintending engineer, Thomas Tampathanis, performed an inspection of the cargo gear and noted that the "Cargo wires are still in good order." (ABS SOF No. 51). Even if third-party plaintiffs establish that ABS failed to detect and report an alleged wire rope defect, ABS submits that the foregoing undisputed events break the causal link between ABS' actions and the casualty as a matter of law.

Finally, Tate & Lyle attempts to distinguish *Sundance Cruises* on the basis that this case is "not a shipowner or seaman case" and, therefore, the Second Circuit's concern that a ruling against class would transfer the venerable non-delegable duty from the shipowner to the

classification society is not an issue. (Tate & Lyle/Gonzales Response, p. 11). Of course, this is a seaman's case and the warranty of seaworthiness owed by Eurocarriers to Gonzales is very much an issue. Transferring to ABS this non-delegable is precisely what Tate & Lyle attempts to do. As the Second Circuit pointed out in *Sundance*:

> Judge Knapp stated the resolution to this problem concisely by pointing out that Sundance had failed to show any damage flowing from issuance of the classification certificate. 799 F. Supp. at 393. He held that Sundance presented no evidence that it was 'in any way damaged by possible errors in issuing that particular certificate.' *Id*.
>
> We think this result is sound, and it reflects our view that a shipowner is not entitled to rely on a classification certificate as a guarantee to the owner that the vessel is soundly constructed. First, the great disparity between the fee charged ($85,000) by ABS for its services and the damages sought by Sundance ($264,000,000) is strong evidence that such a result was not intended by the parties. We can only conclude that the small fees charged could not have been intended to cover the risk of such liability; the ship classification industry could not continue to exist under such terms. *See, e.g., Vitol Trading S.A., Inc. v. SGS Control Servs., Inc.*, 874 F.2d 76, 81-82 (2d Cir. 1989) (quoting Restatement (Second) of Contracts §351 cmt.f: 'fact that price [charged] is relatively small suggests that it was not intended to cover the risk of such liability').
>
> Second, and probably most significantly, the shipowner, not ABS, is ultimately responsible for and in control of the activities aboard ship. In the case of the SUNDANCER, for example, Sundance had full responsibility for the conversion, repairs, and maintenance of the vessel. This ongoing responsibility for the vessel is supplemented by the maritime-law requirement that the shipowner has a nondelegable duty to furnish a seaworthy vessel. *Great American Ins. Co. v. Bureau Veritas*, 338 F. Supp. 999 (S.D.N.Y. 1972), *aff'd*, 478 F.2d 235 (2d Cir. 1973). ABS can not be said to have taken over Sundance's obligations in this regard by agreeing to inspect and issue a classification certificate to Sundance. *Sundance Cruises*, 7 F.3d at 1084.

**c.     The Good Samaritan Doctrine Does Not Apply**

Oddly, Tate & Lyle/Gonzales reject a Restatement(Second) of Torts §552 claim (negligent misrepresentation) but belatedly embraces a Restatement(Second) of Torts §324A claim (the so-called "Good Samaritan Doctrine"). (Tate & Lyle/Gonzales Response p. 10). This novel argument fails on every front.

Under the Good Samaritan Doctrine, the failure to exercise reasonable care is presupposed and liability to third persons may ensue if: (a) the failure to exercise reasonable care increases the risk of harm or; (b) the negligent party has undertaken to perform a duty owed by another to the third person; or (c) damage occurs because of reliance upon the undertaking. *Restatement(Second) of Torts 2d, §324A; Patentas v. United States*, 687 F.2d 707 (3d Cir. 1982). However, before examining factors (a) to (c), third-party plaintiffs have not provided this Court with any evidence to support a claim that ABS failed to use reasonable care much less that such failure was causally related to the casualty. *See* Point II(b), *supra*. On this basis alone, the Court need go no further in its analysis of the Good Samaritan Doctrine. *Patentas*, 687 F.2d at 717 (the language of the Restatement assumes that the injuries result in fact from the defendant's negligent performance of his or her undertaking before it reaches the issue of increased risk").

