IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF : | |
| THE COMPLAINT OF | |
| ETERNITY SHIPPING, LTD. AND : | |
| EUROCARRIERS, S.A. | CIVIL ACTION NO. BEL-01-0250 |
| FOR EXONERATION FROM OR : | |
| LIMITATION OF LIABILITY | |
| : | |

## MEMORANDUM AND ORDER

This action has been referred for disposition of a motion for sanctions filed by Claimant Tate & Lyle Northern American Sugars, Inc. ("Claimant") alleging improper withholding of evidence and spoliation of evidence. (Papers No. 79 & 80). Responses in opposition have been filed by Third-Party Defendant American Bureau of Shipping ("ABS") (Paper No. 89) and Limitation Plaintiffs Eternity Shipping, Ltd. and Eurocarriers, S.A. ("Eurocarriers)(Paper No. 95). No reply memoranda have been filed. For the reasons set forth below, the motion for sanctions is hereby DENIED.

*I. Background*

The incident giving rise to this action was a fatal accident in July 2000 aboard the M/V LEON as it discharged bulk sugar at Claimant's refinery in Baltimore. A cable supporting the boom of a crane aboard the vessel parted, and the boom collapsed onto the boom of a shore-side crane that, in turn, plunged into a hold of the vessel. Two crewmen aboard the vessel were killed. Eurocarriers immdiately retained a marine surveyor, Captain Heiner Popp, and a forensic engineering company, Chesapeake Engineering & Design, to investigate the accident. The motion at issue relates to that investigation.

*II. Analysis*

Claimant asserts that Eurocarriers improperly claimed, in its answers to interrogatories, that the information and/or reports from Captain Popp were shielded by attorney-client privilege and as attorney work product. Claimant avers that it learned at expert depositions in August 2004 that Captain Popp had been aboard the vessel on the date of the accident[1] and that he also had been present in October 2003 during expert inspection of the failed cable, which makes him "at least a fact witness." The Court has some difficulty following the intended implication of that assertion. It would seem that flowing from that reasoning would be the postulate that all litigation consultants become "fact witnesses" by the nature of their work. It further would seem to be the implication in Claimant's assertion that this posture as "fact witness" vitiates the work product shield. The Court is unaware of precedential support for that proposition, and Claimant cites to none. Claimant also avers that it learned at these expert depositions that information and reports of Captain Popp had been relied upon by an expert of Limitation Plaintiffs in the formulation of his opinions.[2] Essentially, Claimant appears to be arguing that Eurocarriers should be sanctioned for not releasing the reports earlier. The only prejudice identified by Claimant in regard to the purported failure to timely release Captain Popp's reports is the inability to have taken his deposition prior to the close of fact discovery. This is easily cured, and the Court disagrees that reopening discovery for this purpose would not adequately address such issue as there is.

---

[1] Although it is not so stated by the Claimant, it does not appear that Captain Popp was a witness to the accident but, rather, that he was called to the scene by Eurocarriers to perform a post-accident investigation.

[2] Eurocarriers posits that the reports of Captain Popp actually were provided to counsel for all parties shortly before the taking of expert depositions.

Claimant also avers that the experts retained by Eurocarriers and ABS conducted an inspection of the failed cable without notice to Claimant and then caused spoliation of the evidence. Claimant seeks as a remedy exclusion of testimony from its opponents' experts. First, although, as acknowledged by Eurocarriers, it may have been better practice to advise Claimant of the inspection so that a representative of claimant could be present, the Court finds no such requirement in the rules and, although the Claimant asserts a rules violation, it cites to none. Second, Claimant's bald and overheated claim of evidence spoliation is wholly unsupported, *i.e.,* there is no proffer of evidence that the inspections actually worked spoliation.[3] Third, exclusion of expert testimony in this case would be a draconian measure and, again, a reopening of discovery to allow Claimant to establish its own expert evidence clearly will be sufficient.

In the end, this is a matter that could have been worked out between the parties without the intervention of the Court, which is the intent of Local Rule 104.7 that, the Court notes in passing, was not followed here. Instead, the Court is left with the impression that the claimant has attempted to seize great leverage based upon not very weighty claims. The parties are hereby directed to immediately confer and resolve their discovery issues consistent with this Memorandum and Order. On the assumption that a modification to the discovery schedule order will be required, the parties' joint motion for such modification shall be presented to Chief Judge Legg on or before March 10, 2005.

Dated this 24th day of February, 2005.

---

[3] The snipping and subsequent preserving of a small section of wire and the wiping of grease from the cable in the overall context of this case simply are not significant acts and do not approach "spoliation." *See, generally*, *Thompson v U.S. Dept. of Housing and Urban Development*, 219 F.R.D. 93 (D. Md. 2003).

/s/
_____
James K. Bredar
United States Magistrate Judge