IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| IN THE MATTER OF<br>THE COMPLAINT OF | * | |
| ETERNITY SHIPPING, LTD. AND<br>EUROCARRIERS, S.A. | * | Civil Action No.: L01CV0250 |
| FOR EXONERATION FROM OR<br>LIMITATION OF LIABILITY | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OF CLAIMANT TATE & LYLE NORTH AMERICAN SUGAR, INC. IN SUPPORT OF ITS MOTION FOR MODIFICATION OF DISCOVERY SCHEDULE

NOW COMES Claimant, TATE & LYLE NORTH AMERICAN SUGARS, INC. ("Tate & Lyle"), by and through its attorneys, ASPERGER ASSOCIATES LLC, and for its Memorandum in Support of the Motion for Modification of Discovery Schedule, states as follows:

**Factual and Procedural Background**

On July 29, 2000, the vessel M/V Leon I, owned and managed by Limitation Plaintiffs, Eternity Shipping, Ltd. ("ESL") and Eurocarriers, S.A. ("EC") (collectively "ESL/EC" or Limitation Plaintiffs), was discharging bulk sugar at Tate & Lyle's Domino Sugar refinery on Baltimore's Inner Harbor. Domino's twin shoreside gantry cranes were being used for the discharge operation. As discharge was proceeding in hatch 6, the Leon I crew began using the ship's crane #4 to clean caked sugar from the aft coaming of adjacent hatch 6A. Two of the ship's crew were suspended over hatch 6A in a work basket chipping sugar from the portside aft coaming when the luffing wire rope of crane #4 suddenly failed and parted, resulting in the collapse of the jib of crane #4 and the deaths of two Leon I crew members. During its collapse,

the #4 crane jib struck Domino's crane #2, causing its boom to collapse into hatch #6, resulting in Tate & Lyle sustaining over $12 million in property damage and business income loss.

The Leon I had been designed and was being operated by ESL/EC as a gearless bulk carrier until the end of 1999. At that time, ESL/EC salvaged cranes that were nearly 30 years old from a vessel being scrapped and sought to have them retrofitted onto the Leon I. Substantial structural modifications were necessary to accommodate refitting the cranes. At the request of ESL/EC, the American Bureau of Shipping ("ABS") was asked to review the proposed refit and "carry out the necessary technical study (strength–stability) for necessary reinforcements." (Exhibit A, June 21, 1999 Telefax from N. Kekridis to ABS Piraeus.) After several design modifications, ABS issued a technical letter approving the cranes for installation on the Leon I. ABS assigned its surveyor Roy Graham to the Chinese shipyard where the refit was being performed to survey the cranes and related gear and to supervise installation during the time the vessel was in the shipyard.

Tate & Lyle had the Leon I arrested following this incident and filed this lawsuit in August 2000. ESL/EC filed a limitation action in September 2000 and ABS was joined in the action in May 2002. After several extensions, fact discovery closed on May 5, 2004, and expert disclosures were exchanged by all parties on or before July 12, 2004.

The details of the October 2003 inspection and alteration of the wire rope by ESL/EC and ABS experts were first revealed during the depositions of Willem Schoonmade and Don Sayenga in late August of 2004, at which time Tate & Lyle demanded the opportunity to inspect the altered wire rope. Tate & Lyle's own wire rope expert, Mike Parnell, was first permitted the opportunity to inspect the wire rope on August 24, 2004, well after the expert disclosures deadline. It was during these depositions that Tate & Lyle also learned that ESL/EC had failed

to disclose Captain Popp's inspection reports which had been provided to and relied upon by ESL/EC and ABS' experts in formulating their opinions. In its motion, Tate & Lyle argued that it would have had the opportunity to depose Captain Popp had he been timely disclosed.

