IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF ETERNITY SHIPPING, LTD. AND EUROCARRIERS, S.A., FOR EXONERATION FROM OR LIMITATION OF LIABILITY | * * * * |
| * * * * * * * | * |
| TATE & LYLE NORTH AMERICAN SUGARS, INC., | * |
| Claimant and Third-Party Plaintiff | * |
| v. | * |
| AMERICAN BUREAU OF SHIPPING | * |
| Third-Party Defendant | * |
| * * * * * * * * * * * | |

CIVIL ACTION
NO. L01CV0250

**THIRD-PARTY DEFENDANT AMERICAN BUREAU OF SHIPPING'S MEMORANDUM OF LAW IN OPPOSITION TO TATE & LYLE'S MOTION FOR <u>MODIFICATION OF THE DISCOVERY SCHEDULE</u>**

Third-Party Defendant, American Bureau of Shipping ("ABS"), by its attorneys, Robert G. Clyne and James A. Saville, Jr., of Hill Rivkins & Hayden LLP and James M. Bartlett, III, of Semmes, Bowen & Semmes, P.C., submits this Memorandum in Opposition to Tate & Lyle's North American Sugars, Inc. ("Tate & Lyle") Motion for a Modification of the Discovery Schedule.

In what is becoming "par for the course," Tate & Lyle's motion is long on accusations but short on accuracy. Indeed, the very title of Tate & Lyle's motion for a "modification" of the

discovery schedule is misleading, implying that there is a discovery schedule that needs to be modified. Fact discovery has been closed for over a year; expert discovery was concluded last August and both ABS and Limitations Plaintiffs, Eurocarriers S.A. ("Eurocarriers") and Eternity Shipping Ltd. ("ESL"), filed motions for summary judgment in October 2004 which, because of Tate & Lyle's introduction of and reliance upon inadmissible evidence in opposition to these motions, were needlessly delayed and not fully submitted until February 2005. More to the point, ABS respectfully submits that a re-opening of discovery for several months as Tate & Lyle proposes is not necessary and Magistrate Judge Bredar's Memorandum and Order dated February 24, 2005 does not mandate same as Tate & Lyle proposes.

### **Argument**

On July 29, 2000, while crane no. 4 of the M/V Leon I was being operated by the ship's bosun in clear violation of the Shipboard Operations Manual and in excess of its safe working parameters, the luffing wire of crane no. 4 parted.  With the resulting collapse of crane no. 4, two seamen, who had been suspended in a workbasket in further violation of the Shipboard Operating Manual, died and one of the Tate & Lyle shoreside cranes unloading the M/V Leon I's cargo of bulk sugar was damaged. That same day, Capt. G.C. Ross, a surveyor retained by Tate & Lyle attended onboard the vessel to make an independent assessment regarding the damage. (Exhibit A, pp. 44-48).  Within days, counsel for Tate & Lyle attended onboard the vessel and Reading Crane and Engineering, another company retained by Tate & Lyle and/or its insurers, investigated the cause of the failure on August 1. (See Exhibit B).

On August 3, 2000, Tate & Lyle, through its attorneys, filed suit against the M/V LEON

I, *in rem*, Eternity Shipping Ltd., the owners of the vessel, and Eurocarriers, the managers, and promptly arrested the vessel pursuant to Supplemental Rule C of the Federal Rules of Civil Procedure. Thereafter, on January 29, 2001, ESL and Eurocarriers filed a Complaint for Exoneration from or Limitation of Liability pursuant to 46 U.S.C. §§ 181-189. That same day, this Court signed a Restraining Order and Order For Issuance of Notice That Claims Be Filed and granted Limitation Plaintiffs' request for an *Ad Interim* Stipulation for Value of $5,334,062.00 plus 6% interest per annum. Nearly two years after the casualty, on May 10, 2002, Tate & Lyle commenced a third-party action against ABS alleging negligence, third-party beneficiary and breach of warranty of workmanlike service causes of action.

