Rich Baker

**Page 1**

```
 1    IN THE UNITED STATES DISTRICT COURT
 2         FOR THE DISTRICT OF MARYLAND
 3              (NORTHERN DIVISION)
 4   IN THE MATTER OF        :
 5   THE COMPLAINT OF         :
 6   ETERNITY SHIPPING, LTD.,: Civil Action
 7   and EUROCARRIERS, S.A.  : No. L-01-CV-0250
 8   FOR EXONERATION FROM OR :
 9   LIMITATION OF LIABILITY : Pages 1-85
10              ----------
11
12
13         Deposition of RICH BAKER
14            Baltimore, Maryland
15          Wednesday, January 22, 2003
16
17
18
19   Reported by: Kathleen P. Thompson, Notary Public
20
21
```

**Page 2**

```
 1
 2
 3
 4
 5            January 22, 2003
 6                4:38 p.m.
 7
 8
 9   Deposition of RICH BAKER held at the offices of:
10
11
12     Domino Sugar
13     Administration Building
14     1100 Key Highway East
15     Baltimore, MD 21230
16
17
18   Pursuant to notice, before Kathleen P. Thompson,
19   a Notary Public of the State of Maryland.
20
21
```

**Page 3**

```
 1   APPEARANCES:
 2
 3   Ober, Kaler, Grimes & Shriver
 4   For the Limitation Plaintiffs Eternity Shipping,
 5   Ltd., and Eurocarriers, S.A.
 6      120 East Baltimore Street
 7      Baltimore, MD 21202
 8      (410) 685-1120
 9   BY: Eric M. Veit, Esq.
10
11
12   Asperger, Caraher, L.L.C.
13   For Tate & Lyle and Domino Sugar
14      303 East Wacker Drive
15      Chicago, IL 60601
16   BY: Jeffrey J. Asperger, Esq.
17
18
19
20
21
```

**Page 4**

```
 1   Hill, Rivkins & Hayden, L.L.P.
 2   For the Third-Party Defendant American Bureau of
 3   Shipping
 4      45 Broadway
 5      Suite 1500
 6      New York, NY 10006
 7      (212) 669-0600
 8   BY: James A. Saville, Jr., Esq.
 9       Robert G. Clyne, Esq.
10
11              ----------
12
13
14
15
16
17
18
19
20
21
```

Esquire Deposition Services

DISK ENCLOSED

Page 45

1  surveyor, or do you know what he is?
2    A.  We've used him in a number of different
3  instances for different things, I couldn't tell
4  you.
5    Q.  If you have an issue with a vessel he's
6  the guy Domino calls?
7    A.  That's correct.
8    Q.  Where actually is he?
9    A.  I think he's right, I don't know if
10 he's in New York --
11   Q.  There's a New York office listed at the
12 top.
13   A.  I think that's where he's at.
14   Q.  At the top it says to Ed O'Rourke.  Who
15 is that?
16   A.  He's a gentleman in raw sugar that
17 schedules ship arrivals for us.
18   Q.  Would he be the man that would call in
19 Ross to come down?
20   A.  I called Ross.
21   Q.  So with respect to this particular

Page 46

1  visit, and it looks like in the re line there
2  it's a visit regarding the LEON, you called Ross
3  up to come down?
4    A.  Yes.
5    Q.  What was the purpose of your call, why
6  did you call him?
7    A.  Because every time we have a problem
8  with a vessel we've always called Ross in
9  because he knows more about the vessels than we
10 do.  He's kind of our resident expert, if you
11 will, to call.
12   Q.  All right.  Did he investigate, as far
13 as you know, the incident on the vessel?
14   A.  I was not with him so I don't know what
15 he did exactly that day.
16   Q.  Did he provide a report to you?
17   A.  The only thing I've seen is this from
18 him.
19   Q.  This one page document?
20   A.  Yes.
21   Q.  You don't know if he provided any other

Page 47

1  actual reports to anybody -- strike that.  Do
2  you know if he provided any other report to you?
3    A.  Not to me he didn't that I know of.
4    Q.  Do you know if he provided it to
5  anybody else?
6    A.  I have no idea.
7    Q.  Okay.  I'm looking at the first
8  paragraph there, it says, "Mr. O'Rourke" -- if
9  you had requested Ross to come down, do you know
10 why he would have sent it to O'Rourke?
11   A.  Because Ed usually pays his bills.
12   Q.  That's who I would send it to.
13      In looking at the top it says "for
14 Mr. Rich Baker", and it's got, I'm assuming a
15 fax number there.  Do you know whose handwriting
16 that is?
17   A.  It's not mine.  I don't know whose that
18 is.
19   Q.  Do you recall if Ed O'Rourke forwarded
20 this document to you, or was this something that
21 was sent directly by Ross to you?

Page 48

1    A.  I don't remember seeing it.  I might
2  have.  I don't remember seeing it in particular.
3    Q.  So you have no independent recollection
4  of seeing this?
5    A.  No.
6    Q.  Okay.  In that first paragraph it says,
7  "I attended aboard the captioned vessel on July
8  29th to make an independent assessment of the
9  cause and general scope of damages to the number
10 2 crane resulting from the collapse of the
11 vessel's crane on it".  Is that what you told
12 him to do?
13   A.  Yes, give us a general evaluation.
14   Q.  Of the cause and the general scope of
15 damage?
16   A.  Uh-huh.
17   Q.  Now, referring to the cause, is it a
18 cause of why the vessel's crane collapsed, or
19 why number 2 collapsed?  It's pretty obvious why
20 2 collapsed because it fell on itself.  It's not
21 clear in the letter.

