UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**BENSON EVERETT LEGG**
Chief Judge

101 West Lombard Street
Baltimore, Maryland 21201
(410) 962-0723

November 21, 2005

MEMORANDUM TO COUNSEL RE:   In the Matter of the Complaint of Eternity Shipping, Ltd., *et al*., for Exoneration from or Limitation of Liability
Civil #L-01-250

Dear Counsel:

      In anticipation of today's hearing, I have prepared the following list of questions raised by my review of the papers. Please be prepared to address them orally during the hearing.

**A.**     **Vessel**

    1.     What is the value of the vessel?

**B.**     **Tate & Lyle**

    2.     Tate & Lyle has filed a claim for over $11 million. Is this amount in excess of the value of the vessel?

    3.     Does Eurocarriers agree with Tate & Lyle's valuation of its damages?

    4.     Several Tate & Lyle employees were injured at the time of the accident. What is the status of those employees' claims?

**C.**     **Seamen**

    5.     Two seamen were killed during the accident. The family of Mr. Gonzales filed a claim in this action. Of the main problems in the case, the first is whether the Gonzales family has a private right of action. Marshal the arguments, pro and con, for the proposition that Filipino seamen have an exclusive contractual remedy against their employers in the event of death.

    6.     Does the alleged exclusive private remedy curtail a Filipino seaman's right to proceed against third parties who may have caused or contributed to the injuries?

    7.     Marshal the arguments, pro and con, for the proposition that the Jones Act precludes a "soft" damages action.

**D.**   **ABS**

    8.   Did ABS do more than inspect the vessel?

    9.   Describe ABS's role in the retrofitting of the deck cranes onto the MV Leon I.

    10.  Discuss the case law regarding the potential liability of classification societies for negligent inspection/certification.

    11.  Discuss the legal effect, if any, of the subsequent inspections of the cranes and wire ropes on ABS's liability.

**E.**   **The Heiner Popp Controversy**

    12.  Did all parties have Popp's reports and photographs in 2004?

    13.  Did Popp perform any tests or inspections beyond those performed by the opposed parties?

    14.  Discuss the Pellow and Parnell reports.


                          Very truly yours,

                                /s/

                          Benson Everett Legg

c:   Court file

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**BENSON EVERETT LEGG**
Chief Judge

101 West Lombard Street
Baltimore, Maryland 21201
(410) 962-0723

November 21, 2005

MEMORANDUM TO COUNSEL RE:   In the Matter of the Complaint of Eternity Shipping, Ltd., *et al*., for Exoneration from or Limitation of Liability
Civil #L-01-250

Dear Counsel:

In anticipation of today's hearing, I have prepared the following list of questions raised by my review of the papers. Please be prepared to address them orally during the hearing.

**A.     Vessel**

1.     What is the value of the vessel?

**B.     Tate & Lyle**

2.     Tate & Lyle has filed a claim for over $11 million. Is this amount in excess of the value of the vessel?

3.     Does Eurocarriers agree with Tate & Lyle's valuation of its damages?

4.     Several Tate & Lyle employees were injured at the time of the accident. What is the status of those employees' claims?

**C.     Seamen**

5.     Two seamen were killed during the accident. The family of Mr. Gonzales filed a claim in this action. Of the main problems in the case, the first is whether the Gonzales family has a private right of action. Marshal the arguments, pro and con, for the proposition that Filipino seamen have an exclusive contractual remedy against their employers in the event of death.

6.     Does the alleged exclusive private remedy curtail a Filipino seaman's right to proceed against third parties who may have caused or contributed to the injuries?

7.     Marshal the arguments, pro and con, for the proposition that the Jones Act precludes a "soft" damages action.

**D.     ABS**

      8.      Did ABS do more than inspect the vessel?

      9.      Describe ABS's role in the retrofitting of the deck cranes onto the MV Leon I.

      10.     Discuss the case law regarding the potential liability of classification societies for negligent inspection/certification.

