OBER | KALER
A Professional Corporation

**Ober, Kaler, Grimes & Shriver**
Attorneys at Law

120 East Baltimore Street
Baltimore, MD 21202-1643
410-685-1120 / Fax 410-547-0699
www.ober.com

**Eric M. Veit**
emveit@ober.com
410-347-7312

**Offices In**
Maryland
Washington, D.C.
Virginia

May 5, 2003

Bernard J. Sevel, Esquire
Arnold, Sevel & Gay, P.A.
The B&O Building, Suite 560
2 North Charles Street
Baltimore, Maryland 21201

James D. Skeen, Esquire
Wright, Constable & Skeen, L.L.P.
One Charles Center, 16th Floor
100 North Charles Street
Baltimore, Maryland 21201

Jeffrey J. Asperger, Esquire
Michelle E. Meklir, Esquire
Asperger Caraher, L.L.C.
303 East Wacker Drive
Chicago, Illinois 60601

Francis J. Gorman, P.C.
Gorman & Williams
Two North Charles Street
Baltimore, Maryland 21201-3754

R. Blake Brunkenhoefer, Esquire
1770 Tower II
555 N. Carancahua
Corpus Christi, Texas 78478

W. Charles Bailey, Jr., Esquire
Greber & Simms
Suite 702
20 South Charles Street
Baltimore, Maryland 21201

Robert G. Clyne, Esquire
James A. Saville, Jr., Esquire
Hill Rivkins & Hayden, LLP
45 Broadway
New York, New York 10006

James W. Bartlett, III, Esquire
Semmes, Bowen & Semmes
250 W. Pratt Street, 16th Floor
Baltimore, Maryland 21201-2423

Re:   In the Matter of the Complaint of Eternity Shipping Ltd., et al.
      for Exoneration from or Limitation of Liability
      Civil Action #: L-01-CV-0250

Dear Counsel:

Please find enclosed additional documents produced by Limitation Plaintiffs in the above-referenced case. These documents were provided by the counsel in the Philippines assisting us in locating former officers and crewmen of the M/V LEON I, and they pertain to claimant Gonzalez' case before the Philippino National Labor Relations Commission.

*Hearing Ex # 6*
*11/21/05*

O B E R | K A L E R
A Professional Corporation

May 5, 2003
Page 2

    They are BATES-stamped to resume where our previously produced documents stopped.

        Very truly yours,

        Eric M. Veit

EMV/pkp
Enclosures

cc: M. Hamilton Whitman, Jr., Esquire

# STANDARD TERMS AND CONDITIONS GOVERNING THE EMPLOYMENT
## OF FILIPINO SEAFARERS
## ON-BOARD OCEAN-GOING VESSELS

**Definition of Terms:**

For purposes of this contract, the following terms are defined as follows:

1. Point of Hire - refers to the place indicated in the contract of employment which shall be the basis for determining commencement and termination of contract.

2. Convenient Port - any port where it is practicable, economical, safe and convenient to repatriate the seafarer.

3. Philippine Port - refers to any Philippine airport or seaport.

4. Basic Wage - refers to the salary of the seafarer exclusive of overtime, leave pay and other bonuses.

5. Departure - refers to the actual departure from the point of hire of the seafarer through air, sea or land travel transport to join his vessel to a Philippine or foreign port.

6. Regular Working Hours - refers to the seafarer's eight (8) hour working hours within the period of 24 hours.

7. Dental Treatment - covers tooth extraction or dental surgery, if necessary, due to accident.

8. Shipwreck - refers to the damage or destruction of a vessel at sea caused by collision, storm, grounding or any other marine peril at sea or in port rendering the vessel absolutely unnavigable or unable to pursue her voyage.

9. Compassionate Ground - refers to incidence of death of an immediate member of the seafarer's family which includes his parents, spouse and children if the seafarer is married or his parents if the seafarer is single.

10. Principal - any person, partnership or corporation hiring Filipino seafarers to work onboard ocean-going vessels.

11. Work-Related Injury - injury(ies) resulting in disability or death arising out of and in the course of employment.

12. Work-Related Illness - any sickness resulting to disability or death as a result of an occupational disease listed under Section 32-A of this Contract with the conditions set therein satisfied.

## SECTION 1.    DUTIES

A. Duties of the Employer/Agency/Master:

1. To faithfully comply with the stipulated terms and conditions of this contract, particularly the prompt payment of wages, remittance of allotment and the expeditious settlement of valid claims of the seafarer.

2. To make operational on board the vessel the grievance machinery provided in this contract and ensure its free access at all times by the seafarer.

3. To provide a seaworthy vessel for the seafarer and take all reasonable precautions to prevent accident and injury to the crew including provision of safety equipment, fire prevention, safe and proper navigation of the vessel and such other precautions necessary to avoid accident, injury or sickness to the seafarer.

4. To observe the Code of Ethics for Seafarers and conduct himself in the traditional decorum of a master.

B. Duties of the Seafarer:

1. to faithfully comply with and observe the terms and conditions of this contract, violation of which shall be subject to disciplinary action pursuant to Section 33 of this contract;

2. to abide by the Code of Discipline as provided in the POEA rules and regulations governing overseas contract workers and the Code of Ethics for Seafarers;

3. to be obedient to the lawful commands of the Master or any person who shall lawfully succeed him and to comply with company policy including safety policy and procedures and any instructions given in connection therewith.

EC002639

Page 2

4.  to be diligent in his duties relating to the vessel, its stores and cargo, whether on board, in boats or ashore; and

5.  to conduct himself in an orderly and respectful manner towards passengers and shippers stevedores, port authorities and other persons on official business with the ship.

SECTION 2.    COMMENCEMENT/DURATION OF CONTRACT

A.  The employment contract between the employer and the seafarer shall commence upon actual departure of the seafarer from the airport or seaport in the point of hire and with a POEA approved contract. It shall be effective until the seafarer's date of arrival at the point of hire upon termination of his employment pursuant to Section 18 of this Contract.

B.  The period of employment shall be for a period mutually agreed upon by the seafarer and the employer but not to exceed 12 months. Any extension of the contract shall be subject to the mutual consent of both parties.

SECTION 3.    FREE PASSAGE FROM THE POINT OF HIRE TO THE PORT OF EMBARKATION

The seafarer shall join the vessel or be available for duty at the date and time specified by the employer. The seafarer shall travel by air or as otherwise directed at the expense of the employer.

SECTION 4.    BAGGAGE ALLOWANCE

The seafarer traveling by air to join a vessel or on repatriation shall be entitled to the normal free baggage allowance offered by the airlines. The cost of the excess baggage shall be for the account of the seafarer.

SECTION 5.    HYGIENE AND VACCINATION

A.  The seafarer shall keep his quarters and other living spaces -such as mess rooms, toilets, bathrooms, alleyways and recreation rooms in clean and tidy condition to the satisfaction of the master. The work is to be performed outside the seafarer's regular working hours and for which no overtime pay shall be claimed.

B.  The seafarer shall submit to the order of the master or to the laws of any country within the territorial jurisdiction of which the vessel may enter to have such vaccination or inoculation or to undertake measures safeguarding his health and of the whole crew.

SECTION 6.    WAGES

The seafarer shall be paid his monthly wages not later than 15 days of the succeeding month from the date of commencement of the contract until the date of arrival at point of hire upon termination of his employment pursuant to Section 18 of this Contract.

SECTION 7.    PAYMENT ON BOARD

Payment of shipboard pay in foreign ports shall be subject to the currency control regulations at the port abroad and to the official rate of exchange prevailing at the time of payment. Advances shall be at the master's/employer's discretion and in accordance with the foregoing conditions.

SECTION 8.    ALLOTMENTS AND REMITTANCES

A.  The seafarer is required to make an allotment which shall be payable once a month to his designated allottee in the Philippines through any authorized Philippine bank. The master/employer/ agency shall provide the seafarer with facilities to do so at no expense to the seafarer. The allotment shall be at least eighty percent (80%) of the seafarer's monthly basic salary including backwages, if any.

B.  The master/employer/agency may also provide facilities for the seafarer to remit any amount earned in excess of his allotment to his designated allottee in the Philippines through any authorized Philippine bank without any charge to him.

C.  The allotments shall be paid to the designated allottee in Philippine currency at the rate of exchange indicated in the credit advice of the local authorized Philippine bank.

SECTION 9. ACCOUNT OF WAGES & CERTIFICATE OF EMPLOYMENT

EC002640

The seafarer, upon his discharge, shall be given a written account of his wages reflecting all deductions therefrom. Where a seafarer is landed in an emergency, the written account of his wages shall be given to him as soon as practicable thereafter. Upon the seafarer's request, he shall also be provided by his employer/agency his certificate of employment or service record without any charge.

SECTION 10. HOURS OF WORK

A.   The seafarer shall perform not more than forty-eight (48) hours of regular work a week. The hours of works shall be determined and prescribed by the master, provided that it conforms with customary international practices and standards and as prescribed in paragraph B below.

B.   Regular working hours for the seafarer shall be eight (8) hours in every 24 hours, midnight to midnight, Monday to Sunday. The normal practice is as follows:

    1.   the day worker shall observe the eight (8) regular working hours during the period from 0600 hours to 1800 hours.

    2.   the steward personnel shall observe the eight (8) regular working hours during the period from 0500 hours to 2000 hours.

    3.   the Radio Operator shall observe the eight (8) regular working hours in every twenty-four (24) hours, midnight to midnight, from Monday to Sunday as established by International Telecommunication Conventions and as prescribed by the master.

    4.   for those who are on sea watch, their working hours shall be eight (8) hours per day. Staggering of working hours will be at the master's discretion

C.   The seafarer shall be allowed reasonable rest period in accordance with international standards.

SECTION 11. OVERTIME & HOLIDAYS

A.   The seafarer shall be compensated for all work performed in excess of the regular eight (8) hours as prescribed above. Overtime pay may be classified as open, fixed or guaranteed.

In computing overtime, a fraction of the first hour worked shall be considered as one full hour. After the first hour overtime, any work performed which is less than thirty (30) minutes shall be considered as half an hour and more than thirty (30) minutes shall be considered one full hour.

B.   Overtime work may be compensated at the following rates:

    1.   Open overtime - not less than 125 percent (125%) of the basic hourly rate computed based on two hundred eight (208) regular working hours per month.

    2.   Guaranteed or fixed overtime - not less than thirty percent (30%) of the basic monthly salary of the seafarer This fixed rate overtime shall include overtime work performed on Sundays and holidays but shall not exceed one hundred five (105) hours a month.

    3.   Overtime work for officers shall be computed based on the fixed overtime rate.

    4.   For ratings, overtime work shall be based on guaranteed or open overtime rate, as mutually agreed upon by the contracting parties. Overtime work in excess of 105 hours a month for ratings shall be further compensated on the open overtime rate.

C.   Any hours of work or duty including hours of watchkeeping performed by the seafarer on designated rest days and holidays shall be paid rest day or holiday pay. The following shall be considered as holidays at sea and in port.

    New Year's Day - January 1

    Maundy Thursday - movable date

    Good Friday - movable date

    Araw ng Kagitingan (Bataan & Corregidor Day) - April 9

    Labor Day - May 1

EC002641

Independence Day  - June 12

National Heroes Day - Last Sunday of August

All Saints Day - November 1

Bonifacio Day  - November 30

Christmas Day - December 25

Rizal Day  - December 30

D.  Emergency Duty - No overtime work shall be considered for any work performed in case of emergency affecting the safety of the vessel, passenger, crew or cargo, of which the master shall be the sole judge, or for fire, boat, or emergency drill or work required to give assistance to other vessels or persons in immediate peril.

SECTION 12.    LEAVE  PAY

The seafarer's leave pay shall be in accordance with the number of days leave per month as agreed upon. Days leave shall not be less than two and a half (2-1/2) days for each month of service and pro-rated.  Leave pay shall be settled onboard or settled within two weeks after arrival of the seafarer at the point of hire.

SECTION 13.    SHORE LEAVE

The seafarer shall be allowed shore leave when practicable, upon the consent of the master or his deputy, taking into consideration the operations and safety of the vessel.

SECTION 14.    VICTUALLING, VESSEL STORES AND PROVISIONS

A.  The seafarer shall be provided by the master/ employer with subsistence consistent with good maritime standards and practices while on board the vessel.

B.  All stores and provisions issued to the seafarer are only for use and consumption on board the vessel and any unused or unconsumed stores or provisions shall remain the property of the employer. The seafarer shall not take ashore, sell, destroy or give away such stores and provisions.

SECTION 15.    TRANSFER CLAUSE

The seafarer  agrees to be transferred at any port to any vessel owned or operated, manned or managed by the same employer, provided it is accredited to the same manning agent and provided further that the position of the seafarer  and the rate of his wages and terms of service are in no way inferior and the total period of employment shall not exceed that originally agreed upon.

Any form of transfer shall be documented and  made available when necessary.

SECTION 16.    GRIEVANCE MACHINERY

A.  If the seafarer  considers himself  aggrieved, he shall  make his complaint in accordance with the following procedures:

  1.  The seafarer shall first approach the head of the Department in which he is assigned  to explain his grievance.
      a)  In the Deck, Radio and Catering Department, the head is the Chiefmate.
      b)  In the Engine Department, the head is the Chief Engineer.
      c)  In the Catering and/or Hotel Department in a passenger ship, the head is the Chief Steward and/or Purser.

  2.  The seafarer  shall make his grievance in  writing and in an orderly manner and shall choose a time when his complaint or grievance can be properly heard.

  3.  The Department head shall deal with the complaint or grievance and where solution is not possible at his level, refer the complaint or grievance to the Master who shall handle the case personally.

  4.  If no satisfactory result is achieved, the seafarer concerned may appeal to the management of the company or with the Philippine Overseas Labor Office or consular officer overseas. The master shall

afford such facilities necessary to enable the seafarer to transmit his appeal.

    5.   If after observing the grievance procedure the master finds that the seafarer violated the terms of his Contract or has committed breach of discipline, the master shall discipline the seafarer or, if warranted, terminate his employment.

    6.   The seafarer may also seek the assistance of the highest ranking Filipino seafarer on board.

B.   When availed of by the seafarer, the grievance procedure and all actions or decisions agreed upon shall be properly documented for the protection and interest of both parties.

C.   The foregoing procedure shall be without prejudice to other modes of voluntary settlement of disputes and to the jurisdiction of the Philippine Overseas Employment Administration (POEA) or the National Labor Relations Commission (NLRC) over any unresolved complaints arising out of shipboard employment that shall be brought before it by the seafarer.

SECTION 17.       DISCIPLINARY PROCEDURES

The Master shall comply with the following disciplinary procedures against an erring seafarer:

A.   The Master shall furnish the seafarer with a written notice containing the following:

    1.   Grounds for the charges as listed in Section 33 of this Contract or analogous act constituting the same.

    2.   Date, time and place for a formal investigation of the charges against the seafarer concerned.

B.   The Master or his authorized representative shall conduct the investigation or hearing, giving the seafarer the opportunity to explain or defend himself against the charges. These procedures must be duly documented and entered into the ship's logbook.

C.   If after the investigation or hearing, the Master is convinced that imposition of a penalty is justified, the Master shall issue a written notice of penalty and the reasons for it to the seafarer, with copies furnished to the Philippine agent.

D.   Dismissal for just cause may be effected by the Master without furnishing the seafarer with a notice of dismissal if there is a clear and existing danger to the safety of the crew or the vessel. The Master shall send a complete report to the manning agency substantiated by witnesses, testimonies and any other documents in support thereof.

SECTION 18.       TERMINATION OF EMPLOYMENT

A.   The employment of the seafarer shall cease when the seafarer completes his period of contractual service aboard the vessel, signs-off from the vessel and arrives at the point of hire.

B.   The employment of the seafarer is also terminated when the seafarer arrives at the point of hire for any of the following reasons:

    1.   when the seafarer signs-off and is disembarked for medical reasons pursuant to Section 20 (B)[5] of this Contract.

    2.   when the seafarer signs-off due to shipwreck, ship's sale, lay-up of vessel, discontinuance of voyage or change of vessel principal in accordance with Sections 22, 23 and 26 of this Contract.

    3.   when the seafarer, in writing, voluntarily resigns and signs off prior to expiration of contract pursuant to Section 19 (G) of this Contract.

    4.   when the seafarer is discharged for just cause as provided for in Section 33 of this Contract.

SECTION 19.       REPATRIATION

A.   If the vessel is outside the Philippines upon the expiration of the contract, the seafarer shall continue his service on board until the vessel's arrival at a convenient port and/or after arrival of the replacement crew provided that, in any case, the continuance of such service shall not exceed three months. The seafarer shall be entitled to earned wages and benefits as provided in his contract.

B.   If the vessel arrives at a convenient port before the expiration of the contract, the master/employer may repatriate the seafarer from such port, provided the unserved portion of his contract is not more than

EC002643

one (1) month. The seafarer shall be entitled only to his earned wages and earned leave pay and to his basic wages corresponding to the unserved portion of the contract, unless within 60 days from disembarkation, the seafarer is rehired at the same rate and position, in which case the seafarer shall be entitled only to his earned wages and earned leave pay.

C.  If the vessel arrives at a convenient port within a period of three (3) months before the expiration of his contract, the master/employer may repatriate the seafarer from such port provided that the seafarer shall be paid all his earned wages. In addition, the seafarer shall also be paid his leave pay for the entire contract period plus a termination pay equivalent to one (1) month of his basic pay, provided, however, that this mode of termination may only be exercised by the master/employer if the original contract period of the seafarer is at least ten (10) months; provided, further, that the conditions for this mode of termination shall not apply to dismissal for cause.

D.  The seafarer shall, if discharged at a port abroad for any reason other than for discipline, be accommodated ashore and in cases where it is not intended that he rejoin the vessel, shall be repatriated to the Philippines via sea or air or as may otherwise be directed by the employer/master/agency.

E.  When the seafarer is discharged for any just cause, the employer shall have the right to recover the costs of his replacement and repatriation from the seafarer's wages and other earnings.

F.  The seafarer, when discharged and repatriated as directed by the employer/master/agency shall be entitled to basic wages from date of signing off until arrival at the point of hire except when the discharge is in accordance with the above or for disciplinary reasons.

If the seafarer delays or desires a detour and/or another destination other than the most direct to the point of hire, all additional expenses shall be to the seafarer's account. The seafarer's basic wage shall be calculated based on the date of arrival by the most direct route.

G.  A seafarer who requests for early termination of his contract shall be liable for his repatriation cost as well as the transportation cost of his replacement. The employer may, in case of compassionate grounds, assume the transportation cost of the seafarer's replacement.

SECTION 20. COMPENSATION AND BENEFITS

A.  COMPENSATION AND BENEFITS FOR DEATH

1.  In case of work-related death of the seafarer, during the term of his contract the employer shall pay his beneficiaries the Philippine Currency equivalent to the amount of Fifty Thousand US dollars (US$50,000) and an additional amount of Seven Thousand US dollars (US$7,000) to each child under the age of twenty-one (21) but not exceeding four (4) children, at the exchange rate prevailing during the time of payment.

2.  Where death is caused by warlike activity while sailing within a declared war zone or war risk area, the compensation payable shall be doubled. The employer shall undertake appropriate war zone insurance coverage for this purpose.

