December 16, 1996

## POEA MEMORANDUM CIRCULAR NO. 055-96

## REVISED STANDARD EMPLOYMENT TERMS AND CONDITIONS GOVERNING THE EMPLOYMENT OF FILIPINO SEAFARERS ON BOARD OCEAN-GOING VESSELS

Pursuant to Department Order No. 33, Series of 1996, and upon the recommendations of the Seabased Tripartite Technical and Consultative Committee, the following guidelines on the revised Standard Employment Contract Governing the Employment of Filipino Seafarers on Board Ocean-Going Vessels is hereby issued:

1.    The attached revised employment terms and conditions governing the overseas employment of Filipino seafarers (Annex A) shall be effective on 01 January 1997 and after publication in a newspaper of general circulation.

It is reiterated that the terms and conditions provided in this revised employment contract are the minimum requirements acceptable to POEA for the overseas employment of a Filipino seafarer. The parties to an employment of a seafarer may therefore improve on these minimum terms and conditions provided such improvements shall be made in writing and appended to this contract and submitted to POEA for processing and approval. Moreover, such improvements should have prospective application.

2.    The new schedule of benefits shall apply to any Filipino seafarer that will be deployed on or after the effectivity of this Circular.

3.    All manning agencies are directed to advise all their principals in all vessels on the revised employment terms and conditions and to enjoin the highest Filipino officer to have a copy of the revised contract and discuss with his crew.

4.    Discussions on the new employment terms and conditions should be incorporated in the Pre-Departure Orientation Seminars being conducted by the manning agencies.

For strict compliance.

Adopted: 16 December 1996

(SGD.) FELICISIMO O. JOSON, JR.
Administrator

# DEPARTMENT ORDER NO. 33
## Series of 1996

In view of recent changes in international policies for the recruitment and employment of Filipino seafarers on board ocean-going vessels, and following a series of consultation meetings among representatives of shipmanning associations, seamen's organizations, NGO's and other government agencies, the existing Standard Employment Contract Governing the Employment of Filipino Seafarers on Board Ocean-Going Vessels is hereby revised.

The POEA shall formulate guidelines for the implementation of the new contract which shall form part of this Order and which shall be effective by 01 January 1997.

All Orders and issuances which are inconsistent herewith are hereby repealed and superseded.

(SGD.) LEONARDO A. QUISUMBING
Secretary

## ANNEX A

## STANDARD TERMS AND CONDITIONS
## GOVERNING THE EMPLOYMENT OF FILIPINO SEAFARERS
## ON-BOARD OCEAN-GOING VESSELS

Definition of Terms:
For purposes of this contract, the following terms are defined as follows:
1.      Point of Hire — refers to the place indicated in the contract of employment which shall be the basis for determining commencement and termination of contract.
2.      Convenient Port — any port where it is practicable, economical, safe and convenient to repatriate the seafarer.
3.      Philippine Port — refers to any Philippine airport or seaport.
4.      Basic Wage — refers to the salary of the seafarer exclusive of overtime, leave pay and other bonuses.
5.      Departure — refers to the actual departure from the point of hire of the seafarer through air, sea or land travel transport to join his vessel to a Philippine or foreign port.
6.      Regular Working Hours — refers to the seafarer's eight (8) hour working hours within the period of 24 hours.
7.      Dental Treatment — covers tooth extraction or dental surgery, it necessary, due to accident.
8.      Shipwreck — refers to the damage or destruction of a vessel at sea caused by collision, storm grounding or any other marine peril at sea or in port rendering the vessel absolutely unnavigable or unable to pursue her voyage.
9.      Compassionate Ground — refers to incidence of death of an immediate member of the seafarer's family which includes his parents, spouse and children if the seafarer is married or his parents if the seafarer is single.

SECTION 1.   DUTIES
A.      Duties of the Employer/Agency/Master:
1.      To faithfully comply with the stipulated terms and conditions of this contract, particularly the prompt payment of wages, remittance of allotment and the expeditious settlement of valid claims of the seafarer.
2.      To make operational on board the vessel the grievance machinery provided in this contract and ensure its free access at all times by the seafarer.
B.      Duties of the Seafarer:
1.      to faithfully comply with and observe the terms and conditions of this contract, violations of which shall be subject to disciplinary action pursuant to Section 31 of this contract;
2.      to abide by the Code of Discipline as provided in the POEA rules and regulations governing overseas contract workers;
3.      to comply with company policy consistent with POEA rules and regulations;
4.      to be diligent in his duties and in everything relating to the vessel, its stores and cargo, whether on board, in boats or ashore;
5.      to be obedient to the lawful commands of the Master or any person who shall lawfully succeed him;
6.      to conduct himself in an orderly and respectful manner towards passengers and shippers stevedores, port authorities and other persons on official business with the ship.
7.      where he feels aggrieved, to observe the grievance procedure outlined in this Contract.
SECTION 2.   COMMENCEMENT/DURATION OF CONTRACT
A.      The employment contract between the employer and the seafarer shall commence upon actual departure of the seafarer from the airport or seaport in the point of hire and with a POEA approved contract. It shall be effective until the seafarer's date of arrival at the point of hire upon termination of his employment pursuant to Section 18 of this Contract.
B.      The period of employment shall be for a period mutually agreed upon by the seafarer and the employer but not to exceed 12 months. Any extension of the contract shall be subject to the mutual consent of both parties.
SECTION 3.   FREE PASSAGE FROM THE POINT OF HIRE TO THE PORT OF EMBARKATION
The seafarer shall join the vessel or be available for duty at the date and time specified by the employer. The seafarer shall travel by air or as otherwise directed at the expense of the employer.
SECTION 4.   BAGGAGE ALLOWANCE
The seafarer traveling by air to join a vessel or on repatriation shall be entitled to the normal free baggage allowance offered by the airlines. The cost of the excess baggage shall be for the account of the seafarer.
SECTION 5.   HYGIENE AND VACCINATION
A.      The seafarer shall keep his quarters and other living spaces such as messrooms, toilets, bathrooms, alleyways and recreation rooms in clean and tidy condition to the satisfaction of the master. The work is to be performed outside the seafarer's regular working hours and for which no overtime pay shall be claimed.
B.      The seafarer shall submit to the order of the master or to the laws of any country

within the territorial jurisdiction of which the vessel may enter to have such vaccination or inoculation to undertake measures safeguarding his health and of the whole crew.

