IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

IN THE MATTER OF                              *
THE COMPLAINT OF
ETERNITY SHIPPING, LTD. AND      *        Civil Action No.: L01CV0250
EUROCARRIERS, S.A.
FOR EXONERATION FROM OR       *
LIMITATION OF LIABILITY
                                                         *

*     *     *     *     *     *     *     *     *     *     *     *     *

## CLAIMANT-JOSEFINA GONZALES' MEMORANDUM
## REGARDING THE PROSECUTION OF "LIMITATION ACTIONS"

TO THE HONORABLE JUDGE OF THE DISTRICT COURT:

COMES NOW JOSEFINA GONZALES ("Claimant"), in follow-up to the November 21,

2005 hearing regarding the Motion for Summary Judgment filed by ETERNITY SHIPPING. LTD.

and EUROCARRIERS, S.A. ("Limitation Plaintiffs" or "Petitioners"), and in accordance with this

Court's Memorandum Order dated November 22, 2005, and files this Memorandum addressing

certain matters pertaining to the maintenance and prosecution of "limitation actions," including the

one now pending before this Court:

### I.
### "PRIVITY OR KNOWLEDGE":
### THE USUAL END OF THE LIMITATION ANALYSIS

"There is an unmistakable trend in the judicial decisions to interpret
the 'privity or knowledge' requirement of the Limitation Act to
impose a heavy burden on shipowners and operators to exercise a
high degree of control and supervision so as to avoid marine
casualties.  Where human error or unseaworthiness is involved, it is
*exceedingly rare* to grant exoneration."

2 T. Schoenbaum, *Admiralty & Maritime Law* 347, §15-5 (3rd ed.
2001) [emphasis added].

Once a claimant proves that negligence or unseaworthiness caused an accident, an owner seeking limitation must show it lacked privity or knowledge of the condition. *Cupit v. McClanahan Contractors, Inc.*, 1 F.3d 346, 348 (5th Cir.1993), *cert. denied*, 510 U.S. 1113, 114 S.Ct. 1058, 127 L.Ed.2d 378 (1994). See also, *Empresa Lineas Maritimas Argentinas S.A. v. United States*, 730 F.2d 153, 155 (4th Cir.1984). Thus, contrary to Limitation Plaintiffs' assertions, once Claimant-Gonzales establishes some legal fault of the Limitation Plaintiffs, **Limitation Plaintiffs** bear the burden of showing a **lack** of privity or knowledge of the activity or condition which caused the injury or damage.

A corporate owner, however, will not satisfy its burden by merely demonstrating ignorance. It is charged with the knowledge of any of its managing agents who have authority over the sphere of activities in question. *Cupit*, 1 F.3d at 348, quoting, *Coryell v. Phipps*, 317 U.S. 406, 410, 63 S.Ct. 291, 293, 87 L.Ed. 363, 367 (1943). See also, *Empresa*, 730 F.2d at 155 & 157.

_____With respect to whether the privity or knowledge of the vessel's master may be imputed to the vessel's owner, the venerable Professor Schoenbaum notes:

> "For purposes of establishing privity or knowledge regarding limitation as to personal injury and death claimants, but not for property loss claimants, the privity or knowledge of the master of the vessel is deemed conclusively the privity or knowledge of the owner." See, 2 T. Shoenbaum, *Admiralty & Maritime Law* 347, §15-5 (3rd ed. 2001).

Assuming, for the sake of argument, that the "privity or knowledge" of the captain of the M/V LEON I is not conclusively the privity or knowledge of the vessel's owner, the law of the Fourth Circuit makes it clear that the Limitation Plaintiffs are still not entitled to limitation of liability.

2

The case of *Empresa Lineas Maritimas Argentinas S.A. v. United States*, 730 F.2d 153 (4th Cir.1984) involved a collision between an Argentinian freighter and a Coast Guard cutter in Chesapeake Bay. The collision was clearly caused by the actions of the cutter captain, who turned his vessel into the path of the freighter. In other words, *Empresa* was a true "navigational errors" case.[1] The United States sought limitation of liability, arguing that the government did not have privity or knowledge of the navigational errors of the cutter's captain and, indeed, could not be charged with privity or knowledge of the captain's errors of navigation or seamanship while the vessel was operating away from port. *Id.* at 156. However, in opposing limitation, freighter's attorneys effectively argued that the United States (i.e., who is treated like a private corporation when it seeks a limitation of liability, *Id.* at 155) was <u>not</u> entitled to limitation of liability because supervisory persons had knowledge--or were charged with knowledge--of the cutter captain's physical problems and loss of sleep, which were responsible for his bad judgment and, thus, the collision. *Id..*[2]

In the case before this court, the evidence shows that one or more of Limitation Plaintiffs' "supervisory" officials had knowledge or are properly charged with knowledge of (1) the operation being performed by the crew at the time of the incident in question (i.e., suspending crewmembers from a crane while they scraped sugar from the hatch coaming), and (2) the performance of that

---

[1] Of the [few] limitation actions that prevail, it is axiomatic that most involve the "navigational errors" of the master.

