IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| IN THE MATTER OF <br> THE COMPLAINT OF <br> ETERNITY SHIPPING, LTD. AND <br> EUROCARRIERS, S.A <br> FOR EXONERATION FROM OR <br> LIMITATION OF LIABILITY | * <br> * Civil Action No.: L-01-CV-0250 <br> * <br> * |

* * * * * * * * * * * * *

## LIMITATION PLAINTIFFS' RESPONSE TO CLAIMANT JOSEFINA GONZALES'S MEMORANDUM REGARDING "P.O.E.A. CONTRACT" ISSUES

Limitation Plaintiffs Eternity Shipping, Ltd. and Eurocarriers, S.A., by their undersigned attorneys, respectfully submit this Response to Claimant's Memorandum Regarding "POEA Contract" Issues.

### I.   BACKGROUND

The Court's Memorandum Orders dated November 22 and December 8, 2005 provided an opportunity for counsel for Mrs. Gonzales to file a brief and underlying documents in connection with Section 20(G) of the Standard Terms and Conditions of the POEA contract.

On November 28, 2005, counsel for Mrs. Gonzales wrote to the Court, forwarding copies of a certain packet of documents which counsel had proffered at the hearing on November 21. Counsel inaccurately described those documents (at the hearing, and in his November 28 forwarding letter) as "contracts." It is self-evident from the cover letter included with that packet, however, that these were simply documents provided in discovery, because they were felt to "pertain" to Mrs. Gonzales's case in the Philippines.

778446

Neither counsel for Limitation Plaintiffs nor anyone else had previously described these documents as "contracts," and counsel for Mrs. Gonzales has failed to provide any explanation of the import of these documents.

On December 5, 2005, counsel for Mrs. Gonzales wrote to the Court, attaching copies of certain documents in support of the "Timeline" which counsel had proffered at the November 21 hearing. Despite the requirements of Rule 56(e), none of the materials provided by counsel under cover of that letter are in any way authenticated, or sworn or certified to attest to their reliability.

Finally, on December 12, 2005, counsel for Mrs. Gonzales filed her "Memorandum Regarding 'P.O.E.A. Contract' Issues" (hereinafter, "POEA Memo"). Although the Court had authorized, and invited, a submission limited to the Section 20(G) issue, most of Mrs. Gonzales's POEA Memo simply reiterates, and rehashes, many of the overall arguments made in Mrs. Gonzales's opposition to the Limitation Plaintiffs' Motion for Summary Judgment.

For the sake of brevity, and to avoid needless repetition, Limitation Plaintiffs will not attempt to re-argue herein all of the summary judgment issues. The Court's attention is invited, however, to the Limitation Plaintiffs' Memorandum in Support of their Motion for Summary Judgment, as well as to their Reply Memorandum, both of which are incorporated herein by reference.

## II. THE STANDARD TERMS AND CONDITIONS OF MR. GONZALES'S CONTRACT

As set out in a letter to the Court dated December 5, 2005 from undersigned counsel for Limitation Plaintiffs, the parties have agreed on certain aspects of the Gonzales contract issue. An agreed copy of the one-page Contract of Employment which Mr. Gonzales signed on January 14, 2000 was attached as Exhibit A to that letter. The parties have also agreed, as recited in that letter, that the Standard Terms and Conditions Governing the Employment of Filipino Seafarers On-Board Ocean-Going Vessels ("POEA Standard Terms and Conditions") that were in effect as of January 14, 2000 were incorporated by reference into Mr. Gonzales's one-page Contract of Employment, and that the Gonzales Employment Contract was not changed from January 14, 2000 through July 29, 2000, the date of Mr. Gonzales's death.

Unfortunately, the parties have not been able to agree on precisely which version of the POEA Standard Terms and Conditions was incorporated by reference as of January 14, 2000. Confusion arose because the POEA Standard Terms and Conditions (especially non-current versions) are available in various different formats, on the internet and from various archival sources. The result is that an incomplete version of the POEA Standard Terms and Conditions was attached to the original Affidavit of Ruben T. Del Rosario (the Philippine attorney who represents the Limitation Plaintiffs in the Philippines) which was Exhibit F to Limitation Plaintiffs' Motion for Summary Judgment.

In order to put this issue to rest, and at the request of undersigned counsel, Mr. Del Rosario approached the Philippine Overseas Employment Administration (the POEA) and obtained a certified copy of Memorandum Circular No. 55, Series of 1996, including Annex A which comprised the POEA Standard Terms and Conditions that were in effect as of January 14, 2000.

