REPUBLIC OF THE PHILIPPINES)
MAKATI CITY                ) S.S.

## AFFIDAVIT

I, **RUBEN T. DEL ROSARIO**, of legal age, married and with office address at 15th Floor, Pacific Star Building, Makati Avenue corner Sen. Gil Puyat Avenue, 1200 Makati City, Philippines after being duly sworn to in accordance with law, hereby depose and say:

1. I am a practicing lawyer in the Philippines and the managing partner of the law firm of Del Rosario and Del Rosario, a law firm specializing in maritime and admiralty law. A copy of my Curriculum Vitae stating the licenses I hold, my experience and qualifications are annexed hereto as **Exhibit 1**.

2. I was a member of the Seabased Tripartite Technical and Consultative Committee convened by the Philippine Overseas Employment Administration ("POEA") which proposed and drafted amendments to the Standard Terms and Conditions Governing the Employment of Filipino Seafarers On-Board Ocean-Going Vessels" ("Standard Terms and Conditions").

The POEA is a government agency under the Department of Labor and Employment which is specifically mandated to "(p)rotect the rights of Filipino workers for overseas employment to fair and equitable recruitment and employment practices and ensure their welfare". (Section 3 (c),Executive Order No. 247)

The Seabased Tripartite Technical and Consultative Committee consist of representatives from the government, the employers' interest groups, and the seafarers' interest groups.

3. The employment contracts of Filipino seafarers are duly approved and verified by the POEA. They incorporate by reference the Standard Terms and Conditions.

1

Because of the fair and ample representation of seafarers' interest in the drafting of the Standard Terms and Conditions, the same cannot be considered as a contract of adhesion.

4. Moreover, under Philippine law, contracts of adhesion are prohibited only when the weaker party is completely deprived of the opportunity to bargain on equal footing. As explained by the Supreme Court in the case of **Aniceto G. Saludo, et al, vs. Court of Appeals, et al** (G.R. No. 95536. March 23, 1992):

> "A contract of adhesion may be struck down as void and unenforceable, for being subversive of public policy, only when the weaker party is imposed upon in dealing with the dominant bargaining party and is reduced to the alternative of taking it or leaving it, completely deprived of the opportunity to bargain on equal footing. However, Ong Yiu vs. Court of Appeals, et al., instructs us that contracts of adhesion are not entirely prohibited. The one who adheres to the contract is in reality free to reject it entirely; if he adheres, he gives his consent."

Filipino seafarers cannot be considered to be "the weaker party" who is deprived of opportunity to bargain on equal footing when entering into employment contracts. In fact, the Supreme Court of the Philippines pointed out that procedures have been set in place to ensure that Filipino seafarers are not disadvantaged when entering into contracts of employment, to wit:

> "The reason why the law requires that the POEA should approve and verify a contract under Article 34(i) of the Labor Code is to insure that the employee shall not thereby be placed in a disadvantageous position and that the same are within the minimum standards of the terms and conditions of such employment contract set by the POEA. This is why a standard format for

2

employment contracts has been adopted by the Department of Labor." (**Seagull Maritime Corp. And Philimare Shipping & Equipment Supply vs. Nerry D. Balatongan, et al., G.R. No. 82252. February 28, 1989**):

5. In addition, the Supreme Court has time and again upheld the validity of the Standard Terms and Conditions and the amendments thereto (**Eastern Shipping Lines, Inc. vs. POEA, 166 SCRA 533; Sealanes Services, Inc. vs. NLRC, 190 SCRA 337; Eastern Shipping Lines vs. POEA, 200 SCRA 663; The Conference of Maritime Manning Agencies, Inc. vs. POEA, 243 SCRA 666**).

6. The POEA issued the Standard Terms and Conditions by virtue of the authority granted to it by the Department of Labor and Employment of the Republic of the Philippines on December 16, 1996, as embodied in **Department Order No. 33 Series of 1996**. A copy of the said Order is annexed to this Affidavit as **Exhibit 2**.

7. Pursuant to Department Order No. 33, Series of 1996, POEA issued **Memorandum Circular No. 55, Series of 1996**, indicating the guidelines for the implementation of the Standard Terms and Conditions. A copy of the said Circular is annexed hereto as **Exhibit 3**.

