IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| IN THE MATTER OF | * | |
| THE COMPLAINT OF | | |
| ETERNITY SHIPPING, LTD. AND | * | Civil Action No.: L01CV0250 |
| EUROCARRIERS, S.A. | | |
| FOR EXONERATION FROM OR | * | |
| LIMITATION OF LIABILITY | | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

LIMITATION PLAINTIFFS' MEMORANDUM
REGARDING LIMITATION PROCEDURES

Eternity Shipping, Ltd. and Eurocarriers, S.A. ("Limitation Plaintiffs"), by their

undersigned attorneys, submit this Memorandum Regarding Limitation Procedures in

accordance with the Court's Memorandum Order of December 8, 2005.

I.    BACKGROUND

The Court's Memorandum Order of November 22, 2005 commented on certain

aspects of limitation procedure that had been raised by counsel for Claimant Josefina

Gonzales at the November 21, 2005 hearing.  In particular, the Court noted that counsel

had suggested that limitation actions are often stayed while proceedings go forward in

another forum, and that counsel had raised the possibility of trial by jury.

On December 6, 2005, counsel for Mrs. Gonzales filed her Memorandum

Regarding the Prosecution of "Limitation Actions" (hereafter the Gonzales "Limitation

Memo").  In that Limitation Memo, counsel again mentioned the procedural matters of

stay and jury trial but also argued that, on the merits, limitation should be denied in this

case.  None of the points raised in the Gonzales Limitation Memo responded in any way

1

to the legal arguments which Limitation Plaintiffs have advanced in support of their Motion for Summary Judgment. Nevertheless, the Gonzales Limitation Memo concludes with a prayer that the Court deny all relief requested by Limitation Plaintiffs, including summary judgment.

Undersigned counsel's letter of December 6, 2005 (corrected on December 7, 2005 to provide a correct citation) pointed out that the inclusion of arguments on the merits in the Gonzales Limitation Memo was improper because Limitation Plaintiffs' entitlement to limit their liability had not been raised in any summary judgment motion. That letter also suggested that matters relating to limitation procedures need not be considered by the Court prior to resolution of the summary judgment motions, but offered to brief the overall procedural issues if the Court so desired.

The Court's Memorandum Order of December 8, 2005 requested that Limitation Plaintiffs file a brief regarding procedural issues, to which other parties will have an opportunity to respond.

Limitation Plaintiffs now provide this Memorandum Regarding Limitation Procedures. This filing will discuss generally certain issues relating to limitation procedures, will correct certain misapprehensions which counsel for Mrs. Gonzales has advanced, and will conclude with a proposal for case management for the Court's consideration.

## II.  DISCUSSION

A.    <u>The Basics Of Limitation Of Liability</u>

Since its creation in the mid-1800s to encourage shipbuilding and ownership in the United States, the Limitation Act has provided for exclusive federal jurisdiction to adjudicate the various claims against a shipowner arising from a single incident, in order to guarantee payment to the claimants at least to the value of the vessel if they could establish liability.  The Act is the complement to the procedures for arresting vessels in court for the satisfaction of claims asserted against the vessel *in rem*, except in limitation proceedings the vessel owner voluntarily offers into court the value of the vessel and its pending freights for the satisfaction of any claims for which it might be found liable arising out of a single incident.

In its opinion in 2001 in the case of <u>Lewis v. Lewis & Clark Marine, Inc.</u>, 531 U.S. 438, 2001 A.M.C. 913 (2001), the Supreme Court reviewed the background and purpose for the admiralty law of limitation of liability, and provided an admirable <u>précis</u> of the fundamental point of limitation:

> Admiralty and maritime law includes a host of special rights, duties, rules and procedures . . . .  Among these provisions is the Limitation Act, *46 U.S.C. App. § 181 et seq.*  The Act allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel.

<u>Lewis</u>, 531 U.S. at 446, 2001 A.M.C. at 918.

The Limitation Act was passed by Congress in 1851 and remains largely unchanged today.[1] Because the Act did not itself set out any procedures for determining entitlement to limitation of liability, in 1872 the Supreme Court designed and promulgated rules of procedure to govern limitation actions. The current version of those procedures is found in Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims. Quoting again from Lewis:

> Much like its predecessor provisions, Rule F sets forth the process for filing a complaint seeking exoneration from, or limitation of liability. The district court secures the value of the vessel or owner's interest, marshals claims, and enjoins the prosecution of other actions with respect to the claims. In these proceedings, the court, sitting without a jury, adjudicates the claims. The court determines whether the vessel owner is liable and whether the owner may limit liability. The court then determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants.

