**ASPERGER ASSOCIATES LLC**

ATTORNEYS AT LAW

Jeffrey J. Asperger
Direct: 312/240-0795
Email: jasperger@asplaw.net

February 24, 2006

**VIA OVERNIGHT MAIL**
The Honorable Benson E. Legg
United States District Court
for the District of Maryland
Third Floor, Room 340
101 W. Lombard Street
Baltimore, MD 21201

        Re:    In the Matter of the Complaint of
                  Eternity Shipping, Ltd., et al,
                  For Exoneration from or Limitation of Liability
                  Civil Action No.: L-01-CV-0250

Dear Judge Legg:

Enclosed please find the exhibits identified as 1 - 2, 4 - 6 which were referenced at the hearing on January 18, 2006. Exhibits 1, 2, 4 and 6 are not yet marked by your clerk. Exhibit 3 which is the wooden model of a crane has been retained by your Clerk. The Exhibits are described as follows:

        Exhibit 1:    Photos depicting ship's cranes (EC003722)
        Exhibit 2:    Drawing of deck of LEON I
        Exhibit 4:    Crane Photos taken by Hislop in New Orleans on 2/8/04 numbered
                        4,7,10,11 and 82
        Exhibit 5:    Photo depicting seamen in basket (EC002652)
        Exhibit 6:    Photo B8 depicting cables on crane (EC002643)

There is some confusion in the record regarding the marking of Exhibits 5 and 6. The photo of the cables (Exhibit 6) was actually introduced prior to the introduction of the photo of the seamen in the workbasket (Exhibit 5). However, the photo depicting the seamen has already been marked Exhibit 5 by your Clerk, therefore, this document remains Exhibit 5 and the photo of the cables is Exhibit 6.

In addition, enclosed please find a copy of ABS' Guide for Certification of Cranes ("ABS Guide") which is already part of the summary judgment record as Exhibit F to ABS' Motion for Summary Judgment. (Exhibit A; EC001267 – EC001345). There are several provisions of the ABS Guide which are particularly relevant here. Specifically, the ABS Guide requires that each

**ASPERGER ASSOCIATES** LLC

ATTORNEYS AT LAW

The Honorable Benson E. Legg
February 24, 2006
Page Two

rope have a certificate of test:

> **4.5   Wire Rope Test**
>
> All wire rope is to have a certificate of test, furnished by the manufacturer or the certificating authority, showing the breaking test load of a sample. The certificate is to show also size of rope, number of strands, number of wires per strand, lay, core, quality of wires, date of test, and is to be submitted for inclusion in the Register of Lifting Appliances. See 8.1 (EC001304).

It also provides standards regarding broken strands:

> **7.11   Inspection of Wire Rope**
>
> \*         \*         \*
>
> Wire rope is not to be used if in any length of ten diameters, the total number of visible broken wires exceeds 5 percent of the total number of wires, if there is more than one broken wire immediately adjacent to an end fitting, if the broken wires are concentrated in one area or one strand, or if the rope shows signs of excessive wear, corrosion, flattening, kinks, separation of the strands or wires, core failures or other defect which renders it unfit for use. (EC001312).

Thus, according to ABS' own guidelines, when Graham found flattening of the wire rope, he should have opened the lay while the rope was relaxed and laid out on the dock in China, and conducted an internal examination to ascertain why the rope exhibited flattening, at which time he would have had the opportunity to detect further damage including the interior corrosion, pitting and loss of metal. (Hislop dep. 136-142). Because it is highly likely that a flattened rope will have internal damage, this inspection for internal damage, called for by ABS's own policies and procedures, would have revealed that the rope contained a fiber core and was not suitable for this application. (Hislop at 138-139). The ship's crew would not have had the same opportunity to detect the internal damage, after Graham allowed the rope to be placed back into service, as was afforded Graham during his shipyard inspection when the rope was laid out and relaxed. (Hislop at 143-144).

**ASPERGER ASSOCIATES** LLC

ATTORNEYS AT LAW

The Honorable Benson E. Legg
February 24, 2006
Page Three

Moreover, there exists a genuine issue of fact whether Graham ever even saw a certificate for the wire rope at issue. Graham acknowledged that he was on board the Leon I every day it was in the shipyard, (Graham at 19) but he had no record in his narrative report that the certificates were examined and found in order. (Hislop dep. at 120). One of the first things to do when conducting a survey is to go on board a ship and ensure that there is a certificate for each wire. (Hislop at 98-99). There is no record the certificate was available or inspected by Graham before the vessel departed the shipyard in China and it was not on the vessel at the time of the incident. It is unacceptable for the thirty year old cranes with wires of indeterminate origin not to have certificates. (Hislop dep. at 97-98, 101-102). When a copy of the certificate was finally produced by the vessel owners upon request of the Coast Guard and Tate & Lyle, it revealed that the wire rope on crane #4 had a fiber core and was the wrong diameter, critical details overlooked by ABS. (Exhibit B)

I understand that after I left the hearing, Mr. Whitman presented argument that Graham's statement given to the Coast Guard in the presence of ABS counsel is somehow inadmissible. While this has been briefed, it is important to note that Graham's statement to the Coast Guard, which is being offered as an admission and for impeachment, was introduced into evidence in this case by both Mr. Whitman and Mr. Clyne. Mr. Whitman introduced the statement during Graham's deposition and questioned Graham at length about it. (Graham at 65-70). Mr. Clyne also introduced the statement in his cross examination of Tate & Lyle's expert, Mr. Hislop. (Hislop at 146).

As our brief on this issue notes, certain materials incorporated into a Coast Guard investigation report, such as photographs and recorded statements, are admissible if they do not contain the Coast Guard's findings, opinions, recommendations, deliberations or conclusions. *In re Danos & Curole Marine Contractors, Inc.*, 278 F.Supp.2d 783, 785 (E.D. La 2003). The statute provides that Coast Guard findings, opinions, etc. are not admissible in order to protect members of the Coast Guard from being subjected to deposition or other discovery, or otherwise [being required to] testify in such proceeding relevant to a marine casualty investigation. 46 U.S.C. Sec. 6308. Graham's statement, which has been offered by all parties, would not require any Coast Guard testimony at trial and it does not contain any findings, opinions, recommendations, deliberations or conclusions by the Coast Guard. Moreover, the basic rules of evidence provide that this prior inconsistent statement may be used for impeachment (Federal Rules of Evidence, Rule 613) and

**ASPERGER ASSOCIATES LLC**

*ATTORNEYS AT LAW*

The Honorable Benson E. Legg
February 24, 2006
Page Four

is also admissible as an admission by a party-opponent. (Federal Rules of Evidence, Rule 801(d)(2)).

Respectfully,

Jeffrey J. Asperger

JJA:dmw

Enclosures

cc:   All Counsel of Record (via U.S. Mail with exhibits 1-2 and 4-6)