recognizing an implied warranty of workmanlike performance within the four corners of the contract between ABS and Eurocarriers.

### C.     No Admissible Evidence that Graham's Surveys Were Flawed

Even if Third-Party Plaintiffs were able to clear the hurdles described above, the Court finds that there is no admissible evidence that Graham's surveys were flawed. Third-Party Plaintiffs allege five defects that they claim Graham should have noticed and reported to Eurocarriers. Before the Court turns to the alleged defects, it must address two flaws at the core of Third-Party Plaintiffs' argument.

Third-Party Plaintiffs argue that Graham should have performed the tests and inspections necessary to find the alleged defects and other problems, even if the Guide did not so require. They provide no support for this proposition, however. To the contrary, case law suggests that a surveyor's duties extend no farther than performing the inspections and tests called for by the classification society's own rules and regulations and notifying the owner of any defects noted.[53] Requiring a classification society to look for all possible defects aboard a ship, beyond those contemplated by its own rules and regulations, would burden it with a duty to ensure the

---

[53] See Otto Candies, 346 F.3d at 538 ("The certificate or survey in no way guarantees a vessel's seaworthiness, however, but <u>extends only as far as the nature of the survey performed.</u>" (emphasis added)); Great American, 338 F. Supp. at 1013 ("[A] ship's surveyor or classification society should be charged in law with the reasonable duty of detecting all perceptible defects of the vessel <u>encountered during the survey</u> and notifying the owner and/or charterer thereof." (emphasis added)).