As for component (a), the record is devoid of any evidence whatsoever that the allegedly negligent survey by ABS increased the risk of harm. On this score the courts have considered and rejected the argument that the failure to discover a defect created by another increases the risk of harm. *See e.g. Id*. ("...the comment to section 324 (a) makes clear that "increased risk" means some physical change to the environment or some other material alteration of

circumstances); *Howell v. United States*, 932 F.2d 915 (11th Cir. 1991) (FAA inspector's failure to ground the plane, issue a notice, or, initiate an investigation did not increase the risk of harm); *Fondow v. U.S.*, 2001 A.M.C. 429 (D. Mass. 2001) q*uoting Rodriguez v. United States*, 968 F.2d 1430, 1434 (1st Cir. 1992)("The Good Samaritan rule does not impose liability for merely negligent failure to confer a benefit, but only for negligently making matters worse."). Tate & Lyle/Gonzales have not even argued nor can they seriously contend that ABS' alleged failure to detect and report increased the risk of harm.

Second, third-party plaintiffs have not argued and there is absolutely no evidence to support a finding that ABS undertook to perform a duty owed by Eurocarriers to Tate & Lyle or Gonzales. In fact both the factual record and maritime legal precedent make clear that the opposite is true. Section 1.7 of the '91 Guide referenced by Tate & Lyle/Gonzales specifies that its representations are made solely to the "manufacturer, vessel owner or client of the Bureau" and "Under no circumstances whatsoever are these representations to be deemed to relate to any third party." (ABS SOF No. 16; ABS Exhibit G-5, ¶1.7). Moreover, a transfer of the duty would constitute a derogation of the non-delegable duty of the shipowner under maritime law to provide a seaworthy vessel. *See Sundance Cruises Corp. v. American Bureau of Shipping*, 7 F.3d 1077, 1084 (2d Cir. 1993). In discussing the Good Samaritan Doctrine, the *Howell* court stated as much in a non-maritime (aviation) setting:

> Nor can we say the FAA or its inspector undertook to perform a duty owed by the airline to its passengers. Whatever the FAA does or does not do, the Federal Aviation Regulations assign the chief responsibility for ensuring the airworthiness of an aircraft and its crew to the craft's owner, operator, or pilot. *See, e.g.*, 14 C.F.R. §§91.163(a), 135.413(a). The duties of the FAA supplement rather than supplant the duties of the airline - duties which the airline could not, and did not, delegate.

*Howell,* 932 F. 2d at 919.

Finally, as for component (c), reliance is wholly lacking which is precisely the reason that Tate & Lyle/Gonzales never asserted the theory of negligent misrepresentation claim.[4]

## POINT III

### TATE & LYLE/GONZALES CANNOT RECOVER AGAINST ABS ON A BREACH OF WARRANTY OR THIRD-PARTY BENEFICIARY THEORY AS A MATTER OF LAW

a.  **The Warranty of Workmanlike Service Is Inapplicable To Classification Societies**

Tate & Lyle/Gonzales' description of the warranty of workmanlike service is interesting but nonetheless irrelevant. ABS is neither a stevedore nor a manufacturer whose direct acts or omissions may potentially cause a loss. At best ABS is guilty of failing to detect a defect created by another and it is for this very reason that courts have held that the warranty of workmanlike performance does not apply to classification societies. *See, e.g., Sundance Cruises Corp. v. American Bureau of Shipping*, 799 F.Supp. 363 (S.D.N.Y. 1992) *aff'd* 7 F.3d 1077 (2d Cir. 1993); *Somerelf v. American Bureau of Shipping*, 704 F.Supp. 59 (D.N.J. 1989); *Great American In. Co. v. Bureau Veritas*, 338 F.Supp. 999 (S.D.N.Y. 1972) *aff'd* 478 F.2d 235 (2d Cir. 1973). These cases are squarely on point and were cited in ABS' main brief.

Yet, Tate & Lyle/Gonzales ignore this direct precedent and, instead, cites heavily to *Royal Embassy v. Ioannis Martinos, 186 A.M.C. 772 (E.D.N.C. 1984)..* However, in *Royal*

---

[4] In further support of this argument, Tate & Lyle/Gonzales point to more inadmissible evidence (i.e. narrow excerpts from speeches of ABS personnel that are not even in the record). (Tate & Lyle /Gonzales Response p. 11).