In his February 24, 2005 Memorandum and Order regarding Tate & Lyle's Motion for Sanctions, Magistrate Judge Bredar stated that:

> "The only prejudice identified by Claimant in regard to the purported failure to timely release Captain Popp's reports is the inability to have taken his deposition prior to the close of fact discovery. This is easily cured, and the Court disagrees that reopening discovery for this purpose would not adequately address such issue as there is."

(Exhibit B, February 24, 2005 Memorandum and Order.) As to the issue of Tate & Lyle's request that the testimony of ESL/EC and ABS' experts be excluded, Judge Bredar ruled:

> "...exclusion of expert testimony in this case would be a draconian measure and, again, a reopening of discovery to allow Claimant [Tate & Lyle] to establish its own expert evidence clearly will be sufficient."

> "The parties are hereby directed to immediately confer and resolve their discovery issues consistent with this Memorandum and Order. On the assumption that a modification to the discovery schedule order will be required, the parties' joint motion for such modification shall be presented to Chief Judge Legg on or before March 10, 2005."

(Exhibit B.)

Pursuant to Magistrate Judge Bredar's Memorandum and Order, Tate & Lyle attempted to reach an agreement with ESL/EC and ABS to modify the discovery schedule in order for the depositions of Captain Popp and Mr. Parnell to take place. (Exhibit C, March 23, 2005 e-mail from Christine Cusack transmitting Proposed Joint Motion.) Both ESL/EC and ABS objected and refused to join in the Proposed Motion. (Exhibit D, March 23, 2005 e-mail from Robert Clyne; Exhibit E, March 23, 2005 e-mail from M. Hamilton Whitman.) Following the electronic exchanges on March 23rd, the parties attempted, unsuccessfully, to reach accord on scheduling

6

the Parnell and Popp depositions. (Exhibit F, March 31, 2005 e-mail from Jeffrey Asperger.) ABS has steadfastly taken the position that it had no interest in the additional depositions and would not allow any additional discovery to impact ABS's pending motion for summary judgment.

Tate & Lyle believes that the additional discovery could very well be germane to the pending summary judgment motion because Captain Popp is a fact witness who was the first investigator on the vessel following the incident. He had the opportunity to observe the wire rope and the crane before even the United States Coast Guard began its investigation. Tate & Lyle believes the condition of the wire rope and the cranes is relevant to the actions or inactions of ABS in connection with the refit which had been completed a relatively short time before the incident. (Exhibit G, March 31, 2005 e-mail from Jeffrey Asperger.) Unable to reach agreement, Tate & Lyle and ABS independently wrote to Magistrate Bredar to advise of the parties' inability to reach accord. (Exhibit H, March 31, 2005 e-mail from Jeffrey Asperger; Exhibit I, March 31, 2005 from Robert Clyne; Exhibit J, April 1, 2005 letter from Jeffrey Asperger to Magistrate Judge Bredar; Exhibit K, April 4, 2005 letter from James Bartlett to Magistrate Judge Bredar.)

At the beginning of May, in anticipation of busy summer schedules, Tate & Lyle attempted once more to schedule dates to complete the remaining discovery. (Exhibit L, May 2, 2005 e-mail from Jeffrey Asperger; Exhibit M, May 3, 2005 e-mail from Jeffrey Asperger.) ESL/EC and ABS again refused to set dates asserting that the Court had not issued time limits in which to complete this additional discovery and that there was no agreed order. (Exhibit N, May 3, 2005 e-mail from Robert Clyne; Exhibit O, May 3, 2005 e-mail from M. Hamilton Whitman; Exhibit P, May 3, 2005 e-mail from Robert Clyne; Exhibit Q, May 3, 2005 e-mail from M.

Hamilton Whitman.) Tate & Lyle responded to ESL/EC and ABS with the following proposition:

> "If the court grants any extension, which it has indicated it intends to do, we will not have to scramble to complete the depos if we have dates set aside. If no extension is given, we simply do not proceed with the depos."