After several extensions, fact discovery was completed in May 2004 and the parties served expert disclosures in July 2004 in accordance with the Court's February 20, 2004, Order. Although Tate & Lyle had been onboard the vessel at the time of the casualty with several independent consultants to investigate the loss, Tate & Lyle did not proffer any experts regarding the cause of the wire rope's failure. In the expert report of Donald Sayenga, ABS' wire rope expert, ABS disclosed that its experts had inspected the wire rope in October 2003. During the expert deposition phase of discovery some months later, Tate & Lyle acted surprised, almost shocked that a litigant being sued for over ten million dollars would inspect the material evidence and proffer an expert opinion as to the cause of its failure. On August 24, 2004, Kevin Hislop (Tate & Lyle's liability expert) and Mike Parnell, a wire rope consultant, inspected the wire rope; yet no further expert reports were issued regarding these inspections.

After having made a deliberate choice not to retain a wire rope expert and failing to comply with this Court's expert disclosure deadline and, then, despite having every opportunity in August 2004 to make an application to the Court in order to allow Tate & Lyle to serve further expert reports, Tate & Lyle, instead, did nothing. In fact, in the spirit of cooperation and after consultation with counsel for ABS, on September 2, 2004, weeks before dispositive motions were due, counsel for Limitation Plaintiffs wrote to Tate & Lyle's counsel and requested his advices as to whether Mr. Parnell would be providing and expert report and, if so, when he would be available for deposition. (Exhibit C). After further prompting by counsel, counsel for Tate & Lyle was noncommittal in his response, advising that Tate & Lyle was "evaluating all options." (Exhibit D). Tate & Lyle chose not to advise the parties of which option it would exercise prior to the Court's deadline for filing dispositive motions.

Rather than attempt to reach an amicable resolution of this issue prior to the parties expending a tremendous amount of time and money in preparing dispositive motions for filing in compliance with this Court's Order, Tate & Lyle opted to ignore counsel's September 2, 2004, correspondence and the local rule requiring a sincere attempt to resolve any discovery dispute and instead filed a baseless motion for sanctions against ABS and Limitation Plaintiffs. Not surprisingly, Magistrate Judge Bredar denied the motion in all respects and was "left with the impression that claimant [Tate & Lyle] has attempted to seize great leverage based upon not very weighty claims." (Exhibit E). In short, despite Tate & Lyle's current attempts to re-argue its spoliation motion, Magistrate Judge Bredar found one of Tate & Lyle's arguments to be utterly without "precedential support" and the other, a "bald and overheated claim of evidence spoliation . . . wholly unsupported."

In his Memorandum and Order, Magistrate Judge Bredar directed that the parties "immediately confer and resolve their discovery issues consistent with this Memorandum and Order. On the assumption that a modification of the discovery schedule order will be required, the parties' joint motion for such modification shall be presented to Chief Judge Legg on or before March 10, 2005." (Exhibit E).

After an initial adjournment of the deadline to March 24, 2005 at the request of Tate & Lyle, on the evening of March 23, 2005, (although Tate & Lyle now characterizes its last minute effort as "an attempt to reach an agreement,") without any prior discussion regarding the issues, Tate & Lyle circulated among counsel a proposed "joint" order.  Tate & Lyle proposed that discovery be reopened, that expert reports be resubmitted and the summary judgment motions be refiled.  (Exhibit F).  Both ABS and Limitation Plaintiffs objected to this last minute proposal which had not been discussed and contemplated the resubmission of the fully briefed summary judgment motions. (A copy of Robert Clyne's March 24, 2005 email is attached as Exhibit G). At Tate & Lyle's request, a further adjournment of the submission deadline was granted until April 1, 2005.

In accordance with local Rule 104.7, the parties conferred in an effort to resolve the outstanding discovery issues.  Following further discussions among counsel, Tate & Lyle agreed to disclose Mr. Parnell as a rebuttal expert and Limitation Plaintiffs offered to produce Heiner Popp for deposition.  Tate & Lyle also expressed a desire to pursue the deposition of the ship's bosun, Rolando Balita. Contrary to Tate & Lyle's blatant misrepresentation in paragraph 10 of

this motion, ABS did not refuse to proceed with any additional discovery. As counsel for ABS made clear, ABS' only objected to the Balita deposition as it was not addressed in Magistrate Judge Bredar's order and did not object to Tate & Lyle's other proposals so long as they did not delay ABS' pending summary judgment motion. (See the March 31, 2005 email of Robert Clyne attached as Exhibit H). Tate & Lyle accepted ABS' limitations with the exception of the ABS' objection to the Balita deposition. (See March 31, 2005 email of Jeffrey Asperger attached as Exhibit I). Changing its position, later that same day, Tate & Lyle advised that it could not agree that ABS' motion go forward in view of this additional discovery. (See March 31, 2005 email of Jeffrey Asperger attached as Exhibit J) In the spirit of compromise, ABS agreed to the Balita deposition but continued to object to delaying or resubmitting the summary judgment motions. (See the March 31, 2005 email of Robert Clyne attached as Exhibit K).[1]