Page 49

1  A. I think he just was saying come in and
2  tell us why the crane on the ship collapsed.
3      MS. ASPERGER: For the record, you're
4  asking him to speculate what Ross was intending
5  in the letter. He can't do that.
6      MR. SAVILLE: I'm just trying to get
7  what knowledge I can. If he can't do it, he
8  can tell me.
9      MR. ASPERGER: I object for the
10 record to the speculation.
11 Q. (By Mr. Saville) The next paragraph
12 there, it says, "This is clearly a case of
13 vessel's fault." Do you know why he made that
14 statement or what facts he used to reach that
15 conclusion?
16 A. Yeah. Same one I did. The vessel's
17 crane was laying on top of ours.
18 Q. Other than the obvious, did he
19 investigate the cause of why the vessel's crane
20 was laying on top of yours?
21 A. Yeah, it was a parted cable.

Page 50

1      MR. ASPERGER: First of all, you're
2  asking him to speculate as to what Ross meant
3  by this letter. Now, he's telling you based
4  upon his knowledge and experience.
5  Q. He says it's "clearly a case of
6  vessel's fault". I'm wondering if Ross told
7  you why?
8      MR. ASPERGER: Let me just instruct
9  him.
10     You need to listen to his questions
11 and answer his questions. He's asking you if
12 Ross told you this. Any one of us can read
13 this letter and speculate what Ross was
14 thinking. He doesn't want you to do that.
15 Q. Correct. I'm asking if Ross told
16 you.
17 A. All Ross told me that day was it
18 looks as though the ship's cables, the crane
19 on the ship, the cable parted, that caused
20 that crane to fall onto ours, that's what
21 Ross told me.

Page 51

1  Q. Okay.
2      (Discussion off the record.)
3  Q. (By Mr. Saville) Looking down further,
4  were there any other discussions that you had
5  with Ross as to why the crane's wire parted?
6  A. No.
7  Q. Okay. Did you have any discussions
8  with anybody other than Ross, whether it be
9  Domino employees or stevedores, as to why the
10 crane's wire parted?
11 A. No.
12 Q. Okay.
13     (Discussion off the record.)
14     MR. SAVILLE: I'm going to show you
15 what we'll mark as the next Exhibit, Baker 3,
16 it's a two page document.
17     (Document was marked Baker
18     Deposition Exhibit No. 3.)
19     MR. ASPERGER: Maybe we should
20 staple it.
21     MR. SAVILLE: All right.

Page 52

1      MR. VEIT: There's no Bates stamp on
2  there, right?
3      MR. SAVILLE: No.
4  Q. (By Mr. Saville) Mr. Baker, as you
5  look at it, my question is simply have you seen
6  this document before?
7  A. This was a --
8      MR. ASPERGER: Have you seen it
9  before. That's the question.
10 A. Yes.
11 Q. Do you know what it is?
12 A. Yeah. Basically it's an outline of
13 a scope of work, rough scope of work to
14 replace the crane, repair the crane we had on
15 the dock.
16 Q. Number 2 crane?
17 A. Yes.
18 Q. Do you know who it was prepared by?
19 A. To me, the handwriting looks like
20 Mark Pleiss, but I can't swear to it, so the
21 answer is no.

# WILLIAMS & ROSS, INC.          *Marine Surveyors & Consultants*

Tampa Office: 12718 Burmah Ct.                       New York Office:    71-44 Juno Street
              Odessa, FL 33556                                           Forest Hills, NY 11375

Tampa Ph.: 813 920 7664                                                  NY Ph.: 718 261 9677
Fax: 813 920 4664                                                        NY Fax: 718 261 2437

---

*FOR MR. RICH BAKER*
*410 783-8612*

July 31, 2000

TO: Mr. Ed O'Rourke: Fax No. 1 201 508 3739: One Page

RE: M.V. LEON I - BALTIMORE - DAMAGE TO NO. 2 SHORE CRANE -
    FIRST ADVICE

Dear Mr. O'Rourke:

I attended aboard the captioned vessel on the morning of July 29, 2000 to make an independent assessment of the cause and general scope of damages to the No. 2 crane, resulting from the collapse of a vessel's crane upon it.

This is clearly a case of vessel's fault, involving nothing ascribable to your personnel or equipment. Accordingly, if not already done, you should place the Owner's and Master of the vessel on notice, holding them liable for any and all damages arising from this event. Further, steps should be taken to assure that adequate security is obtained from the Owners, or the vessel's P&I Club, prior to the completion of discharge.

Unless already done, the vessel and your underwriters should be notified to attend a joint survey with your appointed repairer, to set out the details of the damages incurred and the repairs required. Such survey should include an extensive examination of the entire crane structure, to assure that all items of damage are included.

I had a preliminary discussion with your personnel as to the need to keep detailed records of direct costs involved for inclusion in your claim. You will also suffer consequential damages in the delays to vessels waiting to discharge, but such damages are likely too remote to be sustainable, but should be documented nonetheless.

As you are aware, we are experienced in such matters and would be pleased to assist your local staff with the compilation of the claim and to offer any professional assistance required by your legal department.

Sincerely,

Captain G.J. Ross

FAX COPY TO: W&R NY

mw/00-239.LEON I

EXHIBIT 2
Ker
2-0315

TL 000068

The services of this corporation are offered and this report or certificate is issued on the following conditions: That while Williams & Ross, Inc., its surveyors, employees, representatives or agents use their best endeavors in behalf of whom this survey is made, neither Williams & Ross, Inc., its directors, officers, surveyors, employees, representatives or agents, are under any circumstances whatsoever to be held responsible for any errors of judgment, default or negligence of any surveyors or other employees, representatives or agents of the corporation or for any inaccuracy, omission, misrepresentation or misstatement in any report or certificate.