      11.     Discuss the legal effect, if any, of the subsequent inspections of the cranes and wire ropes on ABS's liability.

**E.     The Heiner Popp Controversy**

      12.     Did all parties have Popp's reports and photographs in 2004?

      13.     Did Popp perform any tests or inspections beyond those performed by the opposed parties?

      14.     Discuss the Pellow and Parnell reports.


                          Very truly yours,

                                 /s/

                          Benson Everett Legg

c:     Court file

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**BENSON EVERETT LEGG**
Chief Judge

101 West Lombard Street
Baltimore, Maryland 21201
(410) 962-0723

November 21, 2005

MEMORANDUM TO COUNSEL RE:  In the Matter of the Complaint of Eternity Shipping, Ltd., *et al*., for Exoneration from or Limitation of Liability
Civil #L-01-250

Dear Counsel:

      In anticipation of today's hearing, I have prepared the following list of questions raised by my review of the papers. Please be prepared to address them orally during the hearing.

**A.**    **Vessel**

    1.    What is the value of the vessel?

**B.**    **Tate & Lyle**

    2.    Tate & Lyle has filed a claim for over $11 million. Is this amount in excess of the value of the vessel?

    3.    Does Eurocarriers agree with Tate & Lyle's valuation of its damages?

    4.    Several Tate & Lyle employees were injured at the time of the accident. What is the status of those employees' claims?

**C.**    **Seamen**

    5.    Two seamen were killed during the accident. The family of Mr. Gonzales filed a claim in this action. Of the main problems in the case, the first is whether the Gonzales family has a private right of action. Marshal the arguments, pro and con, for the proposition that Filipino seamen have an exclusive contractual remedy against their employers in the event of death.

    6.    Does the alleged exclusive private remedy curtail a Filipino seaman's right to proceed against third parties who may have caused or contributed to the injuries?

    7.    Marshal the arguments, pro and con, for the proposition that the Jones Act precludes a "soft" damages action.

**D.     ABS**

    8.     Did ABS do more than inspect the vessel?

    9.     Describe ABS's role in the retrofitting of the deck cranes onto the MV Leon I.

    10.    Discuss the case law regarding the potential liability of classification societies for negligent inspection/certification.

    11.    Discuss the legal effect, if any, of the subsequent inspections of the cranes and wire ropes on ABS's liability.

**E.     The Heiner Popp Controversy**

    12.    Did all parties have Popp's reports and photographs in 2004?

    13.    Did Popp perform any tests or inspections beyond those performed by the opposed parties?

    14.    Discuss the Pellow and Parnell reports.

Very truly yours,

/s/

Benson Everett Legg

c:     Court file

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**BENSON EVERETT LEGG**
Chief Judge

101 West Lombard Street
Baltimore, Maryland 21201
(410) 962-0723

November 21, 2005

MEMORANDUM TO COUNSEL RE:   In the Matter of the Complaint of Eternity Shipping, Ltd., *et al*., for Exoneration from or Limitation of Liability
Civil #L-01-250

Dear Counsel:

      In anticipation of today's hearing, I have prepared the following list of questions raised by my review of the papers. Please be prepared to address them orally during the hearing.

**A.   Vessel**

1.   What is the value of the vessel?

**B.   Tate & Lyle**

2.   Tate & Lyle has filed a claim for over $11 million. Is this amount in excess of the value of the vessel?

3.   Does Eurocarriers agree with Tate & Lyle's valuation of its damages?

4.   Several Tate & Lyle employees were injured at the time of the accident. What is the status of those employees' claims?

**C.   Seamen**

5.   Two seamen were killed during the accident. The family of Mr. Gonzales filed a claim in this action. Of the main problems in the case, the first is whether the Gonzales family has a private right of action. Marshal the arguments, pro and con, for the proposition that Filipino seamen have an exclusive contractual remedy against their employers in the event of death.

6.   Does the alleged exclusive private remedy curtail a Filipino seaman's right to proceed against third parties who may have caused or contributed to the injuries?

7.   Marshal the arguments, pro and con, for the proposition that the Jones Act precludes a "soft" damages action.

    **D.**    **ABS**

        8.    Did ABS do more than inspect the vessel?

        9.    Describe ABS's role in the retrofitting of the deck cranes onto the MV Leon I.

        10.    Discuss the case law regarding the potential liability of classification societies for negligent inspection/certification.