3.  It is understood and agreed that the benefits mentioned above shall be separate and distinct from, and will be in addition to whatever benefits which the seafarer is entitled to under Philippine laws from the Social Security System, Overseas Workers Welfare Administration, Employees' Compensation Commission, Philippine Health Insurance Corporation and Pag-ibig, if applicable.

4.  The other liabilities of the employer when the seafarer dies as a result of work-related injury or illness during the term of employment are as follows:

a)  The employer shall pay the deceased's beneficiary all outstanding obligations due the seafarer under this Contract.

b)  The employer shall transport the remains and personal effects of the seafarer to the Philippines at employer's expense except if the death occurred in a port where local government laws or regulations do not permit the transport of such remains. In case death occurs at sea, the disposition of the remains shall be handled or dealt with in accordance with the master's best judgment. In all cases, the employer/master shall communicate with the manning agency to advise for disposition of seafarer's remains.

c)  The employer shall pay the beneficiaries of the seafarer the Philippine currency equivalent to the amount of One Thousand US dollars (US$1,000) for burial expenses at the exchange rate

EC002644

prevailing during the time of payment.

B.   COMPENSATION AND BENEFITS FOR INJURY OR ILLNESS

The liabilities of the employer when the seafarer suffers work-related injury or illness during the term of his contract are as follows:

1.   The employer shall continue to pay the seafarer his wages during the time he is on board the vessel;

2.   If injury or illness requires medical and/or dental treatment in a foreign port, the employer shall be liable for the full cost of such medical, serious dental, surgical and hospital treatment as well as board and lodging until the seafarer is declared fit to work or to be repatriated.

   However, if after repatriation, the seafarer still requires medical attention arising from said injury or illness, he shall be so provided at cost to the employer until such time he is declared fit or the degree of his disability has been established by the company-designated physician.

3.   Upon sign-off from the vessel for medical treatment, the seafarer is entitled to sickness allowance equivalent to his basic wage until he is declared fit to work or the degree of permanent disability has been assessed by the company-designated physician but in no case shall this period exceed one hundred twenty (120) days.

   For this purpose, the seafarer shall submit himself to a post-employment medical examination by a company-designated physician within three working days upon his return except when he is physically incapacitated to do so, in which case, a written notice to the agency within the same period is deemed as compliance.   Failure of the seafarer to comply with the mandatory reporting requirement shall result in his forfeiture of the right to claim the above benefits.

   If a doctor appointed by the seafarer disagrees with the assessment, a third doctor may be agreed jointly between the Employer and the seafarer. The third doctor's decision shall be final and binding on both parties.

4.   Those illnesses not listed in Section 32 of this Contract are disputably presumed as work related.

5.   Upon sign-off of the seafarer from the vessel for medical treatment, the employer shall bear the full cost of repatriation in the event the seafarer is declared (1) fit for repatriation; or (2) fit to work but the employer is unable to find employment for the seafarer on board his former vessel or another vessel of the employer despite earnest efforts.

6.   In case of permanent total or partial disability of the seafarer caused by either injury or illness the seafarer shall be compensated in accordance with the schedule of benefits enumerated in Section 32 of this Contract. Computation of his benefits arising from an illness or disease shall be governed by the rates and the rules of compensation applicable at the time the illness or disease was contracted.

C.   It is understood that computation of the total permanent or partial disability of the seafarer caused by the injury sustained resulting from warlike activities within the warzone area shall be based on the compensation rate payable within the warzone area as prescribed in this Contract.

D.   No compensation and benefits shall be payable in respect of any injury, incapacity, disability or death of the seafarer resulting from his willful or criminal act or intentional breach of his duties, provided however, that the employer can prove that such injury, incapacity, disability or death is directly attributable to the seafarer.

E.   A seafarer who knowingly conceals and does not disclose past medical condition, disability and history in the pre-employment medical examination constitutes fraudulent misrepresentation and shall disqualify him from any compensation and benefits. This may also be a valid ground for termination of employment and imposition of the appropriate administrative and legal sanctions.

F.   When requested, the principal shall furnish the seafarer a copy of all pertinent medical reports or any records at no cost to the seafarer.

G.   The seafarer or his successor in interest acknowledges that payment for injury, illness, incapacity, disability or death of the seafarer under this contract shall cover all claims arising from or in relation with or in the course of the seafarer's employment, including but not limited to damages arising from the contract, tort, fault or negligence under the laws of the Philippines or any other country.

SECTION 21.   WAR AND WARLIKE OPERATIONS ALLOWANCE

A.   If a war or warlike operations should arise during the term of this Contract in any country within the vessel's trading area, the seafarer may sail the vessel within and out of the trading area if required by the Master.

B.   If at the time of the signing of the contract, an area is declared a war or war-risk trading area and the

EC002645

Page 8

seafarer binds himself in writing to sail into that area, the agreement shall be properly appended to the Contract for verification and approval by the Philippine Overseas Employment Administration (POEA). The seafarer shall comply with the agreement or shall bear his cost of repatriation when he opts not to sail into a war or war-risk trading area.

C.    The seafarer when sailing within a war-risk trading area shall be entitled to such premium pay as the POEA may determine through appropriate periodic issuances.

D.    The POEA shall be the sole authority to determine whether the vessel is within a war risk trading area. It shall also determine the amount of premium pay to which the seafarer shall be entitled to when sailing in that war-risk trading area.

SECTION 22.    TERMINATION DUE TO SHIPWRECK

Where the vessel is wrecked necessitating the termination of employment before the date indicated in the contract, the seafarer shall be entitled to earned wages, medical examination at employer's expense to determine his fitness to work, repatriation at employer's cost and one month basic wage as termination pay.

SECTION 23.    TERMINATION DUE TO VESSEL SALE, LAY-UP OR DISCONTINUANCE OF VOYAGE

Where the vessel is sold, laid up, or the voyage is discontinued necessitating the termination of employment before the date indicated in the Contract, the seafarer shall be entitled to earned wages, repatriation at employer's cost and one (1) month basic wage as termination pay, unless arrangements have been made for the seafarer to join another vessel belonging to the same principal to complete his contract in which case the seafarer shall be entitled to basic wages until the date of joining the other vessel.

SECTION 24.    TERMINATION DUE TO UNSEAWORTHINESS

A.    If the vessel is declared unseaworthy by a classification society, port state or flag state, the seafarer shall not be forced to sail with the vessel.

B.    If the vessel's unseaworthiness necessitates the termination of employment before the date indicated in the Contract, the seafarer shall be entitled to earned wages, repatriation at cost to the employer and termination pay equivalent to one (1) month basic wage.

SECTION 25.  TERMINATION DUE TO REGULATION 1/4, CONTROL PROCEDURES OF THE 1978 STCW CONVENTION, AS AMENDED

If the seafarer is terminated and repatriated as a result of port state control procedures/actions in compliance with Regulation 1/4 of the 1978 STCW Convention, as amended, his termination shall be considered valid. However, he shall be entitled to repatriation, earned wages and other benefits.

SECTION 26.    CHANGE OF PRINCIPAL

A.    Where there is a change of principal of the vessel necessitating the termination of employment of the seafarer before the date indicated in the Contract, the seafarer shall be entitled to earned wages, repatriation at employer's expense and one month basic pay as termination pay.

B.    If by mutual agreement, the seafarer continues his service on board the same vessel, such service shall be treated as a new contract. The seafarer shall be entitled to earned wages only.

C.    In case arrangements has been made for the seafarer to join another vessel to complete his contract, the seafarer shall be entitled to basic wage until the date of joining the other vessel.

SECTION 27.  LOSS OF OR DAMAGE TO CREW'S EFFECTS BY MARINE PERIL

A.    The seafarer shall be reimbursed by the employer the full amount of loss or damage to his personal effects but in no case shall the amount exceed the Philippine currency equivalent to the amount of Two Thousand US dollars (US$ 2,000) if his personal effects are lost or damaged as a result of the wreck or loss or stranding or abandonment of the vessel or as a result of fire, flooding, collision or piracy.

B.    In case of partial loss, the amount shall be determined by mutual agreement of both parties but in no case to exceed the Philippine currency equivalent to the amount of Two Thousand US dollars (US$2,000).

C.    Reimbursement for loss or damage to the seafarer's personal effects shall not apply if such loss or damage is due to (a) the seafarer's own fault; (b) larceny or theft or (c) robbery.

D.    Payment of any reimbursement shall be computed at the rate of exchange prevailing at the time of payment.

EC002646

SECTION 28.    GENERAL SAFETY

A.  The seafarer shall observe and follow any regulation or restriction that the master may impose concerning safety, drug and alcohol and environmental protection.

B.  The seafarer shall make use of all appropriate safety equipment provided him and must ensure that he is suitably dressed from the safety point of view for the job at hand.

SECTION 29.    DISPUTE SETTLEMENT PROCEDURES

In cases of claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators. If the parties are not covered by a collective bargaining agreement, the parties may at their option submit the claim or dispute to either the original and exclusive jurisdiction of the National Labor Relations Commission (NLRC), pursuant to Republic Act (RA) 8042 otherwise known as the Migrant Workers and Overseas Filipinos Act of 1995 or to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators. If there is no provision as to the voluntary arbitrators to be appointed by the parties, the same shall be appointed from the accredited voluntary arbitrators of the National Conciliation and Mediation Board of the Department of Labor and Employment.

The Philippine Overseas Employment Administration (POEA) shall exercise original and exclusive jurisdiction to hear and decide disciplinary action on cases, which are administrative in character, involving or arising out of violations of recruitment laws, rules and regulations involving employers, principals, contracting partners and Filipino seafarers.

SECTION 30.    PRESCRIPTION OF ACTION

All claims arising from this Contract shall be made within three (3) years from the date the cause of action arises, otherwise the same shall be barred.

SECTION 31.    APPLICABLE LAW

Any unresolved dispute, claim or grievance arising out of or in connection with this Contract, including the annexes thereof, shall be governed by the laws of the Republic of the Philippines, international conventions, treaties and covenants where the Philippines is a signatory.

SECTION 32. SCHEDULE OF DISABILITY OR IMPEDIMENT FOR INJURIES SUFFERED AND DISEASES INCLUDING OCCUPATIONAL DISEASES OR ILLNESS CONTRACTED.

HEAD

Traumatic head injuries that result to:

1.  Apperture unfilled with bone not over three (3) inches without brain injury..........Gr. 9

2.  Apperture unfilled with bone over three (3) inches without brain injury ..........Gr. 3

3.  Severe paralysis of both upper or lower extremities or one upper and one lower extremity..........Gr. 1

4.  Moderate paralysis of two (2) extremities producing moderate difficulty in movements with self-care actvities..........Gr. 6

5.  Slight paralysis affecting one extremity producing slight difficulty with self-care activities ..........Gr. 10

6.  6. Severe mental disorder or Severe Complex Cerebral function disturbance or post-traumatic psychoneurosis which require regular aid and attendance as to render worker permanently unable to perform any work.........Gr. 1

7.  Moderate mental disorder or moderate brain functional disturbance which limits worker to the activities of daily living with some directed care or attendance .......Gr. 6

8.  Slight mental disorder or disturbance that requires little attendance or aid and which interferes to a slight degree with the working capacity of the claimant.......Gr. 10

9.  Incurable imbecility .......Gr. 1

FACE

1.  Severe disfigurement of the face or head as to make the worker so repulsive as to greatly handicap him in securing or retaining employment, thereby being no permanent functional disorder ..........Gr. 2

EC002647

2. Moderate facial disfigurement involving partial ablation of the nose with big scars on face or head.........Gr. 5

3. Partial ablation of the nose or partial avulsion of the scalp.........Gr. 9

4. Complete loss of the power of mastication and speech function.........Gr. 1

5. Moderate constriction of the jaw resulting in moderate degree of difficulty in chewing and moderate loss of the power or the expression of speech .........Gr. 6

6. Slight disorder of mastication and speech function due to traumatic injuries to jaw or cheek bone.........Gr. 12

EYES

1. Blindness or total and permanent loss of vision of both eyes ..........Gr. 1

2. Total blindness of one (1) eye and fifty percent (50%) loss of vision of the other eye..........Gr. 5

3. Loss of one eye or total blindness of one eye ..........Gr. 7

4. Fifty percent (50%) loss of vision of one eye..........Gr.10

5. Lagopthalmos, one eye........Gr.12

6. Ectropion, one eye..........Gr.12

7. Ephiphora, one eye.........Gr.12

8. Ptosis, one eye ..........Gr.12

NOTE: (Smeller's Chart - used to grade for near and distant vision).

NOSE AND MOUTH

1. Considerable stricture of the nose (both sides) hindering breathing.........Gr. 11

2. Loss of the sense of hearing in one ear..........Gr.11

3. Injuries to the tongue (partial amputation or adhesion) or palate-causing defective speech.........Gr. 10

4. Loss of three (3) teeth restored by prosthesis ..........Gr. 14

EARS

1. For the complete loss of the sense of hearing on both ears ..........Gr. 3

2. Loss of two (2) external ears..........Gr. 8

3. Complete loss of the sense of hearing in one ear..........Gr.11

4. Loss of one external ear..........Gr.12

5. Loss of one half (1/2) of an external ear..........Gr.14

NECK

1. Such injury to the throat as necessitates the wearing of a tracheal tube........Gr. 6

2. Loss of speech due to injury to the vocal cord.........Gr. 9

3. Total stiffness of neck due to fracture or dislocation of the cervical pines.........Gr. 8

4. Moderate stiffness or two thirds (2/3) loss of motion of the neck.........Gr.10

5. Slight stiffness of neck or one third (1/3) loss of motion.........Gr.12

CHEST-TRUNK-SPINE

1. Fracture of four (4) or more ribs resulting to severe limitation of chest expansion..........Gr. 6

2. Fracture of four (4) or more ribs with intercostal neuralgia resulting in moderate limitation of chest expansion..........Gr. 9

3. Slight limitation of chest expansion due to simple rib functional without myositis or intercostal neuralgia..........Gr.12

4. Fracture of the dorsal or lumber spines resulting to severe or total rigidity of the trunk or total loss of lifting

EC002648

power of heavy objects.........Gr. 6

5.   Moderate rigidity or two thirds (2/3) loss of motion or lifting power of the trunk........Gr. 8

6.   Slight rigidity or one third (1/3) loss of motion or lifting power of the trunk .........Gr.11

7.   Injury to the spinal cord as to make walking impossible without the aid of a pair of crutches........Gr. 4

8.   Injury to the spinal cord as to make walking impossible even with the aid of a pair of crutches........Gr.1

9.   Injury to the spinal cord resulting to incontinence of urine and feces.........Gr.1


ABDOMEN

1.   Loss of the spleen.........Gr.8

2.   Loss of one kidney..........Gr.7

3.   Severe residuals of impairment of intra-abdominal organs which requires regular aid and attendance that will unable worker to seek any gainful employment..........Gr.1

4.   Moderate residuals of disorder of the intra-abdominal organs secondary to trauma resulting to impairment of nutrition, moderate tenderness, nausea, vomiting, constipation or diarrhea.........Gr.7

5.   Slight residuals or disorder of the intra-abdominal organs resulting in impairment of nutrition, slight tenderness and/or constipation or diarrhea.........Gr.12

6.   Inguinal hernia secondary to trauma or strain.........Gr.12

PELVIS

1.   Fracture of the pelvic rings as to totally incapacitate worker to work.........Gr.1

2.   Fracture of the pelvic ring resulting to deformity and lameness.........Gr.6

URINARY AND GENERATIVE ORGANS

1.   Total loss of penis.........Gr.7

2.   Total loss of both testicles..........Gr.7

3.   Total loss of one testicle..........Gr.11

4.   Scars or destruction of the parts of the cavernous body or urethra interfering with erection or markedly affecting coitus..........Gr.9

5.   Loss of one breast..........Gr.11

6.   Prolapse of the uterus..........Gr.6

7.   Great difficulty in urinating..........Gr.13

8.   Incontinence of urine.........Gr.10

THUMBS AND FINGERS

1.   Total loss of one thumb including metacarpal bone.........Gr.9

2.   Total loss of one thumb..........Gr.10

3.   Total loss on one index finger including metacarpal bone..........Gr.10

4.   Total loss of one index finger.........Gr.11

5.   Total loss of one middle finger including metacarpal bone.........Gr.11

6.   Total loss of one middle finger.........Gr.12

7.   Total loss of one ring finger including metacarpal bone.........Gr.12

8.   Total loss of one ring finger..........Gr.13

9.   Total loss of one small finger including metacarpal bone..........Gr.13

10.  Total loss of one small finger..........Gr.14

11.  Loss of two (2) or more fingers: Compensation for the loss or loss of use of two (2) or more fingers or one

EC002649

(1) or more phalanges of two or more digits of a hand must be proportioned to the loss of the hand occasioned thereby but shall not exceed the compensation for the loss of a hand:

a)  Loss of  five (5) fingers of one hand..........Gr.6

b)  Loss of thumb, index fingers and any of 2 or more fingers of the same hand.........Gr.6

c)  Loss of the thumb, index finger and any one of the remaining fingers of the same hand.........Gr.7

d)  Loss of thumb and index finger..........Gr.8

e)  Loss of three (3) fingers of one hand not including thumb and index finger..........Gr.9

f)  Loss of the index finger and any one of the other fingers of the  same hand excluding thumb..........Gr.9

g)  Loss of two (2) digits of one hand not including thumb and index finger..........Gr.10

12.   Loss of ten (10) fingers of both hand..........Gr.3

HANDS

1.  Total loss of use of both hands or amputation of both hands at wrist joints or above.........Gr.1

2.  Amputation of a hand at carpo-metacarpal joints..........Gr.5

3.  Amputation between wrist and elbow joint..........Gr.5

4.  Loss of grasping power for small objects between the fold of the finger of one hand.........Gr.10

5.  Loss of grasping power for large objects between fingers and palm of one hand..........Gr.10

6.  Loss of opposition between the thumb and tips of the fingers of one hand..........Gr.9

7.  Ankyclosed wrist in normal position..........Gr.10

8.  Ankyclosed wrist in position one third (1/3) flexed or half extended and/or severe limited action of a wrist ..........Gr.11

SHOULDER AND ARM

1.  Inability to turn forearm (forearm in normal position-supination..........Gr.11

2.  Inability to turn forearm (forearm in abnormal position-pronation..........Gr.10

3.  Distrubance of the normal carrying angle or weakness of an arm or a forearm due to deformity of moderate atrophy of muscles.........Gr.11

4.  Stiff elbow at full flexion or extension (one side..........Gr.7

5.  Stiff elbow at right angle flexion..........Gr.8

6.  Flail elbow joint..........Gr.9

7.  Pseudoarthrosis of the humerus with musculospiral or radial paralysis..........Gr.6

8.  Ankylosis of one (1) shoulder, the shoulder blade remaining mobile ..........Gr.9

9.  Ankylosis of one shoulder, the shoulder blade remaining rigid..........Gr.8

10. Unreduced dislocation of one (1) shoulder..........Gr.8

11. Ruptured biceps or pseudoarthrosis of the humerus, close (one side..........Gr.11

12. Inability to raise arm more than halfway from horizontal to perpendicular ..........Gr.11

13. Ankylosis of the shoulder joint not permitting arm to be raised above a level with a shoulder and/ or irreducible fracture or faulty union collar bone..........Gr.10