SECTION 6.   WAGES

A.      The seafarer shall be paid his monthly wages from the date of commencement of the contract until the date of arrival at point of hire upon termination of his employment pursuant Section 18 of this Contract, not later than 15 days of the succeeding month.

SECTION 7.   PAYMENT ON BOARD

Payment of shipboard pay in foreign ports shall be subject to the currency control regulations at the port abroad and to the official rate of exchange prevailing at the time of payment. Advances shall be at the master's/employer's discretion and in accordance with the foregoing conditions.

SECTION 8.   ALLOTMENTS AND REMITTANCES

A.      The seafarer is required to make an allotment which shall be payable once a month to his designated allottee in the Philippines through any authorized Philippine bank. The master/employer/agency shall provide the seafarer with facilities to do so at no expense to the seafarer. The allotment shall be at least eighty percent (80%) of the seafarer's monthly basic salary including backwages, if any.

B.      The master/employer/agency if requested, may also provide facilities for the seafarer to remit any amount in excess of his allotment to his designated allottee in the Philippines through any authorized Philippine bank without any charge to him.

C       The allotments shall be paid to the designated allottee in Philippine currency at the rate of exchange indicated in the credit advice of the local authorized Philippine bank.

SECTION 9.   ACCOUNT OF WAGES & CERTIFICATE OF EMPLOYMENT

The seafarer, upon his discharge, shall be given a written account of his wages reflecting all deductions therefrom. Where a seafarer is landed in an emergency, the written account of his wages shall be given to him as soon as practicable thereafter. Upon the seafarer's request, he shall also be provided by his employer/agency his certificate of employment or service record without any charge.

SECTION 10. HOURS OF WORK

A.      The seafarer shall perform not more than forty-eight (48) hours of regular work a week. The hours of works shall be determined and prescribed by the master, provided that it conforms with customary international practices and standards and as prescribed in paragraph B below,

B.      Regular working hours for the seafarer shall be eight (8) hours in every 24 hours, midnight to midnight, Monday to Sunday. The normal practice is as follows:

1.      the day worker shall observe the eight (8) regular working hours during the period from 0600 hours to 1800 hours.

2.      the steward personnel shall observe the eight (8) regular working hours during the period from 0500 hours to 2000 hours.

3.      the Radio Operator shall observe the eight (8) regular working hours in every twenty-four (24) hours, midnight to midnight, from Monday to Sunday as established by International Telecommunication Conventions and as prescribed by the master.

4.      for those who are on sea watch, their working hours shall be eight (8) hours per day. Staggering of working hours will be at the master's discretion.

C.      The seafarer shall be allowed reasonable rest period in accordance with international standards.

SECTION 11. OVERTIME & HOLIDAYS

A.      The seafarer shall be compensated for all work performed in excess of the regular eight (8) hours as prescribed above. Overtime pay may be classified as open, fixed or guaranteed.

In computing overtime, a fraction of the first hour worked shall be considered as one full hour.

After the first hour overtime, any work performed which is less than thirty (30) minutes shall be considered as half an hour and more than thirty (30) minutes shall be considered one full hour.

B.      Overtime work may be compensated at the following rates:

1.      Open overtime — not less than 125 percent (125%) of the basic hourly rate computed based on two hundred eight (208) regular working hours per month.

2.      Guaranteed or fixed overtime — not less than thirty percent (30%) of the basic monthly salary of the seafarer. This fixed rate overtime shall include overtime work performed on Sundays and holidays but shall not exceed one hundred five (105) hours a month. Overtime work in excess of 105 hours a month shall be further compensated on an open overtime rate.

C.      Any hours of work or duty including hours of watchkeeping performed by the seafarer on designated rest days and holidays shall be paid rest day or holiday pay. The following shall be considered as holidays at sea and in port.

New Year's Day          January 1
Maundy Thursday        movable date
Good Friday    movable date
Araw ng Kagitingan (Bataan & Corregidor Day)        April 9
Labor Day        May 1
Independence Day        June 12
National Heroes Day    Last Sunday of August
All Saints Day November 1
Bonifacio Day November 30
Christmas DayDecember 25
Rizal Day        December 30

D.      Emergency Duty — No overtime work shall be considered for any work performed in case of emergency affecting the safety of the vessel, passenger, crew or cargo, of which the master shall be the sole judge, or for fire, boat, or emergency drill or work required to give assistance to other vessels or persons in immediate peril.

SECTION 12. LEAVE PAY

The seafarer's leave pay shall be in accordance with the number of days leave per month as agreed upon. Days leave shall not be less than two and a half (2-½) days for each month of service and pro-rated.

SECTION 13. SHORE LEAVE

The seafarer shall be allowed shore leave whenever practicable, upon the consent of the master or his deputy, taking into consideration the operations and safety of the vessel.

SECTION 14. VICTUALLING, VESSEL STORES AND PROVISIONS

A.      The seafarer shall be provided by the master/employer with subsistence consistent with good maritime standards and practices while on board the vessel.

B.      All stores and provisions issued to the seafarer are only for use and consumption

on board the vessel and any unused or unconsumed stores or provisions shall remain the property of the employer. The seafarer shall not take ashore, sell, destroy or give away such stores and provisions.

SECTION 15. TRANSFER CLAUSE

The seafarer agrees to be transferred at any port to any vessel owned or operated, manned or managed by the same employer, provided it is accredited to the same manning agent and provided further that the position of the seafarer and the rate of his wages and terms of services are in no way inferior and the total period of employment shall not exceed that originally agreed upon.

Any form of transfer shall be documented and made available when necessary.

SECTION 16. GRIEVANCE MACHINERY

A.    If the seafarer considers himself aggrieved, he shall make his complaint in accordance with the following procedures:

1.    The seafarer shall first approach the head of the Department in which he is assigned to explain his grievance.

a.    In the Deck, Radio and Catering Department, the head is the Chiefmate.

b.    In the Engine Department, the head is the Chief Engineer.

c.    In the Catering and/or Hotel Department in a passenger ship, the head is the Chief Steward and/or Purser.