[2] The Court should read the *Empresa* case, if for no other reason than to note the strength of the freighter's arguments against limitation, and the lengths to which it went in order to obtain a finding of "no limitation" (i.e., including reopening the case, after Judge Blair died, to reverse an original finding in favor of limitation).

operation necessitated operating the subject crane in a matter virtually guaranteed to cause the failure

of the luffing wire (i.e., it was not physically possible to scrape the proximal portion of the hatch

coaming without operating the crane above the upper limit which, in turn, put additional stress and

shear on the luffing wire). *See*, *May 21-29, 2003 depositions of Limitation Plaintiff's "Technical*

*Manager and head of the Quality, Safety & Vetting Department" (George Coyavinas), "Technical*

*Manager" until one month before the accident (Nikos Kekridas), "DPA" for Eurocarriers (Capt.*

*Ioannis Patapis), "Superintendent Engineer" (Stoyan Terziev) and "Insurance Manager (and one-*

*time Operations Manager)" (Sotirios Alexopoulos).*

## Example 1

When Claimants sought the depositions of Limitation Plaintiffs' corporate representatives,

Limitation Plaintiffs produced Eurocarriers, S.A.'s Technical Manager and head of the company's

Quality, Safety & Vetting Department (QSV), George Coyavinas. *Coyavinas*, p. 4, lines 3-5. Based

upon his experience, knowledge of the company, and knowledge of the shipping industry, Mr.

Coyavinas allowed that:

> "On practical terms the master of every vessel is working always
> closely with his managers or owners, so most of the time he has the
> opportunity to give them information, receive instructions, discuss
> problems and solve them jointly, so it is very much continuous and
> close cooperation." *Id.* at p. 119, lines 15-21.

He also agreed that, in light of the many communication devices available these days aboard ship,

the ability to communicate with the vessel's managers and owners has become much easier. *Id.* at

p. 119, line 22 - p. 120, line 6. In fact, upon consideration of the "communications bills" of the

company, it is relatively certain that the master of the M/V LEON I was actually in close

communication with the ship's managers and owners in the days prior to the incident in question,

including discussing any problems relative to the ship's equipment. *Id.* at p. 120, line 7 - p. 121, line 24.

Finally, Eurocarriers, S.A.'s "DPA" (Capt. Ioannis Patapis) was aboard the M/V LEON I in the Port of Baltimore in the days prior to the incident in question. *Patapis*, p. 211, lines 5-12. When he was aboard the vessel, he was the highest ranking representative of Limitation Plaintiffs on board, and his responsibilities centered on the vessel and its operation. *Id.* at p. 212, line 20 - p. 213, line 12. Everything DPA/Capt. Patapis was doing with respect to the vessel, and every request he had as concerned the needs of the vessel, was transmitted by and through the ship's master. *Id.* at p. 213, line 17 - p. 2145, line 7. And, when he left the vessel, the "master of the vessel" took his place. *Id.* at p. 213, lines 13-16. So, if there were any problems with the relevant crane in the days preceding the incident in question, a corporate representative as well as the master of the vessel would have been in position to notice the problem, fix it if possible, and/or communicate the matter to the proper persons in Greece.

The testimony of the longshoremen involved in the incident in question indicates that the relevant crane (i.e., which ultimately failed) was making unusual noises and "chattering" when in operation in the days just prior to the incident in question. Based upon Mr. Coyavinas' testimony, it appears certain that the master of the vessel (and, presumably, DPA/Capt. Patapis) would have known of this problem and had the opportunity to address the matter with his superiors in Greece.

## Example 2

As a further example of the shipowner's obvious "privity or knowledge" of conditions or activities giving rise to the incident in question, we turn now to the actual activity of hoisting personnel in a basket and holding them in position near the proximal end of the hatch for the purpose

5

of allowing them to scrape sugar from the hatch coaming.

Eurocarriers, S.A.'s former "Technical Manager," Mr. Kekridas, stated that it was "[s]trictly forbidden" to use the relevant crane to hoist crewmembers for work aloft. *Kekridas,* p. 204, lines 19-22. Moreover, Mr. Kekridas believed that the ship's operation of the relevant crane above the upper limit, as defined by the limit switch, is what caused the luffing wire to break. *Id.* at p. 205, lines 9-21.