Attached as Exhibit A to this Response is a Second Supplemental Affidavit of Mr. Del Rosario, including the certified copy which he obtained from the POEA Central Records Division. Given the Court's electronic filing requirements, the original, certified document is in the hands of undersigned counsel and will be available for inspection by the Court and counsel at the resumed hearing on January 18, 2006.

### III.  THE SECTION 20(G) ISSUE

At the hearing on November 21, 2005, and in its subsequent Memorandum Order, the Court invited Mrs. Gonzales and Limitation Plaintiffs to address the import of Section 20(G) to the POEA Standard Terms and Conditions. That issue is addressed in Part III.C of the Gonzales POEA Memo, to which Limitation Plaintiffs respond in this Part III of this Response.

Initially, it should be noted that Part III.C of the Gonzales POEA Memorandum is entitled "Filipino law has *now* been revised to preclude tort claims like these." In fact, however, there has been no change in the law of the Philippines on this subject. The only change has been to the language of the POEA Standard Terms and Conditions themselves, which now expressly recognize what has always been the law, namely, that recovery pursuant to the POEA contract includes recovery for all claims, including tort

4

claims. This point has consistently been expressed and developed in the affidavits provided by Mr. Del Rosario, including the original Affidavit attached as Exhibit F to the Memorandum in Support of Limitation Plaintiffs' Motion for Summary Judgment, the Supplemental Affidavit attached as Exhibit 1 to the Limitation Plaintiffs' Reply Memorandum, and the Second Supplemental which is attached as Exhibit A to this Response.[1]

The Second Supplemental Affidavit attached hereto sets out Mr. Del Rosario's analysis on the specific Section 20(G) issue, while his first two affidavits develop, more generally, the point that the NLRC in the Philippines had jurisdiction over *all* of Mrs. Gonzales's claims, including any tort claim. The Second Supplemental Affidavit makes it clear that Section 20(G) incorporated existing law and practice into the POEA Standard Terms and Conditions, and that Section 20(G) did not create a new category of claims, or damages, under the POEA procedure.[2]

Limitation Plaintiffs agree that the "Standard Terms and Conditions" applicable to Mr. Gonzales' contract were later revised to explicitly include language at Section 20(G) to the effect that the seafarer or successor in interest acknowledges that payment of the death benefits covers all claims "arising from contract, tort, fault or negligence under the law of the Philippines or an other country." That amendment, which went into effect in

---

[1] For ease of reference, attached as Exhibits B and C to this Response are copies of Mr. Del Rosario's prior Affidavits (without exhibits). A review of these Affidavits will remind the Court of the full explanation which Mr. Del Rosario has provided.

[2] Although the Gonzales POEA Memo attempts to disparage the contributions of Mr. Del Rosario, it should be noted that counsel for Mrs. Gonzales has not seen fit to provide the Court with any support for his various legal arguments from any lawyer in the Philippines. It would not stretch the imagination to conclude that this is because the Philippine law does not, in reality, support the many creative arguments made on behalf of Mrs. Gonzales.

June 2002, applies prospectively. However, that amendment merely incorporated the existing law and practice into the express language of the POEA Standard Terms and Conditions. Indeed, the prior law and practice, as discussed in Mr. Del Rosario's Affidavits, recognized the original and exclusive jurisdiction of the National Labor Relations Commission ("NLRC") over <u>all</u> <u>claims</u> involving Filipino seamen and their employers by virtue of any law, regardless of whether the same arose from contract or tort.[3] Section 20(G) merely added an express acknowledgment by the seafarer or his successor in interest of this fact to clarify the existing law.

Mrs. Gonzales presents no authority to support her position that the addition of Section 20(G) indicates a change to the existing law. Instead, she again attempts to rely upon the appellate decision of the NLRC in this case. That decision, however, does <u>not</u> state that Mrs. Gonzales's recovery in the Philippines was limited to contractual death benefits and did not cover any tort remedy. Indeed, the Commission's decision explicitly states to the contrary:

> Assuming that complainant would receive the amount of US $50,000.00 <u>necessarily she is barred from instituting a separate legal action here in our country based on the same incident because of our law against double recourse for a single wrong</u> *(Art. 2177, Civil Code)*.