8. The Standard Terms and Conditions recognizes the original and exclusive jurisdiction of the National Labor Relations Commission (NLRC) over all claims by virtue of any law or contract involving Filipino workers for overseas deployment including claims for actual, moral, exemplary and other forms of damages. This grant of jurisdiction is embodied in **Republic Act No. 8042**, otherwise known as the *Migrant Workers and Overseas Filipino Act of 1995* ("MWOFA"). Thus, Section 10 thereof specifically states in part:

> "**SEC. 10. Money Claims** – **Notwithstanding any provision of law to the contrary,** the Labor Arbiters of the National Labor Relations Commission (NLRC) **shall have the original and**

3

exclusive jurisdiction to hear and decide, within ninety (90) calendar days after the filing of the complaint, **the claims arising out of an employer-employee relationship or by virtue of any law or contract involving Filipino workers for overseas deployment including claims for actual, moral, exemplary and other forms of damages.**" (Emphasis supplied.)

9. The phrases "by virtue of any law" and "claims for actual, moral, exemplary and other forms of damages" in the above provision explicitly grant to the NLRC jurisdiction over all claims of seafarers based on law, including claims for damages.

A claim in tort is a claim in law which is under the original and exclusive jurisdiction of the NLRC;

10. The phrase "notwithstanding any provision of law to the contrary" in the above provision did not appear in the original wordings of Section 20 of the Labor Code of the Philippines and subsequent Orders from which Section 10 of the MWOFA was patterned.

The added phrase indicates clear legislative intent to nullify past interpretations of previous laws concerning the jurisdiction of the NLRC which do not expressly grant the NLRC with such vast jurisdiction.

Thus, under current Philippine law, all money claims filed by Filipino overseas workers against their foreign employers, including those arising out of an employer-employee relationship or by virtue of any law or contract involving their overseas deployment (regardless of whether the same arose from contract or tort) shall be under the original and exclusive jurisdiction of the NLRC.

12. The NLRC provides an adequate and independent forum for a Filipino seaman or his heirs to bring a claim against his foreign employer arising from his disability or death;

Seafarers or their successors-in-interest are not required to pay any fee whatsoever when filing a complaint before the NLRC. They may file

their Complaint at the NLRC or its Regional Arbitration Branch nearest to his place of residence. They are also not required to retain a counsel to initiate a complaint with the NLRC. Free legal assistance is provided by the NLRC through its Migrant Workers' Desk.

In order to ensure the speedy disposition of claims by seafarers or their successors-in-interest, the NLRC is directed to hear and decide an overseas worker's claim within ninety (90) days from the time of filing of the complaint (Section 5, Rule V, **NLRC Rules of Procedure, As Amended**).

As a further safeguard for overseas workers such as seafarers, the **Omnibus Rules and Regulations Implementing the Migrant Workers and Overseas Filipinos Act of 1995** ("Omnibus Rules") also mandates the following:

> "Section 64. Solidary Liability – The liability of the principal/employer and the recruitment/placement agency on any and all claims under this Rule shall be joint and solidary. This liability shall be incorporated in the contract for overseas employment and shall be a condition precedent for its approval. The performance bond to be filed by the recruitment/placement agency, as provided by law, shall be answerable for all money claims or damages that may be awarded to the workers.
>
> If the recruitment/placement agency is a juridical being, the corporate officers and directors and partners as the case may be, shall themselves be jointly and solidarily liable with the corporation or partnership for the aforesaid claims and damages.
>
> Such liabilities shall continue during the entire period or duration of the employment contract and shall not be affected by any substitution,

amendment or modification made locally or in a foreign country of the said contract."

Due to the joint and solidary liability of the local manning agency with its principal and the performance bond required of it, the "claims and damages" that a seafarer may be held to be entitled to can be immediately and sufficiently satisfied.