Id. at 448, 2001 A.M.C. at 920.

The limitation process marshals all claims and requires them to be brought in a single action – establishing a "concursus" of all claims, which is the heart of the limitation of liability system. Maryland Casualty Co. v. Cushing, 347 U.S. 409, 415, 1954 A.M.C. 837, 843 (1954). In the event that claims exceed the value of the vessel and its pending freight, "concursus is vital to the protection of the offending owner's statutory right of limitation." Lake Tankers Corp. v. Henn, 354 U.S. 147, 154, 1957 A.M.C. 1165, 1170 (1957). "The procedure for a limitation action is now contained in Supplemental Admiralty and Maritime Claims Rule F, which provides that a 'complaint may demand

---

[1] For better or for worse. As Justice O'Connor's Lewis opinion states, "The Act is not a model of clarity." Lewis, 531 U.S. at 447, 2001 A.M.C. at 919.

exoneration from as well as limitation of liability'" and "allows 'a district court to enjoin the further prosecution of any action or proceeding against the [owner] or the [owner's] property with respect to any claim subject to limitation in the action.'" In Re: In the Matter of: Tetra Applied Technologies, LP, 2004 A.M.C. 841, 843, 362 F. 3d 338, 340 (5th Cir. 2004) (citing FED. R. CIV. P. SUPP. R. F(2) &(3)).

    B.    Historical Trends Do Not Suggest That Limitation Cases Are A Dying Breed.

As noted by the Court in its November 22, 2005 Memorandum Order, counsel for Mrs. Gonzales has suggested that limitation actions are "rarely, if ever, successful." The reality is to the contrary.

Professor Schoenbaum notes a "recent trend in the courts to allow limitation under the Act . . ." 2 T. Schoenbaum, Admiralty & Maritime Law 152, § 15-6 (4th ed. 2004). Schoenbaum relies, for this proposition, upon a statistical analysis of limitation of liability cases performed by the Maritime Law Association of the United States in 1982 and last updated in 1997. The following excerpt from the 1997 analysis highlights the continuing viability of the limitation doctrine:

> For all reported cases since 1982 the results show that limitation was granted 17 times and denied 20 times. Although limitation is still frequently denied, the trend toward its viability as a defense seems to have continued since 1976. For the fifteen years prior to 1976, limitation was granted only 14 times and denied 43 times, but, starting in 1976, in the next five-year period 11 cases granted and 17 cases denied limitation. *Thus, the long-term statistics appear to show that limitation of liability under our present law has not met the judicial demise which some commentators have predicted or desired.*

Donald C. Greenman, *Statistical Analysis of Limitation of Liability Cases*, Maritime Law

Association of the United States Document No. 729, at 10527 (May 2, 1997) (emphasis

added). Research conducted by counsel reveals that the trend has continued at a similar

pace since 1997. The results show that, from 1997 through 2005, limitation was granted

6 times and denied 10 times.[2]

It should be noted that this statistical analysis refers only to cases actually decided

on the merits and does not include cases which were settled before any reportable

decision was made by the forum court. Given the generally-recognized proposition that

the vast majority of cases in federal court are settled before trial, it is apparent both that

limitation of liability remains a useful, and popular, procedural mechanism, and that

limitation remains a viable substantive doctrine.

C.    This Is Not A Case That Can Be Pursued Outside Of This Court.

The limitation procedure exists to protect the statutory right of the shipowner to

limit its liability in the appropriate circumstance. See In re Complaint of Great Lakes

Towing Company, 1974 A.M.C. 2448, 395 F. Supp. 810 (N.D. Oh. 1974) ("[A]