15

*Embassy,* unlike the present case, the court found that the marine surveyor did more than detect and report; he was hired to and did, in fact, actively supervise and direct the stowage and lashing of cargo aboard ship. Therefore, the court extended the warranty to the marine surveyors "based on the particular facts of this case." *Id*. at 782. Here, the ABS surveyor, Mr. Graham, merely observed and reported to Eurocarriers. Try as Tate & Lyle/Gonzales might, the cited case is dissimilar and unavailing.

Tate & Lyle/Gonzales' reliance on *Sanderlin* and *Chisholm* is equally misplaced. In *Sanderlin*, the court addressed the warranty of workmanlike performance in yet another stevedoring context. *Sanderlin v. Old Dominion Stevedoring Corp.*, 385 F.2d 79, 81 (4th Cir. 1967). In *Chisholm*, the court primar1ily addressed issues surrounding the offset to which a non-settling defendant is entitled. Without analysis, both the district court and the Fourth Circuit assumed that the defendant, a tank cleaning service, performed work equivalent to a stevedore and, therefore, applied the warranty. *Chisholm v. UHP Projects, Inc.*, 30 F. Supp.2d 928, 934-35 (E.D. Va. 1998) *aff'd* 205 F.3d 731 (4th Cir. 2000).

Neither the case law nor the factual setting herein supports a claim for breach of the warranty of workmanlike service.

**b.**      **Neither Tate & Lyle Nor Gonzales Has Third-Party Beneficiary Status**

16

Tate & Lyle/Gonzales point out that, as parties not in privity with ABS, the breach of warranty claims fail if they do not qualify as third-party beneficiaries of the "contract between ESL/EC and ABS." (Tate & Lyle/Gonzales Response pp. 15-16). Yet, they fail to even identify the contract to which they claim third-party beneficiary status. On this score the representations contained in the '91 Guide governing certification state "that under no circumstances are these representations to be deemed to relate to any third-party." (ABS SOF No.17). While ABS wholeheartedly agrees that caution must be exercised when making a determination of intent to confer a benefit on a third-party as posited by Tate & Lyle/Gonzales (Tate & Lyle/Gonzales Response, p. 17), if third-party plaintiffs have not even identified the contract, it is beyond imagination as to how Tate & Lyle/Gonzales can seriously argue that they are intended third-party beneficiaries.

In any event, the cited cases do not support the position of Tate & Lyle/Gonzales. *Nathaniel Shipping* has nothing at all to do with third-party beneficiary law; rather, it addresses the availability of a third-party claim in contract or tort against a subcontractor after the Supreme Court's *East River* doctrine is applied. *Nathaniel Shipping, Inc. v. General Elec. Co.*, 920 F.2d 1256 (5th Cir. 1991). Moreover, if the Court looks immediately beyond the quoted section of *Skibs A/S Gylfe*, (Tate & Lyle/Gonzales Response, p. 16), the district court in that case actually rejected a third-party beneficiary argument in the context of a surveyor's undertaking to survey the loading of a vessel. *Skibs A/S Gylfe v. Hyman-Michaels Co.*, 304 F.Supp. 1204, 1211 (E.D. Mich. 1969), *aff'd* 438 F.2d 803 (6th Cir. 1971).

Neither the record nor the legal precedent provides any support for a third-party beneficiary claim in these circumstances.

## **CONCLUSION**

For the reasons set forth herein, ABS respectfully submits that summary judgment is warranted and an order dismissing the third-party complaints of Third-Party Plaintiffs Tate & Lyle North American Sugars, Inc. and Josephina Gonzales should be entered.

Dated: New York, New York
       February 5, 2005

                                 /s/
                       Robert G. Clyne
                       Federal Bar No. 81037

                                 /s/
                       James A. Saville
                       Federal Bar No. 81036
                       Hill Rivkins & Hayden LLP
                       45 Broadway, Suite 1500
                       New York, New York 10006
                       (212) 669-0600 Telephone
                       (212) 669-0698 Facsimile

                                 /s/
                       James W. Bartlett, III
                       Federal Bar No. 00017
                       Semmes, Bowen & Semmes, P.C.
                       250 West Pratt Street
                       Baltimore, Maryland 21201-2423
                       (410) 539-5040  Telephone
                       (410) 539-5223  Facsimile

                       Attorneys for American Bureau of Shipping