(Exhibit R, May 3, 2005 e-mail from Jeffrey Asperger.) Tate & Lyle proposed four full weeks of available dates in August in which to schedule depositions. (Exhibit S, June 3, 2005 e-mail from Christine Cusack.) ABS again refused to participate in selecting possible dates without a court order. (Exhibit T, June 7, 2005 e-mail from Robert Clyne.) Tate & Lyle suggested the parties provide a status to Magistrate Bredar in order to gain closure on this issue. (Exhibit U, June 7, 2005 e-mail from Jeffrey Asperger.) ABS refused. (Exhibit V, June 8, 2005 e-mail from Robert Clyne.)

**Conclusion**

As evidenced by the attached exhibits to this Memorandum in Support, Tate & Lyle has made multiple attempts since March to come to agreement with ESL/EC and ABS in an effort to complete additional discovery. It is apparent from Magistrate Judge Bredar's February 24th Memorandum and Order that his intention was for the parties to modify the discovery schedule and to accommodate the deposition of Captain Popp and to allow Tate & Lyle to present its own expert evidence on the wire rope issue (Exhibit B.). Since Tate & Lyle cannot obtain from the parties joint resolution of these issues, as Judge Bredar directed, it is filing this motion requesting a Court order allowing a modification to the discovery schedule.

WHEREFORE, Tate & Lyle respectfully requests that this Court enter an order allowing a modification to the discovery schedule, as enclosed, to allow the depositions of Captain Heiner

Popp and Mr. Mike Parnell, and to allow supplementation of the prior ABS summary judgment submittals prior to the Court's ruling on ABS' motion for summary judgment.

        Respectfully submitted,
        ASPERGER ASSOCIATES LLC

        _____/s/_____
        Jeffrey J. Asperger

Jeffrey J. Asperger
ASPERGER ASSOCIATES LLC
303 East Wacker Drive, Suite 1000
Chicago, Illinois 60601
(312) 856-9901

## SERVICE LIST

I, Jeffrey J. Asperger, do hereby certify that a true and correct copy of the above and foregoing document was served via e-mail notification from the District Court and in the manner indicated upon:

Bernard J. Sevel
ARNOLD, SEVEL & GAY, P.A.
The B&O Building
Two North Charles Street, Suite 560
Baltimore, Maryland 21201
*Attorneys for Claimant Robert J. Cantey and Claimant William Langeville*

James D. Skeen
SKEEN & KAUFFMAN L.L.P.
800 North Charles Street, Suite 400
Baltimore, Maryland 21201
*Attorney for Tate & Lyle North American Sugars, Inc.*

Francis J. Gorman
GORMAN & WILLIAMS
Two North Charles Street, Suite 750
Baltimore, Maryland 21201-3754
*Attorneys for
Louis Dreyfus Sugar Company*

R. Blake Brunkenhoefer
BRUNKENHOFER & ASSOCIATES
1770 Tower II
555 N. Carancahua
Corpus Christi, Texas 78478
*Attorneys for Claimant Josefina Gonzales*

W. Charles Bailey, Jr.
SIMMS SHOWERS LLP
20 South Charles Street, Suite 702
Baltimore, Maryland 21201
*Attorneys for Claimant Josefina Gonzales*

M. Hamilton Whitman, Jr.
Eric M. Veit
OBER, KALER, GRIMES & SHRIVER
120 East Baltimore Street
Baltimore, MD 21202-1643
*Attorneys for Eternity Shipping*

James W. Bartlett, III
Alexander M. Giles
SEMMES, BOWEN, & SEMMES, P.C.
250 West Pratt Street, 16th Floor
Baltimore, MD 21201-2423
*Attorneys for American Bureau of Shipping*

Robert G. Clyne
James A. Saville
HILL, RIVKINS & HAYDEN LLP
45 Broadway, Suite 1500
New York, New York 10006
*Attorneys for American Bureau of Shipping*

in accordance with all applicable provisions of the Federal Rules of Civil Procedure, on this 28th day of June, 2005.

_____/s/_____
Jeffrey J. Asperger

10