In view of the parties' dispute, on April 1, 2005, counsel for Tate & Lyle wrote to Magistrate Judge Bredar seeking a resolution of this issue of whether ABS' summary judgment motion should be further delayed while certain limited discovery went forward. (See Exhibit L). On April 4, 2005, counsel for ABS' responded, confirming that ABS had no objection to the depositions of Heiner Popp or Bosun Balita. (See Exhibit M). However, as none of the proposed discovery even addressed whether there was a defect in the wire rope or, more appropriately, whether it met the ABS requirement at the time of the ABS survey seven months before the casualty, ABS reiterated its objection to re-opening the summary judgment record and the further delay and duplication of effort which that would entail.

---

[1] Once again, in its current motion, Tate & Lyle mischaracterizes ABS' position as having "no interest in the additional depositions."

Thereafter, despite not having heard further from Magistrate Judge Bredar, Tate & Lyle proposed dates for the depositions of Heiner Popp and Mike Parnell. (See May 2, 2005, email of Jeffrey Asperger attached as Exhibit N).[2]  In view of the parties' dispute and in the absence of further direction from Magistrate Judge Bredar, ABS advised Tate & Lyle that it was unwilling to proceed further. Despite the current implication to the contrary, counsel for ABS confirmed with counsel for Tate & Lyle and counsel for Tate & Lyle *agreed* that the depositions would not go forward in the absence of Court Order. (See June 7, 2005, email exchanged between Robert Clyne and Jeffrey Asperger attached as Exhibit Q).[3]   Apparently unwilling to wait for a ruling from Magistrate Judge Bredar, Tate & Lyle filed the instant motion seeking to delay consideration of ABS' motion until after October 27, 2005.

This is not a situation involving a lack of cooperation and compromise by ABS.  Rather, this is an attempt to avoid the consequences of Tate & Lyle's failure to designate a wire rope expert although it had the opportunity to do so.  Despite the offer to resolve this expert issue prior to the filing of dispositive motions, Tate & Lyle "attempted to seize great leverage based upon not very weighty claims" by filing a patently baseless motion for sanctions after both ABS and Limitation Plaintiffs invested significant resources submitting summary judgment motions. Tate & Lyle further delayed the final submission of the motions by choosing to rely upon inadmissible evidence in opposing these motions. Further, if Tate & Lyle had believed, as it now

---

[2] Reflecting the inaccuracy which ABS submits is prevalent in this matter, the May 2, 2005 email from Tate & Lyle's counsel states, "Please advise so that we can complete this discovery within the time limits set by the Court." In fact, the Court never ordered that discovery go forward nor were there time limits set by the Court. Further, in response to ABS and Limitation Plaintiffs' inquiry regarding the time limits referred to, counsel for Tate & Lyle "presumed that the Court will enter the agreed order as requested." (See May 2, 2005 email of Jeffrey Asperger attached as Exhibit O).  Once again, there was never any agreed order. Tate & Lyle's response – "So What." (Exhibit P).

[3] Once again, in his June 7, 2005, email, counsel for Tate & Lyle continues the chain of inaccuracies stating, ". . . We can then ask the magistrate to proceed on our pending motions, including our motions for sanctions..." (See Exhibit Q).  There are no pending motions and Tate & Lyle's motion for sanctions was denied months earlier.

argues, that Heiner Popp's testimony "*could* be germane to the pending summary judgment motion," in opposition to ABS' motion, Tate & Lyle had two opportunities under Rule 56(f) of the Federal Rules of Civil Procedure to submit an affirmation that further discovery or depositions were needed in order to allow it to obtain facts "essential to justify the party's opposition." Once again, Tate & Lyle chose not to do so. As the undersigned counsel pointed out to Tate & Lyle's counsel, Mr. Popp, a marine surveyor, performed a general survey for the vessel's insurers after the casualty. He can add nothing to the prior ABS survey which is the subject of the summary judgment motion.