        11.    Discuss the legal effect, if any, of the subsequent inspections of the cranes and wire ropes on ABS's liability.

    **E.**    **The Heiner Popp Controversy**

        12.    Did all parties have Popp's reports and photographs in 2004?

        13.    Did Popp perform any tests or inspections beyond those performed by the opposed parties?

        14.    Discuss the Pellow and Parnell reports.

Very truly yours,

/s/

Benson Everett Legg

c:    Court file

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**BENSON EVERETT LEGG**
Chief Judge

101 West Lombard Street
Baltimore, Maryland 21201
(410) 962-0723

November 21, 2005

MEMORANDUM TO COUNSEL RE:   In the Matter of the Complaint of Eternity Shipping, Ltd., *et al*., for Exoneration from or Limitation of Liability
Civil #L-01-250

Dear Counsel:

In anticipation of today's hearing, I have prepared the following list of questions raised by my review of the papers. Please be prepared to address them orally during the hearing.

**A.   Vessel**

   1.   What is the value of the vessel?

**B.   Tate & Lyle**

   2.   Tate & Lyle has filed a claim for over $11 million. Is this amount in excess of the value of the vessel?

   3.   Does Eurocarriers agree with Tate & Lyle's valuation of its damages?

   4.   Several Tate & Lyle employees were injured at the time of the accident. What is the status of those employees' claims?

**C.   Seamen**

   5.   Two seamen were killed during the accident. The family of Mr. Gonzales filed a claim in this action. Of the main problems in the case, the first is whether the Gonzales family has a private right of action. Marshal the arguments, pro and con, for the proposition that Filipino seamen have an exclusive contractual remedy against their employers in the event of death.

   6.   Does the alleged exclusive private remedy curtail a Filipino seaman's right to proceed against third parties who may have caused or contributed to the injuries?

   7.   Marshal the arguments, pro and con, for the proposition that the Jones Act precludes a "soft" damages action.

**D.     ABS**

8. Did ABS do more than inspect the vessel?

9. Describe ABS's role in the retrofitting of the deck cranes onto the MV Leon I.

10. Discuss the case law regarding the potential liability of classification societies for negligent inspection/certification.

11. Discuss the legal effect, if any, of the subsequent inspections of the cranes and wire ropes on ABS's liability.

**E.     The Heiner Popp Controversy**

12. Did all parties have Popp's reports and photographs in 2004?

13. Did Popp perform any tests or inspections beyond those performed by the opposed parties?

14. Discuss the Pellow and Parnell reports.

Very truly yours,

/s/

Benson Everett Legg

c:     Court file

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**BENSON EVERETT LEGG**
Chief Judge

101 West Lombard Street
Baltimore, Maryland 21201
(410) 962-0723

November 21, 2005

MEMORANDUM TO COUNSEL RE:   In the Matter of the Complaint of Eternity Shipping, Ltd., *et al*., for Exoneration from or Limitation of Liability
Civil #L-01-250

Dear Counsel:

  In anticipation of today's hearing, I have prepared the following list of questions raised by my review of the papers. Please be prepared to address them orally during the hearing.

**A.** **Vessel**

  1. What is the value of the vessel?

**B.** **Tate & Lyle**

  2. Tate & Lyle has filed a claim for over $11 million. Is this amount in excess of the value of the vessel?

  3. Does Eurocarriers agree with Tate & Lyle's valuation of its damages?

  4. Several Tate & Lyle employees were injured at the time of the accident. What is the status of those employees' claims?

**C.** **Seamen**

  5. Two seamen were killed during the accident. The family of Mr. Gonzales filed a claim in this action. Of the main problems in the case, the first is whether the Gonzales family has a private right of action. Marshal the arguments, pro and con, for the proposition that Filipino seamen have an exclusive contractual remedy against their employers in the event of death.

  6. Does the alleged exclusive private remedy curtail a Filipino seaman's right to proceed against third parties who may have caused or contributed to the injuries?

  7. Marshal the arguments, pro and con, for the proposition that the Jones Act precludes a "soft" damages action.

**D.     ABS**

      8.      Did ABS do more than inspect the vessel?

      9.      Describe ABS's role in the retrofitting of the deck cranes onto the MV Leon I.

      10.      Discuss the case law regarding the potential liability of classification societies for negligent inspection/certification.

      11.      Discuss the legal effect, if any, of the subsequent inspections of the cranes and wire ropes on ABS's liability.