14. Total paralysis of both upper extremites..........Gr.1

15. Total  paralysis of one upper extremity..........Gr.3

16. Amputation of one (1) upper extremity at or above the elbow...........Gr.4

17. Scar the size of the palm in one extremity..........Gr.14

LOWER EXTREMITIES

1.  Loss of a big toe..........Gr.12

EC002650

Page 13

2.  Loss of a toe other than the big one..........Gr.14

3.  Loss of ten (10) digits of both feet..........Gr. 5

4.  Loss of a great toe of one foot + one toe..........Gr.10

5.  Loss of two toes not including great toe or toe next to it..........Gr.12

6.  Loss of three (3) toes excluding great toe of a foot..........Gr.10

7.  Loss of four (4) excluding great toe of a foot..........Gr. 9

8.  Loss of great toe and two (2) other toes of the same foot..........Gr. 9

9.  Loss of five digits of a foot..........Gr. 8

10. Loss of both feet at ankle joint or above..........Gr. 1

11. Loss of one foot at ankle joint or above..........Gr. 6

12. Depression of the arch of a foot resulting in weak foot..........Gr.12

13. Loss of one half (1/2) metatarsus of one (1) foot..........Gr. 8

14. Loss of whole metatarsus or forepart of foot..........Gr.7

15. Tearing of achilles tendon resulting in the impairment of active flexion and extension of a   foot..........Gr.12

16. Malleolar fracture with displacement of the foot inward or outward..........Gr.10

17. Complete immobility of an ankle joint in abnormal position..........Gr.10

18. Complete immobility of an ankle joint in normal position..........Gr.11

19. Total loss of a leg or amputation at or above the knee..........Gr.3

20. 20. Stretching leg of the  ligaments  of a knee  resulting  in  instability  of   the joint..........Gr.10

21. Ankylosis of a knee in genuvalgum of varum..........Gr.10

22. Pseudoarthrosis of a knee cap..........Gr.10

23. Complete immobility of a knee joint in full extension..........Gr.10

24. Complete immobility of a knee joint in strong flexion..........Gr. 7

25. Complete immobility of a hip joint in flexion of the thigh..........Gr. 5

26. Complete immobility of a hip joint in full extension of the thigh..........Gr. 9

27. Slight atrophy of calf of leg muscles without apparent shortening or joint lesion or disturbance of weight-bearing line..........Gr.13

28. Shortening of a lower extremity from one to three centimeters with either joint lesion or disturbance of weight-bearing joint..........Gr.13

29. Shortening of 3 to 6 cm. with slight atrophy of calf or thigh muscles..........Gr.12

30. Shortening of  3 to  6 cm.  with  either joint lesion  or  disturbance  of  weight-bearing joint..........Gr.11

31. Irregular union of fracture with joint stiffness and with shortening of 6 to 9 cm. producing permanent lameness..........Gr.9

32. Irregular union of fracture in a thigh or leg with shortening of 6 to 9 cms..........Gr.10

33. Failure of fracture of both hips to unite..........Gr.1

34. Failure of fracture of a hip to unite..........Gr.3

35. Paralysis of both lower extremites..........Gr.1

36. Paralysis of one lower extremity..........Gr.3

37. Scar the size of a palm or larger left on an extremity..........Gr.14

NOTE:  Any item in the schedule classified under Grade 1 shall be considered or shall constitute total and permanent disability.

EC002651

Page 14

SCHEDULE OF DISABILITY ALLOWANCES

| Impediment Grade | | Impediment | |
|---|---|---|---|
| 1 | US$ 50,000 | x | 120.00% |
| 2 | -do- | x | 88.81% |
| 3 | -do- | x | 78.36% |
| 4 | -do- | x | 68.66% |
| 5 | -do- | x | 58.96% |
| 6 | -do- | x | 50.00% |
| 7 | -do- | x | 41.80% |
| 8 | -do- | x | 33.59% |
| 9 | -do- | x | 26.12% |
| 10 | -do- | x | 20.15% |
| 11 | -do- | x | 14.93% |
| 12 | -do- | x | 10.45% |
| 13 | -do- | x | 6.72% |
| 14 | -do- | x | 3.74% |

To be paid in Philippine Currency equivalent at the exchange rate prevailing during the time of payment.


SECTION 32-A.  OCCUPATIONAL DISEASES

For an occupational disease and the resulting disability or death to be compensable, all of the following conditions must be satisfied:

1) The seafarer's work must involve the risks described herein;

2) The disease was contracted as a result of the seafarer's exposure to the described risks;

3) The disease was contracted within a period of exposure and under such other factors necessary to contract it;

4) There was no notorious negligence on the part of the seafarer.

The following diseases are considered as occupational when contracted under working conditions involving the risks described herein:

| OCCUPATIONAL DISEASES | NATURE OF EMPLOYMENT |
|---|---|
| 1. Cancer of the epithelial lining of the bladder. ( Papilloma of the bladder) | Work involving exposure to alpha-naphthylamine,beta-naphthylamin or benzidine or any part ofthe salts; and auramine or magenta. |
| 2. Cancer, epithellomatous or ulceration of the skin or of the corneal surface of the eye due to tar, pitch, bitumen, mineral oil or paraffin, or compound product or residue of these substances. | The use or handling of, exposure to tar, pitch bitumen, mineral oil (including paraffin) soot or any compound product or residue of any of these  substances. |
| 3. Deafness | Any industrial operation having excessive noise particularly in the higher frequencies. |

EC002652

| | | |
|---|---|---|
| 4. | Decompression sickness | Any process carried on in compressed or rarefied air. |
| | a) Caissons disease | Any process carried on in rarefied air. |
| | b) Aeroembolism | |
| 5. | Dermatitis due to irritants and sensitizers | The use or handling of chemical agents which are skin irritants and sensitizers. |
| 6. | Infection (Brucellosis) | Any occupation involving the handling of contaminated food and drink particularly milk, butter and cheese of infected goats and cows |
| 7. | Ionizing radiation disease, inflammation ulceration or malignant disease of skin or subcutaneous tissues of the bones or leukemia, or anemia of the aplastic type due to X-rays, ionizing particle, radium or radioactive substance | Exposure to X-rays, ionizing particles of radium or other radioactive substances or other forms of radiant energy. |
| 8. | . Poisoning and its sequelae caused by | |
| | a) Ammonia | All work involving exposure to the risk concerned |
| | b) Arsenic or its toxic compound | All work involving exposure to the risk concerned |
| | c) Benzene or its toxic homologues nitro and aminotoxic derivatives of benzene or its homologue. | All work involving exposure to the risk concerned. |
| | d) Beryllium or its toxic compounds | All work involving exposure to the risk concerned |
| | e) Brass, zinc or nickel | All work involving exposure to the risk concerned |
| | f) Carbon dioxide | All work involving exposure to the risk concerned |
| | g) Carbon bisulfide | All work involving exposure to the risk concerned |
| | h) Carbon monoxide | All work involving exposure to the risk concerned |
| | i) Chlorine | All work involving exposure to the risk concerned |
| | j) Chrome of its toxic compounds | All work involving exposure to the risk concerned |
| | k) Dinitrophenol or its homologue | All work involving exposure to the risk concerned |
| | l) Halogen derivatives of hydrocarbon of the aliphatic series | All work involving exposure to the risk concerned |
| | m) Lead or its toxic compounds | All work involving exposure to the risk concerned |
| | n) Manganese or its toxic compounds | All work involving exposure to the risk concerned |
| | o) Mercury or its toxic compounds | All work involving exposure to the risk concerned. |
| | p) Nitrous fumes | All work involving exposure to the risk concerned |
| | q) Phosgene | All work involving exposure to the risk concerned. |
| | r) Phosphorous or its toxic compounds | All work involving exposure to the risk concerned. |
| | s) Sulfur dioxide | All work involving exposure to the risk concerned. |
| 9. | Diseases caused by abnormalities in temperature and humidity | Any occupation involving exposure to excessive heat or cold |
| | a) Heat stroke/cramps/exhaustion | Any occupation involving exposure to excessive heat |
| | b) Chilblain/frostbite/freezing | Any occupation involving exposure to excessive cold |
| | c) Immersion foot/general hypothermia | Any occupation involving exposure to excessive cold |
| 10. | Vascular disturbance in the upper extremities due to continuous vibration from pneumatic tools or power drills riveting machines or hammers | Any occupation causing repeated motions, vibrations and pressure of upper extremities. |

EC002653

11. Cardio-Vascular Diseases . Any of the following conditions must be met:

   a) If the heart disease was known to have been present during employment, there must be proof that an acute exacerbation was clearly precipitated by the unusual strain by reasons of the nature of his work.

   b) The strain of work that brings about an acute attack must be sufficient severity and must be followed within 24 hours by the clinical signs of a cardiac insult to constitute causal relationship.

   c) If a person who was apparently asymptomatic before being subjected to strain at work showed signs and symptoms of cardiac injury during the performance of his work and such symptoms and signs persisted, it is reasonable to claim a causal relationship.

12. Cerebro-Vascular Accidents.   All of the following conditions must be met:

   a) There must be a history, which should be proved, or trauma at work (to the head specially) due to unusual and extraordinary physical or mental strain or event, or undue exposure to noxious gases in industry.

   b) There must be a direct connection between the trauma or exertion in the course of employment and the worker's collapse.

   c) If the trauma or exertion then and there caused a brain hemorrhage, the injury may be considered as arising from work.

13. Pneumonia.   All of the following conditions must be met:

   a) There must be an honest and definite history of wetting and chilling during the course of employment and also, of injury to the chest wall with or without rib fracture, or inhalation of noxious gases, fumes and other deleterious substances in the place of work.

   b) There must be direct connection between the offending agent or event and the seafarer's illness.

   c) The signs of consolidation should appear soon (within a few hours) and the symptoms of initial chilling and fever should at least be 24 hours after the injury or exposure.

   d) The patient must manifest any of the following symptoms within a few days of the accident:  (1) severe chill and fever; (2) headache and pain, agonizing in character, in the side of the body; (3) short, dry, painful cough with blood-tinged expectoration; and (4) physical signs of consolidation, with fine rales.

14. Hernia.     All of the following conditions must be met:

   a) The hernia should be of recent origin.

   b) Its appearance was accompanied by pain, discoloration and evidence of a tearing of the tissues.

   c) The disease was immediately preceded by undue or severe strain arising out of and in the course of employment.

   d) A protrusion of mass should appear in the area immediately following the alleged strain.

15. Bronchial Asthma.     All of the following conditions must be met.

   a) There is no evidence of history of asthma before employment.

   b) The allergen is present in the working conditions.

   c) Sensitivity test to allergens in the working environment should yield positive results.

   d) A provocative test should show positive results.

16. Osteoarthritis.

   Any occupation involving: a) joint strain from carrying heavy loads, or unduly heavy physical labor, as among laborers and mechanics; b) minor or major injuries to the joint; c) excessive use or constant strenuous usage of a particular joint, as among sportsmen, particularly those who have engaged in the more active sports activities; d) extreme temperature changes (humidity, heat and cold exposures); and e) faulty work posture or use of vibratory tools.

17. Peptic Ulcer.

   Any occupation involving prolonged emotional or physical stress, as among professional people, transport

Page 17

workers and the like.

18. Pulmonary Tuberculosis.

In addition to working conditions already listed under Philippine Decree No. 626, as amended, any occupation involving constant exposure to harmful substances in the working environment, in the form of gases, fumes , vapors and dust, as in chemical and textile factories; overwork or fatigue; and exposure to rapid variations in temperature, high degree of humidity and bad weather conditions.

19. Viral Hepatitis.

In addition to working conditions already listed under Philippine Decree No. 626, as amended, any occupation involving: exposure to a source of infection through ingestion of water, milk, or other foods contaminated with hepatitis virus; *Provided that* the physician determining the causal relationship between the employment and the illness should be able to indicate whether the disease of the afflicted worker manifested itself while he was so employed, knowing the incubation period thereof.

20. Essential Hypertension.

Hypertension classified as primary or essential is considered compensable if it causes impairment of function of body organs like kidneys, heart, eyes and brain, resulting in permanent disability; *Provided, that* , the following documents substantiate it: (a) chest x-ray report, (b) ECG report (c) blood chemistry report, (d) funduscopy report, and (f) C-T scan.

21. Asbestosis.     All of the following conditions must be met:

   a) The seafarer must have been exposed to Asbestos dust in the work place, as duly certified to by the employer, or by a medical institution, or competent medical practitioner acceptable to or accredited by the System;

   b) The chest X-ray report of the employee must show findings of asbestos or asbestos-related disease, e.g. pleural plaques, pleural thickening, effusion, neoplasm and interstitial fibrosis; and

   c) In case of ailment is discovered after the seafarer's retirement/separation from the company, the claim must be filed with the System within three (3) years from discovery.

EC002655

Republic of the Philippines
NATIONAL LABOR RELATIONS COMMISSION
FOURTH DIVISION
Cebu City

JOSEFINA M. GONZALES,
      Complainant-appellee,

                            NLRC Case No. V-000036-2001
- versus -                   SRAB Case No. OFW(M)01-03-0014

BRIGHT MARITIME CORPORATION
AND ETERNITY SHIPPING, LTD,
      Respondent-appellant.
x————————————————— x      PROMULGATED : MAR 1 4 2002

# DECISION

Respondents appealed from the decision[1] of then Executive Labor Arbiter (now Commissioner) Oscar S. Uy dated august 30, 2001, the dispositive portion of which reads as follows:

> "*WHEREFORE, respondents are hereby ordered to pay complainant the compensation benefits due her in the amount of US $50,000.00 plus ten (10) percent of the total amount as attorneys fee, within ten (10) days from receipt hereof.*
> *All other claims are hereby dismissed for lack of merit.*
> *SO ORDERED.*"

Briefly, the pertinent facts follow:

On January 14, 2000, respondents entered into a contract of employment with the late seafarer, Juan M. Gonzales, Jr. The deceased was assigned as AB on MV Leon I for a period of nine (9) months, plus three (3) months if both parties consent. On July 29, 2000, while working on board the vessel at Baltimore, Maryland, USA, he met an accident which caused him severe injuries that resulted to his death. Since the deceased was not married, his mother as the sole beneficiary and complainant herein, is entitled to death benefits of US $50,000.00 and burial expenses of US $1,000.00, or a total of US $51,000.00 per contract. Respondents offered to complainant US $60,000.00 on condition that complainant execute a general waiver and quitclaim in their favor. Since complainant did not want to waive her right to initiate legal action against persons who may be liable for the

---

[1]   Pp. 231-250, Rollo

EC002656

DECISION
V-000036-2001
Page 2
*******************

death of her son based on foreign law, she refused the offer. The burial benefits has already been paid. Subsequently, complainant initiated a separate legal action against respondents in Maryland, USA based on tort.

From the respective arguments and counter-arguments of the parties, the following issues are presented for consideration:

a) Is complainant entitled to her claims? If so, does it bar her from instituting another action based on tort in a foreign country?

b) Is the jurisdiction of the NLRC over the present case pursuant to RA 8042, otherwise known as the Migrant Workers and Overseas Filipinos Act of 1995, exclusive in the sense that the foreign court is already excluded from taking cognizance thereof, in light of our law against double recovery?

Since the two (2) issues are closely intertwined, we discuss jointly.

At the outset, there is no quarrel that complainant is entitled only to the death benefits of US $50,000.00 (as the US $1,000.00 for burial expenses was already paid). This is so provided under the Standard Employment Contract for Seafarers. The entitlement thereto is dependent only upon the death of the worker and not subject to any other condition. Hence, we hold that respondents are legally bound to give complainant the amount of US $50,000.00 without requiring her to execute a waiver and quitclaim. A mere receipt thereof duly notarized or satisfaction of judgment would suffice. Their offer therefore of a bigger amount but conditioned on a general waiver, is without any legal basis.

Assuming that complainant would receive the amount of US $50,000.00 necessarily she is barred from instituting a separate legal action here in our country based on the same incident because of our law against double recourse from a single wrong (Art. 2177, Civil Code). If however, the separate legal action is instituted in the foreign country as it is now, we are not in a position to hold that complainant is barred thereby. To institute is one thing, for the action to prosper is another. The

EC002657

DECISION
V-000036-2001
Page 3
*******************

foreign forum has the jurisdiction to determine whether the second suit before it will prosper or not given the fact that a suit is pending here before us. It is not for us to preempt the ruling of that foreign court.

We agree that under RA 8042, the NLRC has original and exclusive jurisdiction over claims arising out of employer-employee relationship or contract involving overseas Filipino workers. However, as in any other Philippine laws, the conferment of jurisdiction to a particular court, body or tribunal is in relation to the other courts, bodies or tribunals in the Philippines. To say that the same is intended to bind foreign courts is, to our mind, an act of interference or usurpation. Hence, we are also not in a position to say that the foreign court is barred from taking cognizance of the second suit.

WHEREFORE, the assailed decision is AFFIRMED as discussed, with the clarification that respondents are directed to pay complainant the death benefits of her deceased son in the amount of US $50,000.00 without requiring her to execute general waiver.

The award for attorney's fees of ten percent (10%) thereof is also AFFIRMED as complainant was forced to litigate to enforce her right under the contract.

SO ORDERED.

Cebu City, Philippines.


IRENEA E. CENIZA
Presiding Commissioner

WE CONCUR:


EDGARDO M. ENERLAN
Commissioner


OSCAR S. UY
Commissioner

(Took No Part)

EC002658

STANDARD TERMS AND CONDITIONS
GOVERNING THE EMPLOYMENT OF FILIPINO SEAFARERS
ON-BOARD OCEAN-GOING VESSELS

...ion of Terms:

For purposes of this contract, the following terms are defined as follows:

1. Point of Hire - refers to the place indicated in the contract of employment which shall be the basis for determining commencement and termination of contract.
2. Convenient Port - any port where it is practicable, economical, safe and convenient to repatriate the seafarer.
3. Philippine Port - refers to any Philippine airport or seaport.
4. Basic Wage - refers to the salary of the seafarer exclusive of overtime, leave pay and other bonuses.
5. Departure - refers to the actual departure from the point of hire of the seafarer through air, sea or land travel transport to join his vessel to a Philippine or foreign port.
6. Regular Working Hours - refers to the seafarer's eight (8) hour working hours within the period of 24 hours.
7. Dental Treatment - covers tooth extraction or dental surgery, if necessary, due to accident.
8. Shipwreck - refers to the damage or destruction of a vessel at sea caused by collision, storm, grounding or any other marine peril at sea or in port rendering the vessel absolutely unnavigable or unable to pursue her voyage.
9. Compassionate Ground - refers to incidence of death of an immediate member of the seafarer's family which includes his parents, spouse and children if the seafarer is married or his parents if the seafarer is single.

SECTION 1. DUTIES

A. Duties of the Employer/Agency/Master:

1. To faithfully comply with the stipulated terms and conditions of this contract, particularly the prompt payment of wages, remittance of allotment and the expeditious settlement of valid claims of the seafarer.
2. To make operational on board the vessel the grievance machinery provided in this contract and ensure its free access at all times by the seafarer.