2.    The seafarer shall make his grievance in writing and in an orderly manner and should choose a time when his complaint or grievance can be properly heard.

3.    The Department head shall deal with the complaint or grievance and where solution is not possible at his level, refer the complaint or grievance to the Master who shall handle the case personally.

4.    If no satisfactory result is achieved, the seafarer concerned may appeal to the management of the company or with a Philippine Labor Attaché or consular officer overseas. The master shall afford such facilities necessary to enable the seaman to transmit his appeal.

5.    If after observing the grievance procedure the master finds that the seafarer violated the terms of his Contract or has committed breach of discipline, the master shall discipline the seafarer or, if warranted, terminate his employment.

6.    The seafarer may also seek the assistance of the highest ranking Filipino seafarer on board.

B.    When availed of by the seafarer, the grievance procedure and all actions or decisions agreed upon shall be properly documented for the protection and interest of both parties.

C.    The procedure herein shown above stated shall be without prejudice to the jurisdiction of the Philippine Overseas Employment Administration (POEA) or the National Labor Relations Commission (NLRC) over any unresolved complaints arising out of shipboard employment that shall be brought before it by the seafarer.

SECTION 17. DISCIPLINARY PROCEDURES

The Master shall comply with the following disciplinary procedures against an erring seafarer:

A.    The Master shall furnish the seafarer with a written notice containing the following:

1.    Grounds for the charges as listed in Section 31 of this Contract.

2.    Date, time and place for a formal investigation of the charges against the seafarer concerned.

B.    The Master or his authorized representative shall conduct the investigation or hearing, giving the seafarer the opportunity to explain or defend himself against the charges. An entry on the investigation shall be entered into the ship's logbook.

C.    If after the investigation or hearing, the Master is convinced that imposition of a penalty is justified, the Master shall issue a written notice of penalty and the reasons for it to the seafarer, with copies furnished to the Philippine agent.

D.    Dismissal for just cause may be effected by the Master without furnishing the seafarer with a notice of dismissal if doing so will prejudice the safety of the crew or the vessel. This information shall be entered in the ship's logbook. The Master shall send a complete report to the manning agency substantiated by witnesses, testimonies and any other documents in support thereof.

SECTION 18. TERMINATION OF EMPLOYMENT

A.    The employment of the seafarer shall cease when the seafarer completes his period of contractual service aboard the vessel, signs-off from the vessel and arrives at the point of hire.

B.    The employment of the seafarer is also terminated when the seafarer arrives at the point of hire for any of the following reasons:

1.    when the seafarer signs-off and is disembarked for medical reasons pursuant to Section 20 (B) [4] of this Contract.

2.    when the seafarer signs-off due to shipwreck, ship's sale, lay-up of vessel, discontinuance of voyage or change of vessel principal in accordance with Sections 22, 23 and 24 of this Contract.

3.    when the seafarer voluntarily resigns and signs off prior to expiration of contract pursuant to Section19 (G) of this Contract.

4.    when the seafarer is discharged for just cause as provided for in Section 31 of this Contract.

SECTION 19. REPATRIATION

A.    If the vessel is outside the Philippines upon the expiration of the contract, the seafarer shall continue his service on board until the vessel's arrival at a convenient port and/or after arrival of the replacement crew provided that, in any case, the continuance of such service shall not exceed three months. The seafarer shall be entitled to earned wages and benefits as provided in his contract.

B.    If the vessel arrives at a convenient port before the expiration of the contract, the master/employer may repatriate the seafarer from such port, provided the unserved portion of his contract is not more than one (1) month. The seafarer shall be entitled only to his earned wages and earned leave pay and to his basic wages corresponding to the unserved portion of the contract, unless within 60 days from disembarkation, the seafarer is rehired at the same rate and position, in which case the seafarer shall be entitled only to his earned wages and earned leave pay.

C.    If the vessel arrives at a convenient port within a period of three (3) months before the expiration of his contract, the master/employer may repatriate the seafarer from such port provided that the seafarer shall be paid all his earned wages. In addition, the seafarer shall also be paid his leave pay for the entire contract period plus a termination pay equivalent to one (1) month of his basic pay, provided, however, that this

mode of termination may only be exercised by the master/employer if the original contract period of the seafarer is at least ten (10) months; provided, further, that the conditions for this mode of termination shall not apply to dismissal for cause.

D.     The seafarer shall, if discharged at a port abroad for any reason other than for discipline, be accommodated ashore and in cases where it is not intended that he rejoin the vessel, shall be repatriated to the Philippines via sea or air or as may otherwise be directed by the employer/master/agency.

E.     When the seafarer is discharged for any just cause, the employer shall have the right to recover the costs of his replacement and repatriation from the seafarer's wages and other earnings.

F.     The seafarer, when discharged and repatriated as directed by the employer/master/agency shall be entitled to basic wages from date of signing off until arrival at the point of hire except when the discharge is in accordance with the above or for disciplinary reasons. If the seafarer delays or desires a detour and/or another destination other than the most direct to the point of hire, all additional expenses shall be to the seafarer's account. The seafarer's basic wage shall be calculated based on the date of arrival by the most direct route.

G.     A seaman who requests for early termination of his contract shall be liable for his repatriation cost as well as the transportation cost of his replacement. The employer may, in case of compassionate grounds, assume the transportation cost of the seafarer's replacement.

SECTION 20. COMPENSATION AND BENEFITS

A.     COMPENSATION AND BENEFITS FOR DEATH

1.     In case of death of the seafarer during the term of his contract, the employer shall pay his beneficiaries the Philippine Currency equivalent to the amount of Fifty Thousand US dollars (US$50,000) and an additional amount of Seven Thousand US dollars (US$7,000) to each child under the age of twenty-one (21) but not exceeding four (4) children, at the exchange rate prevailing during the time of payment.

2.     Where death is caused by warlike activity while sailing within a declared war zone or war risk area, the compensation payable shall be doubled. The employer shall undertake appropriate war zone insurance coverage for this purpose.

3.     It is understood and agreed that the benefits mentioned above shall be separate and distinct from, and will be in addition to whatever benefits which the seafarer is entitled to under Philippine laws from the Social Security System, Overseas Workers Welfare Administration and Pag-ibig, if applicable.