However, DPA/Capt. Patapis says it is acceptable in the shipping industry to use a crane to hold personnel in a personnel basket while they clean hatch coamings. In fact, DPA/Capt. Patapis has done this himself, while he was the master of a vessel. *Patapis*, p. 222, line 25 - p. 223, line 9. He sees nothing wrong with the practice. *Id.* at p. 225, lines 1-9.

Eurocarriers, S.A.'s "Superintendent Engineer" (Stoyan Terziev) was intimately familiar with the technical specifications of the relevant crane, and how such crane operated aboard its prior vessel (M/V YANNIS K) and aboard the M/V LEON I:

> "Q. (by Mr. Brunkenhoefer) So if it was acceptable to have personnel in a personnel basket suspended by a crane to scrape the hatch coamings of vessels carrying sugar as in this case, . . ., then the only way the personnel in a personnel basket could get close enough to the nearest hatch coamings nearest the crane would be to take the crane jib above the limited upper limit.
>
> A. Correct."
>
> *Terziev*, p. 167, lines 12-21.

[NOTE: Claimant's counsel has run out of time in his attempt to brief this issue before midnight on December 5, 2005. However, Claimant's counsel recalls Mr. Coyavinas agreed that it has always been acceptable to use a crane to suspend men in a personnel basket while they clean the

6

hatch coamings. Indeed, according to Mr. Coyavinas, it is "impractical" to do otherwise. In addition, he said it was acceptable to raise the boom angle of the crane to the angle needed to place the crewmen in the appropriate position to clean the hatch coaming.]

* * *

The testimony of the witnesses deposed to date is filled with other similar examples of the shipowner's actual or "imputed" privity or knowledge of conditions causing the incident, injuries, deaths and/or damages in question. Any one of these conditions or activities is sufficient to defeat the shipowner's limitation action. Claimant merely offers the above examples to illustrate the general ease with which a limitation is defeated, within or without this particular case, and to highlight the fact that the resolution of the shipowner's limitation action, prior to resolving the merits of the case, will likely prove both unnecessary and inefficient.

## II.
## LIMITATION ACTIONS ARE ROUTINELY STAYED WHILE CLAIMANTS PURSUE THEIR CLAIMS IN OTHER COURTS

Claimant filed her original lawsuit in the United States District Court, District of Maryland, Northern Division. She does not seek to litigate her claims elsewhere and, thus, she has made no effort to stay the limitation action in favor of her right to proceed in another state or federal forum. However, to further illustrate that Claimant's counsel has accurately reported the state of affairs concerning limitation actions, Claimant would refer the Court to *Lewis vs. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 121 S.Ct. 993, 148 L.Ed.2d 931, 2001 AMC 472 (2001).

*Lewis* provides a thorough and clear description of the Supreme Court's continued belief that federal courts have no monopoly over remedies or even liability determination, but rather the federal court's "exclusive sphere of influence" concerns limitation only. See, 2 T. Shoenbaum, *Admiralty*

7

*& Maritime Law*, §15-5 (3rd ed. 2003 supp.)[3].  In other words, *Lewis* affirms the long-standing belief

that, as long as the shipowner's rights are adequately protected (i.e., by stipulations ensuring that a

judgment in another court does not prevent the federal court from determining the limitation issues;

that there is no execution of the "other" judgment prior to a resolution of the shipowner's rights;

etc.)[4], then the aggrieved should be allowed to pursue their claims in the forum of their choice:

> "In sum, this Court's case law makes clear that state courts, with all
> of their remedies, may adjudicate claims like petitioner's against
> vessel owners so long as the vessel owner's right to seek limitation
> of liability is protected.  Respondent seeks to invert that rule, making
> run of the mill personal injury actions involving vessels a matter of
> exclusive federal jurisdiction except where the claimant happens to
> seek a jury.  We reject that proposal . . . ."
>
> *Lewis*, 531 U.S. at 455-56, 121 S.Ct. at 1005.

## III.
## CLAIMANT'S RIGHT TO TRIAL BY JURY

Finally, the Court's Order of November 22, 2005 states in pertinent part:

> "[T]he docket reflects that the parties have not filed a demand for a
> jury trial.  Accordingly, the discussion about the division of labor
> between judge and jury appears largely theoretical." <u>See</u>, *November
> 22, 2005 Order, p. 2 ¶I(C))*.