<u>See</u> Exhibit F to Motion for Summary Judgment, at Exhibit 7 (emphasis added). Hence, while the Commission did not comment on whether the U.S. Court has jurisdiction to

---

[3] As an illustration, when Section 20(G) was adopted as part of the Standard Terms and Conditions, the amount of the death benefit to be paid thereunder was not increased. <u>Id.</u> The payment of the benefit remained consistent, because the new language did not add a new element of recovery. <u>Id.</u>

6

entertain the suit, the Commission made it clear that under Philippine law, Mrs. Gonzales could no longer claim for tort after receiving the benefits under the POEA Contract.

Mrs. Gonzales's failure to provide this Court with an Affidavit from a Filipino attorney, or any relevant authority in support her position that Section 20(G) indicated a change to the existing law, should be fatal to her argument. Mrs. Gonzales does not offer any support to counter Limitation Plaintiffs' position and Mr. Del Rosario's representations, simply because she cannot.

### IV.    THE REMAINING ARGUMENTS RAISED BY MRS. GONZALES CONTAIN NOTHING NEW TO PERSUADE THE COURT

**A.    *Res Judicata* Does Not Bar Limitation Plaintiffs' Motion, Because The Philippine National Labor Relations Commission Has Not Held That Mrs. Gonzales Can Maintain This Action In The U.S.**

The Gonzales POEA Memo once again claims that the Republic of the Philippines "explicitly permits her to pursue her pending claims before this Court." (POEA Memo at p. 4). Limitation Plaintiffs are thus constrained to yet again clarify that the appellate opinion of the NLRC merely held that it did not have the authority to bar Mrs. Gonzales from instituting the suit here in the U.S. See Exhibit F to Motion for Summary Judgment, at Exhibit 7.[4]

Moreover, of significant importance is the fact that the Commission qualified its opinion by stating:

> To institute is one thing, for the action to prosper is another . . . The foreign forum has the jurisdiction to determine whether the second suit

---

[4] Mrs. Gonzales's citation of the Executive Labor Arbiter's decision is improper as the Decision was appealed to the Fourth Division of the National Labor Relations Commission ("NLRC").

7

before it will prosper or not given the fact that a suit is pending here before us. It is not for us to preempt the ruling of that foreign court.

See id. Thus, the Commission's opinion is not adverse to Limitation Plaintiffs' position, and it in no way effects this Court's ability, and duty, to recognize Mrs. Gonzales's full and final judgment in the Philippines, and to dismiss her claim accordingly.

### B. The Philippine National Labor Relations Commission's Jurisdiction Over Tort Claims Is Well Established.

Mrs. Gonzales continues to criticize Courts in the United States that have also recognized the NLRC's jurisdiction to hear and resolve Filipino seamen tort claims, although she is unable to cite any authority in our courts to support this argument. Mrs. Gonzales flatly claims that "Marinechance is wrong," and that the case and its progeny are based on a "gross distortion of Filipino law. . .." (POEA Memo at p. 10).[5]

As discussed above, however, the law of the Philippines precludes a duplicative legal action in tort once a claimant has recovered under the POEA Contract, as Mrs. Gonzales has in the instant case. As Mr. Del Rosario observes in his original Affidavit (Exhibit B hereto), the statutory basis for the POEA Standard Terms and Conditions is the "Migrant Workers and Overseas Filipino Act of 1995." That Act includes the following provision:

> Sec. 10. Money Claims – Notwithstanding any provision of law to the contrary, the Labor Arbiters of the National Labor Relations Commission (NLRC) shall have the original and exclusive jurisdiction to hear and decide, within ninety (90) calendar days

---

[5] Although Mrs. Gonzales claims Marinechance is "wrong," she still has not cited one case that has declined to follow its holding. This is simply because courts that have been faced with questions involving the enforceability and scope of Filipino seamen employment contracts repeatedly follow the command of Marinechance that recovery under the POEA contract is not limited to contract claims.

>after the filing of the complaint, the claims arising out of an employer-employee relationship or by virtue of any law or contract involving Filipino workers for overseas deployment including claims for actual, moral, exemplary and other forms of damages.

There is no doubt the Gonzales Employment Contract was a contract involving overseas deployment of a Filipino worker, and therefore all of her claims fall under the jurisdiction of the NLRC.

Accordingly, Courts in the United States are correct to recognize that the NLRC has the exclusive jurisdiction to hear and resolve Filipino seamen tort claims, as those claims arise out of the employer-employee relation created by the POEA Contract.[6] This proposition has been recognized by the Eleventh Circuit as well as the Fifth Circuit, and this Court should do the same; recognize that the Philippine NLRC provided an adequate and competent forum, with original and exclusive jurisdiction over all of Mrs. Gonzales's claims, including those claims sounding in tort.