Even where the principal shipping company and its manning agency appeal the NLRC's monetary award to a seafarer, the seafarer's rights are amply protected. The NLRC requires the appealing employer to post a cash or surety bond as security for the judgment in order to perfect the appeal. (Section 6, Rule VI, **NLRC Rules of Procedure, As Amended**)

10. On 16 March 2001, complainant filed a Complaint for compensation and benefits for the death of her son, Juan M. Gonzales, with the Sub-Regional Arbitration Branch VI of the National Labor Relations Commission ("NLRC") of the Republic of the Philippines. The Complaint was docketed as SRAB Case No. OFW(M)01-03-0014 and was entitled "Josefina M. Gonzales, complainant, versus Bright Maritime Corporation and Eternity Shipping Ltd., respondents". In her Complaint, Josefina Gonzales claimed entitlement to benefits and compensation for the death of Juan Gonzales, Jr. without the necessity of acknowledging in a General Waiver that payment thereof constitutes full and final settlement of all her claims against respondents such that she would no longer be able to initiate any other action against persons who might be held liable for the death of her son based on the laws of foreign countries. The Complaint was raffled to the sala of Labor Arbiter Oscar Uy. This Complaint was referred by the named respondents to our law firm for handling. A true copy of the Complaint is included in this Affidavit as **Exhibit 4**.

11. After the parties have filed their respective pleadings and presented their evidence, Labor Arbiter Uy issued a Decision dated 30 August 2001, holding respondents Bright Maritime Corp. and Eternity Shipping, Ltd. liable to pay complainant Mrs. Gonzales the total amount of US$55,000.00, consisting of US$50,000.00 as compensation benefits

plus ten percent thereof as attorney's fees. Moreover, Labor Arbiter Uy ruled that the complaint apparently filed by complainant Mrs. Gonzales for torts and damages in foreign jurisdiction is not proscribed by the Migrant Workers And Overseas Filipinos Act of 1995.

12. On behalf of respondents, our firm appealed this Decision before the NLRC Commission on 3 October 2001.

13. In a Decision dated 14 March 2002, the NLRC Commission held that the NLRC has original and exclusive jurisdiction over claims arising out of employer-employee relationship or contract involving overseas Filipino workers. However, being a Philippine legislation, the exclusivity of its conferment of jurisdiction is in relation only to other courts, bodies or tribunals in the Philippines. Hence, once she receives the amount of US$50,000.00, complainant is necessarily barred from instituting a separate legal action in the Philippines based on Juan Gonzales's death because of the Philippine policy against double recourse from a single wrong. However, the Commission is not in a position to hold that complainant is barred from instituting a separate legal action in a foreign country. To institute is one thing and for the action to prosper is another. The foreign forum has jurisdiction to determine whether the second suit before it will prosper notwithstanding the existence of a first suit in the Philippines. A true copy of the Commission's Decision is attached hereto as **Exhibit "5"**.

14. On 25 June 2002, on behalf of respondents, our firm issued in favor of complainant the total amount of US$55,000.00 in satisfaction of the Commission's Decision dated 14 March 2002. A true copy of the Satisfaction of Judgment and Receipt of Payment evidencing this is attached hereto as **Exhibit "6"**.

15. In a Resolution dated 30 September 2002, the NLRC Commission acknowledged receipt of a copy of the Satisfaction of Judgment and Receipt of Payment jointly filed by the parties and in view thereof, ordered the case as closed and terminated. A true copy of the said Resolution is attached hereto as **Exhibit "7"**.

I attest to the truth of the above facts.

Makati City, 5 October 2004.

                                            **RUBEN T. DEL ROSARIO**
                                                      Affiant

**SUBSCRIBED AND SWORN** to before me this 5th day of October 2004. Affiant exhibited to me his Community Tax Certificate No. 15199841 issued on 23 January 2004 at Makati City, Philippines.

Doc No. 280;
Page No. 56;
Book No. 10;
Series of 2004.

*JOSEPH MANOLO R. REBANO*
Serial No. M-339
Notary Public
Commission at Makati City
Until 31 December 2004
15/F Pacific Star Building
Makati Ave. cor. Sen. Gil Puyat Ave.
1200 Makati City
Roll No. 42283
PTR No. 7019761
Issued at Makati City on January 9, 2004
IBP No. 602516
Issued at PPLM on December 29, 2003

8