---

[2] Limitation was granted in the following cases: Karim v. Finch Shipping Co., 2000 A.M.C. 1617, 94 F. Supp. 2d 727 (E.D. La. 2000); In re Hellenic, Inc., 2001 A.M.C. 1835, 252 F. 3d 391 (5th Cir. 2001) (denial of limitation reversed and remanded); Ginop v. A 1984 Bayline 27' Cabin Cruiser, 2003 A.M.C. 1200, 242 F. Supp. 2d 482 (S.D. Mich. 2003); In re Bowfin, 2003 A.M.C. 2272, 339 F. 3d 1137 (9th Cir. 2003) (grant of limitation affirmed); In re Am. Milling Co., 2003 A.M.C. 2645, 270 F. Supp. 2d 1068 (E.D. Mo. 2003), *rev'd in part*, 2005 A.M.C. 1217, 409 F.3d 1005 (8th Cir. 2005) (holding that one of the parties who was originally granted limitation was not an "owner" for limitation purposes)); In re MO Barge Lines, Inc., 2004 A.M.C. 693, 360 F.3d 885 (8th Cir. 2004).
Limitation was denied in the following cases: Warrior and Gulf Navigation Limitations Proceedings, 1997 A.M.C. 1432, 1996 U.S. Dist. LEXIS 19592 (S.D. Ala. 1997); In re Palmer Johnson Savannah, Inc., 1998 A.M.C. 386, 1 F. Supp. 2d 1377 (S.D. Ga. 1997); In re Complaint of Martin, 18 F. Supp. 2d 126 (D. Mass. 1998); TT Boat Corp. and Tidewater Marine, Inc., Limitations Proceedings, 1999 A.M.C. 2776, 1999 U.S. Dist. LEXIS 5627 (E.D. La. 1999); Birmingham Southeast, LLC v. M/V Merchant Patriot, 2000 A.M.C. 1015, 124 F. Supp. 2d 1327 (S.D. Ga. 2000); In re. Bayrunner Rentals, Inc., 2001 A.M.C. 894, 113 F. Supp. 2d 795 (D. Md. 2000); In re Skipperliner Indus., 2002 US Dist. LEXIS 27139 (W.D. Wis. 2002); In re Parish of Plaquemines, 231 F. Supp. 2d 506 (E.D. La. 2002); Trico Marine Assets, Inc. v. Diamond B Marine Servs., 2003 A.M.C. 1355, 332 F. 3d 779 (5th Cir. 2003) (denial of limitation affirmed on appeal); Am. River Transport v. Paragon Marine Servs., Inc., 213 F. Supp. 2d 1035 (E.D. Mo. 2002) (denial of limitation affirmed on appeal).

limitation of liability proceeding . . . is a unique statutory right and is so deeply founded in admiralty and equity that . . . it must be given full effect . . .").  It has been recognized, however, that there is a certain tension between the Limitation Act and the "savings to suitors" clause, which (in its present version) states that "the district courts shall have original jurisdiction, exclusive of the courts of the States, of any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1) (2005).

Recognizing this tension, courts and litigants have developed a practical approach to permit certain limitation cases to be stayed while litigation on issues of liability and damages goes forward in another forum.  Typically, that other forum is a state court, where an injured seaman has filed a separate Jones Act lawsuit against his employer, hoping to benefit from the perceived generosity of state courts, and especially state court juries.  This approach has been applied in cases where there is only a single claimant, and in cases where multiple claimants have all entered into appropriate stipulations to protect the limitation plaintiffs' right to have all matters pertaining to limitation of liability decided by the federal district court.[3]

Counsel for Mrs. Gonzales has intimated that limitation actions are "routinely stayed" while claimants pursue their claims in other venues.  As a practical matter, however, such an approach is not applicable in this case, in which no claimant has ever filed any independent action in any other forum.  Tate & Lyle filed suit in this Court against the LEON I and her owners shortly after the accident in July of 2000, while

---

[3] This approach is the focus of the Supreme Court's Lewis v. Lewis & Clark opinion.

Mrs. Gonzales filed her independent action in this Court on February 5, 2001. Both of those actions were stayed by the Restraining Order issued by the Court in this case on January 29, 2001. No other lawsuit has been filed outside this limitation proceeding, and there is, therefore, no other forum in which any litigation could possibly go forward.

Moreover, this limitation proceeding involves multiple claims, the sum total of which vastly exceeds the limitation fund, and no claimant has ever proposed any stipulation to protect the limitation plaintiffs' right to limitation. Accordingly, all of these claims are, and must remain before this court. See Lewis, 531 U.S. at 448-451, 2001 A.M.C. at 920-22; see also In re Holly Marine Towing, Inc., 2001 A.M.C. 2934, 270 F.3d 1086 (7th Cir., 2001); In the Matter of the Complaint of Norfolk Dredging Co., 2004 A.M.C. 227, 2003 U.S. Dist. LEXIS 24889 (E.D.N.C. Dec. 17, 2003).