Now, Tate & Lyle wants to delay further and wants the parties to spend thousands of dollars more to re-submit summary judgment motions on the basis that the discovery which Tate & Lyle seeks *could* impact on the pending motions. As mentioned, none of the witnesses which Tate & Lyle seeks to depose can testify as to the actual condition of the wire rope at the time of the ABS survey seven months prior to the casualty. Neither Heiner Popp nor Mike Parnell was at the shipyard in December 1999 and any potential testimony regarding the condition of the wire rope at the time of ABS' survey would be rank speculation.

Furthermore, Tate & Lyle's nine-month delay in providing a report from Mr. Parnell is unwarranted. If any of Tate & Lyle's present concerns had merit, it would have sought leave from the Court and submitted Mr. Parnell's report within weeks of his inspection. Further, although initially represented by Tate & Lyle as a rebuttal expert, Tate & Lyle seems to now

characterize Mr. Parnell as a Rule 26(a)(2) expert in violation of the Court's July 2004 deadline for the designation of expert witnesses.[4]

In sum, although ABS has been willing to work with counsel for Tate & Lyle regarding depositions, in view of Tate & Lyle's inexcusable delay, ABS is unable to agree to any postponement to October 27, 2005, or resubmission of its motion for summary judgment as proposed by Tate & Lyle. Clearly, none of the discovery sought by Tate & Lyle will have an impact on ABS' motion as none of the witnesses will able to testify as to the condition of the wire rope in the shipyard at the time of the ABS survey. ABS will be further prejudiced by the further time, expense and delay associated with the resubmission of ABS' summary judgment motion. Therefore, ABS objects to Tate & Lyle's application to re-open discovery and its request for leave to allow further summary judgment submissions.

---

[4] ABS further notes that under Rule 26(a)(2)(C), if Mr. Parnell's report was "evidence . . . intended solely to contradict or rebut evidence on the same subject matter identified by another party . . .," it was required to disclose Mr. Parnell's report within thirty days after having received ABS' expert reports. Fed. R. Civ. P. 26(a)(2)(C).

## **CONCLUSION**

For the reasons set forth herein, ABS respectfully requests that Tate & Lyle's Motion to Amend the Discovery Schedule be denied.

Dated:  New York, New York
        July 15, 2005

                                               _____/s/_____
Robert G. Clyne
Federal Bar No.  81037

_____/s/_____
James A. Saville
Federal Bar No. 81036
Hill Rivkins & Hayden LLP
45 Broadway, Suite 1500
New York, New York 10006
(212) 669-0600 Telephone
(212) 669-0698 Facsimile

       and

James W. Bartlett, III
Federal Bar No. 00017
Semmes, Bowen & Semmes, P.C.
250 West Pratt Street
Baltimore, Maryland  21201-2423
(410) 539-5040  Telephone
(410) 539-5223  Facsimile

Attorneys for American Bureau of Shipping

28005\ABS Opposition to T&L Motion.doc

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day Of July 2005, the foregoing Memorandum of Law in Opposition to Tate & Lyle's Motion for Modification of the Discovery Schedule was served on certain counsel of record by way of the court's electronic filing system to all counsel of record below:

*R. Blake Brunkenhoefer, Esq.*
Brunkenhoefer & Associates P.C.
1770 Tower II
555 N. Carancahua
Corpus Christi, Texas  78478

*W. Charles Bailey, Jr., Esq.*
Simms Showers LLP
Suite 702
20 South Charles Street
Baltimore, Maryland  21201

*Bernard J. Sevel, Esq.*
Arnold, Sevel & Gay, P.A.
The B&O Building, Suite 560
2 North Charles Street
Baltimore, Maryland  21201

*James D. Skeen, Esq.*
Skeen & Kauffman, LLP
800 North Charles Street
Suite 400
Baltimore, Maryland  21201

*Jeffrey J. Asperger, Esq.*
Asperger Associates, L.L.C.
303 East Wacker Drive
Suite 1000
Chicago, Illinois  60601

*Francis J. Gorman, P.C.*
Gorman & Williams
Two North Charles Street
Baltimore, Maryland  21201-3754

*M. Hamilton Whitman, Jr., Esq.*
Ober Kaler Grimes & Shriver
120 East Baltimore Street
Baltimore, MD 21202-1643

I hereby affirm under the penalty of perjury that the foregoing statements are true and correct.

                                        /s/
                                  Robert G. Clyne