**E.     The Heiner Popp Controversy**

      12.      Did all parties have Popp's reports and photographs in 2004?

      13.      Did Popp perform any tests or inspections beyond those performed by the opposed parties?

      14.      Discuss the Pellow and Parnell reports.

Very truly yours,

/s/

Benson Everett Legg

c:      Court file

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**BENSON EVERETT LEGG**
Chief Judge

101 West Lombard Street
Baltimore, Maryland 21201
(410) 962-0723

November 21, 2005

MEMORANDUM TO COUNSEL RE:   In the Matter of the Complaint of Eternity Shipping, Ltd., *et al.*, for Exoneration from or Limitation of Liability
Civil #L-01-250

Dear Counsel:

      In anticipation of today's hearing, I have prepared the following list of questions raised by my review of the papers. Please be prepared to address them orally during the hearing.

**A.   Vessel**

    1.    What is the value of the vessel?

**B.   Tate & Lyle**

    2.    Tate & Lyle has filed a claim for over $11 million. Is this amount in excess of the value of the vessel?

    3.    Does Eurocarriers agree with Tate & Lyle's valuation of its damages?

    4.    Several Tate & Lyle employees were injured at the time of the accident. What is the status of those employees' claims?

**C.   Seamen**

    5.    Two seamen were killed during the accident. The family of Mr. Gonzales filed a claim in this action. Of the main problems in the case, the first is whether the Gonzales family has a private right of action. Marshal the arguments, pro and con, for the proposition that Filipino seamen have an exclusive contractual remedy against their employers in the event of death.

    6.    Does the alleged exclusive private remedy curtail a Filipino seaman's right to proceed against third parties who may have caused or contributed to the injuries?

    7.    Marshal the arguments, pro and con, for the proposition that the Jones Act precludes a "soft" damages action.

**D.** **ABS**

    8. Did ABS do more than inspect the vessel?

    9. Describe ABS's role in the retrofitting of the deck cranes onto the MV Leon I.

    10. Discuss the case law regarding the potential liability of classification societies for negligent inspection/certification.

    11. Discuss the legal effect, if any, of the subsequent inspections of the cranes and wire ropes on ABS's liability.

**E.** **The Heiner Popp Controversy**

    12. Did all parties have Popp's reports and photographs in 2004?

    13. Did Popp perform any tests or inspections beyond those performed by the opposed parties?

    14. Discuss the Pellow and Parnell reports.

Very truly yours,

/s/

Benson Everett Legg

c:    Court file

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**BENSON EVERETT LEGG**
Chief Judge

101 West Lombard Street
Baltimore, Maryland 21201
(410) 962-0723

November 21, 2005

MEMORANDUM TO COUNSEL RE:   In the Matter of the Complaint of Eternity Shipping, Ltd., *et al.*, for Exoneration from or Limitation of Liability
Civil #L-01-250

Dear Counsel:

      In anticipation of today's hearing, I have prepared the following list of questions raised by my review of the papers. Please be prepared to address them orally during the hearing.

**A.   Vessel**

    1.    What is the value of the vessel?

**B.   Tate & Lyle**

    2.    Tate & Lyle has filed a claim for over $11 million. Is this amount in excess of the value of the vessel?

    3.    Does Eurocarriers agree with Tate & Lyle's valuation of its damages?

    4.    Several Tate & Lyle employees were injured at the time of the accident. What is the status of those employees' claims?

**C.   Seamen**

    5.    Two seamen were killed during the accident. The family of Mr. Gonzales filed a claim in this action. Of the main problems in the case, the first is whether the Gonzales family has a private right of action. Marshal the arguments, pro and con, for the proposition that Filipino seamen have an exclusive contractual remedy against their employers in the event of death.

    6.    Does the alleged exclusive private remedy curtail a Filipino seaman's right to proceed against third parties who may have caused or contributed to the injuries?

    7.    Marshal the arguments, pro and con, for the proposition that the Jones Act precludes a "soft" damages action.

**D.**   **ABS**

    8.    Did ABS do more than inspect the vessel?

    9.    Describe ABS's role in the retrofitting of the deck cranes onto the MV Leon I.

    10.    Discuss the case law regarding the potential liability of classification societies for negligent inspection/certification.