B. Duties of the Seafarer:

1. to faithfully comply with and observe the terms and conditions of this contract, violation of which shall be subject to disciplinary action pursuant to Section 31 of this contract;
2. to abide by the Code of Discipline as provided in the POEA rules and regulations governing overseas contract workers;
3. to comply with company policy consistent with POEA rules and regulations;
4. to be diligent in his duties and in everything relating to the vessel, its stores and cargo, whether on board, in boats or ashore;
5. to be obedient to the lawful commands of the Master or any person who shall lawfully succeed him;
6. to conduct himself in an orderly and respectful manner towards passengers and shippers stevedores, port authorities and other persons on official business with the ship;
7. where he feels aggrieved, to observe the grievance procedure outlined in this Contract.

SECTION 2. COMMENCEMENT/DURATION OF CONTRACT

A. The employment contract between the employer and the seafarer shall commence upon actual departure of the seafarer from the airport or seaport in the point of hire and with a POEA approved contract. It shall be effective until the seafarer's date of arrival at the point of hire upon termination of his employment pursuant to Section 18 of this Contract.
B. The period of employment shall be for a period mutually agreed upon by the seafarer and the employer but not to exceed 12 months. Any extension of the contract shall be subject to the mutual consent of both parties.

SECTION 3. FREE PASSAGE FROM THE POINT OF HIRE TO THE PORT OF EMBARKATION

The seafarer shall join the vessel or be available for duty at the date and time specified by the employer. The seafarer shall travel by air or as otherwise directed at the expense of the employer.

SECTION 4. BAGGAGE ALLOWANCE

The seafarer traveling by air to join a vessel or on repatriation shall be entitled to the normal free baggage allowance offered by the airlines. The cost of the excess baggage shall be for the account of the seafarer.

SECTION 5. HYGIENE AND VACCINATION

A. The seafarer shall keep his quarters and other living spaces - such as messrooms, toilets, bathrooms, alleyways and recreation rooms in clean and tidy condition to the satisfaction of the master. The work is to be performed outside the seafarer's regular working hours and for which no overtime pay shall be claimed.
B. The seafarer shall submit to the order of the master or to the laws of any country within the territorial jurisdiction of which the vessel may enter to have such vaccination or inoculation or to undertake measures safeguarding his health and of the whole crew.

SECTION 6. WAGES

A. The seafarer shall be paid his monthly wages from the date of commencement of the contract until the date of arrival at point of hire upon termination of his employment pursuant to Section 18 of this Contract, not later than 15 days of the succeeding month.

SECTION 7. PAYMENT ON BOARD

Payment of shipboard pay in foreign ports shall be subject to the currency control regulations at the port abroad and to the official rate of exchange prevailing at the time of payment. Advances shall be at the master's/employer's discretion and in accordance with the foregoing conditions.

SECTION 8. ALLOTMENTS AND REMITTANCES

A. The seafarer is required to make an allotment which shall be payable once a month to his designated allottee in the Philippines through any authorized Philippine Bank. The master/employer/ agency shall provide the seafarer with facilities to do so at no expense to the seafarer. The allotment shall be at least eighty percent (80%) of the seafarer's monthly basic salary including backwages, if any.
B. The master/employer/agency if requested, may also provide facilities for the seafarer to remit any amount in excess of his allotment to his designated allottee in the Philippines through any authorized Philippine bank without any charge to him.
C. The allotment shall be paid to the designated allottee in Philippine currency at the rate of exchange indicated in the credit advice of the local authorized Philippine Bank.

SECTION 9. ACCOUNT OF WAGES & CERTIFICATE OF EMPLOYMENT

The seafarer, upon his discharge, shall be given a written account of his wages reflecting all deductions therefrom. Where a seafarer is landed in an emergency, the written account of his wages shall be given to him as soon as practicable thereafter. Upon the seafarer's request, he shall also be provided by his employer/agency his certificate of employment or service record without any charge.

SECTION 10. HOURS OF WORK

A. The seafarer shall perform not more than forty-eight (48) hours of regular work a week. The hours of work shall be determined and prescribed by the master, provided that it conforms with customary international practices and standards and as prescribed in paragraph B below.
B. Regular working hours for the seafarer shall be eight (8) hours in every 24 hours, midnight to midnight, Monday to Sunday. The normal practice is as follows:
   1. the day worker shall observe the eight (8) regular working hours during the period from 0600 hours to 1800 hours.
   2. the steward personnel shall observe the eight (8) regular working hours during the period from 0500 hours to 2000 hours.
   3. the Radio Operator shall observe the eight (8) regular working hours in every twenty-four (24) hours, midnight to midnight, from Monday to Sunday as established by International Telecommunication Conventions, and as prescribed by the master.
   4. for those who are on sea watch, their working hours shall be eight (8) hours per day. Staggering of working hours will be at the master's discretion.
C. The seafarer shall be allowed reasonable rest period in accordance with international standards.

SECTION 11. OVERTIME & HOLIDAYS

A. The seafarer shall be compensated for all work performed in excess of the regular eight (8) hours as prescribed above. Overtime pay may be classified as open, fixed or guaranteed.

In computing overtime, a fraction of the first hour worked shall be considered as one full hour.

After the first hour overtime, any work performed which is less than thirty (30) minutes shall be considered as half an hour and more than thirty (30) minutes shall be considered one full hour.

B. Overtime work may be compensated at the following rates:
   1. Open overtime - not less than 125 percent (125%) of the basic hourly rate computed based on two hundred eight (208) regular working hours per month;
   2. Guaranteed or fixed overtime - not less than thirty percent (30%) of the basic monthly salary of the seafarer. This fixed rate overtime shall include overtime work performed on Sundays and holidays but shall not exceed one hundred five (105) hours a month. Overtime work in excess of 105 hours a month shall be further compensated on an open overtime rate.
C. Any hours of work or duty including hours of watchkeeping shall be paid rest day or holiday pay. The following shall be considered as holidays at sea and in port.

| | |
|---|---|
| New Year's Day | January 1 |
| Maundy Thursday | Movable date |
| Good Friday | Movable date |
| Araw ng Kagitingan | April 9 |
| (Bataan & Corregidor Day) | |
| Labor Day | May 1 |
| Independence Day | June 12 |
| National Heroes Day | Last Sunday of August |
| All Saints Day | November 1 |
| Bonifacio Day | November 30 |
| Christmas Day | December 25 |
| Rizal Day | December 30 |

D. Emergency Duty - No overtime work shall be considered for any work performed in case of emergency affecting the safety of the vessel, passenger, crew or cargo, of which the master shall be the sole judge, or for fire, boat, or emergency drill or work required to give assistance to other vessels or persons in immediate peril.

SECTION 12. LEAVE PAY

The seafarer's leave pay shall be in accordance with the number of days leave per month as agreed upon. Days leave shall not be less than two and a half (2-1/2) days for each month of service and prorated.

EC002659

SECTION 13. SHORE LEAVE

The seafarer shall be allowed shore leave whenever practicable, upon the consent of the master or his deputy, taking into consideration the operations and safety of the vessel.

SECTION 14. VICTUALLING, VESSEL STORES AND PROVISIONS

A. The seafarer shall be provided by the master/employer with subsistence consistent with good maritime standards and practices while on board the vessel.

B. All stores and provisions issued to the seafarer are only for use and consumption on board the vessel and any unused or unconsumed stores or provisions shall remain the property of the employer. The seafarer shall not take ashore, sell, destroy or give away such stores and provisions.

SECTION 15. TRANSFER CLAUSE

The seafarer agrees to be transferred at any port to any vessel owned or operated, manned or managed by the same employer, provided it is accredited to the same manning agent and provided further that the position of the seafarer and the rate of his wages and terms of service are in no way inferior and the total period of employment shall not exceed that originally agreed upon.

Any form of transfer shall be documented and made available when necessary.

SECTION 16. GRIEVANCE MACHINERY

A. If the seafarer considers himself aggrieved, he shall make his complaint in accordance with the following procedures:
1. The seafarer shall first approach the head of the Department in which he is assigned to explain his grievance.
   a. In the Deck, Radio and Catering Department, the head is the Chiefmate.
   b. In the Engine Department, the head is the Chief Engineer.
   c. In the Catering and/or Hotel Department in a passenger ship, the head is the Chief Steward and/or Purser.
2. The seafarer shall make his grievance in writing and in an orderly manner and shall choose a time when his complaint or grievance can be properly heard.
3. The Department head shall deal with the complaint or grievance whose solution is not possible at his level, refer the complaint or grievance to the Master who should handle the case personally.
4. If no satisfactory result is achieved, the seafarer concerned may appeal to the management of the company or with a Philippine Labor Attache or consular officer overseas. The master shall afford such facilities necessary to enable the seaman to transmit his appeal.
5. If after observing the grievance procedure the master finds that the seafarer violated the terms of his Contract or has committed breach of discipline, the master shall discipline the seafarer or, if warranted, terminate his employment.
6. The seafarer may also seek the assistance of the highest ranking Filipino seafarer on board.
B. When availed of by the seafarer, the grievance procedure and all actions or decisions agreed upon shall be properly documented for the protection and interest of both parties.

The procedure herein shown above stated shall be without prejudice to the jurisdiction of the Philippine Overseas Employment Administration (POEA) or the National Labor Relations Commission (NLRC) over any unresolved complaints arising out of shipboard employment that shall be brought before it by the seafarer.

SECTION 17. DISCIPLINARY PROCEDURES

The Master shall comply with the following disciplinary procedures against an erring seafarer:

A. The Master shall furnish the seafarer with a written notice containing the following:
1. Grounds for the charges as listed in Section 31 of this Contract.
2. Date, time and place for a formal investigation of the charges against the seafarer concerned.
B. The Master or his authorized representative shall conduct the investigation or hearing, giving the seafarer the opportunity to explain or defend himself against the charges. An entry on the investigation shall be entered into the ship's logbook.
C. If after the investigation or hearing, the Master is convinced that imposition of a penalty is justified, the Master shall issue a written notice of penalty and the reasons for it to the seafarer, with copies furnished to the Philippine agent.
D. Dismissal for just cause may be effected by the Master without furnishing the seafarer with a notice of dismissal if doing so will prejudice the safety of the crew or the vessel. This information shall be entered in the ship's logbook. The Master shall send a complete report to the manning agency substantiated by witnesses, testimonies and any other documents in support thereof.

SECTION 18. TERMINATION OF EMPLOYMENT

A. The employment of the seafarer shall cease when the seafarer completes his period of contractual service aboard the vessel, signs-off from the vessel and arrives at the point of hire.
B. The employment of the seafarer is also terminated when the seafarer arrives at the point of hire for any of the following reasons:
1. when the seafarer signs-off and is disembarked for medical reasons pursuant to Section 20 (B) (4) of this Contract.
2. when the seafarer signs-off due to shipwreck, ship's sale, lay-up of vessel, discontinuance of voyage or change of vessel principal in accordance with Sections 22, 23 and 24 of this Contract.
3. when the seafarer voluntarily resigns and signs off prior to expiration of contract pursuant to Section 19 (G) of this Contract.
4. when the seafarer is discharged for just cause as provided for in Section 31 of this Contract.

SECTION 19. REPATRIATION

A. If the vessel is outside the Philippines upon the expiration of the

contract, the seafarer shall continue his service on board until the vessel's arrival at a convenient port and/or after arrival of the replacement crew provided that, in any case, the continuance of such service shall not exceed three months. The seafarer shall be entitled to earned wages and benefits as provided in his contract.

B. If the vessel arrives at a convenient port before the expiration of the contract, the master/employer may repatriate the seafarer from such port, provided the unserved portion of his contract is not more than one (1) month. The seafarer shall be entitled only to his earned wages and earned leave pay and to his leave pay corresponding to the unserved portion of the contract, unless within 60 days from disembarkation, the seafarer is rehired at the same rate and position, in which case the seafarer shall be entitled only to his earned wages and earned leave pay.

C. If the vessel arrives at a convenient port within a period of three (3) months before the expiration of his contract, the master/employer may repatriate the seafarer from such port provided that seafarer shall be paid all his earned wages. In addition, the seafarer shall also be paid his leave pay for the entire contract period plus a termination pay equivalent to one (1) month of his basic pay, provided, however, that this mode of termination may only be exercised by the master/employer if the original contract period of the seafarer is at least ten (10) months; provided, further, that the conditions for this mode of termination shall not apply to dismissal for cause.

D. The seafarer shall, if discharged at a port abroad for any reason other than for discipline, be accommodated ashore and in cases where it is not intended that he rejoin the vessel, shall be repatriated to the Philippine via sea or air or as may otherwise be directed by the employer/master/agency.

E. When the seafarer is discharged for any just cause, the employer shall have the right to recover the costs of his replacement and repatriation from the seafarer's wages and other earnings.

F. The seafarer, when discharged and repatriated as directed by the employer/master/agency shall be entitled to basic wages from date of signing off until arrival at the point of hire except when the discharge is in accordance with the above or for disciplinary reasons.

If the seafarer delays or desires a detour and/or another destination other than the most direct to the point of hire, all additional expenses shall be to the seafarer's account. The seafarer's basic wage shall be calculated based on the date of arrival by the most direct route.

G. A seaman who requests for early termination of his contract shall be liable for his repatriation cost as well as the transportation cost of his replacement. The employer may, in case of compassionate grounds, assume the transportation cost of the seafarer's replacement.

SECTION 20. COMPENSATION AND BENEFITS

A. COMPENSATION AND BENEFITS FOR DEATH
1. In case of death of the seafarer during the term of his contract, the employer shall pay his beneficiaries the Philippine Currency equivalent to the amount of Fifty Thousand US dollars (US$50,000) and an additional amount of Seven Thousand US dollars (US$7,000) to each child under the age of twenty-one (21) but not exceeding four (4) children, at the exchange rate prevailing during the time of payment.

Where death is caused by warlike activity while sailing within a declared war zone or war risk area, the compensation payable shall be doubled. The employer shall undertake appropriate war zone insurance coverage for this purpose.
2. It is understood and agreed that the benefits mentioned above shall be separate and distinct from, and will be in addition to whatever benefits which the seafarer is entitled to under Philippine laws from the Social Security System, Overseas Workers Welfare Administration and Pag-Ibig, if applicable.
3. The other liabilities of the employer when the seafarer dies as a result of injury or illness during the term of employment are as follows:
   a. The employer shall pay the deceased's beneficiary all outstanding obligations due the seafarer under this Contract.
   b. The employer shall transport the remains and personal effects of the seafarer to the Philippines at employer's expense except if the death occurred in a port where local government laws or regulations do not permit the transport of such remains. In case death occurs at sea, the disposition of the remains shall be handled or dealt with in accordance with the master's best judgment. In all cases, the employer/master shall communicate with the manning agency to advise for disposition of seafarer's remains.
   c. The employer shall pay the beneficiaries of the seafarer the Philippine currency equivalent to the amount of One Thousand US dollars (US$1,000) for burial expenses at the exchange rate prevailing during the time of payment.

B. COMPENSATION AND BENEFITS FOR INJURY OR ILLNESS
The liabilities of the employer when the seafarer suffers injury or illness during the term of his contract are as follows:
1. The employer shall continue to pay the seafarer his wages during the time he is on board the vessel;
2. If the injury or illness requires medical and/or dental treatment in a foreign port, the employer shall be liable for the full cost of such medical, serious dental, surgical and hospital treatment as well as board and lodging until the seafarer is declared fit to work or to be repatriated.

However, if after repatriation, the seafarer still requires medical attention arising from said injury or illness, he shall be so provided at cost to the employer until such time he is declared fit or the degree of his disability has been established by the company-designated physician.
3. Upon sign-off from the vessel for medical treatment, the seafarer is entitled to sickness allowance equivalent to his basic wage until he is declared fit to work or the degree of permanent disability has been assessed by the company-designated physician, but in no case shall this period exceed one hundred twenty (120) days.

For this purpose, the seafarer shall submit himself to a post-employment medical examination by a company-designated physician within three working days upon his return except when he is physically incapacitated to do so, in which case, a written notice to the agency within the same period is deemed as compliance. Failure of the seafarer to comply with the mandatory reporting requirement shall result

2

EC002660

in his forfeiture of the right to claim the benefits.

    4. Upon sign-off of the seafarer from the vessel for medical treatment, the employer shall bear the full cost of repatriation in the event the seafarer is declared (1) fit for repatriation; or (2) fit to work but the employer is unable to find employment for the seafarer on board his former vessel or another vessel of the employer despite earnest efforts.

    5. In case of permanent total or partial disability of the seafarer during the term of employment caused by either injury or illness the seafarer shall be compensated in accordance with the schedule of benefits enumerated in Section 30 of his Contract. Computation of his benefits arising from an illness or disease shall be governed by the rates and the rules of compensation applicable at the time the illness or disease was contracted.

C. It is understood that computation of the total permanent or partial disability of the seafarer caused by the injury sustained resulting from warlike activities within the warzone area shall be based on the compensation rate payable within the warzone area as prescribed in this Contract.

D. No compensation shall be payable in respect of any injury, incapacity, disability or death of the seafarer resulting from his willful or criminal act, provided however, that the employer can prove that such injury, incapacity, disability or death is directly attributable to the seafarer.

E. When requested, the seafarer shall be furnished a copy of all pertinent medical reports or records at no cost to the seafarer.

### SECTION 21. WAR AND WARLIKE OPERATIONS ALLOWANCE

A. If a war or warlike operations should arise during the term of this Contract in any country within the vessel's trading area, the seafarer may sail the vessel within and out of the trading area if required by the Master.

B. If at the time of the signing of the contract, an area is declared a war or war-risk trading area and the seafarer binds himself in writing to sail into that area, the agreement shall be properly appended to the Contract for verification and approval by the Philippine Overseas Employment Administration (POEA). The seafarer shall comply with the agreement or shall bear his cost of repatriation when he opts not to sail into a war or war-risk trading area.

C. The seafarer when sailing within a war-risk trading area shall be entitled to such premium pay as the POEA may determine through appropriate periodic issuances.

D. The POEA shall be the sole authority to determine whether the vessel is within a war-risk trading area. It shall also determine the amount of premium pay to which the seafarer shall be entitled to when sailing in that war-risk trading area.

### SECTION 22. TERMINATION DUE TO SHIPWRECK

Where the vessel is wrecked necessitating the termination of employment before the date indicated in the contract, the seafarer shall be entitled to earned wages, medical examination at employer's expense to determine his fitness to work, repatriation at employer's cost and one month basic wage as termination pay; unless arrangements have been made for the seafarer to join another vessel to complete his contract, in which case, the seafarer shall be entitled to earned wages until the date of joining the other vessel and medical examination at employer's expense to determine his fitness to work.

### SECTION 23. TERMINATION DUE TO VESSEL SALE, LAY-UP OR DISCONTINUANCE OF VOYAGE

Where the vessel is sold, laid up, or the voyage is discontinued necessitating the termination of employment before the date indicated in the Contract, the seafarer shall be entitled to earned wages, repatriation at employer's cost and one (1) month basic wage as termination pay, unless arrangements have been made for the seafarer to join another vessel to complete his contract in which case the seafarer shall be entitled to earned wages until the date of joining the other vessel.

### SECTION 24. TERMINATION DUE TO UNSEAWORTHINESS

A. If the vessel is declared unseaworthy by a classification society, port state or flag state, the seafarer shall not be forced to sail with the vessel.

B. If the vessel's unseaworthiness necessitates the termination of employment before the date indicated in the Contract, the seafarer shall be entitled to earned wages, repatriation at cost to the employer and termination pay equivalent to one (1) month basic wage.