4.     The other liabilities of the employer when the seafarer dies as a result of injury or illness during the term of employment are as follows:

a.     The employer shall pay the deceased's beneficiary all outstanding obligations due the seafarer under this Contract.

b.     The employer shall transport the remains and personal effects of the seafarer to the Philippines at employer's expense except if the death occurred in a port where local government laws or regulations do not permit the transport of such remains. In case death occurs at sea, the disposition of the remains shall be handled or dealt with in accordance with the master's best judgment. In all cases, the employer/master shall communicate with the manning agency to advise for disposition of seafarer's remains.

c.     The employer shall pay the beneficiaries of the seafarer the Philippine currency

equivalent to the amount of One Thousand US dollars (US$1,000) for burial expenses at the exchange rate prevailing during the time of payment.

B.     COMPENSATION AND BENEFITS FOR INJURY OR ILLNESS

The liabilities of the employer when the seafarer suffers injury or illness during the term of his contract are as follows:

1.     The employer shall continue to pay the seafarer his wages during the time he is on board the vessel;

2.     If the injury or illness requires medical and/or dental treatment in a foreign port, the employer shall be liable for the full cost of such medical, serious dental, surgical and hospital treatment as well as board and lodging until the seafarer is declared fit to work or to be repatriated.

However, if after repatriation, the seafarer still requires medical attention arising from said injury or illness, he shall be so provided at cost to the employer until such time he is declared fit or the degree of his disability has been established by the company-designated physician.

3.     Upon sign-off from the vessel for medical treatment, the seafarer is entitled to sickness allowance equivalent to his basic wage until he is declared fit to work or the degree of permanent disability has been assessed by the company-designated physician, but in no case shall this period exceed one hundred twenty (120) days.

For this purpose, the seafarer shall submit himself to a post-employment medical examination by a company-designated physician within three working days upon his return except when he is physically incapacitated to do so, in which case, a written notice to the agency within the same period is deemed as compliance. Failure of the seafarer to comply with the mandatory reporting requirement shall result in his forfeiture of the right to claim the above benefits.

4.     Upon sign-off of the seafarer from the vessel for medical treatment, the employer shall bear the full cost of repatriation in the event the seafarer is declared (1) fit for repatriation; or (2) fit to work but the employer is unable to find employment for the seafarer on board his former vessel or another vessel of the employer despite earnest efforts.

5.     In case of permanent total or partial disability of the seafarer during the term of employment caused by either injury or illness the seafarer shall be compensated in accordance with the schedule of benefits enumerated in Section 30 of his Contract, Computation of his benefits arising from an illness or disease shall be governed by the rates and the rules of compensation application at the time the illness or disease was contracted.

C.     It is understood that computation of the total permanent or partial disability off the seafarer caused by the injury sustained resulting from warlike activities within the warzone area shall be based on the compensation rate payable within the warzone area as prescribed in this Contract.

D.     No compensation shall be payable in respect of any injury, incapacity, disability or death of the seafarer resulting from his willful or criminal act, provided however, that the employer can prove that such injury, incapacity, disability or death is directly attributable to seafarer.

E.     When requested, the seafarer shall be furnished a copy of all pertinent medical reports or records at no cost to the seafarer.

SECTION 21. WAR AND WARLIKE OPERATIONS ALLOWANCE

A.      If a war or warlike operations should arise during the term of this Contract in any country within the vessel's trading area, the seafarer may sail the vessel within and out of the trading area if required by the Master.

B.      If at the time of the signing of the contract, an area is declared a war or war-risk trading area and the seafarer binds himself in writing to sail into that area, the agreement shall be properly appended to the Contract for verification and approval by the Philippine Overseas Employment Administration (POEA). The seafarer shall comply with the agreement or shall bear his cost of repatriation when he opts not to sail into a war or war-risk trading area.

C.      The seafarer when sailing within a war-risk trading area shall be entitled to such premium pay as the POEA may determine through appropriate periodic issuances.

D.      The POEA shall be the sole authority to determine whether the vessel is within a war risk trading area. It shall also determine the amount of premium pay to which the seafarer shall be entitled to when sailing in that war-risk trading area.

SECTION 22. TERMINATION DUE TO SHIPWRECK

Where the vessel is wrecked necessitating the termination of employment before the date indicated in the contract, the seafarer shall be entitled to earned wages, medical examination at employer's expense to determine his fitness to work, repatriation at employer's cost and one month basic wage as termination pay; unless arrangements have been made for the seafarer to join another vessel to complete his contract, in which case, the seafarer shall be entitled to earned wages until the date of joining the other vessel and medical examination at employer's expense to determine his fitness to work.

SECTION 23. TERMINATION DUE TO VESSEL SALE, LAY-UP OR DISCONTINUANCE OF VOYAGE

Where the vessel is sold, laid up, or the voyage is discontinued necessitating the termination of employment before the date indicated in the Contract, the seafarer shall be entitled to earned wages, repatriation at employer's cost and one (1) month basic wage as termination pay, unless arrangements have been made for the seafarer to join another vessel to complete his contract in which case the seafarer shall be entitled to earned wages until the date of joining the other vessel.

SECTION 24. TERMINATION DUE TO UNSEAWORTHINESS

A.      If the vessel is declared unseaworthy by a classification society, port state or flag state, the seafarer shall not be forced to sail with the vessel.

B.      If the vessel's unseaworthiness necessitates the termination of employment before the date indicated in the Contract, the seafarer shall be entitled to earned wages, repatriation at cost to the employer and termination pay equivalent to one (1) month basic wage.

SECTION 25. CHANGE OF PRINCIPAL

A.      Where there is a change of principal of the vessel necessitating the termination of employment of the seafarer before the date indicated in the Contract seafarer shall be entitled to earned wages, repatriation at employer's expense and one month basic pay as termination pay.

B.      If by mutual agreement, the seafarer continues his service on board the same vessel, such service shall be treated as a new contract. The seafarer shall be entitled to earned wages only.

C.      In case arrangements has been made for the seafarer to join another vessel to complete his contract, the seafarer shall be entitled to basic wage until the date of joining the other vessel.