Limitation Plaintiffs dispute Claimant's right to recover damages in the United States in light

of the "POEA contract."  Limitation Plaintiffs do not dispute that, if her claims are <u>not</u> barred, then

Claimant's remedies are found in the "Jones Act" and the general maritime law.

---

[3] The United States Supreme Court often looks to Professor Schoenbaum for assistance in resolving maritime matters, including in rendering its opinion in *Lewis*.___

[4] It bears noting that the Supreme Court, in defining what protection the shipowner is entitled to receive, did not require the claimant to stipulate to the federal court's exclusive jurisdiction over "exoneration" . . . only "limitation."

The Court correctly states that the docket of the limitation action <u>does not</u> reflect a jury demand. However, the docket of Claimant's original lawsuit (Civil Action No. L-01-CV-327) reflects that Claimant made a proper demand in both her Original Complaint and her First Amended Original Complaint.[5]

In addition, all answer(s) and claims filed by Claimant in the limitation action are made expressly:

> ". . . *subject to* her right to proceed under the substantive and procedural provisions of 46 U.S.C. §688, *et seq.* (a.k.a., the "Jones Act"), the general maritime law, and any and all other state, federal or international codified or common law as governs the Decedent's and/or Claimant's rights to recover for the death, injuries and damages sustained as result of the incident made the basis of the libel and petition . . . ."

> <u>See</u>, *Original and Amended Claim(s) of Josefina Gonzales.*

In short, Claimant's pleadings reflect that she has filed claims under the "Jones Act" and the general maritime law, and she has explicitly asserted her right to trial by jury on all issues so triable.

## **PRAYER**

WHEREFORE, Claimant-Gonzales respectfully requests that the Court deny the relief requested by Limitation Plaintiffs herein, and in all respects deny summary judgment.

---

[5] Claimant respectfully requests that the Court take judicial notice of its file and the contents thereof.

Respectfully submitted,


_____/s/_____
R. Blake Brunkenhoefer (S.D.Tex. #15559)*
BRUNKENHOEFER & ASSOCIATES, P.C.
1770 Tower II
555 N. Carancahua
Corpus Christi, Texas 78478
(361) 888-6655
Fax (361) 888-5855
bbrunk@gulfattorneys.com
(* Admitted Pro Hac Vice)


_____/s/_____
W. Charles Bailey, Jr. (#23580)
SIMMS SHOWERS, LLP
Suite 702
20 South Charles Street
Baltimore, Maryland 21201
(410) 783-5795
Fax (410) 783-1368
wcbailey@simmsshowers.com

10

## CERTIFICATE OF SERVICE

I, R. Blake Brunkenhoefer, do hereby certify that a true and correct copy of the above and

foregoing document was served via e-mail notification from the District Court upon:

M. Hamilton Whitman, Jr.
OBER, KALER, GRIMES
& SHRIVER, P.C.
120 E. Baltimore Street
Baltimore, MD 21202
**(VIA E-MAIL &/OR FAX)**

James D. Skeen
SKEEN & KAUFFMAN
& SKEEN, L.L.P.
800 N. Charles Street
Baltimore, MD 21201
**(VIA E-MAIL &/OR FAX)**

Jeffrey J. Asperger
Erin Walz
ASPERGER CARAHER, L.L.C.
Three Illinois Center
303 East Wacker Drive, Suite 1000
Chicago, Illinois 60601
**(VIA E-MAIL &/OR FAX)**

Bernard J. Sevel
ARNOLD, SEVEL & GAY, P.A.
Two N. Charles Street, Suite 560
Baltimore, MD 21201
**(VIA E-MAIL &/OR FAX)**

Robert G. Clyne
HILL, RIVKINS & HAYDEN, L.L.P.
45 Broadway, Suite 1500
New York, NY 10006-3739
**(VIA E-MAIL &/OR FAX)**

James W. Bartlett, III
SEMMES, BOWEN & SEMMES
250 W. Pratt Street, 16th Floor
Baltimore, MD 21201-2423
**(VIA E-MAIL &/OR FAX)**

Francis J. Gorman
GORMAN & WILLIAMS
Two N. Charles Street, Suite 750
Baltimore, MD 21201
**(VIA E-MAIL &/OR FAX)**

W. Charles Bailey, Jr.
SIMMS SHOWERS, L.L.P.
20 S. Charles St., Suite 702
Baltimore, MD 21201-3291
**(VIA E-MAIL &/OR FAX)**

in accordance with all applicable provisions of the Federal Rules of Civil Procedure, on this the

5th day of December, 2005.

_____/s/_____
R. Blake Brunkenhoefer