Finally, in a further attempt to persuade this Court that Mrs. Gonzales's claims do not arise from her son's employment contract, Mrs. Gonzales (again) erroneously asserts that the Philippine Supreme Court has affirmatively held that the NLRC does not have

---

[6] See Marinechance Shipping Ltd. v. Sebastian, 1998 AMC 2819, 143 F.3d 216, 223-24 (5th Cir. 1998), cert. denied, 525 U.S. 1055 (1998) (terms of the employment contract, which made the Philippines the exclusive jurisdiction for "any and all disputes or controversies arising out of or by virtue of this Contract," expanded the reach of the POEA to include tort as well as contract causes of action); Francisco v. Stolt Achievement MT, 293 F. 3d 270, 278-79 (5th Cir. 2002) (jurisdiction not limited to contract claims, but for all work-related personal injuries); Bautista v. Star Cruises, 286 F. Supp. 2d 1352, 1364 (S.D. Fla. 2003), aff'd, 396 F. 3d 1289 (11th Cir. 2005) (plaintiffs' assertion that their tort claims were not "claims and disputes arising from this employment," and thus not subject to arbitration in the Philippines, was "without merit"); Gavino v. Eurochem Italia, No. Civ.A.01-1314, 2001 WL 1491177, at * 1 (E.D. La. Nov. 23, 2001) ("any and all disputes or controversies arising out of or by virtue of" the Filipino seaman's POEA standard employment contract include tort causes of action).

the authority to hear tort claims, citing <u>Tolosa v. National Labor Relations Commission, et al.</u>, G.R. No.149578, Apr. 10, 2003, and <u>Ocheda v. Court of Appeals</u>, G.R. No. 85517, October 16, 1992. As fully briefed in Limitation Plaintiffs' Reply Memorandum, neither of these cases stand for that proposition. <u>See also</u> <u>Bautista</u>, 396 F. 3d at 1302-03 (distinguishing <u>Tolosa</u>).

In <u>Tolosa</u>, the Complaint was filed against co-workers (the Chief Mate and Second Mate), not against the employer. The <u>Tolosa</u> Court merely held that the NLRC Labor Arbiter did not have jurisdiction over claims filed against the Chief Mate and Second Mate, because those defendants had no employer-employee relation with deceased Captain. (p. 298). The Court did, however, acknowledge that the jurisdiction of the Labor Arbiters extends to awards for damages governed by the Civil Code, such as tort, as long as the same has a reasonable causal connection with employer-employee relations. (p. 299-300).

The <u>Ocheda</u> case did not even involve a Filipino seaman, and therefore <u>Ocheda</u> did not involve the Migrant Workers Act, Section 10 of which gives the NLRC Labor Arbiters jurisdiction over claims by seamen. Moreover, the Philippine Supreme Court's decision in <u>Ocheda</u> to uphold the regular court's jurisdiction was based on the matter of estoppel. The employer had gone forward to a judgment in court, and had even filed and pursued a cross-claim, but then attempted to argue that the case should have been before the NLRC and not in court. Not surprisingly, the Court ruled that the employer was estopped from that argument.

The Court in <u>Ocheda</u> also discussed the jurisdictional argument, but it never declared that the Labor Arbiters are without jurisdiction over tort claims. (pg. 40-24). Instead, the Supreme Court explained that the Labor Arbiter in the case would have had no jurisdiction over the case because the particular claim (negligent operation of the elevator by the contractor's employee) had no causal connection with the employer-employee relationship between petitioner (subcontractor) and the deceased employee. (CITE).

In sum, Mrs. Gonzales has failed to provide this Court with any new support for her contention that seafarer tort claims for injuries and deaths arising from claims of employer negligence and unseaworthiness are not subject to resolution by the NLRC or by Philippine Labor Arbiters. The NLRC has jurisdiction over such claims, and Mrs. Gonzales exhausted her sole legal remedy by seeking, and receiving, an award from the NLRC in the Philippines. Thus, pursuant to the policy of American courts to respect valid foreign decrees and their conclusive effect in accordance with principles of comity, Mrs. Gonzales is precluded from pursuing her claims again in this forum.

### C. Mrs. Gonzales's Public Policy Arguments Provide No Basis For Failing To Recognize Her Full and Final Recovery in the Philippines.