D.     The Court's Consideration On The Merits Will Be A Multiple-Step Process.

As indicated in the Lewis opinion's discussion of Rule F quoted above, the trial of a limitation action is a multi-step process. Professor Schoenbaum has summarized the procedure as follows:

> In the trial of a limitation proceeding, the burden of proof is divided between the parties, and there is a two-step analysis. The claimants must prove that the destruction or loss was caused by the negligence or unseaworthiness of the vessel. The burden then shifts to the shipowner to demonstrate that he comes within the statutory limitation conditions: that there was no design, neglect, privity or knowledge on his part. Even where limitation is denied, the court may proceed to judgment on the claims involved.

8

Schoenbaum, supra, at 150 (footnotes omitted).    See Empresa Lineas Maritimas Argentinas, S.A. v. United States, 1984 A.M.C. 1698, 1700, 730 F.2d. 153, 155 (4th Cir. 1984) ("Determining whether a shipowner may limit liability . . . is a two-step process.")

One of the truly unique aspects of the limitation practice reflects this two-step process: the nominal plaintiffs do not go first at trial.  Instead, it is the claimants, who bear the burden of proof to show how the casualty occurred, who go first. Appropriately, therefore, this Court's Local Admiralty Rules provide that in limitation trials "the party asserting a claim against the vessel or owner . . . shall proceed with its proof first, as is normal at civil trials."  LAR(f)(2) (2004).

Once a claimant has shown that a casualty occurred due to the fault of the vessel or her owners, the burden then shifts to the limitation plaintiff to show that the cause of the occurrence was not within his "privity or knowledge." 46 U.S.C. App. § 183(a) (2005).  The "privity or knowledge" standard does not mean that actual knowledge on the part of the owner is required to defeat limitation.  As the Fourth Circuit observed in a case arising out of a collision on the Chesapeake Bay: "The shipowner is chargeable with knowledge of acts or events or conditions of unseaworthiness that could have been discovered through reasonable diligence." Empresa, 1984 A.M.C. at 1700, 750 F.2d at 155.

Although Schoenbaum acknowledges the recent trend to allow limitation under the Act, he points out that "privity or knowledge" is the favored argument of claimants. Schoenbaum goes on to say:

> The determination of whether the shipowner has established a lack of privity and knowledge of the fault involves a delicately balanced inquiry. Privity and knowledge exist where the owner has actual knowledge, or could have and should have obtained the necessary information by reasonable inquiry or inspection. This is of necessity a "reasonable man" test, applied on a case by case basis considering all the circumstances. The real problem is to determine whether the shipowner or persons acting for him acted reasonably under the circumstances. A principal reason for denying limitation is because management failed to provide proper procedures for the maintenance of equipment, the training of the crew, or adequate checks to ensure the implementation of established maintenance and safety procedures. Where the shipowner and supervisory personnel are found to have acted reasonably, limitation will be granted.

Schoenbaum, supra, at 153-154. (footnotes omitted).

The Gonzales Limitation Memo makes reference to the fact that the standard for "privity and knowledge" is more stringent for personal injury and death claims than it is for property damage claims. (Limitation Memo at 2). However, the statutory basis for this difference, found in the Act at 46 U.S.C. App. § 183(e), is narrower than Mrs. Gonzales argues, and than her quotation from Schoenbaum would appear to support. It is only the privity or knowledge of the master "at or prior to the commencement of each voyage" which the statute provides "shall be deemed conclusively the privity or knowledge of the owner" for personal injury and death claims.

### III.    SUBMISSION ON CASE MANAGEMENT

Looking ahead, Limitation Plaintiffs take this opportunity to submit their proposal for case management.

Despite the extensive factual and expert discovery that has been conducted in this case, there remains a substantial conflict among the parties as to exactly what

caused the crane on the LEON I to collapse. That factual conflict is not likely to be resolved short of trial. There also are significant legal issues, many of which the Court has been asked to resolve in the pending Motions for Summary Judgment, but some of which would remain for resolution at trial.

The Court's rulings on the pending Motions for Summary Judgment are likely to result in a significant streamlining of the case. Limitation Plaintiffs urge the Court to grant the ABS Motion for Summary Judgment insofar as it relates to claims against ABS. This would result in the dismissal of the Gonzales claim against ABS, as well as the dismissal of the Tate & Lyle claim against ABS. The Court should also grant the Motion for Summary Judgment by Limitation Plaintiffs against Mrs. Gonzales. This would result in the dismissal of the Gonzales claim against the Limitation Plaintiffs. Finally, although Tate & Lyle's negligence in improperly operating its shore crane within the same hold as the ship's crane clearly contributed to the scope of the casualty, and was the direct cause of the damage to Tate & Lyle's own crane, nevertheless, there is no evidence that Tate & Lyle's negligence in any way caused the ship's crane to collapse, and there is therefore no evidence to support the Gonzales claim against Tate & Lyle. For those reasons, Tate & Lyle's Motion for Summary Judgment against Gonzales should be granted, and the Gonzales claim against Tate & Lyle should be dismissed.