    11.    Discuss the legal effect, if any, of the subsequent inspections of the cranes and wire ropes on ABS's liability.

**E.**   **The Heiner Popp Controversy**

    12.    Did all parties have Popp's reports and photographs in 2004?

    13.    Did Popp perform any tests or inspections beyond those performed by the opposed parties?

    14.    Discuss the Pellow and Parnell reports.

Very truly yours,

/s/

Benson Everett Legg

c:    Court file

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**BENSON EVERETT LEGG**
Chief Judge

101 West Lombard Street
Baltimore, Maryland 21201
(410) 962-0723

November 21, 2005

MEMORANDUM TO COUNSEL RE:   In the Matter of the Complaint of Eternity Shipping, Ltd., *et al*., for Exoneration from or Limitation of Liability
Civil #L-01-250

Dear Counsel:

In anticipation of today's hearing, I have prepared the following list of questions raised by my review of the papers. Please be prepared to address them orally during the hearing.

**A.     Vessel**

1. What is the value of the vessel?

**B.     Tate & Lyle**

2. Tate & Lyle has filed a claim for over $11 million. Is this amount in excess of the value of the vessel?

3. Does Eurocarriers agree with Tate & Lyle's valuation of its damages?

4. Several Tate & Lyle employees were injured at the time of the accident. What is the status of those employees' claims?

**C.     Seamen**

5. Two seamen were killed during the accident. The family of Mr. Gonzales filed a claim in this action. Of the main problems in the case, the first is whether the Gonzales family has a private right of action. Marshal the arguments, pro and con, for the proposition that Filipino seamen have an exclusive contractual remedy against their employers in the event of death.

6. Does the alleged exclusive private remedy curtail a Filipino seaman's right to proceed against third parties who may have caused or contributed to the injuries?

7. Marshal the arguments, pro and con, for the proposition that the Jones Act precludes a "soft" damages action.

**D.** **ABS**

    8.    Did ABS do more than inspect the vessel?

    9.    Describe ABS's role in the retrofitting of the deck cranes onto the MV Leon I.

    10.    Discuss the case law regarding the potential liability of classification societies for negligent inspection/certification.

    11.    Discuss the legal effect, if any, of the subsequent inspections of the cranes and wire ropes on ABS's liability.

**E.** **The Heiner Popp Controversy**

    12.    Did all parties have Popp's reports and photographs in 2004?

    13.    Did Popp perform any tests or inspections beyond those performed by the opposed parties?

    14.    Discuss the Pellow and Parnell reports.

                      Very truly yours,

                            /s/

                      Benson Everett Legg

c:    Court file

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**BENSON EVERETT LEGG**
Chief Judge

101 West Lombard Street
Baltimore, Maryland 21201
(410) 962-0723

November 21, 2005

MEMORANDUM TO COUNSEL RE:   In the Matter of the Complaint of Eternity Shipping, Ltd., *et al.*, for Exoneration from or Limitation of Liability
Civil #L-01-250

Dear Counsel:

In anticipation of today's hearing, I have prepared the following list of questions raised by my review of the papers. Please be prepared to address them orally during the hearing.

**A.   Vessel**

1. What is the value of the vessel?

**B.   Tate & Lyle**

2. Tate & Lyle has filed a claim for over $11 million. Is this amount in excess of the value of the vessel?

3. Does Eurocarriers agree with Tate & Lyle's valuation of its damages?

4. Several Tate & Lyle employees were injured at the time of the accident. What is the status of those employees' claims?

**C.   Seamen**

5. Two seamen were killed during the accident. The family of Mr. Gonzales filed a claim in this action. Of the main problems in the case, the first is whether the Gonzales family has a private right of action. Marshal the arguments, pro and con, for the proposition that Filipino seamen have an exclusive contractual remedy against their employers in the event of death.

6. Does the alleged exclusive private remedy curtail a Filipino seaman's right to proceed against third parties who may have caused or contributed to the injuries?

7. Marshal the arguments, pro and con, for the proposition that the Jones Act precludes a "soft" damages action.

**D.   ABS**

8. Did ABS do more than inspect the vessel?

9. Describe ABS's role in the retrofitting of the deck cranes onto the MV Leon I.

10. Discuss the case law regarding the potential liability of classification societies for negligent inspection/certification.

11. Discuss the legal effect, if any, of the subsequent inspections of the cranes and wire ropes on ABS's liability.

**E.   The Heiner Popp Controversy**

12. Did all parties have Popp's reports and photographs in 2004?

13. Did Popp perform any tests or inspections beyond those performed by the opposed parties?

14. Discuss the Pellow and Parnell reports.

Very truly yours,

/s/

Benson Everett Legg

c:   Court file

2