### SECTION 25. CHANGE OF PRINCIPAL

A. Where there is a change of principal of the vessel necessitating the termination of employment of the seafarer before the date indicated in the Contract, the seafarer shall be entitled to earned wages, repatriation at employer's expense and one month basic pay as termination pay.

B. If by mutual agreement, the seafarer continue his service on board the same vessel, such service shall be treated as a new Contract. The seafarer shall be entitled to earned wages only.

C. In case arrangements has been made for the seafarer to join another vessel to complete his contract, the seafarer shall be entitled to basic wage until the date of joining the other vessel.

### SECTION 26. LOSS OF OR DAMAGE TO CREW'S EFFECTS BY MARINE PERIL

A. The seafarer shall be reimbursed by the employer the full amount of loss or damage to his personal effects but in no case shall the amount exceed the Philippine currency equivalent to the amount of Two Thousand US dollars (US$2,000) if his personal effects are lost or damaged as a result of the wreck or loss or stranding or abandonment of the vessel or as a result of fire, flooding, collision or piracy.

B. In case of partial loss, the amount shall be determined by mutual agreement of both parties but in no case to exceed the Philippine currency equivalent to the amount of Two Thousand US Dollars (US$2,000).

C. Reimbursement for loss or damage to the seafarer's personal effects shall not apply if such loss or damage is due to (a) the seaman's own fault; (b) larceny or theft or (c) robbery.

D. Payment of any reimbursement shall be computed at the rate of exchange prevailing at the time of payment.

### SECTION 27. GENERAL SAFETY

A. The seafarer shall observe and follow any regulation or restriction that the master may impose concerning safety, drug and alcohol and environmental protection.

B. The seafarer shall make use of all appropriate safety equipment provided him and must ensure that he is suitably dressed from the safety point of view for the job at hand.

### SECTION 28. JURISDICTION

The Philippine Overseas Employment Administration (POEA) or the National Labor Relations Commission (NLRC) shall have original and exclusive jurisdiction over any and all disputes or controversies arising out of or by virtue of this Contract.

Recognizing the peculiar nature of overseas shipboard employment, the employer and the seafarer agree that all claims arising from this contract shall be made within one (1) year from the date of the seafarer's return to the point of hire.

### SECTION 29. APPLICABLE LAW

All rights and obligations of the parties to this Contract, including the annexes thereof, shall be governed by the laws of the Republic of the Philippines, international conventions, treaties and covenants where the Philippines is a signatory.

### SECTION 30. SCHEDULE OF DISABILITY OR IMPEDIMENT FOR INJURIES SUFFERED AND DISEASES OR ILLNESS CONTRACTED

#### HEAD

Traumatic head injuries that result to:

1. Aperture unfilled with bone not over three (3) inches without brain injury .......................... Gr. 9
2. Aperture unfilled with bone over three (3) inches without brain injury .......................... Gr. 3
3. Severe paralysis of both upper or lower extremities or one upper and one lower extremity .......................... Gr. 1
4. Moderate paralysis of two (2) extremities producing moderate difficulty in movements with self-care activities .......................... Gr. 6
5. Slight paralysis affecting one extremity producing slight difficulty with self-care activities .......................... Gr. 10
6. Severe mental disorder or Severe Complex Cerebral function disturbance or post-traumatic psychoneurosis which require regular aid and attendance as to render worker permanently unable to perform any work .......................... Gr. 1
7. Moderate mental disorder or moderate brain functional disturbance which limits worker to the activities of daily living with some directed care or attendance .......................... Gr. 6
8. Slight mental disorder or disturbance that requires little attendance or aid and which interferes to a slight degree with the working capacity of the claimant .......................... Gr. 10
9. Incurable imbecility .......................... Gr. 1

#### FACE

1. Severe disfigurement of the face or head as to make the worker so repulsive as to greatly handicap him in securing or retaining employment, thereby being no permanent functional disorder .......................... Gr. 2
2. Moderate facial disfigurement involving partial ablation of the nose with big scars on face or head .......................... Gr. 5
3. Partial ablation of the nose or partial avulsion of the scalp .......................... Gr. 9
4. Complete loss of the power of mastication and speech function .......................... Gr. 1
5. Moderate constriction of the jaw resulting in moderate degree of difficulty in chewing and moderate loss of the power or the expression of speech .......................... Gr. 6
6. Slight disorder of mastication and speech function due to traumatic injuries to jaw or cheek bones .......................... Gr. 12

#### EYES

1. Blindness or total and permanent loss of vision of both eyes .......................... Gr. 1
2. Total blindness of one (1) eye and fifty percent (50%) loss of vision of the other eye .......................... Gr. 5
3. Loss of one eye or total blindness of one eye .......................... Gr. 7
4. Fifty percent (50%) loss of vision of one eye .......................... Gr. 10
5. Lagophthalmos, one eye .......................... Gr. 12
6. Ectropion, one eye .......................... Gr. 12
7. Ephiphora, one eye .......................... Gr. 12
8. Ptosis, one eye .......................... Gr. 12

NOTE: (Smeller's Chart - used to grade for near and distant vision)

#### NOSE AND MOUTH

1. Considerable stricture of the nose (both sides) hindering breathing .......................... Gr. 11
2. Loss of the sense of hearing in one ear .......................... Gr. 11
3. Injuries to the tongue (partial amputation or adhesion) or palate causing defective speech .......................... Gr. 10
4. Loss of three (3) teeth restored by prosthesis .......................... Gr. 14

#### EARS

1. For the complete loss of the sense of hearing on both ears .......................... Gr. 3
2. Loss of two (2) external ears .......................... Gr. 8
3. Complete loss of the sense of hearing in one ear .......................... Gr. 11
4. Loss of one external ear .......................... Gr. 12
5. Loss of one half (1/2) of an external ear .......................... Gr. 14

3

EC002661

## NECK

1. Such injury to the throat as necessitates the
   wearing of a tracheal tube .................................... Gr. 6
2. Loss of speech due to injury to the vocal cord ............... Gr. 9
3. Total stiffness of neck due to fracture or
   dislocation of the cervical spines ............................ Gr. 8
4. Moderate stiffness or two thirds (2/3) loss of
   motion of the neck .............................................. Gr. 10
5. Slight stiffness of neck or one third
   (1/3) loss of motion ............................................ Gr. 12

## CHEST-TRUNK-SPINE

1. Fracture of four (4) or more ribs resulting to
   severe limitation of chest expansion .......................... Gr. 6
2. Fracture of four (4) or more ribs with intercostal
   neuralgia resulting in moderate limitation
   of chest expansion .............................................. Gr. 9
3. Slight limitation of chest expansion due to
   simple rib functional without myositis or
   intercostal neuralgia ........................................... Gr. 12
4. Fracture of the dorsal or lumbar spines resulting
   to severe or total rigidity of the trunk or total
   loss of lifting power of heavy objects ........................ Gr. 6
5. Moderate rigidity or two thirds (2/3) loss of
   motion or lifting power of the trunk .......................... Gr. 9
6. Slight rigidity or one third (1/3) loss of motion
   or lifting power of the trunk ................................. Gr. 11
7. Injury to the spinal cord as to make walking impossible
   without the aid of a pair of crutches ........................ Gr. 4
8. Injury to the spinal cord as to make walking impossible
   even with the aid of a pair of crutches ...................... Gr. 1
9. Injury to the spinal cord resulting to incontinence of
   urine and feces ................................................. Gr. 1

## ABDOMEN

1. Loss of the spleen ................................................ Gr. 8
2. Loss of one kidney .............................................. Gr. 7
3. Severe residuals of impairment of intra-abdominal
   organs which requires regular aid and attendance
   that will unable worker to seek any gainful
   employment .................................................... Gr. 1
4. Moderate residuals of disorder of the
   intra-abdominal organs secondary to
   trauma resulting to impairment of nutrition,
   moderate tenderness, nausea, vomiting,
   constipation or diarrhea ..................................... Gr. 7
5. Slight residuals or disorders of the intra-abdominal
   organs resulting in impairment of nutrition,
   slight tenderness and/or constipation or diarrhea ........... Gr. 12
6. Inguinal hernia secondary to trauma or strain ............... Gr. 12

## PELVIS

1. Fracture of the pelvic rings as to totally incapacitate
   worker to work ................................................ Gr. 1
2. Fracture of the pelvic ring resulting to deformity
   and lameness .................................................. Gr. 6

## URINARY AND GENERATIVE ORGANS

1. Total loss of penis ............................................. Gr. 7
2. Total loss of both testicles ................................... Gr. 7
3. Total loss of one testicle ..................................... Gr. 11
4. Scars on the penis or destruction of the parts
   of the cavernous body or urethra interfering
   with erection or markedly affecting coitus .................. Gr. 9
5. Loss of one breast ............................................. Gr. 11
6. Prolapse of the uterus ......................................... Gr. 8
7. Great difficulty in urinating ................................. Gr. 13
8. Incontinence of urine .......................................... Gr. 10

## THUMBS AND FINGERS

1. Total loss of one thumb including metacarpal bone .......... Gr. 9
2. Total loss of one thumb ....................................... Gr. 10
3. Total loss on one index finger including metacarpal bone .. Gr. 10
4. Total loss of one index finger ............................... Gr. 11
5. Total loss of one middle finger including metacarpal bone .. Gr. 11
6. Total loss of one middle finger ............................... Gr. 12
7. Total loss of one ring finger including metacarpal bone .... Gr. 12
8. Total loss of one ring finger ................................. Gr. 13
9. Total loss of one small finger including metacarpal bone .. Gr. 13
10. Total loss of one small finger ............................... Gr. 14
11. Loss of two (2) or more fingers: Compensation for
    the loss or loss of use of two (2) or more fingers
    or one (1) or more phalanges of two or more
    digits of a hand shall be proportioned to the
    loss of the hand occasioned thereby but shall
    not exceed the compensation for the loss of a hand:
    a. Loss of five (5) fingers of one hand ..................... Gr. 6
    b. Loss of thumb, index fingers and any of 2 or
       more fingers of the same hand ........................... Gr. 6
    c. Loss of the thumb, index finger and any one
       of the remaining fingers of the same hand ............. Gr. 7
    d. Loss of thumb and index finger ......................... Gr. 8
    e. Loss of three (3) fingers of one hand not
       including thumb and index finger ....................... Gr. 9
    f. Loss of the index finger and any one of the other
       fingers of the same hand excluding thumb ............. Gr. 9
    g. Loss of two (2) digits of one hand not including
       thumb and index finger ................................ Gr. 10
12. Loss of ten (10) fingers of both hand ...................... Gr. 3

## HANDS

1. Total loss of use of both hands or amputation of
   both hands at wrist joints or above ......................... Gr. 1
2. Amputation of a hand at carpo-metacarpal joints ........... Gr. 5
3. Amputation between wrist and elbow joint ................... Gr. 5
4. Loss of grasping power for small objects between
   the fold of the finger of one hand ......................... Gr. 10
5. Loss of opposition between the thumb and tips of
   the fingers of one hand ...................................... Gr. 9

7. Ankylosed wrist in normal position .......................... Gr. 10
8. Ankylosed wrist in position one third (1/3) flexed or half
   extended and/or severe limited action of a wrist .......... Gr. 11

## SHOULDER AND ARM

1. Inability to turn forearm (forearm in normal
   position-supination) ........................................... Gr. 11
2. Inability to turn forearm (forearm in abnormal
   position-pronation) ............................................ Gr. 10
3. Disturbance of the normal carrying angle or weakness
   of an arm or a forearm due to deformity of
   moderate atrophy of muscles ................................ Gr. 11
4. Stiff elbow at full flexion or extension (one side) ......... Gr. 7
5. Stiff elbow at right angle flexion ............................ Gr. 8
6. Flail elbow joint ............................................... Gr. 9
7. Pseudoarthrosis of the humerus with musculospiral
   or radial paralysis ............................................ Gr. 6
8. Ankylosis of one (1) shoulder, the shoulder blade
   remaining mobile .............................................. Gr. 9
9. Ankylosis of one shoulder, the shoulder blade
   remaining rigid ................................................ Gr. 8
10. Unreduced dislocation of one (1) shoulder ................. Gr. 10
11. Ruptured biceps or pseudoarthrosis of the humerus,
    close (one side) ............................................. Gr. 11
12. Inability to raise arm more than halfway from
    horizontal to perpendicular ............................... Gr. 11
13. Ankylosis of the shoulder joint not permitting arm to
    be raised above a level with a shoulder and/or
    irreducible fracture or faulty union collar bone ........ Gr. 10
14. Total paralysis of both upper extremities .................. Gr. 1
15. Total paralysis of one upper extremity ..................... Gr. 3
16. Amputation of one (1) upper extremity at or
    above the elbow .............................................. Gr. 4
17. Scar the size of the palm in one extremity ................ Gr. 14

## LOWER EXTREMITIES

1. Loss of a big toe ............................................... Gr. 12
2. Loss of a toe other than the big one ........................ Gr. 14
3. Loss of ten (10) digits of both feet ........................ Gr. 5
4. Loss of a great toe of one foot + one toe ................. Gr. 10
5. Loss of two toes not including great toe or toe next to it . Gr. 12
6. Loss of three (3) toes excluding great toe of a foot ...... Gr. 10
7. Loss of four (4) excluding great toe of a foot ............ Gr. 8
8. Loss of great toe and two (2) other toes of the same foot . Gr. 9
9. Loss of five digits of a foot ................................ Gr. 8
10. Loss of both feet at ankle joint or above ................. Gr. 1
11. Loss of one foot at ankle joint or above .................. Gr. 6
12. Depression of the arch of a foot resulting in flat foot .. Gr. 12
13. Loss of one half (1/2) metatarsus of one (1) foot ........ Gr. 8
14. Loss of whole metatarsus or forepart of foot ............. Gr. 7
15. Tearing of Achilles tendon resulting in the impairment of
    active flexion and extension of a foot ................... Gr. 12
16. Malleolar fracture with displacement of the foot
    inward or outward .......................................... Gr. 10
17. Complete immobility of an ankle joint in
    abnormal position .......................................... Gr. 10
18. Complete immobility of an ankle joint in normal position . Gr. 11
19. Total loss of leg or amputation at or above the knee .... Gr. 3
20. Stretching leg or the ligaments of a knee resulting
    in instability of the joint ............................... Gr. 10
21. Ankylosis of a knee in genuvalgum of varum ............... Gr. 10
22. Pseudoarthrosis of a knee cap .............................. Gr. 10
23. Complete immobility of a knee joint in full extension .... Gr. 10
24. Complete immobility of a knee joint in strong flexion .... Gr. 7
25. Complete immobility of a hip joint in flexion of the thigh . Gr. 5
26. Complete immobility of a hip joint in full extension
    of the thigh ................................................. Gr. 9
27. Slight atrophy of calf of leg muscle without apparent
    shortening or joint lesion or disturbance of
    weight-bearing line ......................................... Gr. 13
28. Shortening of a lower extremity from one to three
    centimeters with either joint lesion or
    disturbance of weight-bearing line ....................... Gr. 13
29. Shortening of 3 to 6 cm. with slight atrophy of calf
    or thigh muscles ........................................... Gr. 12
30. Shortening of 3 to 6 cm. with either joint lesion
    or disturbance of weight-bearing line .................... Gr. 11
31. Irregular union of fracture with joint stiffness and
    with shortening of 6 to 9 cm. producing
    permanent lameness ........................................ Gr. 9
32. Irregular union of fracture in a thigh or leg with
    shortening of 6 to 9 cms ................................... Gr. 10
33. Failure of fracture of both hips to unite ................. Gr. 10
34. Failure of fracture of a hip to unite ..................... Gr. 1
35. Paralysis of both lower extremities ........................ Gr. 1
36. Paralysis of one lower extremity ........................... Gr. 1
37. Scar the size of a palm or larger left on an extremity .... Gr. 14

NOTE: Any item in the schedule classified under Grade 1 shall be
considered or shall constitute total and permanent disability.

## SECTION 30-A: SCHEDULE OF DISABILITY ALLOWANCES

| Impediment Grade | Maximum Rate | Impediment |  |
|---|---|---|---|
| 1 | | x | 120.00% |
| 2 | | x | 88.81% |
| 3 | | x | 78.36% |
| 4 | | x | 68.66% |
| 5 | | x | 58.96% |
| 6 | | x | 50.00% |
| 7 | | x | 41.80% |
| 8 | | x | 33.59% |
| 9 | | x | 26.12% |
| 10 | | x | 20.15% |
| 11 | | x | 14.93% |
| 12 | | x | 10.45% |
| 13 | | x | 6.72% |
| 14 | | x | 3.74% |

Maximum Rate: US$50,000

To be paid in Philippine Currency equivalent at the exchange
rate prevailing during the time of payment.