SECTION 26. LOSS OF OR DAMAGE TO CREW'S EFFECTS BY MARINE PERIL

A.      The seafarer shall be reimbursed by the employer the full amount of loss or damage to his personal effects but in no case shall the amount exceed the Philippine currency equivalent to the amount of Two Thousand US dollars (US$ 2,000) if his personal effects are lost or damaged as a result of the wreck or loss or stranding or abandonment of the vessel or as a result of fire, flooding, collision, or piracy.

B.      In case of partial loss, the amount shall be determined by mutual agreement of both parties but in no case to exceed the Philippine currency equivalent to the amount of Two Thousand US dollars (US$2,000).

C.      Reimbursement for loss or damage to the seafarer's personal effects shall not apply if such loss or damage is due to (a) the seaman's own fault; (b) larceny or theft or (c) robbery.

D.      Payment of any reimbursement shall be computed at the rate of exchange prevailing at the time of payment.

SECTION 27. GENERAL SAFETY

A.      The seafarer shall observe and follow any regulation or restriction that the master may impose concerning safety, drug and alcohol environmental protection.

B.      The seafarer shall make use of all appropriate safety equipment provided him and must ensure that he is suitably dressed from the safety point of view for the job at hand.

SECTION 28. JURISDICTION

The Philippine Overseas Employment Administration (POEA) or the National Labor Relation Commission (NLRC) shall have original and exclusive jurisdiction over any all disputes controversies arising out of or by virtue of this Contract.

Recognizing the peculiar nature of overseas shipboard employment, the employer and the seafarer agree that all claims arising from this contract shall be made within one (1) year from the date of seafarer's return to the point of hire.

SECTION 30. SCHEDULE OF DISABILITY OR IMPEDIMENT FOR INJURIES SUFFERED AND DISEASES OR ILLNESS CONTRACTED

HEAD

Traumatic head injuries that result to:

1.      Apperture unfilled with bone not over three (3) inches without brain injury  Gr. 9

2.      Apperture unfilled with bone over three (3) inches without brain injury      Gr. 3

3.      Severe paralysis of both upper or lower extremities or one upper and one lower extremity        Gr. 1

4.      Moderate paralysis of two (2) extremities producing moderate difficulty in movements with self-care activities        Gr. 6

5.      Slight paralysis affecting one extremity producing slight difficulty with self-care activities        Gr. 10

6.      Severe mental disorder or Severe Complex Cerebral function disturbance or post-traumatic psychoneurosis which require regular aid and attendance as to render worker permanently unable to perform any work    Gr. 1

7.      Moderate mental disorder or moderate brain functional disturbance which limits worker to the activities of daily living with some directed care or attendance     Gr. 6

8.      Slight mental disorder or disturbance that requires little attendance or aid and which interferes to a slight degree with the working capacity of the claimant     Gr. 10

9.      Incurable imbecility   Gr. 1

FACE

1.      Severe disfigurement of the face or head as to make the worker so repulsive as to greatly handicap him in securing or retaining employment, thereby being no permanent functional disorder     Gr. 2

2.      Moderate facial disfigurement involving partial ablation of the nose with big scars on face or head   Gr. 5

3.      Partial ablation of the nose or partial avulsion of the scalp   Gr. 9

4.      Complete loss of the power of mastication and speech function     Gr. 1

5.      Moderate constriction of the jaw resulting in moderate degree of difficulty in chewing and moderate loss of the power or the expression of speech     Gr. 6

6.      Slight disorder of mastication and speech function due to traumatic injuries to jaw or check bones   Gr. 12

EYES

1.      Blindness or total and permanent loss of vision of both eyes   Gr. 1

2.      Total blindness of one (1) eye and fifty percent (50%) loss of vision of the other eye     Gr. 5

3.      Loss of one eye or total blindness of one eye   Gr. 7

4.      Fifty percent (50%) loss of vision of one eye   Gr. 10

5       Lagopthalmos, one eye     Gr. 12

6.      Ectropion, one eye     Gr. 12

7.      Ephiphora, one eye     Gr. 12

8.      Ptosis, one eye   Gr. 12

NOTE: (Smeller's Chart — used to grade for near and distant vision)

NOSE AND MOUTH

1.      Considerable stricture of the nose (both sides) hindering breathing   Gr. 11

2.      Loss of the sense of hearing in one ear     Gr. 11

3.      Injuries to the tongue (partial amputation or adhesion) or palare-causing defective speech     Gr. 10

4.      Loss of three (3) teeth restored by prosthesis   Gr. 14

EARS

1.      For the complete loss of the sense of hearing on both ears     Gr. 3

2.      Loss of two (2) external ears   Gr. 8

3.      Complete loss of the sense of hearing in one ear     Gr. 11

4.      Loss of one external ear     Gr. 12

5.      Loss of one half (½) of an external ear     Gr. 14

NECK

1.      Such injury to the throat as necessitates the wearing of a tracheal tube     Gr. 6

2.      Loss of speech due to injury to the vocal cord     Gr. 9

3.      Total stiffness of neck due to fracture or dislocation of the cervical pines   Gr. 8
4.      Moderate stiffness or two thirds (2/3) loss of motion of the neck      Gr. 10
5.      Slight stiffness of neck or one third (1/3) loss of motion      Gr. 12
CHEST-TRUNK-SPINE
1.      Fracture of four (4) or more ribs resulting to severe limitation of
        chest expansion      Gr. 6
2.      Fracture of four (4) or more ribs with intercostal neuralgia
        resulting in moderate limitation of chest expansion   Gr. 9
3.      Slight limitation of chest expansion due to simple rib functional
        without myositis or intercostal neuralgia      Gr. 12
4.      Fracture of the dorsal or lumber spines resulting to severe or
        total rigidity of the trunk or total loss of lifting power of heavy objects      Gr. 6
5.      Moderate rigidity or two thirds (2/3) loss of motion or lifting power of
        the trunk      Gr. 8
6.      Slight rigidly or one third (1/3) loss of motion or lifting power of the
        trunk   Gr. 11
7.      Injury to the spinal cord as to make walking impossible without the
        aid of a pair of crutches      Gr. 4
8.      Injury to the spinal cord as to make walking impossible even with the
        aid of a pair of crutches      Gr. 1
9.      Injury to the spinal cord resulting to incontinence of urine and fees  Gr. 1
ABDOMEN
1.      Loss of the spleen      Gr. 8
2.      Loss of one kidney      Gr. 7
3.      Severe residuals of impairment of intra abdominal organs which
        requires aid and attendance that will unable worker to seek any
        gainful employment    Gr. 1
4.      Moderate residuals of disorder of the intra-abdominal organs
        secondary to trauma resulting to impairment of nutrition,
        moderate tenderness, nausea, vomiting, constipation or diarrhea      Gr. 7
5.      Slight residuals or disorder of the intra-abdominal organs
        resulting in impairment of nutrition, slight tenderness
        and/or constipation or diarrhea      Gr. 12
6.      Inguinal hernia secondary to trauma or strain      Gr. 12
PELVIS
1.      Fracture of the pelvic rings as to totally incapacitate worker to work      Gr. 1
2.      Fracture of the pelvic ring resulting to deformity and lameness      Gr. 6
URINARY AND GENERATIVE ORGANS
1.      Total loss of penis      Gr. 7
2.      Total loss of both testicles      Gr. 7
3.      Total loss of one testicle      Gr. 11
4.      Scars on the penis or destruction of the parts of the cavernous
        body or urethra interfering with erection or markedly affecting coitus      Gr. 9
5.      Loss of one breast      Gr. 11
6.      Prolapse of the uterus  Gr. 6
7.      Great difficulty in urinating   Gr. 13