Perhaps recognizing that her legal arguments will not succeed, the Gonzales POEA Memo concludes with a full-blown jury argument disguised as an appeal to policy considerations. Given that the NLRC exercised proper jurisdiction over every one of Mrs. Gonzales' claims, Mrs. Gonzales argues that she must be permitted to maintain this action against Limitation Plaintiffs because "the value of human life" warrants "close

11

calls" to be resolved in her favor. (POEA Memo at p. 13).[7] Mrs. Gonzales attempts to appeal to the sympathy of this Court, as she states, "Contract or no contract . . .," (POEA Memo at p. 14) (emphasis added). This attempt must be unavailing.

Mrs. Gonzales's (repeated) argument that this Court must remedy alleged shortcomings of the legal system in the Philippines would completely undermine this country's well-established tradition of granting comity to the acts of foreign jurisdictions. Again, the U.S. has long given recognition within its territory to the legislative, executive, or judicial acts of another nation. See Hilton v. Guyot, 159 U.S. 113, 163-64 (1895).

More specifically, as fully briefed in Limitation Plaintiffs' Reply Memo, Courts in U.S. routinely uphold the enforceability of forum selection clauses contained in POEA employment contracts. See Reply Memo at pgs. 15-19. This is because the POEA exists specifically to promote and develop overseas employment opportunities and to afford protection to Philippine seamen and their families.

> Plaintiffs' employment contracts, with the incorporated Standard Terms, were in the form and language that their own government required to protect its own citizens . . . Where the Philippine government has acted, through the POEA, to protect its citizens and advance their employment opportunities with foreign

---

[7] Mrs. Gonzales's arguments that this Court must sustain her claim because "Limitation Plaintiffs seek to explicitly reduce the seaman's life to no more than an entry on a balance sheet," and because Limitation Plaintiffs will decide it is "cheaper to kill a man" rather to properly train their crews or maintain their vessels, are so utterly offensive and outrageous that Limitation Plaintiffs need not respond. (Memo at p. 14). Mrs. Gonzales's allegations, with no citation to the record, concerning the "callous" way in which Limitation Plaintiffs ran their operations, are similarly inappropriate, irrelevant, and wholly unsupported by the evidence, which in fact reveals that the vessel's crane was properly certified, had been inspected numerous times, and was not operated in violation of U.S. law. See Reply Memo at p. 13-14.

employers, it is not the role of this Court to second-guess such actions.

Bautista, 286 F. Supp. 2d at 1361-63 (internal citations ad quotations omitted).[8]

Certainly, Mrs. Gonzales's jury argument does not overcome this country's strong public policy favoring the recognition of POEA forum selection clauses, and any corresponding foreign proceeding and judgment. Accordingly, this Court owes comity to the prior proceeding in the Philippines, and Mrs. Gonzales' acceptance of $51,000 in satisfaction of her claims, as a bar to her ability to recover (again) in the U.S.[9]

## V. CONCLUSION

For all the above reasons, and those advanced in Limitation Plaintiffs' Motion for Summary Judgment and Reply Memorandum In Support Thereof, Limitation Plaintiffs respectfully request the Court dismiss Claimant's claims in their entirety.

---

[8] See also Prado v. Sloman Neptune Schiffahrts – A.G., 611 So. 2d 691, 703 (La. App. 4th Cir. 1992) (La. 1993 ("We would be presumptuous to assume that the procedures for the handling of this case established by the friendly foreign government of the Philippines in pursuit of the welfare of its citizens does not provide a reasonable alternative to those available in this Court."); Barcelona v. Sea Victory Maritime, Inc., 619 So. 2d 741, 744-45 (La. App. 4th Cir. 1993) (Louisiana has no interest in resolving disputes between Philippine citizens and foreign corporations arising from contracts drafted, regulated, and approved by the Philippine Overseas Employment Administration, and signed in the Philippines).

[9] The Gonzales POEA Memo argues that valuing a human life at $50,000 is a "repulsive, abhorrent and immoral position." (POEA Memo at 14.) Counsel, and Mrs. Gonzales, may find it instructive to refer to the death benefits available under the Maryland State Workers' Compensation Act, Annotated Code of Maryland, § 9-678 through 689 (1999). Pursuant to that Act, the death benefit available to a partly dependent individual (such as Mrs. Gonzales) may be capped at $60,000. See id. at § 9-682.

_[signature]_

M. Hamilton Whitman, Jr., Trial Bar No.: 00373
Carla N. Bailey, Trial Bar No.: 26367
Ober, Kaler, Grimes & Shriver
A Professional Corporation
120 E. Baltimore Street
Baltimore, Maryland 21202
(410) 685-1120

Attorneys for Eternity Shipping, Ltd. and
Eurocarriers, S.A.

14