Once the summary judgment motions have been ruled upon, and particularly if the Court rules as Limitation Plaintiffs suggest on the various motions, the case should then be in a posture where a settlement mediation would have a significant chance of

success. Earlier in the proceedings, the parties had collectively agreed to a settlement conference before Magistrate Judge Bredar, but that conference was postponed indefinitely to allow for continuation of discovery. Limitation Plaintiffs suggest that this case be put back on Judge Bredar's calendar for a settlement conference. The Court may be able to estimate when rulings on the motions for summary judgment are likely to issue, and it is probably not too early (given the lead time required) for the Court to ask Judge Bredar to put the matter on his calendar in a particular timeframe.

Once the summary judgment motions are resolved, the parties can be preparing the case for trial in parallel with their preparations for settlement mediation. The Court has discretion to try the case without a jury, regardless of whether the Court grants limitation. As previously noted in this memorandum, "In these proceedings, the court, sitting without a jury, adjudicates the claims." Lewis, 531 U.S. 438 at 448, 2001 A.M.C. at 920. The state of the proceedings also favors this Court's trying all of the issues. Neither Tate & Lyle nor Gonzales prayed a jury trial in their third-party complaints against ABS in this limitation action. Gonzales further failed, pursuant to FED. R. CIV. P. 38(b) and FED. R. CIV. P. 5(d), to serve upon the other parties and file with the court a jury demand in the limitations proceeding. Such failure constitutes a waiver of whatever right Gonzales may or may not have had to a jury. FED. R. CIV. P. 38(d) (2005).

Limitation Plaintiffs suggest that a logical order of proof at trial, following Local Admiralty Rule (f)(2), should reflect the magnitude of each claim, as well as the

12

respective involvement of each party's counsel in moving the case forward.[4]  Thus, Tate & Lyle should proceed with its proof first, followed by Gonzales (if she is still in the case), Cantey and Langville, then Louis Dreyfus.  Thereafter, Eternity Shipping and Eurocarriers, followed by ABS (if ABS is still in the case), should present their proof.

The first round of proof would give all parties the opportunity to put on evidence as to liability and causation against any other parties and, as appropriate, as to their own lack of fault.  This will include proof going to privity and knowledge by the Limitation Plaintiffs.  All parties would also put on evidence of damages.  As appropriate, any party could put on evidence as to the valuation of the limitation fund.[5]  The second round of proof, proceeding in the same order, would provide all parties with the opportunity to put on rebuttal evidence.

At the conclusion of the first two rounds of proof, the court should rule on the following issues: (1) whether fault and causation establishing liability have been proved against the Limitation Plaintiffs; (2) the degree of comparative fault for Tate & Lyle as to the damage to its shore crane (and as to the Cantey and Langville claims); (3) whether limitation is granted; (4) the amount of the limitation fund; and (5) the amounts of damages proven by each claimant.

If, in its discretion, the court decides that Mrs. Gonzales is entitled to a jury trial as to damages, it can then empanel a jury for the limited purpose of hearing evidence of

---

[4] The order of proof suggested here is patterned on that proposed by the Court for trial in the Elk River Collision Limitation Proceedings (Norfolk Dredging Co. v. M/V A.V. KASTNER, etc., et al., Case No. WMC-02-662).

[5] Only the Limitation Plaintiffs have presented evidence in the form of an expert's report as to the valuation of the vessel.  No claimant has come forward with any expert report, and thus no claimant will have evidence to produce regarding this amount.

her damages. Once the jury has reached its verdict as to those damages, the Court should determine the distribution of the limitation fund as to all claimants, or, if limitation is denied, should enter judgments as appropriate for all claimants.

## IV.    CONCLUSION

Limitation Plaintiffs are prepared to respond to any additional procedural issues raised by the Court or by opposing parties, and to discuss this proposal for case management at the hearing now scheduled for January 18, 2006.

_____
M. Hamilton Whitman, Jr., Trial Bar No.: 00373
Carla N. Bailey, Trial Bar No.: 26367
Ober, Kaler, Grimes & Shriver
A Professional Corporation
120 E. Baltimore Street
Baltimore, Maryland 21202
(410) 685-1120

Attorneys for Eternity Shipping, Ltd. and
Eurocarriers, S.A.