4

SECTION II. TABLE OF OFFENSES AND CORRESPONDING ADMINISTRATIVE PENALTIES

| OFFENSES | ADMINISTRATIVE PENALTIES | |
|---|---|---|
| | SHALL be imposed by the Master | SHALL be imposed by POEA after due investigation |
| 1. Smuggling or violation of any custom rules and regulations of the Philippines and of foreign ports | | |
| a. smuggling any taxable item | Dismissal and to pay cost as provided in the Contract | 1st Offense: Minimum - one (1) year suspension from POEA Registry Maximum - two (2) years suspension 2nd Offense: Minimum - two (2) years and one (1) day suspension Maximum - delisting from POEA Registry |
| b. possession or use of prohibited drugs, narcotics and other contraband | Dismissal | Delisting from POEA registry |
| c. gun-running or possession of explosives and the like | Dismissal | Delisting from POEA registry |
| d. abetting or conniving with others to commit smuggling | Dismissal | Minimum - 3 years suspension |
| e. misdeclaration of or failing to declare articles leading to their seizure and fine to vessel | Dismissal | 1st Offense: Minimum - 1 year suspension Maximum - 2 years suspension 2nd Offense: Minimum - 2 years and 1 day suspension Maximum - delisting from POEA registry |
| f. misdeclaration of or failing to declare articles leading to their seizure but vessel not implicated | 1st Offense: Reprimand and warning 2nd Offense: Dismissal | 1st Offense: Minimum - 2 years and 1 day suspension Maximum - 2 years suspension 3rd Offense: Minimum - 2 years and 1 day suspension Maximum - delisting from POEA registry |
| g. possession of pornographic materials leading to its seizure and fine to vessel | Dismissal | Same as 1(e) |
| h. any other violation which will not implicate vessel | 1st Offense: Reprimand and warning 2nd Offense: Dismissal | Same as 1(f) |
| i. any other violation which will implicate the vessel | Dismissal | Minimum - 3 yrs. suspension Maximum - delisting from POEA registry |
| 2. Desertion | | |
| a. deserting or attempting to desert | Dismissal and to pay cost as provided in the contract | Permanent Delisting from POEA registry |
| b. advising, assisting or persuading another to desert | Dismissal and to pay cost as provided in the contract | Minimum - 5 years suspension Maximum - Delisting from POEA registry |
| 3. Absence without leave | | |
| a. abandoning post or duty without being properly relieved | Dismissal and to pay cost as provided in the contract | 1st Offense: Minimum - 1 year suspension Maximum - 1 year suspension 2nd Offense: Minimum - 2 years and 1 day suspension Maximum - delisting from POEA registry |
| b. leaving the vessel without permission from responsible officers during working hours | Dismissal and to pay cost as provided in the contract | Same as 3(a) |
| c. entrusting to others assigned duties without authority of department head | At the discretion of Master | 1st Offense: Minimum - 6 months suspension Maximum - 1 year suspension 2nd Offense: Minimum - 1 year and 1 day suspension Maximum - 2 years suspension 3rd Offense: Minimum - 2 years and 1 day suspension Maximum - delisting from POEA registry |
| d. leaving the vessel without permission | At the discretion of Master | Same as 3(a) |
| 4. Sleeping on post while on duty | Dismissal and to pay cost as provided in the contrac | Same as 3(a) |
| 5. Insubordination | | |
| a. Any act of disobedience to lawful orders of a superior officer | Dismissal and to pay cost as provided in the contract | Same as 3(a) |
| b. attempting to assault a superior officer | Dismissal and to pay cost as provided in the contract | Same as 3(c) |
| c. assaulting a superior officer/other persons on business with the ship without the use of deadly weapon | Dismissal and to pay cost as provided in the contract | Same as 3(a) |
| d. assaulting a superior officer/other persons on business with the ship with the use of deadly weapon | Dismissal and to pay cost as provided in the contract | Delisting from POEA registry |
| e. behaving with disrespect towards a superior | Dismissal and to pay cost as provided in the contract | 1st Offense: Minimum - 6 months suspension Maximum - 1 year suspension 2nd Offense: Minimum - 2 years and 1 day suspension Maximum - 3 years suspension 3rd Offense: Minimum - 3 years and 1 day suspension Maximum - delisting from POEA registry |
| f. insulting a superior officer by words or deed | Dismissal and to pay cost as provided in the contract | Same as 5(e) |
| g. inciting another to commit insubordination | Dismissal and to pay cost as provided in the contract | Same as 5(e) |
| 6. Drunkenness | | |
| a. drunk while on duty | Dismissal and to pay cost as provided in the contract | 1st Offense: Minimum - 2 years suspension Maximum - 3 years suspension 2nd Offense: Minimum - 3 years and 1 day suspension Maximum - delisting from POEA registry |
| b. creating trouble on board due to intoxication | 1st Offense: Reprimand and warning 2nd Offense: Dismissal | Same as 5(e) |
| c. failure to perform assigned jobs due to intoxication | 1st Offense: Reprimand and warning 2nd Offense: Dismissal | Same as 5(e) |
| 7. Creating trouble outside the vessel's premises | Same as 6(c) | Same as 6(c) |

5

EC002663

| Offense | Penalty | Penalty |
|---|---|---|
| 8. Gambling | | |
| a. which results in fighting or any incide... as to upset the harmonious relationship on board the vessel | Dismissal and to pay cost as provided in the contract | 1st Offense: Minimum - 1 year suspension / Maximum - 2 years suspension / 2nd Offense: Minimum - 2 years and 1 day suspension |
| b. any other form of gambling which is not purely recreational | At Master's discretion | Same as 9(a) |
| 9. Violation of company policies and regulations | | |
| a. pilferage or theft of ship's store or cargo | Dismissal and to pay cost as provided in the contract | 1st Offense: Minimum - 1 year suspension / Maximum - 2 years suspension / 2nd Offense: Minimum - 2 years and 1 day suspension / Maximum - delisting from POEA registry |
| b. embezzlement of company funds | Dismissal and to pay cost as provided in the contract | Same as 9(a) |
| c. unauthorized disposal of company vessel's properties for personal gain | Dismissal and to pay cost as provided in the contract | Same as 9(a) |
| d. any act of dishonesty with intention to defraud the company | Dismissal and to pay cost as provided in the contract | Same as 9(a) |
| e. for gross negligence and failures to observe proper storage and cargo handling procedures resulting in delay of vessels and/or damage to cargoes | Dismissal and to pay cost as provided in the contract | Same as 9(a) |
| f. failure to observe and comply with regulation and non-baggage shipment and acceptance of parcels on board | At Master's discretion | 1st Offense: Minimum - 6 months suspension / Maximum - 1 year suspension / 2nd Offense: Minimum - 1 year and 1 day suspension / Maximum - 2 years suspension / 3rd Offense: Minimum - 2 years and 1 day suspension / Maximum - delisting from POEA registry |
| g. for failure to observe regulations on expiration of shore liberty | 1st Offense: Reprimand and warning / 2nd Offense: Dismissal | Same as 9(f) |
| h. for being left behind by vessel in foreign port without justifiable reason | Dismissal and to pay cost as provided in the contract | Same as 9(f) |
| i. for disorderly conduct and/or disrespect towards passengers | Dismissal and to pay cost as provided in the contract | 1st Offense: Minimum - 1 year suspension / Maximum - 2 years suspension / 2nd Offense: Minimum - 2 years and 1 day suspension / Maximum - delisting from POEA registry |
| j. for immorality so as to cast aspersion on the good name of the vessel and company | Dismissal and to pay cost as provided in the contract | Same as 9(i) |
| k. for inflicting harm or injury to others | Dismissal and to pay cost as provided in the contract | Same as 9(i) |
| 10. Incompetence and inefficiency | Dismissal and to pay cost as provided in the contract | 1st Offense: Minimum - 2 years suspension / Maximum - 3 years suspension / 2nd Offense: Minimum - 3 years and 1 day suspension / Maximum - delisting from POEA registry |
| 11. Any form of activity which tends to create discontent or dissension among the crew members | Dismissal and to pay cost as provided in the contract | 1st Offense: Minimum - 3 years suspension / Maximum - 4 years suspension / 2nd Offense: Minimum - 4 years and 1 day suspension / Maximum - delisting from POEA registry |
| 12. For inciting mutiny, malicious destruction of ship's property at any activity which will hamper the efficient operation of the vessel | Dismissal and to pay cost as provided in the contract | 1st Offense: Minimum - 2 years suspension / Maximum - 3 years suspension / 2nd Offense: Minimum - 3 years and 1 day suspension / Maximum - delisting from POEA registry |
| 13. Concerted action to breach approved contracts | Dismissal | 1st Offense: Minimum - 2 years suspension / Maximum - 3 years suspension / 2nd Offense: Disqualification from overseas employment |
| 14. Any activity which tends to destroy harmonious relationship of the company | Dismissal and to pay cost as provided in the contract | Same as 9(f) |
| 15. Grave abuse of authority | | |
| a. grave abuse of authority (with the use of deadly weapon) resulting in harm or injury to subordinate | Dismissal and to pay cost as provided in the contract | Delisting from POEA registry |
| b. grave abuse of authority (without the use of deadly weapon) resulting in harm or injury to subordinate | Dismissal and to pay cost as provided in the contract | 1st Offense: Minimum - 2 years suspension / Maximum - 3 years suspension / 2nd Offense: Minimum - 3 years and 1 day suspension / Maximum - delisting from POEA registry |
| c. any other case of abuse authority | At Master's discretion | 1st Offense: Minimum - 1 year suspension / Maximum - 2 years suspension / 2nd Offense: Minimum - 2 years and 1 day suspension / Maximum - 3 years suspension |
| 16. For gross misbehavior prejudicial to good order and discipline | 1st Offense: Reprimand and warning / 2nd Offense: Dismissal | 1st Offense: Minimum - 1 year suspension / Maximum - 2 years suspension / 2nd Offense: Minimum - 2 years and 1 day suspension / Maximum - delisting from POEA registry |
| 17. Causing through neglect, damage loss, spoilage or deterioration of vessel's stocks and property | At Master's discretion | Same as 15(c) |
| 18. Connivance with or cuddling of stowaway | Dismissal and to pay cost as provided in the contract | Same as 16 |
| 19. For willfully making false statement, reports, certification or spurious seaman's documents for personal gain or with intent to mislead or defraud the company | Dismissal and to pay cost as provided in the contract | Same as 16 |
| 20. Any other case as to cast aspersion on the good name of the company and vessel | At Master's discretion | Same as 15(c) |
| 21. Violation of safety and environmental rules/regulations | At Master's discretion | Minimum - 1 year suspension / Maximum - 2 years suspension |
| 22. Failure to observe the drug and alcohol policy of the company | Dismissal | Minimum - 1 year suspension / Maximum - 2 years suspension |

6

EC002664

December 16, 1996

## POEA MEMORANDUM CIRCULAR NO. 055-96

## REVISED STANDARD EMPLOYMENT TERMS AND CONDITIONS GOVERNING THE EMPLOYMENT OF FILIPINO SEAFARERS ON BOARD OCEAN-GOING VESSELS

Pursuant to Department Order No. 33, Series of 1996, and upon the recommendations of the Seabased Tripartite Technical and Consultative Committee, the following guidelines on the revised Standard Employment Contract Governing the Employment of Filipino Seafarers on Board Ocean-Going Vessels is hereby issued:

1.   The attached revised employment terms and conditions governing the overseas employment of Filipino seafarers (Annex A) shall be effective on 01 January 1997 and after publication in a newspaper of general circulation.

It is reiterated that the terms and conditions provided in this revised employment contract are the minimum requirements acceptable to POEA for the overseas employment of a Filipino seafarer. The parties to an employment of a seafarer may therefore improve on these minimum terms and conditions provided such improvements shall be made in writing and appended to this contract and submitted to POEA for processing and approval. Moreover, such improvements should have prospective application.

2.   The new schedule of benefits shall apply to any Filipino seafarer that will be deployed on or after the effectivity of this Circular.

3.   All manning agencies are directed to advise all their principals in all vessels on the revised employment terms and conditions and to enjoin the highest Filipino officer to have a copy of the revised contract and discuss with his crew.

4.   Discussions on the new employment terms and conditions should be incorporated in the Pre-Departure Orientation Seminars being

1

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002665

conducted by the manning agencies.

For strict compliance.

Adopted: 16 December 1996

**(SGD.) FELICISIMO O. JOSON, JR.**
*Administrator*

DEPARTMENT ORDER NO. 33
Series of 1996

In view of recent changes in international policies for the recruitment and employment of Filipino seafarers on board ocean-going vessels, and following a series of consultation meetings among representatives of shipmanning associations, seamen's organizations, NGO's and other government agencies, the existing Standard Employment Contract Governing the Employment of Filipino Seafarers on Board Ocean-Going Vessels is hereby revised.

The POEA shall formulate guidelines for the implementation of the new contract which shall form part of this Order and which shall be effective by 01 January 1997.

All Orders and issuances which are inconsistent herewith are hereby repealed and superseded.

*(SGD.) LEONARDO A. QUISUMBING*
*Secretary*

**ANNEX A**

STANDARD TERMS AND CONDITIONS
GOVERNING THE EMPLOYMENT OF FILIPINO SEAFARERS
ON-BOARD OCEAN-GOING VESSELS

Definition of Terms:

For purposes of this contract, the following terms are defined as follows:

1.    Point of Hire — refers to the place indicated in the contract of employment which shall be the basis for determining commencement and termination of contract.

2.    Convenient Port — any port where it is practicable, economical, safe and convenient

2

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002666

to repatriate the seafarer.

3.     Philippine Port — refers to any Philippine airport or seaport.

4.     Basic Wage — refers to the salary of the seafarer exclusive of overtime, leave pay and other bonuses.

5.     Departure — refers to the actual departure from the point of hire of the seafarer through air, sea or land travel transport to join his vessel to a Philippine or foreign port.

6.     Regular Working Hours — refers to the seafarer's eight (8) hour working hours within the period of 24 hours.

7.     Dental Treatment — covers tooth extraction or dental surgery, it necessary, due to accident.

8.     Shipwreck — refers to the damage or destruction of a vessel at sea caused by collision, storm grounding or any other marine peril at sea or in port rendering the vessel absolutely unnavigable or unable to pursue her voyage.

9.     Compassionate Ground — refers to incidence of death of an immediate member of the seafarer's family which includes his parents, spouse and children if the seafarer is married or his parents if the seafarer is single.

## SECTION 1. DUTIES

A.     Duties of the Employer/Agency/Master:

     1.     To faithfully comply with the stipulated terms and conditions of this contract, particularly the prompt payment of wages, remittance of allotment and the expeditious settlement of valid claims of the seafarer.

     2.     To make operational on board the vessel the grievance machinery provided in this contract and ensure its free access at all times by the seafarer.

B.     Duties of the Seafarer:

     1.     to faithfully comply with and observe the terms and conditions of this contract, violations of which shall be subject to disciplinary action pursuant to Section 31 of this contract;

     2.     to abide by the Code of Discipline as provided in the POEA rules and

3

Copyright 1994-2002 CD Technologies Asia, Inc.

regulations governing overseas contract workers;

3.    to comply with company policy consistent with POEA rules and regulations;

4.    to be diligent in his duties and in everything relating to the vessel, its stores and cargo, whether on board, in boats or ashore;

5.    to be obedient to the lawful commands of the Master or any person who shall lawfully succeed him;

6.    to conduct himself in an orderly and respectful manner towards passengers and shippers stevedores, port authorities and other persons on official business with the ship.

7.    where he feels aggrieved, to observe the grievance procedure outlined in this Contract.

## SECTION 2.COMMENCEMENT/DURATION OF CONTRACT

A.    The employment contract between the employer and the seafarer shall commence upon actual departure of the seafarer from the airport or seaport in the point of hire and with a POEA approved contract. It shall be effective until the seafarer's date of arrival at the point of hire upon termination of his employment pursuant to Section 18 of this Contract.

B.    The period of employment shall be for a period mutually agreed upon by the seafarer and the employer but not to exceed 12 months. Any extension of the contract shall be subject to the mutual consent of both parties.

## SECTION 3.FREE PASSAGE FROM THE POINT OF HIRE TO THE PORT OF EMBARKATION

The seafarer shall join the vessel or be available for duty at the date and time specified by the employer. The seafarer shall travel by air or as otherwise directed at the expense of the employer.

## SECTION 4.BAGGAGE ALLOWANCE

The seafarer traveling by air to join a vessel or on repatriation shall be entitled to the normal free baggage allowance offered by the airlines. The cost of the excess baggage shall be for the account of the seafarer.

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002668

## SECTION 5. HYGIENE AND VACCINATION

A.   The seafarer shall keep his quarters and other living spaces such as messrooms, toilets, bathrooms, alleyways and recreation rooms in clean and tidy condition to the satisfaction of the master. The work is to be performed outside the seafarer's regular working hours and for which no overtime pay shall be claimed.

B.   The seafarer shall submit to the order of the master or to the laws of any country within the territorial jurisdiction of which the vessel may enter to have such vaccination or inoculation to undertake measures safeguarding his health and of the whole crew.

## SECTION 6. WAGES

A.   The seafarer shall be paid his monthly wages from the date of commencement of the contract until the date of arrival at point of hire upon termination of his employment pursuant Section 18 of this Contract, not later than 15 days of the succeeding month.

## SECTION 7. PAYMENT ON BOARD

Payment of shipboard pay in foreign ports shall be subject to the currency control regulations at the port abroad and to the official rate of exchange prevailing at the time of payment. Advances shall be at the master's/employer's discretion and in accordance with the foregoing conditions.

## SECTION 8. ALLOTMENTS AND REMITTANCES

A.   The seafarer is required to make an allotment which shall be payable once a month to his designated allottee in the Philippines through any authorized Philippine bank. The master/employer/agency shall provide the seafarer with facilities to do so at no expense to the seafarer. The allotment shall be at least eighty percent (80%) of the seafarer's monthly basic salary including backwages, if any.

B.   The master/employer/agency if requested, may also provide facilities for the seafarer to remit any amount in excess of his allotment to his designated allottee in the Philippines through any authorized Philippine bank without any charge to him.

C    The allotments shall be paid to the designated allottee in Philippine currency at the rate of exchange indicated in the credit advice of the local authorized Philippine bank.

## SECTION 9. ACCOUNT OF WAGES & CERTIFICATE OF EMPLOYMENT

The seafarer, upon his discharge, shall be given a written account of his wages reflecting all

5

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002669

deductions therefrom. Where a seafarer is landed in an emergency, the written account of his wages shall be given to him as soon as practicable thereafter. Upon the seafarer's request, he shall also be provided by his employer/agency his certificate of employment or service record without any charge.

SECTION 10.    HOURS OF WORK

A.    The seafarer shall perform not more than forty-eight (48) hours of regular work a week. The hours of works shall be determined and prescribed by the master, provided that it conforms with customary international practices and standards and as prescribed in paragraph B below,

B.    Regular working hours for the seafarer shall be eight (8) hours in every 24 hours, midnight to midnight, Monday to Sunday. The normal practice is as follows:

1.    the day worker shall observe the eight (8) regular working hours during the period from 0600 hours to 1800 hours.

2.    the steward personnel shall observe the eight (8) regular working hours during the period from 0500 hours to 2000 hours.

3.    the Radio Operator shall observe the eight (8) regular working hours in every twenty-four (24) hours, midnight to midnight, from Monday to Sunday as established by International Telecommunication Conventions and as prescribed by the master.

4.    for those who are on sea watch, their working hours shall be eight (8) hours per day. Staggering of working hours will be at the master's discretion.

C.    The seafarer shall be allowed reasonable rest period in accordance with international standards.

SECTION 11.    OVERTIME & HOLIDAYS

A.    The seafarer shall be compensated for all work performed in excess of the regular eight (8) hours as prescribed above. Overtime pay may be classified as open, fixed or guaranteed.

In computing overtime, a fraction of the first hour worked shall be considered as one full hour.

After the first hour overtime, any work performed which is less than thirty (30) minutes shall be considered as half an hour and more than thirty (30) minutes

Copyright 1994-2002 CD Technologies Asia, Inc.

6

EC002670

shall be considered one full hour.

B.   Overtime work may be compensated at the following rates:

1.   Open overtime — not less than 125 percent (125%) of the basic hourly rate computed based on two hundred eight (208) regular working hours per month.

2.   Guaranteed or fixed overtime — not less than thirty percent (30%) of the basic monthly salary of the seafarer. This fixed rate overtime shall include overtime work performed on Sundays and holidays but shall not exceed one hundred five (105) hours a month. Overtime work in excess of 105 hours a month shall be further compensated on an open overtime rate.

C.   Any hours of work or duty including hours of watchkeeping performed by the seafarer on designated rest days and holidays shall be paid rest day or holiday pay. The following shall be considered as holidays at sea and in port.

| | |
|---|---|
| New Year's Day | January 1 |
| Maundy Thursday | movable date |
| Good Friday | movable date |
| Araw ng Kagitingan (Bataan & Corregidor Day) | April 9 |
| Labor Day | May 1 |
| Independence Day | June 12 |
| National Heroes Day | Last Sunday of August |
| All Saints Day | November 1 |
| Bonifacio Day | November 30 |
| Christmas Day | December 25 |
| Rizal Day | December 30 |

D.   Emergency Duty — No overtime work shall be considered for any work performed in case of emergency affecting the safety of the vessel, passenger, crew or cargo, of which the master shall be the sole judge, or for fire, boat, or emergency drill or work required to give assistance to other vessels or persons in immediate peril.

SECTION 12.     LEAVE PAY

The seafarer's leave pay shall be in accordance with the number of days leave per month as agreed upon. Days leave shall not be less than two and a half (2-½) days for each month of service and pro-rated.

SECTION 13.     SHORE LEAVE

The seafarer shall be allowed shore leave whenever practicable, upon the consent of the

7

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002671

master or his deputy, taking into consideration the operations and safety of the vessel.