8.      Incontinence of urine  Gr. 10

THUMBS AND FINGERS

1.      Total loss of one thumb including metacarpal bone  Gr. 9
2.      Total loss of one thumb        Gr. 10
3.      Total loss on one index finger including metacarpal bone    Gr. 10
4.      Total loss of one index finger Gr. 11
5.      Total loss of one middle finger including metacarpal bone   Gr. 11
6.      Total loss of one middle finger        Gr. 12
7.      Total loss of one ring finger including metacarpal bone       Gr. 12
8.      Total loss of one ring finger   Gt. 13
9.      Total loss of one small finger including metacarpal bone      Gr. 13
10.     Total loss of one small finger Gr. 14
11.     Loss of two (2) or more fingers: Compensation for the loss or loss of use of two
        (2) or more fingers or one (1) or more phalanges of two or more digits of a hand
        must be proportioned to the loss of the hand occasioned thereby but shall not
        exceed the compensation for the loss of a hand:
a.      Loss of five (5) fingers of one hand   Gr. 6
b.      Loss of thumb, index fingers and any of 2 or more fingers of the
        same hand      Gr. 6
c.      Loss of the thumb, index finger and any one of the remaining
        fingers of the same hand       Gr. 7
d.      Loss of thumb and index finger        Gr. 8
e.      Loss of three (3) fingers of one hand not including thumb and
        index finger    Gr. 9
f.      Loss of the index finger and any one of the other fingers of the
        same hand excluding thumb   Gr. 9
g.      Loss of two (2) digits of one hand not including thumb and
        index finger    Gr. 10
12.     Loss of ten (10) fingers of both hand Gr. 3

HANDS

1.      Total loss of use of both hands or amputation of both hands at wrist
        joints or aboveGr. 1
2.      Amputation of a hand at carpo-metacarpal joints      Gr. 3
3.      Amputation between wrist and elbow joint   Gr. 3
4.      Loss of grasping power for small objects between the fold of the finger
        of one hand     Gr. 10
5.      Loss of grasping power for large objects between fingers and palm of
        one hand        Gr. 10
6.      Loss of opposition between the thumb and tips of the fingers of one hand   Gr. 10.
7.      Ankyclosed wrist in normal position    Gr. 10
8.      Ankyclosed wrist in position one third (1/3) flexed or half extended
        and/or severe limited action of a wrist            Gr. 11

SHOULDER AND ARM

1.      Inability to turn forearm (forearm in normal position-supination)    Gr. 11
2.      Inability to turn forearm (forearm in abnormal position-pronation)  Gr. 10
3.      Disturbance of the normal carrying angle or weakness of an arm or a

forearm due to deformity of moderate atrophy of muscles    Gr. 11
4.    Stiff elbow at full flexion or extension (one side)    Gr. 7
5.    Stiff elbow at right angle flexion      Gr. 8
6.    Flail elbow joint      Gr. 9
7.    Pseudoarthrosis of the humerus with musculospiral or radial paralysis      Gr. 6
8.    Ankylosis of one (1) shoulder, the shoulder blade remaining mobile      Gr. 9
9.    Ankylosis of one shoulder, the shoulder blade remaining rigid      Gr. 8
10.    Unreduced dislocation of one (1) shoulder    Gr. 8
11.    Ruptured biceps or pseudoarthrosis of the humerus, close (one side)      Gr. 11
12.    Inability to raise arm more than halfway from horizontal to perpendicular  Gr. 11
13.    Ankylosis of the shoulder joint not permitting arm to be raised above
        a level with a shoulder and/or irreducible fracture or faulty union collar
        bone    Gr. 10
14.    Total paralysis of both upper extremities      Gr. 1
15.    Total paralysis of one upper extremity      Gr. 3
16.    Amputation of one (1) upper extremity at or above the elbow      Gr. 4
17.    Scar the size of the palm in one extremity    Gr. 14
LOWER EXTREMITIES
1.    Loss of a big toe      Gr. 12
2.    Loss of a toe other than the big one    Gr. 14
3.    Loss of ten (10) digits of both feet    Gr. 5
4.    Loss of a great toe of one foot + one toe      Gr. 10
5.    Loss of two toes not including great toe or toe next to it      Gr. 12
6.    Loss of three (3) toes excluding great toe of a foot    Gr. 10
7.    Loss of four (4} excluding great toe of a foot      Gr. 9
8.    Loss of great toe and two (2) other toes of the same foot      Gr. 9
9.    Loss of five digits of a foot    Gr. 8
10.    Loss of both feet at ankle joint or above      Gr. 1
11.    Loss of one foot at ankle joint or above      Gr. 6
12.    Depression of the arch of a foot resulting in weak foot      Gr. 12
13.    Loss of one half (½) metatarsus of one (1) foot      Gr. 8
14.    Loss of whole metatarsus or forepart of foot Gr. 7
15.    Tearing of achilles tendon resulting in the impairment of
        active flexion and extension of a foot Gr. 12
16.    Malleolar fracture with displacement of the foot inward or outward Gr. 10
17.    Complete immobility of an ankle joint in abnormal position Gr. 10
18.    Complete immobility of an ankle joint in normal position    Gr. 11
19.    Total loss of a leg or amputation at or above the knee      Gr. 3
20.    Stretching leg of the ligaments of a knee resulting in instability of joint      Gr. 10
21.    Ankylosis of a knee in genuvalgum of varum      Gr. 10
22.    Pseudoarthrosis of a knee cap Gr. 10
23.    Complete immobility of a knee joint in full extension      Gr. 10
24.    Complete immobility of a knee joint in strong flexion      Gr. 7
25.    Complete immobility of a hip joint in flexion of the thigh    Gr. 6
26.    Complete immobility of a hip joint in full extension of the thigh      Gr. 9
27.    Slight atrophy of calf of leg muscles without apparent shortening