## SECTION 14.    VICTUALLING, VESSEL STORES AND PROVISIONS

A.    The seafarer shall be provided by the master/employer with subsistence consistent with good maritime standards and practices while on board the vessel.

B.    All stores and provisions issued to the seafarer are only for use and consumption on board the vessel and any unused or unconsumed stores or provisions shall remain the property of the employer. The seafarer shall not take ashore, sell, destroy or give away such stores and provisions.

## SECTION 15.    TRANSFER CLAUSE

The seafarer agrees to be transferred at any port to any vessel owned or operated, manned or managed by the same employer, provided it is accredited to the same manning agent and provided further that the position of the seafarer and the rate of his wages and terms of services are in no way inferior and the total period of employment shall not exceed that originally agreed upon.

Any form of transfer shall be documented and made available when necessary.

## SECTION 16.    GRIEVANCE MACHINERY

A.    If the seafarer considers himself aggrieved, he shall make his complaint in accordance with the following procedures:

    1.    The seafarer shall first approach the head of the Department in which he is assigned to explain his grievance.

        a.    In the Deck, Radio and Catering Department, the head is the Chiefmate.

        b.    In the Engine Department, the head is the Chief Engineer.

        c.    In the Catering and/or Hotel Department in a passenger ship, the head is the Chief Steward and/or Purser.

    2.    The seafarer shall make his grievance in writing and in an orderly manner and should choose a time when his complaint or grievance can be properly heard.

    3.    The Department head shall deal with the complaint or grievance and where solution is not possible at his level, refer the complaint or

8

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002672

grievance to the Master who shall handle the case personally.

4.    If no satisfactory result is achieved, the seafarer concerned may appeal to the management of the company or with a Philippine Labor Attaché or consular officer overseas. The master shall afford such facilities necessary to enable the seaman to transmit his appeal.

5.    If after observing the grievance procedure the master finds that the seafarer violated the terms of his Contract or has committed breach of discipline, the master shall discipline the seafarer or, if warranted, terminate his employment.

6.    The seafarer may also seek the assistance of the highest ranking Filipino seafarer on board.

B.    When availed of by the seafarer, the grievance procedure and all actions or decisions agreed upon shall be properly documented for the protection and interest of both parties.

C.    The procedure herein shown above stated shall be without prejudice to the jurisdiction of the Philippine Overseas Employment Administration (POEA) or the National Labor Relations Commission (NLRC) over any unresolved complaints arising out of shipboard employment that shall be brought before it by the seafarer.

SECTION 17.    DISCIPLINARY PROCEDURES

The Master shall comply with the following disciplinary procedures against an erring seafarer:

A.    The Master shall furnish the seafarer with a written notice containing the following:

1.    Grounds for the charges as listed in Section 31 of this Contract.

2.    Date, time and place for a formal investigation of the charges against the seafarer concerned.

B.    The Master or his authorized representative shall conduct the investigation or hearing, giving the seafarer the opportunity to explain or defend himself against the charges. An entry on the investigation shall be entered into the ship's logbook.

C.    If after the investigation or hearing, the Master is convinced that imposition of a penalty is justified, the Master shall issue a written notice of penalty and the reasons for it to the seafarer, with copies furnished to the Philippine agent.

D.    Dismissal for just cause may be effected by the Master without furnishing the seafarer

9

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002673

with a notice of dismissal if doing so will prejudice the safety of the crew or the vessel. This information shall be entered in the ship's logbook. The Master shall send a complete report to the manning agency substantiated by witnesses, testimonies and any other documents in support thereof.

SECTION 18.    TERMINATION OF EMPLOYMENT

A.    The employment of the seafarer shall cease when the seafarer completes his period of contractual service aboard the vessel, signs-off from the vessel and arrives at the point of hire.

B.    The employment of the seafarer is also terminated when the seafarer arrives at the point of hire for any of the following reasons:

1.    when the seafarer signs-off and is disembarked for medical reasons pursuant to Section 20 (B) [4] of this Contract.

2.    when the seafarer signs-off due to shipwreck, ship's sale, lay-up of vessel, discontinuance of voyage or change of vessel principal in accordance with Sections 22, 23 and 24 of this Contract.

3.    when the seafarer voluntarily resigns and signs off prior to expiration of contract pursuant to Section19 (G) of this Contract.

4.    when the seafarer is discharged for just cause as provided for in Section 31 of this Contract.

SECTION 19.    REPATRIATION

A.    If the vessel is outside the Philippines upon the expiration of the contract, the seafarer shall continue his service on board until the vessel's arrival at a convenient port and/or after arrival of the replacement crew provided that, in any case, the continuance of such service shall not exceed three months. The seafarer shall be entitled to earned wages and benefits as provided in his contract.

B.    If the vessel arrives at a convenient port before the expiration of the contract, the master/employer may repatriate the seafarer from such port, provided the unserved portion of his contract is not more than one (1) month. The seafarer shall be entitled only to his earned wages and earned leave pay and to his basic wages corresponding to the unserved portion of the contract, unless within 60 days from disembarkation, the seafarer is rehired at the same rate and position, in which case the seafarer shall be entitled only to his earned wages and earned leave pay.

10

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002674

C.   If the vessel arrives at a convenient port within a period of three (3) months before the expiration of his contract, the master/employer may repatriate the seafarer from such port provided that the seafarer shall be paid all his earned wages. In addition, the seafarer shall also be paid his leave pay for the entire contract period plus a termination pay equivalent to one (1) month of his basic pay, provided, however, that this mode of termination may only be exercised by the master/employer if the original contract period of the seafarer is at least ten (10) months; provided, further, that the conditions for this mode of termination shall not apply to dismissal for cause.

D.   The seafarer shall, if discharged at a port abroad for any reason other than for discipline, be accommodated ashore and in cases where it is not intended that he rejoin the vessel, shall be repatriated to the Philippines via sea or air or as may otherwise be directed by the employer/master/agency.

E.   When the seafarer is discharged for any just cause, the employer shall have the right to recover the costs of his replacement and repatriation from the seafarer's wages and other earnings.

F.   The seafarer, when discharged and repatriated as directed by the employer/master/agency shall be entitled to basic wages from date of signing off until arrival at the point of hire except when the discharge is in accordance with the above or for disciplinary reasons. If the seafarer delays or desires a detour and/or another destination other than the most direct to the point of hire, all additional expenses shall be to the seafarer's account. The seafarer's basic wage shall be calculated based on the date of arrival by the most direct route.

G.   A seaman who requests for early termination of his contract shall be liable for his repatriation cost as well as the transportation cost of his replacement. The employer may, in case of compassionate grounds, assume the transportation cost of the seafarer's replacement.

SECTION 20. COMPENSATION AND BENEFITS

A.   COMPENSATION AND BENEFITS FOR DEATH

1.   In case of death of the seafarer during the term of his contract, the employer shall pay his beneficiaries the Philippine Currency equivalent to the amount of Fifty Thousand US dollars (US$50,000) and an additional amount of Seven Thousand US dollars (US$7,000) to each child under the age of twenty-one (21) but not exceeding four (4) children, at the exchange rate prevailing during the time of payment.

2.   Where death is caused by warlike activity while sailing within a declared

Copyright 1994–2002 CD Technologies Asia, Inc.

11

EC002675

war zone or war risk area, the compensation payable shall be doubled. The employer shall undertake appropriate war zone insurance coverage for this purpose.

3.    It is understood and agreed that the benefits mentioned above shall be separate and distinct from, and will be in addition to whatever benefits which the seafarer is entitled to under Philippine laws from the Social Security System, Overseas Workers Welfare Administration and Pag-ibig, if applicable.

4.    The other liabilities of the employer when the seafarer dies as a result of injury or illness during the term of employment are as follows:

   a.    The employer shall pay the deceased's beneficiary all outstanding obligations due the seafarer under this Contract.

   b.    The employer shall transport the remains and personal effects of the seafarer to the Philippines at employer's expense except if the death occurred in a port where local government laws or regulations do not permit the transport of such remains. In case death occurs at sea, the disposition of the remains shall be handled or dealt with in accordance with the master's best judgment. In all cases, the employer/master shall communicate with the manning agency to advise for disposition of seafarer's remains.

   c.    The employer shall pay the beneficiaries of the seafarer the Philippine currency equivalent to the amount of One Thousand US dollars (US$1,000) for burial expenses at the exchange rate prevailing during the time of payment.

## B.    COMPENSATION AND BENEFITS FOR INJURY OR ILLNESS

The liabilities of the employer when the seafarer suffers injury or illness during the term of his contract are as follows:

1.    The employer shall continue to pay the seafarer his wages during the time he is on board the vessel;

2.    If the injury or illness requires medical and/or dental treatment in a foreign port, the employer shall be liable for the full cost of such medical, serious dental, surgical and hospital treatment as well as board and lodging until the seafarer is declared fit to work or to be repatriated.

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002676

However, if after repatriation, the seafarer still requires medical attention arising from said injury or illness, he shall be so provided at cost to the employer until such time he is declared fit or the degree of his disability has been established by the company-designated physician.

3. Upon sign-off from the vessel for medical treatment, the seafarer is entitled to sickness allowance equivalent to his basic wage until he is declared fit to work or the degree of permanent disability has been assessed by the company-designated physician, but in no case shall this period exceed one hundred twenty (120) days.

   For this purpose, the seafarer shall submit himself to a post-employment medical examination by a company-designated physician within three working days upon his return except when he is physically incapacitated to do so, in which case, a written notice to the agency within the same period is deemed as compliance. Failure of the seafarer to comply with the mandatory reporting requirement shall result in his forfeiture of the right to claim the above benefits.

4. Upon sign-off of the seafarer from the vessel for medical treatment, the employer shall bear the full cost of repatriation in the event the seafarer is declared (1) fit for repatriation; or (2) fit to work but the employer is unable to find employment for the seafarer on board his former vessel or another vessel of the employer despite earnest efforts.

5. In case of permanent total or partial disability of the seafarer during the term of employment caused by either injury or illness the seafarer shall be compensated in accordance with the schedule of benefits enumerated in Section 30 of his Contract, Computation of his benefits arising from an illness or disease shall be governed by the rates and the rules of compensation application at the time the illness or disease was contracted.

C. It is understood that computation of the total permanent or partial disability off the seafarer caused by the injury sustained resulting from warlike activities within the warzone area shall be based on the compensation rate payable within the warzone area as prescribed in this Contract.

D. No compensation shall be payable in respect of any injury, incapacity, disability or death of the seafarer resulting from his willful or criminal act, provided however, that the employer can prove that such injury, incapacity, disability or death is directly attributable to seafarer.

13

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002677

E.    When requested, the seafarer shall be furnished a copy of all pertinent medical reports or records at no cost to the seafarer.

SECTION 21.    WAR AND WARLIKE OPERATIONS ALLOWANCE

A.    If a war or warlike operations should arise during the term of this Contract in any country within the vessel's trading area, the seafarer may sail the vessel within and out of the trading area if required by the Master.

B.    If at the time of the signing of the contract, an area is declared a war or war-risk trading area and the seafarer binds himself in writing to sail into that area, the agreement shall be properly appended to the Contract for verification and approval by the Philippine Overseas Employment Administration (POEA). The seafarer shall comply with the agreement or shall bear his cost of repatriation when he opts not to sail into a war or war-risk trading area.

C.    The seafarer when sailing within a war-risk trading area shall be entitled to such premium pay as the POEA may determine through appropriate periodic issuances.

D.    The POEA shall be the sole authority to determine whether the vessel is within a war risk trading area. It shall also determine the amount of premium pay to which the seafarer shall be entitled to when sailing in that war-risk trading area.

SECTION 22.    TERMINATION DUE TO SHIPWRECK

Where the vessel is wrecked necessitating the termination of employment before the date indicated in the contract, the seafarer shall be entitled to earned wages, medical examination at employer's expense to determine his fitness to work, repatriation at employer's cost and one month basic wage as termination pay; unless arrangements have been made for the seafarer to join another vessel to complete his contract, in which case, the seafarer shall be entitled to earned wages until the date of joining the other vessel and medical examination at employer's expense to determine his fitness to work.

SECTION 23.    TERMINATION DUE TO VESSEL SALE, LAY-UP OR DISCONTINUANCE OF VOYAGE

Where the vessel is sold, laid up, or the voyage is discontinued necessitating the termination of employment before the date indicated in the Contract, the seafarer shall be entitled to earned wages, repatriation at employer's cost and one (1) month basic wage as termination pay, unless arrangements have been made for the seafarer to join another vessel to complete his contract in which case the seafarer shall be entitled to earned wages until the date of joining the other vessel.

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002678

SECTION 24.    TERMINATION DUE TO UNSEAWORTHINESS

A.    If the vessel is declared unseaworthy by a classification society, port state or flag state, the seafarer shall not be forced to sail with the vessel.

B.    If the vessel's unseaworthiness necessitates the termination of employment before the date indicated in the Contract, the seafarer shall be entitled to earned wages, repatriation at cost to the employer and termination pay equivalent to one (1) month basic wage.

SECTION 25.    CHANGE OF PRINCIPAL

A.    Where there is a change of principal of the vessel necessitating the termination of employment of the seafarer before the date indicated in the Contract seafarer shall be entitled to earned wages, repatriation at employer's expense and one month basic pay as termination pay.

B.    If by mutual agreement, the seafarer continues his service on board the same vessel, such service shall be treated as a new contract. The seafarer shall be entitled to earned wages only.

C.    In case arrangements has been made for the seafarer to join another vessel to complete his contract, the seafarer shall be entitled to basic wage until the date of joining the other vessel.

SECTION 26.    LOSS OF OR DAMAGE TO CREW'S EFFECTS BY MARINE PERIL

A.    The seafarer shall be reimbursed by the employer the full amount of loss or damage to his personal effects but in no case shall the amount exceed the Philippine currency equivalent to the amount of Two Thousand US dollars (US$ 2,000) if his personal effects are lost or damaged as a result of the wreck or loss or stranding or abandonment of the vessel or as a result of fire, flooding, collision, or piracy.

B.    In case of partial loss, the amount shall be determined by mutual agreement of both parties but in no case to exceed the Philippine currency equivalent to the amount of Two Thousand US dollars (US$2,000).

C.    Reimbursement for loss or damage to the seafarer's personal effects shall not apply if such loss or damage is due to (a) the seaman's own fault; (b) larceny or theft or (c) robbery.

D.    Payment of any reimbursement shall be computed at the rate of exchange prevailing at the time of payment.

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002679

SECTION 27.    GENERAL SAFETY

A.    The seafarer shall observe and follow any regulation or restriction that the master may impose concerning safety, drug and alcohol environmental protection.

B.    The seafarer shall make use of all appropriate safety equipment provided him and must ensure that he is suitably dressed from the safety point of view for the job at hand.

SECTION 28. JURISDICTION

The Philippine Overseas Employment Administration (POEA) or the National Labor Relation Commission (NLRC) shall have original and exclusive jurisdiction over any all disputes controversies arising out of or by virtue of this Contract.

Recognizing the peculiar nature of overseas shipboard employment, the employer and the seafarer agree that all claims arising from this contract shall be made within one (1) year from the date of seafarer's return to the point of hire.

SECTION 30.    SCHEDULE OF DISABILITY OR IMPEDIMENT FOR INJURIES SUFFERED AND DISEASES OR ILLNESS CONTRACTED

HEAD

Traumatic head injuries that result to:

| | | |
|---|---|---|
| 1. | Apperture unfilled with bone not over three (3) inches without brain injury | Gr. 9 |
| 2. | Apperture unfilled with bone over three (3) inches without brain injury | Gr. 3 |
| 3. | Severe paralysis of both upper or lower extremities or one upper and one lower extremity | Gr. 1 |
| 4. | Moderate paralysis of two (2) extremities producing moderate difficulty in movements with self-care activities | Gr. 6 |
| 5. | Slight paralysis affecting one extremity producing slight difficulty with self-care activities | Gr. 10 |
| 6. | Severe mental disorder or Severe Complex Cerebral function disturbance or post-traumatic psychoneurosis which require regular aid and attendance as to render worker permanently unable to perform any work | Gr. 1 |
| 7. | Moderate mental disorder or moderate brain functional disturbance which limits worker to the activities of daily living with some directed care or attendance | Gr. 6 |
| 8. | Slight mental disorder or disturbance that requires little attendance or aid and which interferes to a slight degree with the working | |

Copyright 1994-2002 CD Technologies Asia, Inc.

16

EC002680

capacity of the claimant                                      Gr. 10
9.  Incurable imbecility                                      Gr. 1

## FACE

1.  Severe disfigurement of the face or head as to make the worker so
    repulsive as to greatly handicap him in securing or retaining
    employment, thereby being no permanent functional disorder    Gr. 2
2.  Moderate facial disfigurement involving partial ablation of the nose
    with big scars on face or head                               Gr. 5
3.  Partial ablation of the nose or partial avulsion of the scalp   Gr. 9
4.  Complete loss of the power of mastication and speech function   Gr. 1
5.  Moderate constriction of the jaw resulting in moderate degree of
    difficulty in chewing and moderate loss of the power or the expression
    of speech                                                    Gr. 6
6.  Slight disorder of mastication and speech function due to traumatic
    injuries to jaw or check bones                               Gr. 12

## EYES

1.  Blindness or total and permanent loss of vision of both eyes   Gr. 1
2.  Total blindness of one (1) eye and fifty percent (50%) loss of vision
    of the other eye                                             Gr. 5
3.  Loss of one eye or total blindness of one eye                 Gr. 7
4.  Fifty percent (50%) loss of vision of one eye                 Gr. 10
5   Lagopthalmos, one eye                                         Gr. 12
6.  Ectropion, one eye                                            Gr. 12
7.  Ephiphora, one eye                                            Gr. 12
8.  Ptosis, one eye                                               Gr. 12

NOTE: (Smeller's Chart — used to grade for near and distant vision)

## NOSE AND MOUTH

1.  Considerable stricture of the nose (both sides) hindering breathing   Gr. 11
2.  Loss of the sense of hearing in one ear                      Gr. 11
3.  Injuries to the tongue (partial amputation or adhesion) or
    palare-causing defective speech                              Gr. 10
4.  Loss of three (3) teeth restored by prosthesis               Gr. 14

## EARS

1.  For the complete loss of the sense of hearing on both ears    Gr. 3
2.  Loss of two (2) external ears                                 Gr. 8
3.  Complete loss of the sense of hearing in one ear              Gr. 11
4.  Loss of one external ear                                      Gr. 12

17

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002681

5. Loss of one half (½) of an external ear — Gr. 14

## NECK

1. Such injury to the throat as necessitates the wearing of a tracheal tube — Gr. 6
2. Loss of speech due to injury to the vocal cord — Gr. 9
3. Total stiffness of neck due to fracture or dislocation of the cervical pines — Gr. 8
4. Moderate stiffness or two thirds (2/3) loss of motion of the neck — Gr. 10
5. Slight stiffness of neck or one third (1/3) loss of motion — Gr. 12