or joint lesion or disturbance weight-bearing line      Gr. 10

28.    Shortening of a lower extremity from one to three centimeters
    with either joint lesion or disturbance of weight-bearing joint        Gr. 13

29.    Shortening of 3 to 6 cm. with slight atrophy of calf or thigh muscles        Gr. 12

30.    Shortening of 3 to 6 cm. with either joint lesion or disturbance
    of weight-bearing joint.      Gr. 11

31.    Irregular union of fracture with joint stiffness and with shortening
    of 6 to 9 cm. producing permanent lameness Gr. 9

32.    Irregular union of fracture in a thigh or leg with shortening of 6 to 9 cms    Gr. 10

33.    Failure of fracture of both hips to unite      Gr. 1

34.    Failure of fracture of a hip to unite    Gr. 3

35.    Paralysis of both lower extremities      Gr. 1

36.    Paralysis of one lower extremity        Gr. 3

37.    Scar the size of a palm or larger left on an extremity Gr. 14

NOTE: Any item in the schedule classified under Grade I shall be considered or shall constitute total and permanent disability.

SECTION 30-A:        SCHEDULE OF DISABILITY ALLOWANCES

Impediment Grade      Impediment

| | | | |
|---|---|---|---|
| 1 | Maximum Rate | x | 120.00% |
| 2 | Maximum Rate | x | 88.81% |
| 3 | Maximum Rate | x | 78.36% |
| 4 | Maximum Rate | x | 68.66% |
| 5 | Maximum Rate | x | 58.96% |
| 6 | Maximum Rate | x | 50.00% |
| 7 | Maximum Rate | x | 41.80% |
| 8 | Maximum Rate | x | 33.59% |
| 9 | Maximum Rate | x | 26.12% |
| 10 | Maximum Rate | x | 20.15% |
| 11 | Maximum Rate | x | 14.93% |
| 12 | Maximum Rate | x | 10.45% |
| 13 | Maximum Rate | x | 6.72% |
| 14 | Maximum Rate | x | 3.74% |

Maximum Rate: US$50,000

To be paid in Philippine Currency equivalent at the exchange rate prevailing during the time of payment.

SECTION 31. TABLE OF OFFENSES AND CORRESPONDING ADMINISTRATIVE PENALTIES

    OFFENSES    ADMINISTRATIVE PENALTIES

    SHALL be imposed by the Master    SHALL be imposed by POEA's
    due investigation

1.    Smuggling or violation of any customs rules and regulations of the Philippines and of foreign ports

a.    smuggling any taxable item as provided in Contract
    Dismissal and to pay cost
    1st Offense:
    Minimum - one (1) year suspension from POEA Registry

        Maximum - two (2) years suspension
        2nd Offense:
        Minimum - two (2) years and 1 day suspension
        Maximum - delisting from    POEA Registry

b.     possession or use of prohibited drugs, narcotics and other contraband
        Dismissal
        Delisting from POEA registry

c.     gun-running or possession of explosives and the like
        Dismissal
        Delisting from POEA registry

d.     abetting or conniving with others to commit smuggling
        Dismissal
        Minimum-2 years suspension
        Maximum-3 years suspension

e.     misdeclaration of or failing to declare articles leading to their seizure and fine to vessel
        Dismissal
        1st Offense:
        Minimum - 1 year suspension
        Maximum-2 years suspension
        2nd Offense:
        Minimum-2 years and 1 day suspension
        Maximum - delisting from POEA registry

f.     misdeclaration of or failing to declare articles leading to their seizure but vessel not implicated
        1st Offense:
        2nd Offense:
        Reprimand and warning
        Minimum-2 years and 1 day suspension
        2nd Offense:
        Dismissal     Maximum-2 years suspension
        3rd Offense:
        Minimum-2 years and 1 day suspension
        Maximum - delisting from POEA registry

g.     possession of pornographic materials leading to its seizure and fine to vessel
        Dismissal
        Same as 1(e)

h.     any other violation which will not implicate vessel
        1st Offense:
        Same as 1(f)
        Reprimand and warning
        2nd Offense:
        Dismissal

i.     any other violation which will implicate the vessel
        Dismissal
        Minimum-3 yrs. suspension

Maximum - delisting from POEA registry
2.    Desertion
a.    deserting or attempting to desert
Dismissal and to pay cost as provided in the contract
Permanent Delisting from
POEA registry
b.    advising, assisting or persuading another to desert
Dismissal and to pay cost as provided in the contract
Minimum-5 years suspension
Maximum - Delisting from POEA registry
3.    Absence without leave
a.    abandoning post or duty without being properly relieved
Dismissal and to pay cost as provided in the contract
1st Offense:
Minimum-1 year suspension
Maximum-1 year suspension
2nd Offense:
Minimum-2 years and 1 day suspension
Maximum - delisting from POEA registry
b.    leaving the vessel without permission from responsible officers during working hours
Dismissal and to pay cost as provided in the contract
Same as 3(a)
c.    entrusting to others assigned duties without authority of department head
At the discretion of Master
1st Offense:
Minimum - months suspension
Maximum-1 year-suspension
2nd Offense
Minimum-1 year and 1 day suspension
Maximum-2 years suspension
3rd Offense:
Minimum-2 years and 1 day suspension
Maximum-delisting from POEA registry
d.    leaving the vessel without permission
At the discretion of Master
Same as 3(c)
4.    Sleeping on post while on duty
Dismissal and to pay cost as provided in the contract
Same as 3(a)
5.    Insubordination
a.    any act of disobedience to lawful orders of a superior officer
Dismissal and to pay cost as provided in contract
Same as 3(a)
b.    attempting to assault a superior officer
Dismissal and to pay cost as provided in the contract