## CHEST-TRUNK-SPINE

1. Fracture of four (4) or more ribs resulting to severe limitation of chest expansion — Gr. 6
2. Fracture of four (4) or more ribs with intercostal neuralgia resulting in moderate limitation of chest expansion — Gr. 9
3. Slight limitation of chest expansion due to simple rib functional without myositis or intercostal neuralgia — Gr. 12
4. Fracture of the dorsal or lumber spines resulting to severe or total rigidity of the trunk or total loss of lifting power of heavy objects — Gr. 6
5. Moderate rigidity or two thirds (2/3) loss of motion or lifting power of the trunk — Gr. 8
6. Slight rigidly or one third (1/3) loss of motion or lifting power of the trunk — Gr. 11
7. Injury to the spinal cord as to make walking impossible without the aid of a pair of crutches — Gr. 4
8. Injury to the spinal cord as to make walking impossible even with the aid of a pair of crutches — Gr. 1
9. Injury to the spinal cord resulting to incontinence of urine and fees — Gr. 1

## ABDOMEN

1. Loss of the spleen — Gr. 8
2. Loss of one kidney — Gr. 7
3. Severe residuals of impairment of intra abdominal organs which requires aid and attendance that will unable worker to seek any gainful employment — Gr. 1
4. Moderate residuals of disorder of the intra-abdominal organs secondary to trauma resulting to impairment of nutrition, moderate tenderness, nausea, vomiting, constipation or diarrhea — Gr. 7
5. Slight residuals or disorder of the intra-abdominal organs resulting in impairment of nutrition, slight tenderness and/or constipation or diarrhea — Gr. 12
6. Inguinal hernia secondary to trauma or strain — Gr. 12

18

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002682

## PELVIS

| | |
|---|---|
| 1. Fracture of the pelvic rings as to totally incapacitate worker to work | Gr. 1 |
| 2. Fracture of the pelvic ring resulting to deformity and lameness | Gr. 6 |

## URINARY AND GENERATIVE ORGANS

| | |
|---|---|
| 1. Total loss of penis | Gr. 7 |
| 2. Total loss of both testicles | Gr. 7 |
| 3. Total loss of one testicle | Gr. 11 |
| 4. Scars on the penis or destruction of the parts of the cavernous body or urethra interfering with erection or markedly affecting coitus | Gr. 9 |
| 5. Loss of one breast | Gr. 11 |
| 6. Prolapse of the uterus | Gr. 6 |
| 7. Great difficulty in urinating | Gr. 13 |
| 8. Incontinence of urine | Gr. 10 |

## THUMBS AND FINGERS

| | |
|---|---|
| 1. Total loss of one thumb including metacarpal bone | Gr. 9 |
| 2. Total loss of one thumb | Gr. 10 |
| 3. Total loss on one index finger including metacarpal bone | Gr. 10 |
| 4. Total loss of one index finger | Gr. 11 |
| 5. Total loss of one middle finger including metacarpal bone | Gr. 11 |
| 6. Total loss of one middle finger | Gr. 12 |
| 7. Total loss of one ring finger including metacarpal bone | Gr. 12 |
| 8. Total loss of one ring finger | Gt. 13 |
| 9. Total loss of one small finger including metacarpal bone | Gr. 13 |
| 10. Total loss of one small finger | Gr. 14 |

11. Loss of two (2) or more fingers: Compensation for the loss or loss of use of two (2) or more fingers or one (1) or more phalanges of two or more digits of a hand must be proportioned to the loss of the hand occasioned thereby but shall not exceed the compensation for the loss of a hand:

| | |
|---|---|
| a. Loss of five (5) fingers of one hand | Gr. 6 |
| b. Loss of thumb, index fingers and any of 2 or more fingers of the same hand | Gr. 6 |
| c. Loss of the thumb, index finger and any one of the remaining fingers of the same hand | Gr. 7 |
| d. Loss of thumb and index finger | Gr. 8 |
| e. Loss of three (3) fingers of one hand not including thumb and index finger | Gr. 9 |
| f. Loss of the index finger and any one of the other fingers of the same hand excluding thumb | Gr. 9 |

19

Copyright 1994-2002  CD Technologies Asia, Inc.

EC002683

g.  Loss of two (2) digits of one hand not including thumb and
    index finger                                                      Gr. 10
12. Loss of ten (10) fingers of both hand                             Gr. 3

## HANDS

1.  Total loss of use of both hands or amputation of both hands at wrist
    joints or above                                                   Gr. 1
2.  Amputation of a hand at carpo-metacarpal joints                   Gr. 3
3.  Amputation between wrist and elbow joint                          Gr. 3
4.  Loss of grasping power for small objects between the fold of the finger
    of one hand                                                       Gr. 10
5.  Loss of grasping power for large objects between fingers and palm of
    one hand                                                          Gr. 10
6.  Loss of opposition between the thumb and tips of the fingers of one hand  Gr. 10.
7.  Ankyclosed wrist in normal position                               Gr. 10
8.  Ankyclosed wrist in position one third (1/3) flexed or half extended
    and/or severe limited action of a wrist                           Gr. 11

## SHOULDER AND ARM

1.  Inability to turn forearm (forearm in normal position-supination)  Gr. 11
2.  Inability to turn forearm (forearm in abnormal position-pronation) Gr. 10
3.  Disturbance of the normal carrying angle or weakness of an arm or a
    forearm due to deformity of moderate atrophy of muscles           Gr. 11
4.  Stiff elbow at full flexion or extension (one side)               Gr. 7
5.  Stiff elbow at right angle flexion                                Gr. 8
6.  Flail elbow joint                                                 Gr. 9
7.  Pseudoarthrosis of the humerus with musculospiral or radial paralysis  Gr. 6
8.  Ankylosis of one (1) shoulder, the shoulder blade remaining mobile  Gr. 9
9.  Ankylosis of one shoulder, the shoulder blade remaining rigid     Gr. 8
10. Unreduced dislocation of one (1) shoulder                         Gr. 8
11. Ruptured biceps or pseudoarthrosis of the humerus, close (one side)  Gr. 11
12. Inability to raise arm more than halfway from horizontal to perpendicular  Gr. 11
13. Ankylosis of the shoulder joint not permitting arm to be raised above
    a level with a shoulder and/or irreducible fracture or faulty union collar
    bone                                                              Gr. 10
14. Total paralysis of both upper extremites                          Gr. 1
15. Total paralysis of one upper extremity                            Gr. 3
16. Amputation of one (1) upper extremity at or above the elbow       Gr. 4
17. Scar the size of the palm in one extremity                        Gr. 14

## LOWER EXTREMITIES

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002684

| | |
|---|---|
| 1. Loss of a big toe | Gr. 12 |
| 2. Loss of a toe other than the big one | Gr. 14 |
| 3. Loss of ten (10) digits of both feet | Gr. 5 |
| 4. Loss of a great toe of one foot + one toe | Gr. 10 |
| 5. Loss of two toes not including great toe or toe next to it | Gr. 12 |
| 6. Loss of three (3) toes excluding great toe of a foot | Gr. 10 |
| 7. Loss of four (4} excluding great toe of a foot | Gr. 9 |
| 8. Loss of great toe and two (2) other toes of the same foot | Gr. 9 |
| 9. Loss of five digits of a foot | Gr. 8 |
| 10. Loss of both feet at ankle joint or above | Gr. 1 |
| 11. Loss of one foot at ankle joint or above | Gr. 6 |
| 12. Depression of the arch of a foot resulting in weak foot | Gr. 12 |
| 13. Loss of one half (½) metatarsus of one (1) foot | Gr. 8 |
| 14. Loss of whole metatarsus or forepart of foot | Gr. 7 |
| 15. Tearing of achilles tendon resulting in the impairment of active flexion and extension of a foot | Gr. 12 |
| 16. Malleolar fracture with displacement of the foot inward or outward | Gr. 10 |
| 17. Complete immobility of an ankle joint in abnormal position | Gr. 10 |
| 18. Complete immobility of an ankle joint in normal position | Gr. 11 |
| 19. Total loss of a leg or amputation at or above the knee | Gr. 3 |
| 20. Stretching leg of the ligaments of a knee resulting in instability of joint | Gr. 10 |
| 21. Ankylosis of a knee in genuvalgum of varum | Gr. 10 |
| 22. Pseudoarthrosis of a knee cap | Gr. 10 |
| 23. Complete immobility of a knee joint in full extension | Gr. 10 |
| 24. Complete immobility of a knee joint in strong flexion | Gr. 7 |
| 25. Complete immobility of a hip joint in flexion of the thigh | Gr. 6 |
| 26. Complete immobility of a hip joint in full extension of the thigh | Gr. 9 |
| 27. Slight atrophy of calf of leg muscles without apparent shortening or joint lesion or disturbance weight-bearing line | Gr. 10 |
| 28. Shortening of a lower extremity from one to three centimeters with either joint lesion or disturbance of weight-bearing joint | Gr. 13 |
| 29. Shortening of 3 to 6 cm. with slight atrophy of calf or thigh muscles | Gr. 12 |
| 30. Shortening of 3 to 6 cm. with either joint lesion or disturbance of weight-bearing joint. | Gr. 11 |
| 31. Irregular union of fracture with joint stiffness and with shortening of 6 to 9 cm. producing permanent lameness | Gr. 9 |
| 32. Irregular union of fracture in a thigh or leg with shortening of 6 to 9 cms | Gr. 10 |
| 33. Failure of fracture of both hips to unite | Gr. 1 |
| 34. Failure of fracture of a hip to unite | Gr. 3 |
| 35. Paralysis of both lower extremities | Gr. 1 |
| 36. Paralysis of one lower extremity | Gr. 3 |

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002685

37. Scar the size of a palm or larger left on an extremity                    Gr. 14

NOTE: Any item in the schedule classified under Grade I shall be considered or shall constitute total and permanent disability.

SECTION 30-A:     SCHEDULE OF DISABILITY ALLOWANCES

| Impediment Grade | | Impediment | |
|---|---|---|---|
| 1 | Maximum Rate | x | 120.00% |
| 2 | Maximum Rate | x | 88.81% |
| 3 | Maximum Rate | x | 78.36% |
| 4 | Maximum Rate | x | 68.66% |
| 5 | Maximum Rate | x | 58.96% |
| 6 | Maximum Rate | x | 50.00% |
| 7 | Maximum Rate | x | 41.80% |
| 8 | Maximum Rate | x | 33.59% |
| 9 | Maximum Rate | x | 26.12% |
| 10 | Maximum Rate | x | 20.15% |
| 11 | Maximum Rate | x | 14.93% |
| 12 | Maximum Rate | x | 10.45% |
| 13 | Maximum Rate | x | 6.72% |
| 14 | Maximum Rate | x | 3.74% |

Maximum Rate: US$50,000

To be paid in Philippine Currency equivalent at the exchange rate prevailing during the time of payment.

SECTION 31.     TABLE     OF     OFFENSES     AND     CORRESPONDING ADMINISTRATIVE PENALTIES

OFFENSESADMINISTRATIVE PENALTIES
SHALL be imposed by the Master  SHALL be imposed by POEA's due investigation

1.  Smuggling or violation of
any customs rules
and regulations of the
Philippines and of foreign
ports

a.  smuggling any taxable item      Dismissal and to pay cost as      1st Offense:
                                    provided in the Contract          Minimum - one (1) year
                                                                      suspension from POEA
                                                                      Registry

Copyright 1994-2002  CD Technologies Asia, Inc.

EC002686

|   |   |   |   |
|---|---|---|---|
|   |   |   | Maximum - two (2) years suspension |
|   |   |   | 2nd Offense: |
|   |   |   | Minimum - two (2) years and 1 day suspension |
|   |   |   | Maximum - delisting from POEA Registry |
| b. | possession or use of prohibited drugs, narcotics and other contraband | Dismissal | Delisting from POEA registry |
| c. | gun-running or possession of explosives and the like | Dismissal | Delisting from POEA registry |
| d. | abetting or conniving with others to commit smuggling | Dismissal | Minimum-2 years suspension Maximum-3 years suspension |
| e. | misdeclaration of or failing to declare articles leading to their seizure and fine to vessel | Dismissal | 1st Offense: Minimum - 1 year suspension Maximum-2 years suspension 2nd Offense: Minimum-2 years and 1 day suspension Maximum - delisting from POEA registry |
| f. | misdeclaration of or failing to declare articles leading to their seizure but vessel not implicated | 1st Offense: Reprimand and warning 2nd Offense: Dismissal | 2nd Offense: Minimum-2 years and 1 day suspension Maximum-2 years suspension 3rd Offense: Minimum-2 years and 1 day suspension Maximum - delisting from POEA registry |
| g. | possession of pornographic materials leading to its seizure and fine to vessel | Dismissal | Same as 1(e) |
| h. | any other violation which will not implicate vessel | 1st Offense: Reprimand and warning | Same as 1(f) |

Copyright 1994-2002 CD Technologies Asia, Inc.

23

EC002687

|   |   |   |   |
|---|---|---|---|
|   |   | 2nd Offense:<br>Dismissal |   |
| i. | any other violation which will implicate the vessel | Dismissal | Minimum-3 yrs. suspension<br>Maximum - delisting from POEA registry |
| 2. | Desertion |   |   |
| a. | deserting or attempting to desert | Dismissal and to pay cost as provided in the contract | Permanent Delisting from POEA registry |
| b. | advising, assisting or persuading another to desert | Dismissal and to pay cost as provided in the contract | Minimum-5 years suspension<br>Maximum - Delisting from POEA registry |
| 3. | Absence without leave |   |   |
| a. | abandoning post or duty without being properly relieved | Dismissal and to pay cost as provided in the contract | 1st Offense:<br>Minimum-1 year suspension<br>Maximum-1 year suspension<br>2nd Offense:<br>Minimum-2 years and 1 day suspension<br>Maximum - delisting from POEA registry |
| b. | leaving the vessel without permission from responsible officers during working hours | Dismissal and to pay cost as provided in the contract | Same as 3(a) |
| c. | entrusting to others assigned duties without authority of department head | At the discretion of Master | 1st Offense:<br>Minimum - months suspension<br>Maximum-1 year-suspension<br>2nd Offense<br>Minimum-1 year and 1 day suspension<br>Maximum-2 years suspension<br>3rd Offense:<br>Minimum-2 years and 1 day suspension<br>Maximum-delisting from POEA registry |
| d. | leaving the vessel without permission | At the discretion of Master | Same as 3(c) |

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002688

| | | | |
|---|---|---|---|
| b. | any other form of gambling which is not purely recreational | At Master's discretion | Same as 5(e) |
| 9. | Violation of company policies and regulations | | |
| a. | pilferage or theft of ship's store or cargo | Dismissal and to pay cost as provided in the contract | 1st Offense:<br>Minimum-1 year suspension<br>Maximum-2 years suspension<br>2nd Offense:<br>Minimum-2 years and 1 day suspension<br>Maximum-delisting from POEA registry |
| b. | embezzlement of company funds | Dismissal and to pay cost as provided in the contract | Same as 9(a) |
| c. | unauthorized disposal of company vessel's properties for personal gain | Dismissal and to pay cost as provided in the contract | Same as 9(a) |
| d. | any act of dishonesty with intention to defraud the company | Dismissal and to pay cost as provided in the contract | same as 9(a) |
| e. | for gross negligence and failure to observe proper storage and cargo handling procedures resulting in delay of vessels and/or damage to cargoes | Dismissal and to pay cost as provided in the contract | same as 9(a) |
| f. | failure to observe and comply with regulation and non-baggage shipment and acceptance or parcels and board | At Master's discretion | 1st Offense:<br>Minimum-6 months<br>Maximum-1 year suspension<br>2nd Offense:<br>Minimum-1 year and 1 day suspension<br>Maximum-2 years suspension<br>3rd Offense:<br>Minimum-2 years and 1 day suspension<br>Maximum-delisting from POEA |

Copyright 1994-2002 CD Technologies Asia, Inc.

27

EC002689

| | | | |
|---|---|---|---|
| | | | registry |
| g. | for failure to observe regulations on expiration of shore liberty | 1st Offense: Reprimand and warning 2nd Offense: Dismissal | Same as 9(f) |
| h. | for being left behind by vessel in foreign port without justifiable reason | Dismissal and to pay cost as provided in the contract | Same as 9(f) |
| i. | for disorderly conduct and/or disrespect towards passengers | Dismissal and to pay cost as provided in the contract | 1st Offense: Minimum-1 year suspension Maximum-2 years suspension 2nd Offense: Minimum-2 years and 1 day suspension Maximum-delisting from POEA registry |
| j. | for immorality so as to cast aspersion on the good name of the vessel and company | Dismissal and to pay cost as provided in the contract | same as 9(i) |
| k. | for inflicting harm or injury to others | Dismissal and to pay cost as provided in the contract | same as 9(i) |
| 10. | Incompetence and inefficiency | Dismissal and to pay cost as provided in the contract | 1st Offense: Minimum-2 years suspension Maximum-3 years suspension 2nd Offense: Minimum-3 years and 1-day suspension Maximum-delisting from POEA registry |
| 11. | Any form of activity which tends to create discontent or dissension among the crew members | Dismissal and to pay cost as provided in the contract | 1st Offense: Minimum-3 years suspension Maximum-4 years suspension 2nd Offense: Minimum-4 years and 1 day suspension Maximum-delisting from POEA registry |

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002690

| | | |
|---|---|---|
| 12. For inciting mutiny, malicious destruction of ship's property at any activity which will hamper the efficient | Dismissal and to pay cost as provided in the contract | 1st Offense: Minimum-2 years suspension Maximum-3 years suspension 2nd Offense: Minimum-3 years suspension |
| **MISSING PAGE** | as provided in the contract | |
| 19. For wilfully making false statement reports, certification or spurious seaman's documents for personal gain or with intent to mislead or defraud the company | Dismissal and to pay cost as provided in the contract | Same as 16 |
| 20. Any other case as to cast aspersion on the good name of the company and vessel | At Master's discretion | Same as 15(c) |
| 21. Violation of safety and environmental rules/regulations | At Master's discretion | Minimum-1 year suspension Maximum-2 years suspension |
| 22. Failure to observe the drug and alcohol policy of the company | Dismissal | Minimum-1 year suspension Maximum-2 years suspension |

Copyright 1994-2002 CD Technologies Asia, Inc.

EC002691

Republic of the Philippines
NATIONAL LABOR RELATIONS COMMISSION
FOURTH DIVISION
Cebu City

JOSEFINA M. GONZALES,
　　　　　Complainant-appellee,

NLRC Case No. V-000036-2001
RAB Case No. OFW(M)01-03-0014

- versus -

BRIGHT MARITIME CORPORATION
AND ETERNITY SHIPPING, LTD.,
　　　　　Respondent-appellants.

x——————————————— x    PROMULGATED : AUG 2 1 2002

# ORDER

This pertains to the satisfaction of judgment and receipt of payments filed by both parties with the Sub-Regional Arbitration Branch No. VI, Iloilo City on June 25, 2002 and forwarded to the NLRC-4th Division on July 4, 2002, wherein the complainant acquiesced to have received the full amount of US $ 55,000.00.

WHEREFORE, as prayed for by both parties duly assisted by their respective counsel, the instant case is hereby considered closed and terminated.

SO ORDERED.

Cebu City, Philippines.

IRENEA E. CENIZA
Presiding Commissioner

WE CONCUR:

EDGARDO M. ENERLAN
Commissioner

OSCAR S. UY
Commissioner

# CERTIFICATION

Pursuant to Article 213 of the Labor Code, as amended by R.A. 6715, it is hereby certified that the conclusions in the above ORDER were reached in consultation before the case was assigned to the writer of the opinion of the Commission.

IRENEA E. CENIZA
Presiding Commissioner

mlvt #10/036-01/TEC

EC002692