Same as 3(c)

c.     assaulting a superior officer/other persons on business with the ship without the use of deadly weapon

Dismissal and to pay cost as provided in the contract

Same as 3(a)

d.     assaulting a superior officer/other persons on business with the ship with the use of deadly weapon

Dismissal and to pay cost as provided in the contract

Delisting from POEA registry

e.     behaving with disrespect towards a superior

Dismissal and to pay cost as provided in the contract

1st Offense:

Minimum-6 months suspension

Maximum-1 year suspension

2nd Offense:

Minimum-2 years and 1 day suspension

Maximum-3 years suspension

3rd Offense:

Minimum-3 years and 1 day suspension

Maximum-delisting from POEA registry

f.     insulting a superior officer by words or deed

Dismissal and to pay cost as provided in the contract

Same as 5(e)

g.     inciting another to commit insubordination

Dismissal and to pay cost as as provided in the contract

Same as 5(e)

6.     Drunkenness

a.     drunk while on duty

Dismissal and to pay cost as provided in the contract

1st Offense:

Minimum-2 years suspension

Maximum-3 years suspension

2nd Offense:

Minimum-3 years and 1 day suspension

Maximum-delisting from POEA registry

b.     creating trouble on board due to intoxication

1st Offense:

Same as 5(e)

Reprimand and warning

2nd Offense:

Dismissed

c.     failure to perform assigned jobs due to intoxication

1st Offense

Same as 5(e)

Reprimand and warning

2nd Offense

Dismissal
7. Creating trouble outside the vessel's premises
   Same as 6(c)
8. Gambling
a. which results in fighting or any incident as to upset the harmonious relationship on board and vessel
   Dismissal and to pay cost as provided in the contract
   1st Offense:
   Minimum-1 year suspension
   Maximum-2 years suspension
   2nd Offense:
   Minimum-2 years and 1 day suspension
   Maximum-delisting from POEA registry
b. any other form of gambling which is not purely recreational
   At Master's discretion
   Same as 5(e)
9. Violations of company policies and regulations
a. pilferage or theft of ship's store or cargo
   Dismissal and to pay cost as provided in the contract
   1st Offense:
   Minimum-1 year suspension
   Maximum-2 years suspension
   2nd Offense:
   Minimum-2 years and 1 day suspension
   Maximum-delisting from POEA registry
b. any other form of gambling which is not purely recreational
   At Master's discretion
   Same as 5(e)
9. Violation of company policies and regulations
a. pilferage or theft of ship's store or cargo
   Dismissal and to pay cost as provided in the contract
   1st Offense:
   Minimum-1 year suspension
   Maximum-2 years suspension
   2nd Offense:
   Minimum-2 years and 1 day suspension
   Maximum-delisting from POEA registry
b. embezzlement of company funds
   Dismissal and to pay cost as provided in the contract
   Same as 9(a)
c. unauthorized disposal of company vessel's properties for personal gain
   Dismissal and to pay cost as provided in the contract
   Same as 9(a)
d. any act of dishonesty with intention to defraud the company
   Dismissal and to pay cost as provided in the contract
   same as 9(a)

e.     for gross negligence and failure to observe proper storage and cargo handling procedures resulting in delay of vessels and/or damage to cargoes
    Dismissal and to pay cost as provided in the contract
    same as 9(a)

f.     failure to observe and comply with regulation and non-baggage shipment and acceptance or parcels and board
    At Master's discretion
    1st Offense:
    Minimum-6 months
    Maximum-1 year suspension
    2nd Offense:
    Minimum-1 year and 1 day suspension
    Maximum-2 years suspension
    3rd Offense:
    Minimum-2 years and 1 day suspension
    Maximum-delisting from POEA registry

g.     for failure to observe regulations on expiration of shore liberty
    1st Offense:
    Same as 9(f)
    Reprimand and warning
    2nd Offense:
    Dismissal

h.     for being left behind by vessel in foreign port without justifiable reason
    Dismissal and to pay cost as provided in the contract
    Same as 9(f)

i.     for disorderly conduct and/or disrespect towards passengers
    Dismissal and to pay cost as provided in the contract
    1st Offense:
    Minimum-1 year suspension
    Maximum-2 years suspension
    2nd Offense:
    Minimum-2 years and 1 day suspension
    Maximum-delisting from POEA registry

j.     for immorality so as to cast aspersion on the good name of the vessel and company
    Dismissal and to pay cost as provided in the contract
    same as 9(i)

k.     for inflicting harm or injury to others
    Dismissal and to pay cost as provided in the contract
    same as 9(i)

10.    Incompetence and inefficiency
    Dismissal and to pay cost as provided in the contract
    1st Offense:
    Minimum-2 years suspension
    Maximum-3 years suspension
    2nd Offense:

Minimum-3 years and 1-day suspension
Maximum-delisting from POEA registry

11.     Any form of activity which tends to create discontent or as provided in the contract dissension among the crew members
Dismissal and to pay cost
1st Offense:
Minimum-3 years suspension
Maximum-4 years suspension
2nd Offense:
Minimum-4 years and 1 day suspension
Maximum-delisting from POEA registry

12.     For inciting mutiny, malicious destruction of ship's property at any activity which will hamper the efficient
Dismissal and to pay cost as provided in the contract
1st Offense:
Minimum-2 years suspension
Maximum-3 years suspension
2nd Offense:
Minimum-3 years suspension
MISSING PAGE
as provided in the contract

19.     For wilfully making false statement  reports, certification or spurious seaman's documents for personal gain or with intent to mislead or defraud the company
Dismissal and to pay cost as provided in the contract
Same as 16

20.     Any other case as to cast aspersion on the good name of the company and vessel
At Master's discretion
Same as 15(c)

21.     Violation of safety and environmental rules/regulations
At Master's discretion
Minimum-1 year suspension
Maximum-2 years suspension

22.     Failure to observe the drug and alcohol policy of the company
Dismissal
Minimum-1 year suspension
Maximum-2 years suspension